**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DOUGLAS J. HORN, et al.,

                              Plaintiffs,

v.

MEDICAL MARIJUANA, INC., et al.,

                              Defendants.

**Decision and Order**

15-CV-701-JWF

---

## PRELIMINARY STATEMENT

On July 22, 2021, defendant Dixie Holdings, LLC ("Dixie LLC") filed a motion *in limine* to preclude the testimony of Mark P. Zaporowski, Ph.D., plaintiff's expert economist. Docket # 194. While styled as a motion *in limine*, in truth Dixie LLC's motion is of a dispositive nature: it contends that the kinds of damages that plaintiff seeks to recover are not recoverable through either of his remaining claims. Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC join in the motion. Docket # 200. Plaintiff opposes the motion. Docket # 198.

On August 3, 2021, the Court informed the parties that it intended to dismiss plaintiff's civil RICO claim (with a written Decision and Order to follow) and requested the parties brief the issue of the Court's subject matter jurisdiction over the state-law fraud claim. Docket ## 203-05.

Having reviewed all the briefing submitted, and for the reasons set forth below, the Court concludes that plaintiff's civil RICO claim must be dismissed as a matter of law, that plaintiff's fraud claim is viable insofar as plaintiff seeks to recover lost earnings, and that the Court retains subject matter jurisdiction over the fraud claim. Accordingly, defendants' motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Prior to the scheduled jury trial, plaintiff had two remaining causes of action: a civil RICO claim and a state-law fraudulent inducement claim.[1] In both claims plaintiff sought to recover damages for the losses he incurred when his employment as a truck driver was terminated, including "past and future lost compensation, lost health benefits, lost retirement savings and difference in work effort mileage driven." Docket # 179 at 2. To support his damages calculations, plaintiff intended to proffer at trial the testimony of Dr. Zaporowski, who calculated the value of plaintiff's total economic damages. Id. Defendants contend that plaintiff cannot recover these kinds of "loss of earnings" damages

---

[1] Plaintiff had other claims that were previously addressed and dismissed by Judge Geraci. See Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019).

2

in connection with either a civil RICO or state-law fraud claim. As will be discussed below, defendants are correct with respect to the former claim, but not the latter.

**Delay and Prejudice to Plaintiff:** Before discussing the merits, the Court will address plaintiff's arguments on the timing of Dixie LLC's motion. See Docket ## 197, 198. As the Court stated on the record at the prior conferences on this motion, the timing of the motion and the prejudice to plaintiff resulting therefrom is both concerning and unfortunate. However, the Court has already concluded that the Dixie LLC's delay in raising these potentially dispositive issues was not attributable to bad faith. Furthermore, once raised, the Court could not avoid deciding the issue. If defendants were correct on the damage issue, it would have made little sense to proceed to trial, as the Court would be required to instruct the jury on the law as to recoverable damages. If plaintiff cannot, as a matter of law, recover the type of damages he seeks, the trial would have essentially been a pointless exercise in futility. Deciding the issue now, however late it has been raised, still ensures that the parties, the Court and the jurors do not spend time or energy on claims for which plaintiff cannot recover the damages he seeks. While the Court acknowledges the costs plaintiff has incurred due to the delay of trial,

3

judicial economy and fairness to the parties require resolution of the damage issues prior to the commencement of trial.

Plaintiff also makes two threshold arguments that merit only brief comment. First, plaintiff cites Dixie LLC's eleventh affirmative defense in its answer to argue that Dixie LLC has long known about this issue. See Docket # 9 at 11; Docket # 198 at 6. The eleventh affirmative defense is that plaintiff's injuries "do not arise out of any [RICO] predicate acts" and that plaintiff "is therefore without standing." Docket # 9 at 11. That issue is different than the one Dixie LLC now raises — that plaintiff's damages are not recoverable as injuries to "business or property" under the RICO statute. Second, plaintiff claims that Judge Geraci decided this issue at summary judgment, which is incorrect. See generally Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019). Accordingly, the Court turns to the merits of the pending motion.

**Cognizable Damages in Civil RICO claims:** Defendants argue that plaintiff's requested "loss of earnings" damages are not recoverable in a civil RICO action because they are predicated on the bodily invasion plaintiff allegedly sustained when THC was introduced into his system through the ingestion of Dixie X. The Court agrees.

4

RICO establishes a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Defendants' argument implicates the first clause in this provision: that one must be injured "in his business or property" in order to recover under Section 1964(c).

This statutory language has a long history. Congress modeled Section 1964(c) and its private right of action on the "the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," Holmes v. Secs. Inv'r Protection Corp., 503 U.S. 258, 267 (1992), which provides: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ." 15 U.S.C. § 15(a) (emphasis added). In the context of the Clayton Act, the Supreme Court has held that the "business or property" clause encompasses harm to "commercial interests or enterprises," Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 264 (1972), but not "personal injuries suffered." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). Compare id. ("[A] consumer . . . acquiring goods or services for personal use[] is injured in 'property' when the price of those goods or services is artificially inflated by reason of the

anticompetitive conduct complained of."), <u>with</u> <u>Chadda v. Burcke</u>, 180 F. App'x 370, 371-72 (3d Cir. 2006) (summary order) (consumer's injuries suffered from use of a cosmetic "at most" asserted a "personal injury" that did not support an antitrust claim).

In interpreting and applying Section 1964(c), courts have taken the same approach. "[A] plaintiff only has standing [under civil RICO] if, and can only recover to the extent that, he has been injured <u>in his business or property</u> by the conduct constituting the violation."[2] <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985) (emphasis added). An injury to "business or property" under Section 1964(c) contemplates "a proprietary type of damage" or "economic injury." <u>Bascuñán v. Elsaca</u>, 874 F.3d 806, 817 (2d Cir. 2017). As a simple example, "a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his

_____

[2] Although the issue is sometimes framed as one of "standing," as in <u>Sedima</u>, the Court notes that this label is "misleading." <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 128 n.4 (2014). The Supreme Court has made clear that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, <u>i.e.</u>, the court's statutory or constitutional power to adjudicate the case." <u>Id.</u>; <u>see also</u> <u>Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.</u>, 821 F.3d 352, 359 (2d Cir. 2016) ("[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (internal quotation marks omitted)); <u>Safe Streets Alliance v. Hickenlooper</u>, 859 F.3d 865, 887 (10th Cir. 2017) ("[W]hat we once called 'RICO standing' or 'statutory standing' we now properly characterize as the usual pleading-stage inquiry: whether the plaintiff has plausibly pled a cause of action under RICO.").

building is the type of injury for which § 1964(c) permits suit."
Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984),
vacated on other grounds, 473 U.S. 922 (1985).

The limitation is perhaps easier to state than to apply. A
fundamental difficulty is that money "is a form of property,"
Reiter, 442 U.S. at 338, and "[m]ost personal injuries" will entail
"some pecuniary consequences," including "loss of earnings, loss
of consortium, loss of guidance, mental anguish, and pain and
suffering." Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992). A
litigant could easily recast damages for personal injury as a
financial loss of "property" in order to invoke civil RICO. See,
e.g., id. (noting that, theoretically, one could view the "economic
aspects of [a personal injury]" as "injuries to 'business or
property'"); Grogan v. Platt, 835 F.2d 844, 846 (11th Cir. 1988)
(discussing plaintiffs' argument that "persons who are killed or
injured by RICO predicate acts suffer real economic consequences
as a result"). As a result, in deciding whether an injury is "to
business or property" — and thus recoverable under civil RICO — or
is personal — and thus not recoverable — courts do not look solely
at whether there is a "financial loss." Doe, 958 F.3d at 770.
Instead, they ask whether the plaintiff seeks to recover for a
loss that flows from, or is derivative of, a personal injury. If

it does, then it is not recoverable under civil RICO. See Jackson v. Sedgwick Claims Mgmt. Servs., Inc., 731 F.3d 556, 565-66 (6th Cir. 2013) ("[B]oth personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c)."); Grogan, 835 F.2d at 848 (holding that plaintiffs "cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim").

In recognition of this distinction, courts have held that lost earnings or wages are not recoverable if they flow from a personal injury. See Evans v. City of Chicago, 434 F.3d 916, 926-27 (7th Cir. 2006) ("The loss of income as a result of being unable to pursue employment opportunities while allegedly falsely imprisoned . . . are quintessentially pecuniary losses derivative of personal injuries arising under tort law."), overruled on other grounds, Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013); Jackson, 731 F.3d at 565. Here, plaintiff does not allege that defendants engaged in a fraudulent scheme that directly caused his loss of employment. To the contrary, plaintiff acknowledges that "[t]he nexus between the RICO violations . . . and [plaintiff's] resulting economic damages . . . is the harm of the THC that was introduced into [his] system by Defendants' product." Docket # 198 at 7 (emphasis added). In other words, what connects

8

defendants' fraudulent scheme to plaintiff's loss of employment and earnings is a personal injury: the bodily invasion that plaintiff suffered when he unwittingly ingested THC. Cf. Doe v. Brown Univ., 304 F. Supp. 3d 252, 265 (D.R.I. 2018) (plaintiff sufficiently alleged tort of battery, where she claimed defendant "spiked" her drink, which caused her "harmful mental and physical effects"). Unfortunately for plaintiff, he may not recover lost earnings arising from that sort of personal injury in connection with a civil RICO claim. Accord Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) (noting that smokers cannot assert RICO claims for fraudulent cigarette marketing "because the RICO statute requires an injury to 'business of property'"); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) ("RICO plaintiffs may recover damages for harm to business and property only, not physical and emotional injuries due to harmful exposure to toxic waste."); Aston v. Johnson & Johnson, 248 F. Supp. 3d 43, 49-50 (D.D.C. 2017) (loss of earnings in connection with pharmaceutical drug); Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012) (plaintiffs could not recover lost wages and out-of-pocket expenses caused by sexual abuse); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 66 (D.N.H. 2013) ("lost income" due to

plaintiff's inability to work from smoking); Gotlin v. Lederman, 367 F. Supp. 2d 349, 357 (E.D.N.Y. 2005) (where plaintiffs alleged that defendants fraudulently misrepresented quality of cancer treatment, dismissing civil RICO claim and noting that "allegations of a financial loss incidental to a personal injury such as loss of earnings or pain and suffering are not considered injury to property or business"), aff'd, 483 F. App'x 583 (2d Cir. 2012) (summary order); Gause v. Philip Morris, No. 99-CV-6226, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000) (where plaintiff alleged tobacco companies fraudulently marketed cigarettes and thereby caused her to smoke and develop emphysema, she could not recover lost income under civil RICO on the theory that she was unable to work due to her illness), aff'd, 29 F. App'x 761 (2d Cir. 2002) (summary order).

The cases that plaintiff cites in his opposition memorandum do not persuade the Court otherwise. Indeed, many of those cases demonstrate the distinction that courts draw between business/property injuries and personal injury, as they involve economic harm flowing directly from RICO predicate acts without any intervening personal injury. See Denney v. Deutsche Bank AG, 443 F.3d 253, 260, 265 (2d Cir. 2006) (scheme to market unlawful tax strategies allegedly caused plaintiffs to, inter alia, pay

10

"excessive fees" for the advice, sustain penalties from the IRS, and incur costs to remediate their tax situations); City of New York v. Fedex Ground Package Sys., Inc., 175 F. Supp. 3d 351, 369-71 (S.D.N.Y. 2016) (delivery service's circumvention of New York cigarette taxes caused state and local governments to lose tax revenue); Kriss v. Bayrock Grp. LLC, No. 10-CV-3959, 2016 WL 7046816, at *19 (S.D.N.Y. Dec. 2, 2016) (real estate organization, which was engaged in fraudulent activities, enticed "real estate finance professionals" to join organization and caused them to pass up "lucrative opportunities" elsewhere); Rodonich v. House Wreckers Union, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) (union unlawfully disciplined union members in scheme to suppress dissent, which caused lost wages).

Plaintiff cites two cases as supporting the view that he may recover lost earnings resulting from his claimed bodily invasion. The Court is not convinced by either. First is Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963 (E.D.N.Y. 1995). In Kubecka, it was alleged that the defendants murdered two executives in connection with a dispute over garbage disposal contracts in Long Island. Kubecka, 898 F. Supp. at 966. The plaintiffs included two corporations that alleged they were "injured in their business or property . . . [when] their executives were murdered and thereby

11

removed as executives." Id. at 969. The court agreed, apparently
accepting that the murders interfered with the corporations'
operations in such a way as to constitute an injury to "business
or property" under RICO. Id. Whatever the soundness of that
rationale with respect to corporate losses, it does not support
the proposition that an individual who loses his job due to
personal injury caused by RICO predicate acts may maintain a RICO
claim.

The second case is Blue Cross & Blue Shield of New Jersey,
Inc. v. Philip Morris, Inc., 36 F. Supp. 2d 560 (E.D.N.Y. 1999).
There, medical insurers sued tobacco companies to recover
"economic damages they incurred in the medical treatment of
diseases caused by tobacco use." Blue Cross, 36 F. Supp. 2d at
565. They claimed tobacco companies had fraudulently
misrepresented the health consequences of smoking and brought RICO
claims premised on, among other things, mail and wire fraud. Id.
at 565-66. The court held that the insurers' medical expenditures
constituted a loss to business or property and that "[a]ny personal
injuries to smokers . . . caused by [tobacco companies'] alleged
racketeering are separate and distinct from the [insurers']
economic injuries suffered by their businesses." Id. at 569-71.

Blue Cross is unpersuasive. As a general matter, the reasoning in Blue Cross is inconsistent with the history, logic, and interpretation of the "business or property" clause that the Court has described above. For that reason, the decision "has been criticized by numerous courts" and has been acknowledged to "rest[] on tenuous legal footing." Magnum v. Archdiocese of Philadelphia, No. 06-CV-2589, 2006 WL 3359642, at *4 n.6 (E.D. Pa. Nov. 17, 2006). Regardless, even if the Court were to accept the distinction that Blue Cross drew between insurers and insureds, that distinction does not help plaintiff: he is not attempting to recover economic damages that are "separate and distinct" from the bodily invasion he suffered from unwittingly consuming THC. As plaintiff himself admitted, his "economic damages" resulted from "the harm of the THC that was introduced into [his] system by Defendants' product." Docket # 198 at 7; accord Zimmerman, 888 F. Supp. 2d at 330 (distinguishing Blue Cross on the basis that "Plaintiffs' alleged lost wages and out-of-pocket expenses are, in their own words, closely associated with the personal injuries they incurred as a result of Defendants' misconduct" (internal quotation marks omitted)).

In sum, because plaintiff's loss of earnings flows from, and is derivative of, a personal injury he suffered, his lost earnings

13

do not constitute an injury "to business or property" that is recoverable in a civil RICO action. And because plaintiff does not seek to recover any other damages, his RICO claim fails as a matter of law and must be dismissed. See Fed. R. Civ. P. 56(f).

**Plaintiff's Fraud Claim:** Noting that New York only permits recovery for "out-of-pocket" losses in a fraud action, defendants next assert that a fraud plaintiff is categorically prohibited from recovering lost earnings. Docket # 194 at 4-6. The Court disagrees.

In New York, if a plaintiff can prove the elements of a claim for fraud, he is entitled to recover "any proximately caused damages." Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 494 (2d Dep't 2011); see also Williams v. Goldberg, 109 N.Y.S. 15, 16 (App. Term. 1908) ("All manner of fraud is abhorrent to the law, and if one person sustains injury through the fraud of another he will be afforded a proper remedy."); Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 307 (2d Cir. 1986) ("Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation."); 60A N.Y.Jur.2d Fraud and Deceit § 190 ("The injured party is entitled to recover in a tort action for deceit only such damages as result directly, necessarily, and proximately

14

from the fraud." (footnotes omitted)). What damages are recoverable in a given case will necessarily depend on the nature of the fraud and of the resulting injuries. Hotaling v. A.B. Leach & Co., 247 N.Y. 84, 88 (1928) ("Varying circumstances must logically require variation in the application of th[e] measure of damages.").

Where the fraud occurs in the context of a business transaction, the measure of damages will ordinarily be "the difference between the amount paid and the value of the article received." Hotaling, 247 N.Y. at 87-88. Where the fraud proximately causes other consequential expenses, such damages may also be recovered. See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 423 (1996) (noting that consequential damages are recoverable in fraud action so long as they "naturally flow[]" from the fraud); see, e.g., Idrees v. Am. Univ. of the Caribbean, 546 F. Supp. 1342, 1350 (S.D.N.Y. 1982) (student fraudulently induced to enroll in medical school could recover "tuition, inscription fee, application fee and round-trip air fare between New York and [the school]"); Orbit Holding Corp. v. Anthony Hotel Corp., 503 N.Y.S.2d 780, 783 (1st Dep't 1986) (where seller of property fraudulently concealed lease, purchaser could recover for costs of settling dispossess proceeding with tenant); Cayuga

15

Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y.S.2d 606, 619 (4th Dep't 1983) (fraud plaintiff could recover damages for lost crops that resulted from the purchase of defective machine).

Finally — and more relevant here — New York courts have long permitted a fraud plaintiff to recover damages for personal injury proximately caused by fraud. See Kuelling v. Roderick Lean Mfg. Co., 183 N.Y. 78, 89 (1905) (collecting cases and holding that "one who sells an article, knowing it to be dangerous by reason of concealed defects . . . is liable in damages to any person . . . who suffers an injury by reason of his willful and fraudulent deceit and concealment."); Tulloch v. Haselo, 218 N.Y.S. 139, 141 (3d Dep't 1926) ("[A] cause of action for deceit may arise where, as the result of false representation, the damage results in personal injuries."); see, e.g., Simcuski v. Saeli, 44 N.Y.2d 442, 451-53 (1978) (where medical provider fraudulently advised patient about treatment, patient could recover damages for the "depriv[ation] of the opportunity for [a] cure"); Kuelling, 183 N.Y. at 88-89 (fraudulent concealment of defect in agricultural implement, which caused plaintiff "severe injuries," gave rise to fraud claim and recovery of proximately caused damages); Williams, 109 N.Y.S. at 16 (tenant could recover damages in fraud action for physical injuries incurred when ceiling collapsed on her, where

defendant's agent fraudulently misrepresented ceiling's condition); Tulloch, 218 N.Y.S. at 142 (positing that if a person misrepresented the safety of a gun and a recipient were injured "by reason of the defects in the gun," a "cause of action for common-law deceit would arise in his favor"); Young v. Robertshaw Controls Co., 481 N.Y.S.2d 891, 893-94 (3d Dep't 1984) (finding that plaintiff stated viable fraud claim, where she alleged that fraudulent concealment of defective control valve caused the explosion of a water heater and the death of her husband, and where she sought compensatory damages for husband's "conscious pain and suffering and wrongful death"); see also City of New York v. Lead Indus. Ass'n, 597 N.Y.S.2d 698, 700 (1st Dep't 1993) ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud.").

The position of New York courts on the scope of recoverable damages in a fraud action mirrors in large part that of the Restatement (Second) of Torts:

> The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

17

(b)  pecuniary loss suffered otherwise as a consequence
of   the   recipient's   reliance   upon   the
misrepresentation.

Restatement (Second) of Torts § 549(1)(a)-(b) (1977); see also

Clearview Concrete Prods. Corp. v. S. Charles Gheradi, Inc., 453

N.Y.S.2d 750, 755 (2d Dep't 1982) (citing Section 549 favorably).

In  addition  to  those  categories  of  damages,  the  Restatement

provides that "[o]ne who by a fraudulent misrepresentation . . .

causes physical harm to [a] person . . . who justifiably relies

upon the misrepresentation[] is subject to liability to the other."

Id. § 557A (emphasis added).   The "ordinary rules as to legal

cause" — i.e., proximate cause — govern claims for fraudulent

misrepresentation causing physical harm.   Id. § 557A cmt.; see

generally id. § 431 (discussing "legal cause").

Plaintiff's fraud claim fits within this overall framework.

As  defendants  acknowledge  in  their  briefing,  plaintiff  is

essentially alleging that he suffered a personal injury as a result

of  defendants'  fraud:  he  was  induced  to  consume  Dixie  X  by

defendants'  misrepresentations,  which  caused  him  to  suffer  a

bodily invasion through the ingestion of THC and which, in turn,

rendered him ineligible for his employment.   See Docket # 194 at

2; Docket # 200 at 7-9, 15; Docket # 201 at 7.   Defendants also

acknowledge that the damages plaintiff seeks are intended to

18

compensate for the losses he incurred because of his personal injury. See Docket # 194 at 4; Docket # 200 at 7-9, 12; Docket # 201 at 7. Plaintiff's theory is, at its core, a fairly conventional one. A plaintiff claims he was injured by a product that he was induced to purchase by allegedly fraudulent marketing practices, and he seeks to recover for the earnings he lost because of his injury. It would be difficult for defendants to argue that this represents some novel theory of relief, as, again, they repeatedly analogize plaintiff's claim to commonplace toxic-exposure cases. See Docket # 200 at 7, 10-11; Docket # 201 at 7-8.

Thus, the fundamental question is not whether plaintiff's theory of liability or damages fits generally within the framework of a fraud claim — it does — but whether he can establish a sufficiently strong causal connection between defendants' fraud and his claimed injury (i.e., the bodily invasion of THC) and alleged damages (i.e., the loss of wages/benefits from his employment). Proximate causation is an issue of fact for the jury. See Benitez v. N.Y.C. Bd. Of Educ., 73 N.Y.2d 650, 659 (1989); 79 N.Y.Jur.2d Negligence § 58. At trial, the jury will be tasked with deciding whether defendants' fraud was "a substantial factor in bringing about [plaintiff's] injury [and associated damages],"

19

in that the fraud "had such an effect in producing the injury [and associated damages] . . . that reasonable people would regard it as a cause of the injury [and associated damages]." N.Y. Pattern Jury Instructions § 2:70 (discussing in negligence context); see also id. § 2:70 cmt. (noting that "[c]ausation is relevant both to liability and to damages"). Regarding the intervening acts of "independent" actors like plaintiff's former employer, the jury will be tasked with deciding whether "a reasonably prudent person in the defendant[s'] situation" would have "foreseen that an act of the kind committed by [the independent actor] would be a probable result" of their fraud. N.Y. Pattern Jury Instructions § 2:72 (discussing in the negligence context); see also id. cmt. ("Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed.").

To the extent defendants are inviting the Court to decide, as a matter of law, whether plaintiff will be able to sufficiently establish proximate causation at trial, the Court declines to do so. To be sure, "where only one conclusion may be drawn from the established facts[,] the question of legal cause may be decided as a matter of law." Benitez, 73 N.Y.2d at 659 (internal quotation marks and ellipsis omitted). But because proximate causation is

20

a factual issue, it necessarily requires careful examination of the underlying circumstances. The time and place for that analysis is not now. While the Court has permitted defendants to raise a dispositive issue with respect to the civil RICO claim at this late juncture, that is because it represents a purely legal issue that can be resolved on the papers. Analyzing whether proximate causation can be adequately established is a factual issue deserving of fact-finding by a jury. Even now, defendants have not submitted any sort of Rule 56 Statement of Facts or admissible evidence in connection with their motion and the Court will not embark on its own *sua sponte* analysis of the record to resolve the issue. See <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Defendants do raise other purely legal arguments concerning plaintiff's fraud claim, which the Court can dispose of now. First, defendants assert that "loss of earnings" damages are wholly unrecoverable in a fraud claim, allegedly due to New York's "out of pocket" rule. This argument is unconvincing.

21

New York's "out-of-pocket" rule provides the "standard for measuring" the loss suffered due to fraud. 60A N.Y.Jur.2d Fraud and Deceit § 281. It limits recoverable damages to "the actual pecuniary loss sustained as the direct result of the wrong." Sw. Inv'rs Grp., LLC v. JH Portfolio Debt Equities, LLC, 93 N.Y.S.3d 775, 777 (4th Dep't 2019). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" — as a result, "there can be no recovery of profits which would have been realized in the absence of fraud." Lama Holding Co., 88 N.Y.2d at 421; see also Pine Street Assocs., L.P. v. Hicks, No. 651440-2011, 2012 WL 1946822, at *6 (N.Y. Sup. Ct. May 24, 2012) ("[F]raud damages are not intended to provide a victim with 'benefit of the bargain damages,' and are limited to indemnifying the injured party for the actual losses sustained, that is, 'out-of-pocket' damages."). The rule's rationale "is that the value to the claimant of a hypothetical lost bargain is too undeterminable and speculative to constitute a cognizable basis for damages." Starr Foundation v. Am. Int'l Grp., Inc., 901 N.Y.S.2d 246, 250 (1st Dep't 2010) (internal quotation marks and citation omitted).

Relying on this rule, New York courts have sometimes held that a fraud plaintiff cannot recover for the "the loss of an

22

alternative bargain overlooked in favor of the fraudulent one."
Geary v. Hunton & Williams, 684 N.Y.S.2d 207, 207 (1st Dep't 1999).
Thus, lost profits which "would have been realized in the absence
of fraud" are not recoverable, Lama Holding Co., 88 N.Y.2d at 421,
nor are earnings that might be realized in connection with
hypothetical future employment. See, e.g., Mihalakis v. Cabrini
Med. Ctr. (CMC), 542 N.Y.S.2d 988, 990 (1st Dep't 1989) (medical
student could not recover damages for "future earnings as a doctor"
via fraud claim).

But these cases have no application here. Plaintiff is not
seeking to obtain hypothetical lost earnings for an unrealized
opportunity he could have undertaken absent the fraud; he is asking
for damages to compensate for the actual job he already lost. In
other words, we are not dealing with a hypothetical alternative
bargain, but a realized, demonstrable loss of employment. See
Cayuga Harvester, 465 N.Y.S.2d at 619 (stating that a plaintiff
may not recover "profits based on the bargain it was fraudulently
induced to make," but may recover damages for the "loss sustained
because it made the bargain"). As numerous cases demonstrate,
fraud claims premised on actual job loss are viable under New York
law. See, e.g., Leidl v. Please Hold (UK) Ltd., No. 17-CV-6134,
2018 WL 1089748, at *5 (S.D.N.Y. Feb. 2, 2018) (where plaintiffs

23

were fraudulently induced to quit employment, they were "entitled
to any damages they actually suffered in the form of lost wages"
(emphasis added)); Kwon v. Yun, 606 F. Supp. 2d 344, 361 (S.D.N.Y.
2009) (collecting cases for the proposition that "loss of benefits
flowing from one's previous employment all are cognizable losses
in employment-related fraudulent inducement cases"); Laduzinski v.
Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229, 232 (1st Dep't 2015)
(where plaintiff alleged he was fraudulently induced to quit job
and accept new employment, concluding plaintiff had viable fraud
claim and damages based on "his loss of employment"); Navaretta v.
Grp. Health, 595 N.Y.S.2d 839, 841 (3d Dep't 1993) (plaintiff could
recover "for injuries resulting from her reliance on defendant's
allegedly false statements," including the "loss of benefits and
salary connected with her former employment" (emphasis omitted)).

   Of course, there is a separate question of how to calculate
the value of lost employment.  Because the fraud plaintiff would
no longer have the job, any inquiry into compensation for that
loss may entail "hypothetical" questions of what earnings the
plaintiff would have made, how long the plaintiff would have
worked, etc.  But such hypotheticals are not the target of the
out-of-pocket rule.  The case of Laduzinski v. Alvarez & Marsal
Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015) is directly on point.

There, a fraud plaintiff claimed he was induced to leave his former employment by the fraudulent misrepresentations of his new employer. Laduzinski, 16 N.Y.S.3d at 230-31. Citing the out-of-pocket rule, the defendants asserted that plaintiff could not recover "alleged loss of wages he claims he would have received from his prior [employer]." Brief for Defendants-Respondents, Laduzinski v. Alvarez & Marshal Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015), 2015 WL 9312574, at *38. The First Department rejected that argument, holding that plaintiff's damages were not "speculative" and represented "the sum necessary for restoration to the position occupied before the commission of the fraud." Laduzinski, 16 N.Y.S.3d at 232.

The Fourth Department articulated similar reasoning in Cayuga Harvester, where a fraud plaintiff lost a corn crop as a result of a fraudulent misrepresentation related to a defective machine. 465 N.Y.S.2d 606, 618 (4th Dep't 1983). It rejected the defendants' claim that the valuation of the lost crops must exclude any "element of profit." Id. at 619. Rather, the plaintiff was entitled to recover the "profits that [it] would normally receive from [the] corn crop if sold at market value as a return on its investment in labor, seed, fertilizer and other expenses in the

25

crop," since those profits and expenditures "were lost when the corn was destroyed." Id.

The distinction between unrealized future opportunities and actual lost employment makes sense in light of the overriding purpose of damages in the fraud context, which is "to restore a party to the position occupied before commission of the fraud." Alpert v. Shea Gould Climenko & Casey, 559 N.Y.S.2d 312, 314 (1st Dep't 1990). A party is entitled to recover not only the difference in value of a fraudulent bargain, but any and all "proximately caused damages." Carbon Capital Mgmt., LLC, 932 N.Y.S.2d at 494; see also Castle & Cooke v. Lincoln Mdse. Corp., 477 N.Y.S.2d 390, 390 (2d Dep't 1984) ("Out of Pocket considerations do not . . . prevent recovery of other consequential damages proximately caused by reliance upon the misrepresentation." (internal quotation marks and emphasis omitted)); Kaddo v. King Serv. Inc., 673 N.Y.S.2d 235, 237 (3d Dep't 1998) (distinguishing between "benefit of the bargain" damages, which are not recoverable in a fraud action, and "consequential damages flowing directly from the wrong," which are). It would be inconsistent with the fraud plaintiff's right to be fully indemnified for his losses to hold that lost earnings associated with actual job loss are never recoverable in a fraud

action.  Lama Holding Co., 88 N.Y.2d at 423.  Plus, it would conflict with those cases that unequivocally permit fraud plaintiffs to recover for personal injuries, which necessarily involve "pecuniary consequences" like "loss of earnings."  Doe, 958 F.2d at 770.  In short, New York law permits a fraud plaintiff to recover lost earnings resulting from actual job loss. Accordingly, the Court rejects defendants' first argument.

Next, defendants argue that one can only recover lost wages if "[the] alleged tort caused a loss of earning capacity."  Docket # 194 at 6.

Much like their prior argument, this argument was addressed by the First Department's decision in Laduzinski.  16 N.Y.S.3d at 232.  To reiterate, the Laduzinski plaintiff alleged he was fraudulently induced to quit his employment and accept a new job offer, but he was subsequently fired once his new employer secured his contact list.  Id. at 230-31.  The plaintiff did not allege any loss of earning capacity but stated that the fraud caused him to leave "his stable and well compensated employment . . . , which brought about a setback in his career."  Id. at 231.  The court rejected defendants' argument that such damages were unrecoverable and held that the plaintiff could obtain damages to compensate for his lost employment and "restor[e] [him] to the position [he]

27

occupied before the commission of the fraud." Id. at 232.  This
holding cannot be reconciled with defendants' assertion, and I
find the Laduzinski rationale both logical and persuasive.

Furthermore, the primary case on which defendants rely —
Clanton v. Agoglitta, 615 N.Y.S.2d 68 (2d Dep't 1994) — does not
stand for the broad proposition defendants ascribe to it.  Clanton
did not involve a fraud claim, but an automobile negligence action.
Clanton, 615 N.Y.S.2d at 68.  The issue before the Appellate
Division was whether a jury verdict "as to damages for impairment
of earning ability" deviated "materially from what would be
reasonable compensation" for purposes of N.Y. C.P.L.R. § 5501(c),
and the court noted that the "basic rule is that loss of earnings
must be established with reasonable certainty" and that the
analysis must focus "in part" on the plaintiff's "earning capacity
both before and after the accident." Id. at 69.  The court did
not purport to make any broad holding regarding the availability
of loss-of-earnings damages in a fraud action.

In sum, defendants have not persuaded the Court that
plaintiff's requested damages are precluded under New York law.[3]

---

[3] To the extent defendants are merely arguing that plaintiff failed to mitigate
his damages, the Court declines to address that issue.  Like the issue of
causation, that is a fact-sensitive question that would need to be resolved
through a thorough analysis of the record evidence, which cannot be undertaken

Because the Court has rejected defendants' arguments on the fraud claim, there is presently no reason why Dr. Zaporowski should be barred from testifying to the earnings and benefits plaintiff lost when he was terminated from his employment. Whether plaintiff can sufficiently connect those damages to defendants' fraud is an issue for the jury to decide at trial.

**Subject Matter Jurisdiction:** Because the Court informed the parties prior to the issuance of this Decision and Order that it intended to dismiss the civil RICO claim — the only remaining federal cause of action — it ordered supplemental briefing concerning the Court's continuing subject matter jurisdiction. The parties have filed their supplemental arguments, Docket ## 203-05, and they confirm to the Court that it continues to have subject matter jurisdiction over this matter.

First, diversity jurisdiction exists, insofar as plaintiff alleged damages exceeding $75,000 in good faith, Docket # 1; Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC, 124 F. Supp. 3d 237, 242 (E.D.N.Y. 2015), and the parties appear to agree there is complete diversity. Docket # 203 at 6; Docket # 204 at 2; see generally 28 U.S.C. § 1332. Second, even if it did not exist, the

---

summarily at this juncture. Defendants may, of course, raise this issue at trial.

Court would exercise its discretion to retain supplemental jurisdiction over the fraud claim under 28 U.S.C. § 1367. The relevant factors support the exercise of supplemental jurisdiction: this case has been pending for more than five years, it is ready for trial, there are no novel issues of state law, and it would be unfair to the parties to force them to restart the litigation in state court. See generally Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 86 (2d Cir. 2018).

Accordingly, the Court retains subject matter jurisdiction over this action.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART defendants' motion (Docket ## 194, 200). The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but defendants' motion is otherwise denied.

By separate order, the Court will set a status conference for the purpose of rescheduling the trial.

**SO ORDERED.**

_____

JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:    Rochester, New York
          September 14, 2021

30