# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**       **2. PLEASE TYPE OR PRINT**       **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| DOUGLAS J. HORN<br>     Plaintiff-Appellant<br><br>v.<br><br>MEDICAL MARIJUANA, INC.;<br>DIXIE HOLDINGS, LLC a/k/a DIXIE ELIXIRS,<br>RED DICE HOLDINGS, LLC., and<br>DIXIE BOTANICALS,<br>     Defendants-Appellees | W.D.N.Y. | Hon. Jonathan Feldman |
| | **Date the Order or Judgment Appealed from was Entered on the Docket:**<br>September 14, 2021 | **District Court Docket No.:**<br>1:15-CV-00701 |
| | **Date the Notice of Appeal was Filed:**<br>February 16, 2022 | **Is this a Cross Appeal?**<br>☐ Yes  ☑ No |

| **Attorney(s) for Appellant(s):**<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:<br><br>Jeffrey Benjamin, Esq.  5 Penn Plaza, 23rd Floor NY NY 10001 (212) 835-1532<br>The Linden Law Group, P.C.      (718) 425-0692 (Fax)<br>jbenjamin@nyfraudlaw.com |
|---|---|
| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:<br><br>Roy Mura, Esq.  Mura Law Group, 930 Rand Building, 14 Lafayette Square. Buffalo, NY<br>14203 (716) 855-2800 (716) 855-2816 (Fax) roy.mura@muralaw,com<br>J.C. Mazzola, Esq. Mazzola Lindstrom, LLP., 733 Third Ave., 15th Floor. NY NY 10017<br>(646) 250-6666 (646) 663-1895. jeanclaude@mazzolalindstrorn.com |

| Has Transcript Been Prepared?<br>N/A | Approx. Number of Transcript Pages:<br>N/A | Number of Exhibits Appended to Transcript:<br>N/A | Has this matter been before this Circuit previously?  ☐ Yes  ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:     Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party    ☑ Diversity | ☐ Final Decision    ☑ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b)) |
| ☐ Federal question (U.S. not a party)    ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION** (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ☑ Pre-trial <br> ☐ During trial <br> ☐ After trial | ☐ Default judgment <br> ☐ Dismissal/FRCP 12(b)(1) <br>　 lack of subject matter juris. <br> ☐ Dismissal/FRCP 12(b)(6) <br>　 failure to state a claim <br> ☐ Dismissal/28 U.S.C. § 1915(e)(2) <br>　 frivolous complaint <br> ☐ Dismissal/28 U.S.C. § 1915(e)(2) <br>　 other dismissal | ☐ Dismissal/other jurisdiction <br> ☐ Dismissal/merit <br> ☐ Judgment / Decision of the Court <br> ☑ Summary judgment <br> ☐ Declaratory judgment <br> ☐ Jury verdict <br> ☐ Judgment NOV <br> ☐ Directed verdict <br> ☐ Other (specify): | ☑ Damages: <br>　 ☑ Sought: $ trial <br>　 ☐ Granted: $ _____ <br>　 ☐ Denied: $ _____ <br><br> ☐ Injunctions: <br>　 ☐ Preliminary <br>　 ☐ Permanent <br>　 ☐ Denied |

**PART C: NATURE OF SUIT** (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| ☐ Antitrust <br> ☐ Bankruptcy <br> ☐ Banks/Banking <br> ☐ Civil Rights <br> ☐ Commerce <br> ☐ Energy <br> ☐ Commodities <br> ☑ Other (specify): RICO 18 USC 1962 | ☐ Communications <br> ☑ Consumer Protection <br> ☐ Copyright ☐ Patent <br> ☐ Trademark <br> ☐ Election <br> ☐ Soc. Security <br> ☐ Environmental | ☐ Freedom of Information Act <br> ☐ Immigration <br> ☐ Labor <br> ☐ OSHA <br> ☐ Securities <br> ☐ Tax | ☐ Admiralty/ <br>　 Maritime <br> ☐ Assault / <br>　 Defamation <br> ☐ FELA <br> ☐ Products Liability <br> ☐ Other (Specify): | ☐ Admiralty/ <br>　 Maritime <br> ☐ Arbitration <br> ☐ Commercial <br> ☐ Employment <br> ☐ Insurance <br> ☐ Negotiable <br>　 Instruments <br> ☐ Other Specify | ☐ Civil Rights <br> ☐ Habeas Corpus <br> ☐ Mandamus <br> ☐ Parole <br> ☐ Vacate Sentence <br> ☐ Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| ☐ Hague Int'l Child Custody Conv. <br> ☐ Forfeiture/Penalty <br> ☐ Real Property <br> ☐ Treaty (specify): _____ <br> ☐ Other (specify): _____ | ☐ Arbitration <br> ☐ Attorney Disqualification <br> ☐ Class Action <br> ☐ Counsel Fees <br> ☐ Shareholder Derivative <br> ☐ Transfer | ☐ Yes ☑ No <br><br> Will appeal raise a matter of first impression? <br><br> ☑ Yes ☐ No |

1. Is any matter relative to this appeal still pending below? ☑ Yes, specify: trial stayed　　　　☐ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

　(A)　Arises from substantially the same case or controversy as this appeal?　　☐ Yes　☑ No

　(B)　Involves an issue that is substantially similar or related to an issue in this appeal?　　☐ Yes　☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: March 7, 2022 | Signature of Counsel of Record: /s/ Jeffrey Benjamin |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

Docket #: 22-349

Short Title: Horn v. Medical Marijuana, Inc., et. Al.

**Addendum A**

Mr. Horn brought this case because he purchased, received from defendants in Colorado, and ingested their "Dixie X Elixir" tincture product in October, 2012; a product alleged to be a cannabis product and to have "no THC." Mr. Horn was proximately terminated from his employment as an over-the-road truck driver after a random drug screening came back positive for the presence of THC.

The complaint originally sought damages for *inter alia* RICO, 18 U.S.C. 1962(a)-(d) based upon i) violation of provisions of the federal Controlled Substances Act and i) mail and wire fraud. The complaint additionally sought remedy for violations of New York statutes for deceptive business practices and false advertising under General Business Law Art. 22-A, §349 and GBL §350.

By prior orders of the Hon. Frank Geraci on April 17, 2019 (Doc. #88), and then on November 22, 2019, (Doc. #124), the lower court summarily dismissed plaintiff's various causes of action, except for RICO based upon mail and wire fraud, and New York common law Fraud.

On the eve of trial in July, 2021, Defendants-Appellees made an additional motion for summary judgment as to the remaining claims under RICO based upon mail and wire fraud, and NY common law Fraud. The lower court, now by the Hon. Magistrate Judge Jonathan Feldman, summarily dismissed the remaining RICO cause of action for mail and wire fraud, sustaining only the common law fraud claim for trial. (Doc #206 of September 14, 2021).

The lower court subsequently granted Plaintiff's FRCP 54(b) motion on that order of dismissal, at Doc #217 certifying this sole RICO issue for appeal. The associated Interim Judgment is at Doc #218.

Annexed immediately hereto are the Notice of Appeal and current Docket Sheet, and the three (3) prior Decisions and Orders of summary judgment against the Plaintiff.

**Addendum B**

The appellate standard of review is *de novo* insofar as:

(i) The District Court incorrectly deemed facts that it used to justify its ruling dismissing the remaining RICO cause of action;

(ii) The District Court incorrectly granted the above-referenced portion of the Defendants' motion to for summary judgment contrary to established law;

(iii) In general, the District Court respectfully misapprehended the record as a whole, abused and/or failed to properly utilize its inherent discretion, and failed to properly apply the applicable law involving the facts and issues at bar.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Civil Action No. 15-cv-701

DOUGLAS J. HORN, et al.,

                   Plaintiff(s),

        -against-                     ***Notice of Appeal***

MEDICAL MARJUANA, INC., et al.,

                   Defendant(s).

_____

     NOTICE IS HEREBY GIVEN that DOUGLAS J. HORN, hereby appeal(s) to the United

States Court of Appeals for the Second Circuit from the Interim Judgment docketed on January

25, 2022 (ECF Document No. 218) and its underlying decision docketed on January 24, 2022

(ECF Document No. 218) in this action.

Dated: February 15, 2022

                                     Yours, etc.

                                     */s/ Jeffrey Benjamin*
                                     THE LINDEN LAW GROUP P.C.
                                     By: Jeffrey Benjamin, Esq.
                                     5 Penn Plaza, 23rd Floor
                                     New York, New York 10001
                                     (212) 655-9536
                                     jbenjamin@nyfraudlaw.com

*To all counsel via ECF*

APPEAL,CASREF,CONSENT,MEDIATION

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:15-cv-00701-JWF

| | |
|---|---|
| Horn, et al v. Medical Marijuana, Inc., et al | Date Filed: 08/06/2015 |
| Assigned to: Magistrate Judge Jonathan W. Feldman | Jury Demand: Plaintiff |
| Cause: 18:1962 Racketeering (RICO) Act | Nature of Suit: 470 Racketeer/Corrupt Organization |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Douglas J. Horn**                represented by        **Jeffrey M. Benjamin**
Kupillas Unger & Benjamin LLP
1 Linden Place
Suite 410-A
Great Neck, NY 11021
212-655-9536
Fax: 718-425-0692
Email: jbenjamin@nyfraudlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank T. Housh**
70 Niagara Street
Buffalo, NY 14202
716-362-1128
Fax: 716-362-1150
Email: frank@houshlaw.com
*TERMINATED: 06/26/2017*

**Plaintiff**

**Cindy Harp-Horn**               represented by        **Jeffrey M. Benjamin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank T. Housh**
(See above for address)
*TERMINATED: 06/26/2017*

V.

**Defendant**

**Medical Marijuana, Inc.**        represented by        **Roy A. Mura**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716-855-2800

Fax: 716-855-2816
Email: roy.mura@muralaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Solomon Gvertz**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716-855-2800
Fax: 716-855-2816
Email: daniel.gvertz@muralaw.com
*TERMINATED: 01/08/2021*

**Eric T. Boron**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716-855-2800
Email: eric.boron@muralaw.com
*TERMINATED: 05/16/2018*

**Scott David Mancuso**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716 855-2800
Fax: 716 855-2816
Email: scott.mancuso@muralaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dixie Holdings, LLC**            represented by   **Jean-Claude Mazzola**
*also known as*                                     Mazzola Lindstrom, LLP
Dixie Elixirs                                       1350 Avenue of the Americas
                                                    2nd Floor
                                                    New York, NY 10019
                                                    646-250-6666
                                                    Email: jeanclaude@mazzolalindstrom.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Wendy J. Lindstrom**
                                                    Messner Reeves LLP
                                                    805 Third Ave
                                                    18th Floor
                                                    New York, NY 10022
                                                    646-663-1853
                                                    Fax: 646-663-1895
                                                    Email: wlindstrom@messner.com
                                                    *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Hanoch Sheps**
Mazzola Lindstrom LLP
733 Third Avenue
15th Floor
New York, NY 10017
646-216-8126
Email: hanoch@mazzolalindstrom.com
*ATTORNEY TO BE NOTICED*

**Jean E. Smith-Gonnell**
Messner Reeves LLP
1430 Wynkoop Street
Suite 300
Denver, CO 80202
303-623-1800
Fax: 303-623-0552
Email: jgonnell@messner.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
Mazzola Lindstrom, LLP
1350 Avenue of the Americas
2nd Floor
New York, NY 10019
646-813-4345
Email: richardlerner@msn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Red Dice Holdings, LLC.**    represented by    **Roy A. Mura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Solomon Gvertz**
(See above for address)
*TERMINATED: 01/08/2021*

**Eric T. Boron**
(See above for address)
*TERMINATED: 05/16/2018*

**Scott David Mancuso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dixie Botanicals**

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 08/06/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0209-2334467.), filed by Douglas Horn, Cindy Harp-Horn. (Attachments: # 1 Exhibit Advertisement) (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| --- | --- | --- |
| 08/06/2015 | 2 | RICO STATEMENT by Cindy Harp-Horn, Douglas Horn. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 3 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 4 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 5 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/07/2015 | | E-Filing Notification: Attorney is directed to e-file a civil cover sheet using the continuation of exhibits event found under responses and replies re 1 COMPLAINT (Benjamin, Jeffrey) (SG) (Entered: 08/07/2015) |
| 08/07/2015 | 6 | CONTINUATION OF EXHIBITS by Cindy Harp-Horn, Douglas Horn. to 1 Complaint *Civil Action Sheet* filed by Cindy Harp-Horn, Douglas Horn. (Benjamin, Jeffrey) (Entered: 08/07/2015) |
| 08/11/2015 | | Case Assigned to Hon. Frank P. Geraci, Jr.. (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | 7 | Summons Issued as to Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: #(1) Summon II, #(2) Summon III.)(DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | E-Filing Notification: No summon submitted for Dixie Botanicals. (DLC) (Entered: 08/11/2015) |
| 09/25/2015 | 8 | STIPULATION *To Extend Time to Respond* by Dixie Elixirs and Edibles. (Lindstrom, Wendy) (Entered: 09/25/2015) |
| 09/29/2015 | | ATTENTION CORPORATION PLAINTIFFS/DEFENDANTS: All Corporate Disclosure Statements pursuant to Fed. R. Civ. P. 7.1 (b) are to be filed within seven (7) days of this notice. (KLH) (Entered: 09/29/2015) |
| 10/23/2015 | 9 | ANSWER to 1 Complaint by Dixie Elixirs and Edibles.(Lindstrom, Wendy) (Entered: 10/23/2015) |
| 10/23/2015 | 10 | Corporate Disclosure Statement by Dixie Elixirs and Edibles. (Lindstrom, Wendy) (Entered: 10/23/2015) |
| 02/19/2016 | 11 | ANSWER to 1 Complaint by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Certificate of Service)(Mura, Roy) (Entered: 02/19/2016) |
| 02/19/2016 | 12 | Corporate Disclosure Statement by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 02/19/2016) |
| 02/22/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download |

| | | |
|---|---|---|
| | | at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 02/22/2016) |
| 02/25/2016 | 13 | ORDER REFERRING CASE to Hon. Hugh B. Scott, United States Magistrate Judge, for all pretrial matters excluding dispositive motions. The parties are encouraged to consider consenting to jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Consent forms are available from the chambers of the Magistrate Judge or the office of the Clerk of the Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/25/2016. (MC) (Entered: 02/25/2016) |
| 02/25/2016 | 14 | ORDER TO SHOW CAUSE: Plaintiff is hereby Ordered to Show Cause, in writing and before March 4, 2016, why this case should not be dismissed as against Defendant Dixie Botanicals under Fed. R. Civ. P. 4(m) for failure to effect service within 120 days. Failure to comply with this Order will result in the dismissal of this action as against Dixie Botanicals. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/25/16. (SCE) (Entered: 02/25/2016) |
| 02/26/2016 | 15 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT OF THE ORDER**<br><br>This case has been referred to the undersigned for pretrial proceedings. A scheduling conference will be held on **4/13/2016 at 10:30 AM,** in the courtroom of the undersigned at 2 Niagara Square, Buffalo, New York.<br><br>PRIOR TO THE SCHEDULING CONFERENCE, THE PARTIES ARE DIRECTED TO COMPLY WITH THE REQUIREMENTS OF RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE. This means that, at a minimum,<br><br>(1) the parties are to have exchanged initial disclosures as required by Rule 26(a)(1);<br><br>(2) the parties are to have met or conferred as required under Rule 26(f); and<br><br>(3) the parties are to have filed a proposed discovery plan at least seven (7) days prior to the scheduling conference as also required by Rule 26(f).<br><br>Under 28 U.S.C. § 636(c), the Magistrate Judge is available to conduct any or all proceedings in this case, including a jury or non-jury trial and entry of final judgment. (*See also* Fed. R. Civ. P. 73.) The parties are encouraged to consider potential benefits of a Rule 73 consent; however, there will be no adverse consequences at all should the parties decline.<br><br>SO ORDERED. Issued by Hon. Hugh B. Scott on 2/26/2016. (GAI) (Entered: 02/26/2016) |
| 03/04/2016 | 16 | RESPONSE TO ORDER TO SHOW CAUSE by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/04/2016) |
| 03/08/2016 | 17 | AFFIDAVIT of Service for Summ & Comp, RICO, CACC served on Dixie Botanicals on March 1, 2016, filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/08/2016) |
| 04/01/2016 | | ***CALENDAR NOTICE: Due to the Court's calendar, the Scheduling Conference set for 4/13/2016 will be delayed to 02:00 PM that day. Issued by Hon. Hugh B. Scott on 4/1/2016. (GAI) (Entered: 04/01/2016) |
| 04/04/2016 | 18 | DISCOVERY PLAN by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 04/04/2016) |

| | | |
|---|---|---|
| 04/05/2016 | 19 | NOTICE of Appearance by Eric T. Boron on behalf of Medical Marijuana, Inc., Red Dice Holdings, LLC. (Boron, Eric) (Entered: 04/05/2016) |
| 04/13/2016 | 20 | Minute Entry for proceedings held before Hon. Hugh B. Scott: Scheduling Conference held on 4/13/2016.<br><br>Court will adjust deadlines to fit expert discovery within overall discovery deadline, but proposed timeframe is generally acceptable. Scheduling order will issue shortly.<br><br>APPEAR: Jeffrey M. Benjamin (Pltf) (by phone); Wendy J. Lindstrom (Deft Dixie Elixirs and Edibles) (by phone); Eric T. Boron (other defts). (Court Reporter FTR Gold.) (GAI) (Entered: 04/14/2016) |
| 04/14/2016 | 21 | SCHEDULING/CASE MANAGEMENT ORDER (Please Note: This docket text does not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>Discovery completed by 9/15/2017. Dispositive Motions due by 11/17/2017.<br><br>Signed by Hon. Hugh B. Scott on 4/14/2016. (GAI) (Entered: 04/14/2016) |
| 04/18/2016 | 22 | REQUEST FOR CLERK'S ENTRY OF DEFAULT against Dixie Botanicals by Douglas J. Horn, Cindy Harp-Horn.(Benjamin, Jeffrey) Modified on 8/5/2016 to correct title and terminate as a motion(SG). (Entered: 04/18/2016) |
| 05/18/2016 | 23 | Stipulation-Selection of Mediator by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 05/18/2016) |
| 08/03/2016 | 24 | NOTICE by Cindy Harp-Horn, Douglas J. Horn *Consent Order Granting Substitution of Attorney* (Housh, Frank) (Entered: 08/03/2016) |
| 08/03/2016 | 25 | NOTICE of Appearance by Frank T. Housh on behalf of All Plaintiffs (Housh, Frank) (Entered: 08/03/2016) |
| 08/04/2016 | 26 | -CLERK TO FOLLOW UP-<br><br>TEXT ORDER RE: 25 Notice of Appearance filed by Cindy Harp-Horn, Douglas J. Horn.<br><br>The Court recuses itself from this case and asks the Clerk of the Court to arrange for referral to another Magistrate Judge.<br><br>SO ORDERED. Issued by Hon. Hugh B. Scott on 8/4/2016. (GAI) (Entered: 08/04/2016) |
| 08/04/2016 | 27 | TEXT ORDER REFERRING CASE: In light of Judge Scott's recusal, this case is now referred to Hon. Michael J. Roemer, United States Magistrate Judge, for all pretrial matters excluding dispositive motions. The parties are encouraged to consider consenting to jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Consent forms are available from the chambers of the Magistrate Judge or the office of the Clerk of the Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/4/16.(SCE) (Entered: 08/04/2016) |
| 08/05/2016 | | E-Filing Notification: Incorrect event used to electronically file document. For future reference, use (Request for Clerk's Entry of Default) event. No action required. 22 REQUEST FOR CLERK'S ENTRY OF DEFAULT against Dixie Botanicals (SG) (Entered: 08/05/2016) |

| | | |
|---|---|---|
| 08/29/2016 | 28 | Clerk's ENTRY OF DEFAULT as to Dixie Botanicals (SG) (Entered: 08/29/2016) |
| 09/12/2016 | | SCHEDULING NOTICE. Status Conference set for 9/21/2016 11:00 AM before Hon. Michael J. Roemer. Local counsel shall appear in person. Out of town counsel for defendant Dixie Elixirs & Edibles may participate by teleconference and shall supply the Court with a telephone number as the Court will initiate the call. (RAZ) (Entered: 09/12/2016) |
| 09/19/2016 | | SCHEDULING NOTICE. Status Conference set for 9/21/2016 at 11:00 AM has been RESCHEDULED to 9/26/2016 02:30 PM before Hon. Michael J. Roemer. Out of town counsel for defendant Dixie Elixirs & Edibles may participate by teleconference and shall supply the Court with a telephone number as the Court will initiate the call. (RAZ) (Entered: 09/19/2016) |
| 09/26/2016 | 29 | Minute Entry for proceedings held before Hon. Michael J. Roemer: Status Conference held on 9/26/2016. Mr. Housh recently entered his appearance in place of Mr. Benjamin. Parties previously selected a mediator, however, no mediation has been conducted. Court to issue a new case management order. Parties to confer and submit joint proposed case management deadlines within one week. APPEARANCES: Frank Housh, Esq. for plaintiffs; Eric Boron, Esq. for defendants Medical Marijuana, Inc and Red Dice Holdings, LLC; Wendy Lindstrom, Esq. and Hanoch Sheps, Esq. (via telephone) for defendant Dixie Elixers and Edibles. (Court Reporter FTR Gold.) (JDK) (Entered: 09/26/2016) |
| 10/05/2016 | 30 | Proposed Pretrial Order *Amended Case Management Order* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Certificate of Service)(Housh, Frank) (Entered: 10/05/2016) |
| 10/07/2016 | 31 | CASE MANAGEMENT ORDER (Please Note: This docket text does not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>First Mediation Session due by 1/30/2017. Motions to Join Parties/Amend Pleadings due by 3/21/2017. Motions to Compel Discovery due by 5/1/2017. Discovery completed by 6/1/2017. Plaintiff Expert Witness ID due by 9/1/2017. Defendant Expert Witness ID due by 10/2/2017. Dispositive Motions due by 5/1/2018. Mediation To End by 5/1/2018. Signed by Hon. Michael J. Roemer on 10/7/2016. (RAZ) (Entered: 10/07/2016) |
| 12/13/2016 | 32 | NOTICE of Appearance by Hanoch Sheps on behalf of Dixie Elixirs and Edibles (Sheps, Hanoch) (Entered: 12/13/2016) |
| 12/14/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 12/14/2016) |
| 12/29/2016 | | SCHEDULING NOTICE. Discovery Hearing set for 1/9/2017 02:00 PM before Hon. Michael J. Roemer. (RAZ) (Entered: 12/29/2016) |
| 01/09/2017 | 33 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Discovery Hearing held on 1/9/2017. Pltf to respond to discovery demands by 1/22/2017. As requested by the parties, First Mediation Session due by 2/28/2017. Appearances: Frank T. Housh, Esq. on behalf of pltfs; Eric T. Boron, Esq. on behalf of defts Medical Marijuana, Inc., Red Dice Holdings, LLC; Hanoch Sheps, Esq. via teleconference on behalf of deft Dixie Elixirs and Edibles. (Court Reporter FTR Gold.) (RAZ) (Entered: 01/10/2017) |
| 02/14/2017 | 34 | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 02/14/2017) |

| | | |
|---|---|---|
| 05/15/2017 | 35 | MOTION to appear pro hac vice for Jean E. Smith-Gonnell ($150 fee paid; receipt number BUF055382) by Dixie Elixirs and Edibles. (Attachments: # 1 Sponsoring Affidavit, # 2 Petition, # 3 Attorney's Oath, # 4 Civility Oath, # 5 Attorney Database, # 6 CM/ECF Registration)(NRE) (Entered: 05/17/2017) |
| 05/17/2017 | | Verified admission to the Colorado State Bar for Attorney Jean E. Smith-Gonnell. (NRE) (Entered: 05/17/2017) |
| 05/19/2017 | 36 | TEXT ORDER granting 35 Motion for Jean E. Smith-Gonnell to appear pro hac vice on behalf of Dixie Elixirs and Edibles. SO ORDERED. Issued by Hon. Michael J. Roemer on 5/19/2017. (RAZ)<br><br>-CLERK TO FOLLOW UP- (Entered: 05/19/2017) |
| 06/21/2017 | 37 | MOTION to Substitute Attorney *Frank Housh, Esq.* by Cindy Harp-Horn, Douglas J. Horn.(Housh, Frank) (Entered: 06/21/2017) |
| 06/22/2017 | 38 | First MOTION for Extension of Time to Complete Discovery by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Affidavit Declaration of Counsel)(Benjamin, Jeffrey) (Entered: 06/22/2017) |
| 06/23/2017 | 39 | TEXT ORDER granting 37 Motion to Substitute Attorney. SO ORDERED. Issued by Hon. Michael J. Roemer on 6/23/2017. (RAZ)<br><br>-CLERK TO FOLLOW UP- (Entered: 06/23/2017) |
| 06/23/2017 | | SCHEDULING NOTICE as to 38 First Motion for Extension of Time to Complete Discovery . Responses due by 7/5/2017. Motion Hearing set for 7/10/2017 11:00 AM before Hon. Michael J. Roemer. (RAZ) (Entered: 06/23/2017) |
| 07/05/2017 | 40 | DECLARATION re 38 First MOTION for Extension of Time to Complete Discovery filed by Medical Marijuana, Inc. and Red Dice Holdings, Inc. . (Attachments: # 1 Memorandum of Law in Opposition to Plaintiffs' Motion for Extension of Deadline Dates in Case Management Order, # 2 Certificate of Service)(Boron, Eric) Modified on 7/6/2017 to add filer (SG). (Entered: 07/05/2017) |
| 07/06/2017 | | E-Filing Notification: Red Dice Holdings, Inc. added as filer re 40 DECLARATION re 38 First MOTION for Extension of Time to Complete Discovery (SG) (Entered: 07/06/2017) |
| 07/10/2017 | 41 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Motion Hearing held on 7/10/2017 re 38 First Motion for Extension of Time to Complete Discovery filed by Cindy Harp-Horn, Douglas J. Horn.<br><br>Court denied pltf's motion for reasons stated on the record. Parties to follow the current 31 Case Management Order. Appearances: No appearance on behalf of pltfs; Eric T. Boron, Esq. on behalf of defts Medical Marijuana, Inc., Red Dice Holdings, LLC; Wendy J. Lindstrom, Esq. on behalf of deft Dixie Elixirs and Edibles. (Court Reporter FTR Gold.) (RAZ) (Entered: 07/10/2017) |
| 07/13/2017 | 42 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 7/10/2017, before Judge Michael J. Roemer. Court Reporter/Transcriber Michelle McLaughlin, Telephone number 716-332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 8/3/2017. Redacted Transcript Deadline set for 8/14/2017. Release of Transcript Restriction set for 10/11/2017. (KM) (Entered: 07/13/2017) |
| 08/31/2017 | 43 | Mediation Certification by Michael Menard(AGB) (Main Document 43 replaced on |

| | | 10/26/2017) (AGB). (Entered: 08/31/2017) |
|---|---|---|
| 11/28/2017 | 44 | Mediation Certification by Michael Menard(AGB) (Entered: 11/28/2017) |
| 12/07/2017 | 45 | Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 12/07/2017) |
| 12/11/2017 | 46 | RESPONSE to Motion re 45 Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Boron, Eric) (Entered: 12/11/2017) |
| 12/11/2017 | | SCHEDULING NOTICE as to 45 Second Motion for Extension of Time to Complete Discovery *Letter of Counsel*. Oral Argument set for 12/18/2017 11:00 AM before Hon. Michael J. Roemer. (RAZ) (Entered: 12/11/2017) |
| 12/13/2017 | 47 | Second MOTION for Extension of Time to Complete Discovery *Plaintiffs' Reply* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Exhibit 10/19 Email, # 2 Exhibit 11/7 Email, # 3 Exhibit 11/15 Email)(Benjamin, Jeffrey) (Entered: 12/13/2017) |
| 12/14/2017 | 48 | RESPONSE to Motion re 45 Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/14/2017) |
| 12/18/2017 | 49 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Oral Argument re 45 Second Motion for Extension of Time to Complete Discovery held on 12/18/2017.<br><br>Court granted said motion and directed that the expert deposition be completed by the end of February 2018. Pltf shall turn over all outstanding discovery records to defts no later than 1/5/2018. Appearances: Jeffrey M. Benjamin, Esq. on behalf of pltfs via teleconference; Eric T. Boron, Esq. on behalf of deft Medical Marijuana and Red Dice Holdings; Hanoch Sheps, Esq. on behalf of deft Dixie Elixirs via teleconference. (Court Reporter FTR Gold.) (RAZ) (Entered: 12/18/2017) |
| 02/13/2018 | 50 | Mediation Certification by Michael Menard(AGB) (Entered: 02/13/2018) |
| 04/10/2018 | 51 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Boron, Eric) (Entered: 04/10/2018) |
| 04/11/2018 | 52 | TEXT ORDER: Defendants' motion for an extension of time is granted. Dispositive motions shall be filed on or before June 15, 2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by June 17, 2018 to schedule a trial date. Issued by Hon. Michael J. Roemer on April 11, 2018. (MLM) (Entered: 04/11/2018) |
| 06/07/2018 | 53 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Letter of Counsel*. (Mura, Roy) (Entered: 06/07/2018) |
| 06/08/2018 | 54 | TEXT ORDER re 53 Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. Defendants' request for an extension of time to file dispositive motion is granted. Dispositive motions shall be filed on or before 7/30/2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by 8/3/2018 to schedule a trial date. SO ORDERED. Issued by Hon. Michael J. Roemer on 6/8/2018. (RAZ) (Entered: 06/08/2018) |
| 06/25/2018 | 55 | NOTICE of Appearance by Hanoch Sheps on behalf of Dixie Elixirs and Edibles (Sheps, Hanoch) (Entered: 06/25/2018) |
| 06/25/2018 | 56 | NOTICE of Appearance by Jean-Claude Mazzola on behalf of Dixie Elixirs and Edibles |

| | | |
|---|---|---|
| | | (Mazzola, Jean-Claude) (Entered: 06/25/2018) |
| 06/28/2018 | 57 | Letter filed by Dixie Elixirs and Edibles as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Sheps, Hanoch) (Entered: 06/28/2018) |
| 07/06/2018 | 58 | TEXT ORDER re 57 Letter filed by Dixie Elixirs and Edibles. Defendants' request for an extension of time to file dispositive motions is granted. Dispositive motions shall be filed on or before 8/30/2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by 9/4/2018 to schedule a trial date. SO ORDERED. Issued by Hon. Michael J. Roemer on 7/6/2018. (RAZ) (Entered: 07/06/2018) |
| 08/08/2018 | 59 | Mediation Certification by Michael Menard(AGW) (Entered: 08/08/2018) |
| 08/30/2018 | 60 | MOTION for Summary Judgment *by Plaintiffs* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Statement of Undisputed Facts L.R. 56(a)(1), # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Affidavit Plaintiffs, # 7 Exhibit 1, # 8 Exhibit 2, # 9 Exhibit 3, # 10 Exhibit 4, # 11 Exhibit 5, # 12 Exhibit 6, # 13 Exhibit 7, # 14 Exhibit 8, # 15 Exhibit 9, # 16 Exhibit 10, # 17 Exhibit 11, # 18 Exhibit 12, # 19 Exhibit 13, # 20 Exhibit 14, # 21 Affidavit Expert, # 22 Exhibit I, # 23 Exhibit II, # 24 Exhibit III, # 25 Memorandum in Support)(Benjamin, Jeffrey) (Entered: 08/30/2018) |
| 08/30/2018 | 61 | MOTION for Summary Judgment *and/or for Judgment on the Pleadings* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Statement of Undisputed Facts, # 2 Declaration Declaration of Roy A. Mura, Esq., # 3 Exhibit Exhibit A to Declaration of Roy A. Mura -- Complaint, # 4 Exhibit Exhibit B to Declaration of Roy A. Mura -- Answer of MMI and RDH, # 5 Exhibit Exhibit C to Declaration of Roy A. Mura -- EBT of Douglas Horn, # 6 Exhibit Exhibit D to Declaration of Roy A. Mura -- EBT of Cindy Harp-Horn, # 7 Exhibit Exhibit E to Declaration of Roy A. Mura -- Fall 2012 High Times Medical Marijuana Magazine, # 8 Exhibit Exhibit F to Declaration of Roy A. Mura -- EBT of Dr. Cindy Orser, # 9 Exhibit Exhibit G to Declaration of Roy A. Mura -- Expert Report of Dr. Cindy Orser, # 10 Exhibit Exhibit H to Declaration of Roy A. Mura -- CannLabs Testing Certificates, # 11 Declaration Declaration of Stuart W. Titus, PhD, # 12 Declaration Declaration of Michelle L. Sides, Esq., # 13 Exhibit Exhibit A to Declaration of Michelle L. Sides, # 14 Memorandum in Support)(Mura, Roy) (Attachment 8 replaced on 12/29/2020) (CGJ). (Entered: 08/30/2018) |
| 08/30/2018 | 62 | MOTION for Summary Judgment by Dixie Elixirs and Edibles. (Attachments: # 1 Memorandum in Support, # 2 Affidavit, # 3 Affidavit, # 4 Statement of Undisputed Facts, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit)(Mazzola, Jean-Claude) (Entered: 08/30/2018) |
| 09/03/2018 | 63 | TEXT ORDER: On 8/30/18, all parties filed motions for summary judgment. Responses to these motions are due by 9/28/18, and replies may be filed by 10/12/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/18. (JO) (Entered: 09/03/2018) |
| 09/20/2018 | 64 | First MOTION for Extension of Time to File Response/Reply as to 63 Text Order *re Defts' Motions for Summ Judg* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 09/20/2018) |
| 09/21/2018 | 65 | TEXT ORDER GRANTING 64 Motion for Extension of Time to File Response/Reply. All responses are now due 11/2/18, and parties may reply by 11/16/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/21/18. (JO) (Entered: 09/21/2018) |
| 10/30/2018 | 66 | Second MOTION for Extension of Time to File Response/Reply as to 62 MOTION for Summary Judgment , 61 MOTION for Summary Judgment *and/or for Judgment on the* |

| | | *Pleadings Plaintiffs* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/30/2018) |
|---|---|---|
| 10/31/2018 | 67 | TEXT ORDER GRANTING 66 Second Motion for Extension of Time to File Response/Reply. All responses are now due November 16, 2018, and parties may reply by November 30, 2018. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/31/2018. (SFR) Modified on 10/31/2018 (SFR). (Entered: 10/31/2018) |
| 11/16/2018 | 68 | MOTION to Amend/Correct *Proposed First Amended Complaint* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Operating Agreement, # 3 Exhibit Proposed Amended Complaint)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 69 | RESPONSE in Opposition re 61 MOTION for Summary Judgment *and/or for Judgment on the Pleadings* filed by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Op Agr, # 3 Exhibit Dixie v. MMI, # 4 Exhibit SEC FIling, # 5 Exhibit Magazine, # 6 Exhibit First FAQ, # 7 Exhibit Second FAQ, # 8 Exhibit Invoice, # 9 Exhibit CRL Test, # 10 Exhibit Lab Test, # 11 Exhibit Email, # 12 Exhibit Cert of Analysis, # 13 Exhibit Bottle Label, # 14 Exhibit Launch, # 15 Exhibit Tamar Wise, # 16 Exhibit Deft Expert Dep, # 17 Exhibit Pltf Econ CV, # 18 Exhibit Expert Econ Report, # 19 Affidavit Plaintiffs' Affid, # 20 Affidavit Plaintiffs' Suppl Affid, # 21 Affidavit Affid Ellen Voie, # 22 Affidavit Affid Dr. Graham, # 23 Exhibit Graham CV, # 24 Exhibit Graham Report, # 25 Exhibit Graham Report 2, # 26 Memorandum in Support MOL - MMI)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 70 | RESPONSE in Opposition re 62 MOTION for Summary Judgment filed by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Magazine, # 3 Exhibit First FAQ, # 4 Exhibit Second FAQ, # 5 Exhibit Invoice, # 6 Exhibit CRL Test, # 7 Exhibit Lab Test, # 8 Exhibit Email, # 9 Exhibit Cert of Analysis, # 10 Exhibit Bottle Label, # 11 Exhibit Launch, # 12 Exhibit Tamar Wise, # 13 Exhibit Deft Expert Dep, # 14 Exhibit Pltf Expert CV, # 15 Exhibit Pltf Expert Econ Report, # 16 Affidavit Pltf Affidavit, # 17 Affidavit Pltf Suppl Affid, # 18 Affidavit Affid Ellen Voie, # 19 Affidavit Affid Dr Graham, # 20 Exhibit Graham CV, # 21 Exhibit Graham Report, # 22 Exhibit Graham Report 2, # 23 Memorandum in Support MOL Dixie)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 71 | MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* by Dixie Elixirs and Edibles.(Sheps, Hanoch) (Entered: 11/16/2018) |
| 11/16/2018 | 72 | MEMORANDUM OF LAW in Support of 71 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* by Dixie Elixirs and Edibles. (Attachments: # 1 Declaration JC Declaration, # 2 Exhibit Dr. Orser excerpts, # 3 Exhibit Doug Horn excerpts)(Sheps, Hanoch) Modified on 11/19/2018 to correct event and add correct link (NRE). (Entered: 11/16/2018) |
| 11/16/2018 | 73 | MEMORANDUM in Opposition re 60 MOTION for Summary Judgment *by Plaintiffs* filed by Dixie Elixirs and Edibles. (Attachments: # 1 Declaration JC Declaration, # 2 Exhibit Counterstatement of Facts)(Sheps, Hanoch) (Entered: 11/16/2018) |
| 11/16/2018 | 74 | First MOTION to Strike *Plaintiffs' Summary Judgment Evidence* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration Declaration of Daniel S. Gvertz, Esq., # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Memorandum in Support Memorandum in Support)(Gvertz, Daniel) (Entered: 11/16/2018) |
| 11/16/2018 | 75 | RESPONSE in Opposition re 60 MOTION for Summary Judgment *by Plaintiffs* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Exhibit Exhibit A, |

| | | |
|---|---|---|
| | | # 2 Memorandum in Support Memorandum in opposition, # 3 Statement of Undisputed Facts Response to plaintiffs' statement of facts)(Gvertz, Daniel) (Entered: 11/16/2018) |
| 11/17/2018 | 76 | TEXT SCHEDULING ORDER: On 11/16/18, the Court received three motions: two motions to strike by Defendants, ECF Nos. 71 , 72 , and 74 (the motions at ECF Nos. 71 and 72 are documents in support of a single motion to strike), and a motion to amend the Complaint by Plaintiffs, ECF No. 68 . Responses from the parties opposing these motions are due by 11/30/18, and the moving parties may reply by 12/7/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/17/18. (JO) (Entered: 11/17/2018) |
| 11/19/2018 | | E-Filing Notification: regarding 72 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* . Document filed improperly as a motion. Court terminated motion and modified docket text to correctly reflect filing event. No action required. (NRE) (Entered: 11/19/2018) |
| 11/27/2018 | 77 | First MOTION for Extension of Time to File Response/Reply as to 71 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* , 76 Text Order, 74 First MOTION to Strike *Plaintiffs' Summary Judgment Evidence and for Replies as to MSJs* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 11/27/2018) |
| 11/28/2018 | 78 | Mediation Certification by Michael Menard(AGW) (Entered: 11/28/2018) |
| 11/28/2018 | 79 | TEXT ORDER GRANTING Plaintiffs' unopposed 77 Motion for Extension of Time to File Response/Reply. Responses from the parties opposing motions at ECF Nos. 68 , 71 , and 74 are now due by 12/7/18, and the moving parties may reply by 12/14/18. Replies for the pending motions for summary judgment, ECF Nos. 60 , 61 , and 62 , are now also due by 12/7/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/28/18. Modified on 11/28/2018 to include new deadline for motions for summary judgment. (JO) (Entered: 11/28/2018) |
| 12/07/2018 | 80 | MEMORANDUM in Opposition re 72 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 81 | MEMORANDUM in Opposition re 74 First MOTION to Strike *Plaintiffs' Summary Judgment Evidence* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 82 | MEMORANDUM in Opposition re 68 MOTION to Amend/Correct *Proposed First Amended Complaint* filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/07/2018) |
| 12/07/2018 | 83 | REPLY to Response to Motion re 60 MOTION for Summary Judgment *by Plaintiffs Reply to Dixie Opposition* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 84 | REPLY to Response to Motion re 60 MOTION for Summary Judgment *by Plaintiffs Reply to MMI/RDH Opposition* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 85 | REPLY/RESPONSE to re 70 Response in Opposition to Motion,,, filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/07/2018) |
| 12/07/2018 | 86 | MEMORANDUM in Support re 61 MOTION for Summary Judgment *and/or for Judgment on the Pleadings* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Gvertz, Daniel) (Entered: 12/07/2018) |
| 12/07/2018 | 87 | RESPONSE in Opposition re 68 MOTION to Amend/Correct *Proposed First Amended Complaint* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 |

| | | Exhibit Scheduling Order)(Gvertz, Daniel) (Entered: 12/07/2018) |
|---|---|---|
| 04/17/2019 | 88 | DECISION AND ORDER: Plaintiffs' motion to amend 68 is GRANTED IN PART and DENIED IN PART. Defendants' motions to strike [71, 74] are DENIED. Plaintiffs' motion for partial summary judgment 60 is DENIED. Defendants' motions for summary judgment 61 62 are GRANTED IN PART and DENIED IN PART. As a result of these rulings, the only surviving claims are Douglas's claims for fraudulent inducement and civil RICO. All other claims against Defendants are dismissed. The Clerk of Court is directed to amend the name of Defendant "Dixie Elixirs and Edibles" to "Dixie Holdings, LLC a/k/a Dixie Elixirs." By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 4/17/2019. (MFM)<br><br>-CLERK TO FOLLOW UP- (Entered: 04/17/2019) |
| 04/19/2019 | 89 | TEXT ORDER Status Conference set for 5/16/2019 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 4/19/19. (PR) (Entered: 04/19/2019) |
| 04/25/2019 | 90 | Letter MOTION to change the Status Conference date filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Mazzola, Jean-Claude) Modified on 4/26/2019 to correct event(KLH). (Entered: 04/25/2019) |
| 04/26/2019 | | E-Filing Notification regarding 90 Letter: This document contains a request for relief and should be filed as a motion. No action required - Clerk corrected entry. (KLH) (Entered: 04/26/2019) |
| 05/02/2019 | 91 | TEXT ORDER granting defendant Dixie Elixirs's 90 Letter request to adjourn the 5/16 status conference. The case is adjourned to 6/20/2019 at 09:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. The parties shall notify the Court if they intend to mediate the case and wish to have the status conference rescheduled for a later date. IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 5/2/19. (PR) (Entered: 05/02/2019) |
| 05/16/2019 | 92 | NOTICE OF APPEAL as to 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,, by Cindy Harp-Horn, Douglas J. Horn. Filing fee $ 505, receipt number 0209-3454145. Appeal Record due by 9/13/2019. (Benjamin, Jeffrey) (Entered: 05/16/2019) |
| 06/17/2019 | 93 | First MOTION for Leave to Appear by Phone *for Conf 6/20/19* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 06/17/2019) |
| 06/18/2019 | 94 | TEXT ORDER granting 93 Motion for Leave to Appear by telephone. The Court will supply counsel in advance with the Court's conference center instructions. IT IS SO ORERED. Signed by Hon. Frank P. Geraci, Jr. on 6/18/19. (PR) (Entered: 06/18/2019) |
| 06/20/2019 | 95 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 6/20/2019. Plaintiff's filed 92 Interlocutory Appeal of 88 Decision and Order. Second Circuit argument scheduled next month. A further mediation session has been scheduled. Status Conference is scheduled for 8/15/2019 at 2:30 PM before Hon. Frank P. Geraci, Jr., to be held in US Courthouse, 2 Niagara Square, Buffalo, NY 14202. Counsel may appear by telephone. Appearances: For Pltf's - Jeffrey Benjamin, Esq., (by telephone); For Deft's - Roy Mura, Esq., (Medical Marijuana, Inc., Red Dice Holdings, LLC); Jean-Claude Mazzola, Esq., and Hanoch Sheps, Esq., (by telephone) (Dixie Holdings, LLC). (Court Reporter Christi Macri.) (JDK) (Entered: 06/21/2019) |
| 06/25/2019 | 96 | NOTICE of Appearance by Scott David Mancuso on behalf of Medical Marijuana, Inc., |

| | | Red Dice Holdings, LLC. (Mancuso, Scott) (Entered: 06/25/2019) |
|---|---|---|
| 07/17/2019 | 97 | MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration Declaration of Roy A. Mura, Esq., # 2 Declaration Declaration of Stuart W. Titus, PhD, # 3 Memorandum in Support Memorandum of Law in Support)(Mura, Roy) (Entered: 07/17/2019) |
| 07/18/2019 | 98 | TEXT SCHEDULING ORDER: On July 17, 2019, Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC filed a motion for reconsideration 97 . Plaintiffs and Defendant Dixie Holdings, LLC shall file responses by August 16, 2019, and the moving defendants shall file a reply within fifteen days of the responses. To the extent the parties intend to challenge the moving defendants' factual assertions, they must do so in the manner contemplated by Federal Rule of Civil Procedure 56(c)(1). In addition to the merits, the parties shall address whether this court has jurisdiction to consider the motion given the pending appeal. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 7/18/2019. (MFM) (Entered: 07/18/2019) |
| 08/06/2019 | | TEXT SCHEDULING ORDER: In light of the ongoing briefing of Defendants' motion 97 , the Court reschedules the Status Conference set for 8/15/2019 to a future date. Specifically, the Status Conference is now set for 9/20/2019 at 02:00 PM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/6/2019. (MFM) (Entered: 08/06/2019) |
| 08/07/2019 | 99 | DESIGNATION of Record on Appeal by Douglas J. Horn re 92 Notice of Appeal, CLERK TO FOLLOW UP (Benjamin, Jeffrey) (Entered: 08/07/2019) |
| 08/08/2019 | 100 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals. 99 Index to Record on Appeal. (KM) (Entered: 08/08/2019) |
| 08/08/2019 | 101 | TEXT ORDER: Consistent with the Court's prior order, counsel may appear by telephone at the 9/20/2019 status conference. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/8/2019. (MFM) (Entered: 08/08/2019) |
| 08/09/2019 | 102 | MOTION for Certificate of Appealability *by Plaintiffs* by Douglas J. Horn. (Attachments: # 1 Declaration of Plaintiff's Counsel, # 2 Exhibit A - Voie Affidavit, # 3 Exhibit B - Notice of Appeal)(Benjamin, Jeffrey) (Entered: 08/09/2019) |
| 08/12/2019 | 103 | TEXT SCHEDULING ORDER: On 8/9/2019, Plaintiffs filed a motion under FRCP 54(b) as to Cindy Horn's claims. Defendants shall file responses to the motion by 9/2/2019, and Plaintiffs may file a reply by 9/16/2019. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/12/2019. (MFM) (Entered: 08/12/2019) |
| 08/14/2019 | 104 | Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 08/14/2019) |
| 08/15/2019 | 105 | First MOTION for Extension of Time to File Response/Reply as to 98 Text Order,, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 08/15/2019) |
| 08/15/2019 | 106 | MEMORANDUM in Support re 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, filed by Dixie Holdings, LLC. (Mazzola, Jean-Claude) (Entered: 08/15/2019) |
| 08/16/2019 | 107 | TEXT ORDER granting 105 Plaintiffs' Motion for Extension of Time. Plaintiffs' response |

|  |  | to the Motion for Reconsideration is now due 9/13/2019, and the moving defendants may file a reply within 15 days thereafter. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/16/2019. (MFM) (Entered: 08/16/2019) |
|---|---|---|
| 08/30/2019 | 108 | MEMORANDUM in Opposition re 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 08/30/2019) |
| 09/02/2019 | 109 | MEMORANDUM in Opposition re 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs* filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 09/02/2019) |
| 09/03/2019 | 110 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *requesting leave to appear at 9/20/2019 status conference by telephone*. (Mura, Roy) (Entered: 09/03/2019) |
| 09/03/2019 |  | TEXT SCHEDULING ORDER: Because briefing on the pending motions remains ongoing, the status conference set for 9/20/19 is CANCELLED. Rather than rescheduling it at the present time, the Court will schedule a status conference once the pending motions are resolved. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/2019. (MFM) (Entered: 09/03/2019) |
| 09/03/2019 | 111 | TEXT ORDER: Defendants' letter request to appear by telephone 110 is DENIED AS MOOT. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/2019. (MFM) (Entered: 09/03/2019) |
| 09/13/2019 | 112 | Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *for Revision of Decision* by Douglas J. Horn. (Attachments: # 1 Affidavit Graham Affdiavit, # 2 Declaration Declaration of Counsel, # 3 Memorandum in Support MOL in Opp and Supp of Cross)(Benjamin, Jeffrey) (Entered: 09/13/2019) |
| 09/16/2019 | 113 | TEXT ORDER: On September 13, 2019, Plaintiffs filed an omnibus Opposition to Defendants' Motion for Reconsideration and Cross-Motion for Reconsideration 112 . Defendants may file a reply/response by 10/7/2019. No further briefing on the motions for reconsideration will be permitted without prior leave of court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/16/2019. (MFM) (Entered: 09/16/2019) |
| 09/16/2019 | 114 | DECLARATION re 109 Memorandum in Opposition to Motion, 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs*, 108 Memorandum in Opposition to Motion, filed by Douglas J. Horn *Omnibus Reply* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/16/2019) |
| 10/03/2019 | 115 | DECISION AND ORDER denying 102 104 Plaintiffs' Motions for Partial Judgment under Rule 54(b). SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/2/2019. (MFM) (Entered: 10/03/2019) |
| 10/07/2019 | 116 | MEMORANDUM in Opposition re 112 Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 10/07/2019) |
| 10/07/2019 | 117 | REPLY to Response to Motion re 112 Cross MOTION for Reconsideration re 106 |

| | | |
|---|---|---|
| | | Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, , 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *and Opposition to Plaintiffs' Cross Motion* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Memorandum in Support)(Mura, Roy) (Entered: 10/07/2019) |
| 10/17/2019 | 118 | MOTION for Extension of Time to File Response/Reply as to 117 Reply to Response to Motion,, 116 Memorandum in Opposition to Motion, *on Pltf's Cross-Motion FRCP 54(b)* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/17/2019) |
| 10/18/2019 | 119 | TEXT ORDER granting 118 Plaintiffs' Motion for Extension of Time. Plaintiffs may file their reply re: cross-motion for reconsideration by November 1, 2019. No further briefing is permitted absent prior leave of Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/18/2019. (MFM) (Entered: 10/18/2019) |
| 10/31/2019 | 120 | AFFIDAVIT in Support re 112 Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *Reply Affid on Pltf Cross-Motion* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 10/31/2019) |
| 11/01/2019 | 121 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *requesting leave to file sur-reply memorandum of law*. (Mura, Roy) (Entered: 11/01/2019) |
| 11/04/2019 | 122 | TEXT ORDER granting 121 Defendants MMI and RDH's Letter Request to File Response to Plaintiffs' Reply 120 . Defendants may file a response by 11/8/2019. No further briefing is permitted absent prior leave of Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/4/2019. (MFM) (Entered: 11/04/2019) |
| 11/08/2019 | 123 | MEMORANDUM in Support re 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *Sur-Reply Memorandum of Law in Further Support of Motion for Reconsideration* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 11/08/2019) |
| 11/22/2019 | 124 | DECISION AND ORDER: Defendants' motions for reconsideration 97 106 are GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for reconsideration 112 is DENIED. The Court's prior order is modified insofar as Douglas Horn may now proceed with his RICO claim only to the extent it is premised on predicate acts of wire and mail fraud. He may not proceed with his claim on the theory that Dixie X is a controlled substance. By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/21/2019. (MFM) (Entered: 11/22/2019) |
| 11/22/2019 | | TEXT SCHEDULING ORDER: Status Conference set for 12/13/2019 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. The parties may appear by phone. Prior to the hearing, the parties should contact chambers to receive instructions on how to call in to the hearing. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/22/2019. (MFM) (Entered: 11/22/2019) |
| 12/13/2019 | 125 | SCHEDULING ORDER: Final Pretrial Conference set for 9/3/2020 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. Jury Trial rescheduled for 10/19/2020 at 08:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. See Order for further details |

| | | |
|---|---|---|
| | | and deadlines regarding submissions. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 12/13/2019. (MFM) (Entered: 12/13/2019) |
| 12/13/2019 | 126 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 12/13/2019. The Court sets a trial date of 9/21/20 at 8:30 a.m. The Court will issue its pretrial order setting the pretrial conference date. By telephone: Jeffrey Benjamin, Esq.; Jean Claude Mazzola, Esq.; Hanoch Sheps, Esq.; Scott Mancuso, Esq. (Court Reporter Christi Macri.) (PR) (Entered: 12/16/2019) |
| 12/30/2019 | 127 | MANDATE of USCA as to 92 Notice of Appeal. It is hereby ordered that pursuant to Local Rule 31.2(a)(1)(A), Appellant's brief must be filed on or before October 22, 2019. The appeal will be dismissed effective October 22, 2019 if brief is not filed by the date. (KM) (Entered: 12/30/2019) |
| 08/18/2020 | 128 | TEXT ORDER: the parties' joint stipulation for an extension of the pretrial-order deadlines is GRANTED. The Final Pretrial Conference is now scheduled for 10/2/2020 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. All submission deadlines are adjourned to the same extent, except that the parties need not submit voir dire information and jury instructions until 30 days prior to the new trial date. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/18/2020. (MFM) (Entered: 08/18/2020) |
| 09/15/2020 | 129 | First MOTION to Vacate 124 Order on Motion for Reconsideration,,,,, *and in Limine* by Douglas J. Horn. (Attachments: # 1 Declaration Counsel Declaration, # 2 Supplement CSA Decision Tree, # 3 Exhibit Williams Case, # 4 Exhibit DEA Drug Code, # 5 Exhibit DOT Compliance Notice, # 6 Exhibit Subject Order, # 7 Exhibit Prior Order on MSJ, # 8 Affidavit Affidavit, # 9 Memorandum in Support MOL in Support)(Benjamin, Jeffrey) (Entered: 09/15/2020) |
| 09/15/2020 | 130 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Mura, Roy) (Entered: 09/15/2020) |
| 09/16/2020 | 131 | REPLY/RESPONSE to re 130 Letter *to Deft Letter of 9/15/20* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/16/2020) |
| 09/17/2020 | 132 | DECISION AND ORDER: Plaintiffs' Rule 60(b) motion (ECF No. 129 ) is DENIED. The pretrial conference will go forward as scheduled, and all associated deadlines remain in place. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/16/2020. (MFM) (Entered: 09/17/2020) |
| 09/17/2020 | 133 | Exhibit List by Douglas J. Horn.. (Benjamin, Jeffrey) (Main Document 133 replaced on 12/16/2020) (CGJ). (Entered: 09/17/2020) |
| 09/17/2020 | 134 | Witness List by Douglas J. Horn. (Benjamin, Jeffrey) (Main Document 134 replaced on 12/16/2020) (CGJ). (Entered: 09/17/2020) |
| 09/17/2020 | 135 | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Combined Pre-Trial Statement*. (Benjamin, Jeffrey) (Entered: 09/17/2020) |
| 09/18/2020 | 136 | PRETRIAL STATEMENT by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 09/18/2020) |
| 09/18/2020 | 137 | PRETRIAL STATEMENT by Dixie Botanicals and Dixie Elixirs and Edibles. (Attachments: # 1 Exhibit)(Mazzola, Jean-Claude) Modified on 9/21/2020 (TF). (Entered: 09/18/2020) |
| 09/21/2020 | | E-Filing Notification: RE 137 PRETRIAL STATEMENT, refiled amended/corrected |

| | | |
|---|---|---|
| | | Pretrial Statement as [138](#) Amended/Corrected Pretrial Statement. Modified entries on 9/21/2020 and 9/22/2020 (TF). (Entered: 09/21/2020) |
| 09/21/2020 | [138](#) | AMENDED/CORRECTED PRETRIAL STATEMENT by Dixie Holdings, LLC. (Attachments: # [1](#) Exhibit Pretrial Exhibits)(Sheps, Hanoch) Modified on 9/22/2020 (TF). (Entered: 09/21/2020) |
| 09/23/2020 | [139](#) | MOTION for Leave to Appear Video *or Phone for PT Conf* by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/23/2020) |
| 09/23/2020 | 140 | TEXT ORDER granting Plaintiff's request for leave to appear by phone or video. The Court will prepare a Zoom videoconference for the pretrial conference. All of the parties are free to attend the pretrial conference in person or by video. Chambers will send instructions via email prior to the pretrial conference. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/23/2020. (MFM) (Entered: 09/23/2020) |
| 09/25/2020 | [141](#) | First MOTION in Limine by Dixie Holdings, LLC. (Attachments: # [1](#) Declaration of Jean-Claude Mazzola, # [2](#) Exhibit Dixie Request for Production, # [3](#) Exhibit Graham Depo Excerpts, # [4](#) Exhibit Declaration of Dr. Cindy Orser, # [5](#) Memorandum in Support) (Sheps, Hanoch) (Entered: 09/25/2020) |
| 09/25/2020 | [142](#) | MOTION in Limine by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # [1](#) Declaration, # [2](#) Exhibit A, # [3](#) Exhibit B, # [4](#) Exhibit C, # [5](#) Memorandum in Support)(Mura, Roy) (Entered: 09/25/2020) |
| 09/29/2020 | [143](#) | First MOTION for Extension of Time to File Response/Reply as to [141](#) First MOTION in Limine , [142](#) MOTION in Limine *of Defendants* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 09/29/2020) |
| 09/29/2020 | [144](#) | RESPONSE to Motion re [143](#) First MOTION for Extension of Time to File Response/Reply as to [141](#) First MOTION in Limine , [142](#) MOTION in Limine *of Defendants* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 09/29/2020) |
| 09/30/2020 | 145 | TEXT ORDER: Plaintiffs request an extension of time - to October 23, 2020 - to respond to Defendants' motions in limine. ECF No. [143](#) . Defendants, in turn, ask that they be given an opportunity to reply if Plaintiffs' request is granted, and they also argue that the final pretrial conference should be rescheduled in light of the briefing.<br><br>Plaintiffs' request for an extension of time is GRANTED, in that they may respond to the motions in limine by October 23, 2020. Likewise, all of the defendants may file replies by November 30, 2020. The Court will then take the motions under advisement.<br><br>Nevertheless, the Court will not reschedule the final pretrial conference. The primary purpose of the pretrial conference is to determine the date, length, and schedule for the trial. Defendants' motions in limine may alter the extent of the evidence and therefore change the length of the trial, but the Court is confident the parties will be able to select a trial date and reasonably estimate the length of the trial in either scenario. Moreover, insofar as the Court will allow the parties to fully brief the issues presented in the motions in limine, it will not be necessary to conduct oral argument on the motions at the conference.<br><br>SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/30/2020. (MFM) (Entered: 09/30/2020) |
| 10/02/2020 | 146 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Appearances via Zoomgov.com: Jeffrey Benjamin, Esq./pl.; Roy Mura, Esq/def Medical Marijuana and |

| | | |
|---|---|---|
| | | Red Dice Holdings LLC; Jean-Claude Mazzola, Esq./def. Dixie Holdings, LLC; Hanoch Sheps, Esq./Dixie Holdings, LLC. Matter on for Final Pretrial Conference. Final Pretrial Conference not held. Trial Date Status Conference held on 10/2/2020. Jury Trial reset from 10/19/2020 to 5/10/2021 in 2 Niagara Square, Buffalo, NY 14202 before Hon. Frank P. Geraci, Jr. A new pretrial order will be issued with the new trial date. (Court Reporter Christi Macri.) (LMD) (Entered: 10/02/2020) |
| 10/05/2020 | 147 | AMENDED PRETRIAL ORDER: The Final Pretrial Conference is now set for 4/2/2021 at 03:00 PM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. The conference will be conducted by Zoom videoconference, and all parties are to appear by videoconference. The Jury Trial is set to begin on 5/10/2021 at 08:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350.

As discussed at the pretrial conference held on 10/2/2020, it may be possible to reschedule the trial for an earlier date if the parties consent to magistrate judge jurisdiction. The Court will notify the parties in the coming weeks if this option will be available, and, if so, the parties are encouraged to consider it. In addition, given the lengthy period before trial, the parties are encouraged to reconnect with the mediator and continue settlement discussions.

See Order for further details and deadlines. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/5/2020. (MFM) (Entered: 10/05/2020) |
| 10/06/2020 | 148 | First MOTION to Adjourn Trial by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/06/2020) |
| 10/06/2020 | 149 | RESPONSE in Opposition re 148 First MOTION to Adjourn Trial filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 10/06/2020) |
| 10/07/2020 | 150 | TEXT ORDER resolving 148 Plaintiffs' Motion to Adjourn. The parties shall meet and confer to determine mutually agreeable dates to schedule the trial, except that the trial will not be scheduled beyond August 2021. Once the parties have decided on such dates, they shall file a **joint** report identifying any mutually agreeable dates. At that time, the Court will determine whether and when to adjourn the trial. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/7/2020. (MFM) (Entered: 10/07/2020) |
| 10/23/2020 | 151 | DECLARATION re 141 First MOTION in Limine , 142 MOTION in Limine filed by Douglas J. Horn *Plaintiff's Opposition* filed by Douglas J. Horn. (Attachments: # 1 Affidavit Plaintiff's Affidavit, # 2 Affidavit Wayback Affidavit, # 3 Affidavit Berryhill Affidavit, # 4 Affidavit Graham Affidavit, # 5 Affidavit WMSL Affidavit, # 6 Memorandum in Support Memo of Law in Opp)(Benjamin, Jeffrey) (Entered: 10/23/2020) |
| 11/25/2020 | 152 | First MOTION for Extension of Time to File Response/Reply as to 141 First MOTION in Limine by Dixie Holdings, LLC.(Sheps, Hanoch) (Entered: 11/25/2020) |
| 11/25/2020 | 153 | TEXT ORDER granting 152 First MOTION for Extension of Time. Defendant Dixie Elixirs may file a reply by 12/14/2020. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/25/2020. (MFM) (Entered: 11/25/2020) |
| 12/14/2020 | 154 | REPLY/RESPONSE to re 144 Response to Motion, 142 MOTION in Limine filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 12/14/2020) |
| 12/14/2020 | 155 | First MOTION for Leave to File *Sur-Reply* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 12/14/2020) |
| 12/14/2020 | 156 | REPLY to Response to Motion re 141 First MOTION in Limine filed by Dixie Holdings, LLC. (Attachments: # 1 Declaration of Jean-Claude Mazzola)(Sheps, Hanoch) (Entered: |

| | | |
|---|---|---|
| | | 12/14/2020) |
| 12/15/2020 | 157 | TEXT ORDER resolving 155 Motion for Relief filed by Plaintiffs. |
| | | The Court grants Plaintiffs' request to file a sur-reply. The sur-reply is due by 1/15/2021. |
| | | Plaintiffs also seek further guidance on trial/mediation. The Court concludes that a short status conference on trial/mediation is appropriate. The status conference is set for 1/22/2021 01:30 PM in US Courthouse, 100 State Street, Rochester NY 14614. The conference will be conducted by Zoom videoconference, and all parties are to appear by videoconference. Instructions will be sent to counsel prior to the conference. If the public wishes to participate (by telephone only), the particulars can be obtained by contacting chambers at 585-613-4090. |
| | | In order to ensure that there will be no scheduling conflicts, and consistent with the Court's prior order (ECF No. 150), **the parties are hereby ordered to meet and confer regarding possible trial dates no later than one week before the status conference.** |
| | | SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 12/15/2020. (MFM) (Entered: 12/15/2020) |
| 12/15/2020 | | Set/Reset Hearings: Status Conference set for 1/22/2021 01:30 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. via Zoom. (MFM) (Entered: 12/15/2020) |
| 12/15/2020 | 158 | NOTICE of Appearance by Richard E. Lerner on behalf of Dixie Holdings, LLC (Lerner, Richard) (Entered: 12/15/2020) |
| 01/15/2021 | 159 | REPLY/RESPONSE to re 154 Reply/Response, 156 Reply to Response to Motion *Combined Sur-Reply of Plaintiff* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Exh 1 - Google Response)(Benjamin, Jeffrey) (Entered: 01/15/2021) |
| 01/22/2021 | 160 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 1/22/2021. The Court may be required to move the present trial date to October and requests that the parties discuss consenting to try the case before a magistrate judge if they want a trial sooner than October. The Court sets a further Status Conference on 2/5/2021 03:00 PM before Hon. Frank P. Geraci, Jr. Jeffrey Benjamin, Esq., Roy Mura, Esq.; Jean Claude Mazzola, Esq.; Hanoch Sheps, Esq., by Zoom (Court Reporter Christi Macri.) (PR) (Entered: 01/24/2021) |
| 01/26/2021 | 161 | TEXT ORDER: On January 24, 2021, the Court received a letter from MMI and RDH, indicating that Attorney Daniel Gvertz no longer practices at counsel's firm and does not represent those defendants. Accordingly, the Clerk of Court is directed to terminate Attorney Gvertz's appearance. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 1/26/2021. (MFM)-CLERK TO FOLLOW UP- (Entered: 01/26/2021) |
| 02/03/2021 | 162 | TEXT ORDER: The parties have notified the Court that they intend to consent to magistrate-judge jurisdiction before Judge Feldman. In accordance with Local Rule 73, the parties are directed to submit the required paperwork to the Clerk of Court by February 5, 2021, after which Judge Feldman will set a status conference. The status conference scheduled for February 5, 2021 before this Court is CANCELLED. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/3/2021. (MFM) (Entered: 02/03/2021) |
| 02/04/2021 | 163 | Disregard as filed in Error - STIPULATION *to Magistrate Judge* by Dixie Holdings, LLC. (Sheps, Hanoch) Modified on 2/5/2021 (TF). (Entered: 02/04/2021) |

| 02/04/2021 | 164 | TEXT ORDER REFERRING CASE to Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B). IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/4/2021. (MFM) (Entered: 02/04/2021) |
| --- | --- | --- |
| 02/04/2021 | [165] | CONSENT to Jurisdiction by US Magistrate Judge by Dixie Botanicals, Dixie Holdings, LLC, Cindy Harp-Horn, Douglas J. Horn, Medical Marijuana, Inc., Red Dice Holdings, LLC. Case reassigned to Magistrate Judge Jonathan W. Feldman. Signed by Hon. Frank P. Geraci, Jr. on 2/4/2021. (CGJ) (Entered: 02/04/2021) |
| 02/05/2021 | | E-Filing Notification: 163 STIPULATION to Magistrate Judge, should not be efiled, document removed, No action required. (TF) (Entered: 02/05/2021) |
| 02/08/2021 | 166 | TEXT ORDER: The Court would like to hold a virtual status conference on Tuesday February 16, 2021 at 11:00 a.m. The Court requests that lead counsel be present and prepared to discuss the following: <br><br> 1. Scheduling oral argument on the pending motions in limine. <br><br> 2. Establishing a day certain trial date. <br><br> 3. Scheduling a Final Pretrial Conference. <br><br> 4. Status report on any settlement efforts engaged in by the parties. <br><br> The Court requests that any communication with the Court be conducted through or facilitated by Matthew Meyers, Esq., the law clerk who will be assisting this Court in the trial management of this case. Status Conference set for 2/16/2021 11:00 AM before Magistrate Judge Jonathan W. Feldman via Zoom for Government. Parties will be emailed the Zoom for Government link for this conference. Signed by Magistrate Judge Jonathan W. Feldman on 2/8/2021. (LMD) (Entered: 02/08/2021) |
| 02/10/2021 | 167 | TEXT ORDER. The Status Conference set for 2/16/2021 is reset to 2/11/2021 03:00 PM before Magistrate Judge Jonathan W. Feldman. The Parties will receive a cancellation of the 2/16/2021 Zoom for Government invite and new invite for 2/11/2021 at 3:00 PM. The conference is to discuss the issues as mentioned in the 166 Text Order. Signed by Magistrate Judge Jonathan W. Feldman on 2/10/2021. (LMD) (Entered: 02/10/2021) |
| 02/11/2021 | 168 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Status Conference held via zoomgov.com on 2/11/2021. Appearances via video conference: Jeffrey Benjamin, Esq./plaintiffs; Roy Mura, Esq. for Def. Medical Marijuana, Inc.; Jean Claude-Mazzola, Esq. for Def. Dixie Holdings and Hanoch Sheps, Esq. for Def. Dixie Holdings and Hon. Jonathan w. Feldman. Jury trial date set for 7/26/2021 for 2 weeks at 2 Niagara Square, Buffalo, NY 14202 for 2 weeks. Final Pretrial Conference set for 6/29/2021 at 10 AM at 100 State Street, Rochester, NY 14614. Motion Hearing re: Motions in Limine set for 3/4/2021 10:00 AM via Zoomgov.com before Magistrate Judge Jonathan W. Feldman. Pretrial Order to be issued. Zoom invites will be sent for the argument on the in limine motions. (Court Reporter Zoomgov.com recording.) (LMD) (Entered: 02/12/2021) |
| 03/04/2021 | 169 | TEXT ORDER: The supplemental briefing as ordered by the Court at the March 4, 2021 hearing is due by **March 18, 2021**. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 3/4/2021. (MFM) (Entered: 03/04/2021) |
| 03/04/2021 | 170 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for government: Jeffrey Benjamin, Esq./plaintiff; Roy Mura, Esq. for Medical Marijuana, Inc. and Red Dice Holdings; Scott Mancuso, Esq./Medical Marijuana Inc. and Red Dice Holdings; Jean Claude Mazzola, Esq./Dixie Defendants; |

| | | Hanoch Sheps, Esq./Dixie Defendants: Motion Hearing held on 3/4/2021 re [141] First MOTION in Limine filed by Dixie Holdings, LLC, [142] MOTION in Limine filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. Court Reserves decision and supplemental letter briefs due 3/18/2021. (Court Reporter Zoom for Government Recording.) (LMD) (Entered: 03/10/2021) |
|---|---|---|
| 03/18/2021 | [171] | Letter filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Supplemental Letter Brief*. (Sheps, Hanoch) (Entered: 03/18/2021) |
| 03/18/2021 | [172] | RESPONSE in Opposition re [141] First MOTION in Limine , [142] MOTION in Limine *Supplemental Letter Brief* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/18/2021) |
| 03/18/2021 | [173] | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Supplemental Letter Brief in Further Support of Defendants' Motion in Limine*. (Mura, Roy) (Entered: 03/18/2021) |
| 04/29/2021 | [174] | **FINAL PRETRIAL ORDER & DECISION AND ORDER granting in part and denying in part Defendants' Motions in Limine**.<br><br>For the reasons stated herein, the Court grants in part and denies in part Defendants' motions in limine. Docket ## 141, 142. In addition, this Order contains the Court's Final Pretrial Order, which sets forth the relevant dates, deadlines, and responsibilities of the parties related to the upcoming jury trial. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 4/29/2021. (MFM) (Entered: 04/29/2021) |
| 05/13/2021 | | SCHEDULING ORDER *TIME CHANGE ONLY*: The Final Pretrial Conference is now set for 6/29/2021 at **1:30 PM** in US Courthouse, 100 State Street, Rochester NY 14614 before Magistrate Judge Jonathan W. Feldman. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 5/13/2021. (MFM) (Entered: 05/13/2021) |
| 06/15/2021 | 175 | TEXT ORDER: The parties have contacted chambers, jointly requesting a brief extension to the June 15, 2021 deadline for the submission of pretrial materials. That request is GRANTED, and all such materials are now due by June 18, 2021 at 5:00 p.m. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 6/15/2021. (MFM) (Entered: 06/15/2021) |
| 06/18/2021 | [176] | Proposed Voir Dire by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 06/18/2021) |
| 06/18/2021 | [177] | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Pre-Trial Stmt*. (Benjamin, Jeffrey) (Entered: 06/18/2021) |
| 06/18/2021 | [178] | Proposed Voir Dire by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 06/18/2021) |
| 06/28/2021 | [179] | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Pltf Amended PT Stmt*. (Benjamin, Jeffrey) (Entered: 06/28/2021) |
| 06/29/2021 | 180 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances in person: Jeffrey Benjamin, Esq. and Frank Housh, Esq./plaintiffs, Roy Mura, Esq. and Scott David Manucso for Def. Medical Marijuana, Inc. and Def. Red Dice Holdings LLC, Richard Lerner, Esq., Jean-Claude Mazzola, Esq. and Hanoch Sheps, Esq. for Def. Dixie Holdings. Final Pretrial Conference held on 6/29/2021. (LMD) Modified on 6/30/2021 (LMD). (Entered: 06/30/2021) |

| | | |
|---|---|---|
| 06/30/2021 | | E-Filing Notification: The following minute entry was modified to correct the appearances: 180 Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances in person: Jeffrey Benjamin, Esq. and Frank Housh, Esq./plaintiffs, Roy Mura, Esq. and Scott David Manucso for Def. Medical Marijuana, Inc. and Def. Red Dice Holdings LLC, Richard Lerner, Esq., Jean-Claude Mazzola, Esq. and Hanoch Sheps, Esq. for Def. Dixie Holdings. Final Pretrial Conference held on 6/29/2021. (LMD) Modified on 6/30/2021 (LMD). (LMD) (Entered: 06/30/2021) |
| 07/05/2021 | 181 | MOTION Trial Testimony by Video *of Party Officers* by Douglas J. Horn. (Attachments: # 1 Declaration Decl of Pltf Counsel, # 2 Exhibit A - Subp Keber, # 3 Exhibit B - Subp Smith, # 4 Exhibit C - Subp Sides, # 5 Exhibit D - Affidavit of Smith, # 6 Exhibit E - Affidavit of Sides)(Benjamin, Jeffrey) (Entered: 07/05/2021) |
| 07/06/2021 | 182 | TEXT ORDER: Plaintiff has filed a Motion for Trial Testimony by Video and Service of Subpoenas by Other Means. Docket # 181 . Expedited briefing is required due to the upcoming trial date. Therefore, responses are due by 5:00 p.m. on July 12, 2021. Reply papers are due by 5:00 p.m. on July 13, 2021. Oral Argument is set for July 14, 2021 at 11:00 AM in Courtroom 2 before Magistrate Judge Jonathan W. Feldman. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/6/21. (BJJ) (Entered: 07/06/2021) |
| 07/08/2021 | 183 | MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration of Roy A. Mura, Esq. in Support of Motion to Quash Subpoena, # 2 Exhibit A to Declaration of Roy A. Mura, Esq.)(Mura, Roy) (Entered: 07/08/2021) |
| 07/09/2021 | 184 | TEXT ORDER: Defendants have filed a Motion to Quash Plaintiff's Subpoena of Michelle Sides, Esq. Docket # 183 . Expedited briefing is required due to the upcoming trial date. Therefore, Plaintiff's response is due by 5:00 p.m. on July 13, 2021. Oral Argument for this Motion and the Motion for Trial Testimony and Subpoenas, Docket # 181 , is set for July 14, 2021 at 11:00 AM in Courtroom 2 before Magistrate Judge Jonathan W. Feldman.<br><br>If any party wishes to appear at the oral argument by Zoom, it shall request the Zoom link by emailing feldman@nywd.uscourts.gov no later than Monday, July 12, 2021 at noon.<br><br>SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/9/21. (BJJ) (Entered: 07/09/2021) |
| 07/12/2021 | 185 | TEXT ORDER re 184 : Oral Argument on motions rescheduled for 7/14/2021 03:00 PM before Magistrate Judge Jonathan W. Feldman. The Zoom link has been sent to the parties. Note the time change only. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/12/21. (BJJ) (Entered: 07/12/2021) |
| 07/12/2021 | 186 | RESPONSE to Motion re 181 MOTION Trial Testimony by Video *of Party Officers* filed by Dixie Holdings, LLC. (Attachments: # 1 Exhibit Dixie Rule 26)(Sheps, Hanoch) (Entered: 07/12/2021) |
| 07/12/2021 | 187 | OBJECTIONS filed by Defendant Dixie Holdings, LLC.. (Sheps, Hanoch) (Entered: 07/12/2021) |
| 07/12/2021 | 188 | OBJECTIONS *to Plaintiff's Proposed Substantive Jury Instructions* filed by Defendants Medical Marijuana, Inc., Red Dice Holdings, LLC... (Mura, Roy) (Entered: 07/12/2021) |
| 07/13/2021 | 189 | LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021. (Attachments: # 1 Rosenberg Affidavit) (MFM) (Entered: 07/13/2021) |
| 07/13/2021 | 190 | DECLARATION re 183 MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.*, |

| | | |
|---|---|---|
| | | 181 MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn *In Opp and Reply* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Keber POS, # 2 Exhibit Sides POS, # 3 Exhibit Keber POS2, # 4 Exhibit Smith POS)(Benjamin, Jeffrey) (Entered: 07/13/2021) |
| 07/14/2021 | 191 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings LLC. Motion Hearing held on 7/14/2021 re 189 LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021, re 183 MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC., 181 MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn. Judge Feldman resolved the parties' motions as stated on the record. (Court Reporter Diane Martens.) (LMD) Modified on 7/15/2021 (LMD). (Entered: 07/15/2021) |
| 07/15/2021 | | E-Filing Notification: The following entry was modified to include the letter motion 189 in the entry. 191 Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings LLC. Motion Hearing held on 7/14/2021 re 189 LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021, re 183 MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC., 181 MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn. Judge Feldman resolved the parties' motions as stated on the record. (Court Reporter Diane Martens.) (LMD) Modified on 7/15/2021 (LMD). (Entered: 07/15/2021) |
| 07/20/2021 | 192 | TEXT ORDER: Counsel for the three defendants have notified the Court that they will stipulate that the August 23, 2012 audio recording of Mr. Keber meets the authentication requirements of authenticating the exhibit under Federal Rule of Evidence 901. Accordingly, the recording will be deemed to satisfy the requirement of authentication without additional proof by plaintiff. Defendants' Stipulation as to authentication is without prejudice to all other evidentiary objections, including relevance. In light of the stipulation, the Court agrees with defendants that the telephonic deposition of Mr. Keber is no longer necessary, and the Court's previous oral ruling is hereby VACATED in that respect. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/20/2021. (MFM) (Entered: 07/20/2021) |
| 07/22/2021 | 193 | Proposed Jury Instructions submitted by Cindy Harp-Horn, Douglas J. Horn at the final pretrial conference.(MFM) (Entered: 07/22/2021) |
| 07/22/2021 | 194 | MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* by Dixie Holdings, LLC. (Attachments: # 1 Exhibit Plaintiffs Final Pre-Trial Order Compliance) (Sheps, Hanoch) (Entered: 07/22/2021) |
| 07/23/2021 | 195 | TEXT SCHEDULING ORDER: As discussed at today's hearing, Plaintiffs may respond to Dixie Holdings, LLC's motion in limine (Docket # 194) by 5 P.M. on July 29, 2021. Plaintiffs may file any cross-motions for relief by that same date. Defendants may file a reply to the motion in limine by 5 P.M. on August 2, 2021, and may also respond to any cross-motion by that same date. Oral argument on all motions is presently scheduled for 10:30 A.M. on August 5, 2021, to be held via videoconference. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/23/2021. (MFM) (Entered: 07/23/2021) |
| 07/23/2021 | 196 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Status Conference held on 7/23/2021. Appearances via Zoom for Government: Jeffrey |

| | | |
|---|---|---|
| | | Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings LLC. Status Conference held. Trial date adjourned. Text Scheduling Order issued. (Court Reporter Zoom for Government Recording.) (LMD) (Entered: 07/25/2021) |
| 07/26/2021 | | TEXT SCHEDULING ORDER *TIME CHANGE ONLY*: Oral Argument reset for August 5, 2021 at **2:30 PM** before Magistrate Judge Jonathan W. Feldman via videoconference. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/26/2021. (MFM) (Entered: 07/26/2021) |
| 07/26/2021 | 197 | Letter filed by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *re: Trial Scheduling*. (Benjamin, Jeffrey) (Entered: 07/26/2021) |
| 07/29/2021 | 198 | MEMORANDUM in Opposition re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Zap Report)(Benjamin, Jeffrey) (Entered: 07/29/2021) |
| 07/29/2021 | 199 | TEXT ORDER: All counsel have communicated with the Court about setting a new trial date. The Court will try to accommodate counsel's schedules, recognizing that all counsel have various dates when they are and are not available. Defendant Dixie has moved to dismiss plaintiff's entire case, but, if it is unsuccessful, represents that it is ready to proceed to trial immediately. Defendants MMI/RDH take no position with respect to the dismissal motion, but request that the trial not occur between August 11 and August 18. Plaintiff opposes the dismissal motion and requests that the trial not commence on August 9th or any time prior to October 11.

Based on the foregoing, the trial will not be proceeding on August 9. The Court will discuss with counsel possible trial dates at the conclusion of the hearing on Dixie's dispositive motion on August 5, 2021. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/29/2021. (MFM) (Entered: 07/29/2021) |
| 08/02/2021 | 200 | REPLY to Response to Motion re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mancuso, Scott) (Entered: 08/02/2021) |
| 08/02/2021 | 201 | REPLY/RESPONSE to re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 08/02/2021) |
| 08/03/2021 | 202 | TEXT ORDER: The Court has reviewed (1) Plaintiff's Memorandum of Law in Opposition to Defendant Dixie's Motion in Limine to Preclude the Testimony of Expert Mark P. Zaporowski (Docket # 198); (2) Defendants MMI and RDH's Memorandum of Law in Reply to Defendant Dixie's Motion in Limine (Docket #200); and (3) Defendant Dixie's Reply Memorandum in Response to Plaintiff's Opposition to Motion to Preclude (Docket #201).

After careful consideration of these thorough submissions and the arguments made therein, the Court does not believe additional oral argument is necessary for the Court to resolve the motion. Based on the briefing, the Court has determined that plaintiff's Civil RICO claim must be dismissed as a matter of law. *See* Fed. R. Civ. P. 56(f)(1)-(3). The Court will issue a Decision and Order setting forth the legal and factual basis for this determination. Before doing so, however, the Court directs the parties to brief the issue of whether the Court should exercise supplemental jurisdiction over Plaintiff's sole remaining cause of action: a state law claim for fraudulent inducement. *See Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018). |

| | | The Court directs that the parties simultaneously file briefs on the supplemental jurisdiction question on or before **August 10, 2021**. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 8/3/2021. (MFM) (Entered: 08/03/2021) |
|---|---|---|
| 08/10/2021 | 203 | MEMORANDUM/BRIEF re 202 Text Order,,,,, by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mancuso, Scott) (Entered: 08/10/2021) |
| 08/10/2021 | 204 | MEMORANDUM/BRIEF re 202 Text Order,,,,, by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 08/10/2021) |
| 08/10/2021 | 205 | Letter filed by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *re: jurisdiction and certification*. (Benjamin, Jeffrey) (Entered: 08/10/2021) |
| 09/14/2021 | 206 | DECISION AND ORDER: Defendants' motion in limine (Docket ## 194, 200) is GRANTED IN PART and DENIED IN PART. The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but the motion is otherwise denied. By separate order, the Court will set a status conference for the purpose of rescheduling the trial. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/14/2021. (MFM) (Entered: 09/14/2021) |
| 09/15/2021 | | TEXT SCHEDULING ORDER: A status conference to set a trial date is scheduled for 9/21/2021 at 3:30 PM via videoconference before Magistrate Judge Jonathan W. Feldman. Invites will be sent by email to the parties. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/15/2021. (MFM) (Entered: 09/15/2021) |
| 09/16/2021 | | TEXT SCHEDULING ORDER *DATE & TIME CHANGE*: Status Conference reset for 9/24/2021 at 11:30 AM via videoconference before Magistrate Judge Jonathan W. Feldman. Invites to be sent by email. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/16/2021. (MFM) (Entered: 09/16/2021) |
| 09/24/2021 | 207 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings. Status Conference held on 9/24/2021. Proposed trial dates discussed. Plaintiff's counsel will check with his clients and let the court and counsel know which dates are selected. (Zoom for Government Recording.) (LMD) (Entered: 09/24/2021) |
| 10/12/2021 | | TEXT SCHEDULING ORDER: The Jury Trial is now set to begin on 1/18/2022 at 09:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350, for one week. The Final Pretrial Conference is now set for 12/2/2021 at 11:00 AM, to be held by videoconference. No more than one week before the pretrial conference, the parties *shall* submit revised proposed jury instructions and revised witness/exhibit lists, and *may* submit any other materials listed in the Court's Final Pretrial Order. Docket # 174. All submissions should conform to the Court's Final Pretrial Order. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 10/12/2021. (MFM) (Entered: 10/12/2021) |
| 11/19/2021 | 208 | MOTION for Certificate of Appealability *by Plaintiff* by Douglas J. Horn. (Attachments: # 1 Memorandum in Support Memo of Law)(Benjamin, Jeffrey) (Entered: 11/19/2021) |
| 11/19/2021 | 209 | TEXT ORDER: On 11/19/2021, Plaintiff filed 208 MOTION for Certificate of Appealability. Defendants shall respond to the motion by 11/29/2021, and Plaintiff may file a reply by 12/1/2021. Notwithstanding Plaintiff's motion, the parties shall submit their trial materials in accordance with the Court's prior scheduling order dated 10/12/2021. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 11/19/2021. (MFM) (Entered: 11/19/2021) |

| 11/25/2021 | 210 | Proposed Jury Instructions by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
|---|---|---|
| 11/25/2021 | 211 | Witness List by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
| 11/25/2021 | 212 | Exhibit List *Plaintiff* by Douglas J. Horn.. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
| 11/29/2021 | 213 | RESPONSE to Motion re 208 MOTION for Certificate of Appealability *by Plaintiff memorandum of law in response to Plaintiffs two-part motion* filed by Medical Marijuana, Inc.. (Mancuso, Scott) (Entered: 11/29/2021) |
| 11/29/2021 | 214 | Letter filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Attachments: # 1 Exhibit Dkt 137, Exhibit C, Defense exhibit list, # 2 Exhibit Dkt 176, Defense Witness List, # 3 Exhibit Dkt 187, Opposition to Jury Instructions)(Sheps, Hanoch) (Entered: 11/29/2021) |
| 11/29/2021 | 215 | OBJECTIONS *to Plaintiff's Proposed Substantive Jury Instructions* filed by Defendants Medical Marijuana, Inc., Red Dice Holdings, LLC... (Mura, Roy) (Entered: 11/29/2021) |
| 12/02/2021 | 216 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: : Jeffrey Benjamin, Esq./pl; Roy Mura, Esq. and Scott Mancuso, Esq./defs Medical Marijuana, Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq.; and Richard Lerner, Esq for Defendant Dixie Holdings, LLC. Matter on for Final Pretrial Conference. Final Pretrial Conference not held. Motion Hearing held on 12/2/2021 re 208 MOTION for Certificate of Appealability *by Plaintiff* filed by Douglas J. Horn to be granted with consent of defendants, except that court will decide whether it will request additional briefing. Jury Trial set for 1/18/2022 in Buffalo is cancelled. (Court Reporter Diane Martens.) (LMD) (Entered: 12/03/2021) |
| 01/24/2022 | 217 | DECISION AND ORDER granting 208 Motion for Certificate of Appealability. The Clerk of Court is directed to enter partial final judgment on Douglas J. Horn's civil RICO claim predicated on mail and wire fraud, which the Court dismissed in its September 14, 2021 Decision & Order. *See* Docket # 206. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 1/20/2022. (MFM)<br><br>-CLERK TO FOLLOW UP- (Entered: 01/24/2022) |
| 01/25/2022 | 218 | INTERIM JUDGMENT in favor of Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. against Cindy Harp-Horn, Douglas J. Horn. Signed by Mary C. Loewenguth, Clerk of Court on 1/25/2022. (CGJ) (Entered: 01/25/2022) |
| 02/15/2022 | 219 | Letter filed by Plaintiffs Cindy Harp-Horn, Douglas J. Horn. (submitted to chambers via email on 2/15/2022) (MFM) (Entered: 02/15/2022) |
| 02/15/2022 | 220 | TEXT ORDER: On 2/15/2022, Plaintiffs filed a letter requesting that the Court modify its January 20, 2022 Decision & Order so as to allow immediate appeal of "those other narrow and dispositive issues previously dismissed [and denied certification as final] by Judge Geraci," specifically, "Plaintiffs primary claims under RICO predicated on Controlled Substances, and under NY GBL §§349 and 350." Docket # 219 at 1.<br><br>Plaintiffs' request is DENIED. The Court engaged in a careful balancing of the judicial administrative interests and equities involved before deciding to grant partial final judgment pursuant to Federal Rule of Civil Procedure 54(b). The Court's analysis was in part premised on the discreteness of the issue to be appealed and the unusual circumstances surrounding the dismissal of Plaintiffs' last remaining civil RICO theory. See Docket # 217 at 5-7, 8-12. While there is some intuitive appeal to Plaintiffs' request for a single, "unified appeal on all issues," Docket # 219 at 1, permitting a massively expanded appeal would not only be inconsistent with District Judge Geraci's prior order |

| | | on the matter, <u>see</u> Docket # 115, it would also undermine the very reasons the Court articulated for granting Rule 54(b) relief. Accordingly, the Court denies Plaintiffs' letter request. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 2/15/2022. (MFM) (Entered: 02/15/2022) |
|---|---|---|
| 02/16/2022 | <u>221</u> | NOTICE OF APPEAL as to <u>217</u> Order on Motion for Certificate of Appealability, <u>206</u> Order on Motion in Limine, <u>218</u> Judgment by Douglas J. Horn. Filing fee $ 505, receipt number ANYWDC-4504453. Appeal Record due by 5/17/2022. (Benjamin, Jeffrey) (Entered: 02/16/2022) |
| 02/17/2022 | | Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (CGJ) (Entered: 02/17/2022) |
| 02/17/2022 | | Within 14 days of filing the Notice of Appeal, the appellant is required to electronically file with the District Court an index of filed documents it wishes the Court of Appeals to consider, called Designation of Record on Appeal. After receipt, the Clerks Office will certify and transmit the index to the Circuit. (CGJ) (Entered: 02/17/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/28/2022 12:37:40 | | |
| **PACER Login:** | llgpacer | **Client Code:** | horn |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cv-00701-JWF |
| **Billable Pages:** | 25 | **Cost:** | 2.50 |

Judgment in a Civil Case

United States District Court
_____WESTERN DISTRICT OF NEW YORK_____

DOUGLAS J. HORN, ET AL

     v.

MEDICAL MARIJUANA, INC., ET AL

**INTERIM
JUDGMENT IN A CIVIL CASE**
CASE NUMBER: 15-CV-701

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED Upon Court Order, the Court grants in part and denies in part Defendants' motion (docket #194, 200). The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but Defendants' motion is otherwise denied.

Date: January 25, 2022

MARY C. LOEWENGUTH
CLERK OF COURT

By: s/ Colin J.
    Deputy Clerk

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

       Plaintiffs,

    v.

MEDICAL MARIJUANA, INC., et al.,

       Defendants.

**Decision and Order**

15-CV-701-JWF

## PRELIMINARY STATEMENT

On July 22, 2021 — four days before trial — defendant Dixie Holdings, LLC filed a motion in which it identified potentially dispositive defects with plaintiff Douglas J. Horn's two remaining claims: (1) a civil RICO claim premised on mail and wire fraud, and (2) a state-law claim for fraudulent inducement. See Docket # 194. The trial was cancelled. After motion practice, the Court dismissed plaintiff's civil RICO claim. See Horn v. Medical Marijuana, Inc., No. 15-CV-701, 2021 WL 4173195 (W.D.N.Y. Sept. 14, 2021) [hereinafter Horn II]. Trial on the fraud claim was rescheduled to January 2022, but on November 19, 2021, plaintiff moved for entry of judgment on his civil RICO claim, pursuant to Federal Rule of Civil Procedure 54(b), with the intent to immediately appeal the Court's ruling. Docket # 208. Defendants do not oppose Plaintiff's motion. Docket # 213 at 5-6; Docket #

214 at 1 n.1. Because of the unusual procedural history of this case, the discreteness of the issue to be appealed, and plaintiff's unique circumstances, the Court GRANTS plaintiff's motion.

## DISCUSSION

Rule 54(b) provides:

> When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). The Rule creates "an exception to the general principle that a final judgment is proper only after the rights and liabilities of all the parties to the action have been adjudicated." <u>Hogan v. Consol. Rail Corp.</u>, 961 F.2d 1021, 1024-25 (2d Cir. 1992). "The determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court." <u>Id.</u> at 1025. While "sound judicial administration does not require that Rule 54(b) requests be granted routinely," the "task of weighing and balancing the contending

2

factors is peculiarly one for the trial judge, who can explore all the facets of the case." Id. at 10, 12.

"Rule 54(b) authorizes a district court to enter partial final judgment when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." Linde v. Arab Bank, PLC, 882 F.3d 314, 322-23 (2d Cir. 2018) (internal quotation marks and brackets omitted). The first two requirements are met here. See Estate of Metzermacher v. Nat'l R.R. Passenger Corp., 487 F. Supp. 2d 24, 27 (D. Conn. 2007) (dismissed claims were "finally determined" for purposes of Rule 54(b)).

The Court therefore will focus on the third requirement. "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in [a] setting such as this, a district court [is to] take into account judicial administrative interests as well as the equities involved." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980); see also Novick v. AXA Network, LLC, 642 F.3d 304, 310-11 (2d Cir. 2011). Both factors

3

favor the entry of partial final judgment as to the civil RICO claim premised on mail and wire fraud.

On the issue of judicial economy, a court's assessment of "judicial administrative interests" is necessary to "preserve[] the historic federal policy against piecemeal appeals." Novick, 642 F.3d at 310-11 (emphasis omitted). A court should consider "such factors as whether the claims [at issue are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." Curtiss-Wright, 446 U.S. at 8. That is, "a Rule 54(b) certification of the dismissal of fewer than all the claims in an action should not be granted if the same or closely related issues remain to be litigated." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991) (internal quotation marks omitted).

The claim to be certified here is "separable or extricable" from plaintiff's surviving fraud claim and the other claims that have previously been dismissed. Ginett v. Comput. Task Grp., Inc., 962 F.2d 1085, 1096 (2d Cir. 1992) (internal quotation marks omitted). To be sure, all of plaintiff's claims "stem from essentially the same factual allegations," Cullen v. Margiotta,

4

618 F.2d 226, 228 (2d Cir. 1980), but that fact alone is not dispositive. See Ginett, 962 F.2d at 1095 ("[I]nterrelatedness cannot, in itself, 'inextricably intertwine' the claims so as to preclude appellate review; otherwise, . . . every multiclaim case[] would elude the entry of a rule 54(b) judgment, and rule 54(b) would be meaningless."). "Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification." Id.

Here, plaintiff seeks to appeal a narrow, dispositive issue with respect to his civil RICO claim premised on mail and wire fraud: whether his "requested 'loss of earnings' damages are [] recoverable in a civil RICO action," where the lost earnings are "predicated on the bodily invasion [he] allegedly sustained when THC was introduced into his system through the ingestion of Dixie X." Horn II, 2021 WL 4173195, at *2. In other words, the dispute is whether plaintiff's theory for damages is legally cognizable in a civil RICO cause of action. That is a discrete question of statutory interpretation, and neither the previously dismissed claims nor the remaining fraud claim implicate that question in a way that would create a risk that the Second Circuit would be "forced to review . . . identical legal issues in multiple

5

appeals."[1]  Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 154 (E.D.N.Y. 1999).

Likewise, there is little risk that successive appellate panels would need to retread the same factual ground.  See id.; see also Arlinghaus v. Ritenour, 543 F.2d 461, 464 (2d Cir. 1976) (certification inappropriate where appellate court would be required to "review the same conduct twice").  In this respect, the present circumstances are unusual.  Even in cases where the requested immediate appeal presents a discrete legal question, Rule 54(b) certification may be properly denied on the basis that a "fulsome review" of the legal issue requires consideration of the same underlying factual record relevant to the remaining claims.  In re Trilegiant Corp., No. 12-CV-396, 2015 WL 13901228, at *5 (D. Conn. Mar. 26, 2015); see, e.g., Novick, 642 F.3d at 313-14; Uni-Rty Corp. v. Guangdong Bldg., Inc., 249 F.R.D. 149, 152 (S.D.N.Y. 2008) (certification of civil RICO claims inappropriate where successive appellate panels would need to

_____

[1] To the contrary, resolution of this issue through Rule 54(b) certification could have the effect of significantly shrinking any subsequent appeal.  If the Second Circuit were to affirm the Court's ruling, plaintiff's other, previously dismissed RICO claims would likely fail for the same reason, and it would therefore be unnecessary to address the separate legal grounds on which District Judge Geraci relied to dismiss them.  See generally Horn v. Med. Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019), modified on reconsideration, 2019 WL 11287650 (Nov. 22, 2019).

"familiarize themselves with th[e] complicated factual history" of the case in order to address issue of proximate causation).

By contrast, an assessment of the civil RICO claim which plaintiff seeks to appeal would demand little analysis of the underlying facts. The parties agree that it is simply a question of whether, assuming he has sufficient facts to prove his theory, plaintiff's requested "loss of earnings" damages are legally recoverable via a civil RICO action.[2]  Horn II, 2021 WL 4173195, at *3 (quoting plaintiff's brief at Docket # 198 at 7).  The underlying factual record is largely irrelevant, as this Court's Decision & Order on the issue demonstrates. See id. at *2-5.  In addition, pretrial resolution of the RICO issue via Rule 54(b) certification will impact the length of the trial, the proof at trial, the arguments of counsel, and the instructions given to the jury at the close of the case, further serving the interest of judicial economy.

Therefore, because "[t]he issue presented here . . . is a discrete and straightforward legal issue which the Court of Appeals

---

[2] In his Rule 54(b) motion, plaintiff now accuses the Court of "defining away" his claim by framing his damages in terms of "personal injury/bodily invasion." Docket # 208-1 at 5.  While plaintiff is clearly critical of the Court's rationale, the Court does not interpret plaintiff's remarks to mean that he is retracting his prior acknowledgment that the "nexus between the RICO violations" and his "resulting economic damages" is the "harm of the THC that was introduced into [his] system."  Docket # 198 at 7.

can resolve quickly and which will serve the goal of judicial economy," judicial administrative interests do not militate against certification. Roebuck v. Guttman, 678 F. Supp. 68, 70 (S.D.N.Y. 1988).

The equities also favor the immediate entry of judgment. Ordinarily, the most obvious factor weighing against an immediate appeal is that it "simply delays trial." Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 942 (2d Cir. 1968). That concern is not so salient here. This case has been ready for trial since December 2019. Docket # 125. With the COVID-19 pandemic, scheduling conflicts among counsel, and intervening motion practice, trial was delayed to January 2022. On December 2, 2021, the Court held a status conference and indicated that it intended to grant plaintiff's Rule 54(b) motion. See Docket # 216. At the time of the status conference, it was far from clear that the trial could even proceed on schedule: as the Court previously informed the parties, there were other trials scheduled for the same timeframe that could have taken priority over this case, and, unfortunately, COVID transmission had been extremely high in Western New York in the preceding weeks.[3] Cf. Vaad L'Hafotzas Sichos, Inc. v. Kehot

---

[3] Indeed, the highly transmissible Omicron variant has since emerged, which may have necessitated an adjournment of trial regardless of the merits of the Rule

Pub'n Soc'y, No. 10-CV-4976, 2014 WL 1026592, at *2 (E.D.N.Y. Mar. 20, 2014) (denying certification where the court was confident it could try the case "and render a final, appealable judgment in less time than it would take to pursue an immediate appeal to completion"). The potential for further delay due to the pandemic and possible scheduling conflicts, and the parties' agreement that an immediate appeal is appropriate, diminish the Court's otherwise strong intent to give the parties their day in court. Cf. Gidatex, S.r.L. v. Campaniello Imps., Ltd., 73 F. Supp. 2d 345, 348 (S.D.N.Y. 1999) (finding that equities did not favor certification where nonmoving party "vigorously oppose[d] postponement of the trial date").

More importantly, the potential for "hardship or injustice," Harriscom, 947 F.2d at 629, and the interest of "fairness to the parties," New York v. AMRO Realty Corp., 936 F.2d 1420, 1426 (2d Cir. 1991), weigh heavily in favor of certification. The claim plaintiff seeks to immediately appeal was dismissed days before trial and resulted in the cancellation of trial. Plaintiff, a cross-country truck driver by trade, was thereby forced to incur "a substantial loss of money and time" due to the sunk costs of

---

54(b) motion. In-person court appearances, including jury trials, have been significantly reduced in 2022.

travel and trial preparation.  Docket # 198 at 6 n.2; see also
Docket # 208-1 at 10-11.  The unique financial and personal
hardships that plaintiff has already faced, and may face again if
the Court's ruling on the RICO claim is reversed, render the risk
of duplicative trials more unfair and harsh than in the mine run
of cases.  See In re Gentiva Secs. Litig., 2 F. Supp. 3d 384, 390
(E.D.N.Y. 2014) ("The mere potential for duplicative trials should
not by itself result in 54(b) certification, except in the
infrequent harsh case." (internal quotation marks omitted and
emphasis added)); Bowne of New York City, Inc. v. AmBase Corp.,
161 F.R.D. 270, 273 (S.D.N.Y. 1995) (in deciding whether partial
final judgment is appropriate, a court "can take into account
whether delay would cause financial hardship to either party").
Plus, as defendants point out, definitive appellate resolution of
plaintiff's civil RICO claim could dramatically alter the
potential damages, see 18 U.S.C. § 1964(c), and may therefore help
to facilitate settlement of this matter.  See Docket # 213 at 9;
see also Curtiss-Wright, 446 U.S. at 8 n.2; Polycast Tech. Corp.
v. Uniroyal, Inc., 792 F. Supp. 244, 278 (S.D.N.Y. 1992)("Whether
or not trebled damages are available to plaintiffs if they prevail
on the merits is a question of considerable importance to all

10

parties.  An appellate ruling on the issue in advance of trial may enhance settlement negotiations.").

For these reasons, the Court concludes that there is "no just reason[] to delay the appeal." Curtiss-Wright Corp., 446 U.S. at 8.  In reaching this conclusion, the Court is mindful that Judge Geraci previously denied a Rule 54(b) motion filed by plaintiff with respect to the claims dismissed at summary judgment.  See Horn v. Med. Marijuana, Inc., No. 15-CV-701, 2019 WL 4871499 (W.D.N.Y. Oct. 3, 2019).  However, the certification request that Judge Geraci considered — entry of partial final judgment as to all of Cindy Harp-Horn's claims as well as Douglas Horn's claims under Sections 349 and 350 of New York General Business Law — stands in stark contrast to the narrow request before this Court. Given the number of claims and issues, the prior request presented a greater likelihood of duplicative effort in successive appeals. Id. at *1.  Furthermore, intervening developments, including the pandemic and the unnecessary expenses and hardships plaintiff has already borne, give rise to "countervailing equities" that did not exist before Judge Geraci.  Id. at *2.

As a matter of law, I determined that plaintiff's primary cause of action, his civil RICO claim, is not cognizable.  Both parties agree that an immediate appeal of this determination is

11

appropriate and justified. Based on the unique posture of this case, I concur. If my determination as to the viability of plaintiff's RICO claim was erroneous, absent Rule 54(b) relief, this case would have to be tried again with the RICO cause of action reinstated, an event that would be inefficient and costly. Accordingly, the Court concludes that entry of a partial final judgment pursuant to Rule 54(b) is appropriate with respect to plaintiff's civil RICO claim predicated on mail and wire fraud.

## CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff Douglas J. Horn's Rule 54(b) motion (Docket # 208). The Clerk of Court is directed to enter partial final judgment on Douglas J. Horn's civil RICO claim predicated on mail and wire fraud, which the Court dismissed in its September 14, 2021 Decision & Order. See Docket # 206.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:     Rochester, New York
           January 20, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

DOUGLAS J. HORN, et al.,

                    Plaintiffs,          **Decision and Order**

          v.                             15-CV-701-JWF

MEDICAL MARIJUANA, INC., et al.,

                    Defendants.

═══════════════════════════════════

## PRELIMINARY STATEMENT

On July 22, 2021, defendant Dixie Holdings, LLC ("Dixie LLC") filed a motion *in limine* to preclude the testimony of Mark P. Zaporowski, Ph.D., plaintiff's expert economist. Docket # 194. While styled as a motion *in limine*, in truth Dixie LLC's motion is of a dispositive nature: it contends that the kinds of damages that plaintiff seeks to recover are not recoverable through either of his remaining claims. Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC join in the motion. Docket # 200. Plaintiff opposes the motion. Docket # 198.

On August 3, 2021, the Court informed the parties that it intended to dismiss plaintiff's civil RICO claim (with a written Decision and Order to follow) and requested the parties brief the issue of the Court's subject matter jurisdiction over the state-law fraud claim. Docket ## 203-05.

Having reviewed all the briefing submitted, and for the reasons set forth below, the Court concludes that plaintiff's civil RICO claim must be dismissed as a matter of law, that plaintiff's fraud claim is viable insofar as plaintiff seeks to recover lost earnings, and that the Court retains subject matter jurisdiction over the fraud claim. Accordingly, defendants' motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Prior to the scheduled jury trial, plaintiff had two remaining causes of action: a civil RICO claim and a state-law fraudulent inducement claim.[1] In both claims plaintiff sought to recover damages for the losses he incurred when his employment as a truck driver was terminated, including "past and future lost compensation, lost health benefits, lost retirement savings and difference in work effort mileage driven." Docket # 179 at 2. To support his damages calculations, plaintiff intended to proffer at trial the testimony of Dr. Zaporowski, who calculated the value of plaintiff's total economic damages. Id. Defendants contend that plaintiff cannot recover these kinds of "loss of earnings" damages

---

[1] Plaintiff had other claims that were previously addressed and dismissed by Judge Geraci. See Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019).

in connection with either a civil RICO or state-law fraud claim. As will be discussed below, defendants are correct with respect to the former claim, but not the latter.

**Delay and Prejudice to Plaintiff:** Before discussing the merits, the Court will address plaintiff's arguments on the timing of Dixie LLC's motion. See Docket ## 197, 198. As the Court stated on the record at the prior conferences on this motion, the timing of the motion and the prejudice to plaintiff resulting therefrom is both concerning and unfortunate. However, the Court has already concluded that the Dixie LLC's delay in raising these potentially dispositive issues was not attributable to bad faith. Furthermore, once raised, the Court could not avoid deciding the issue. If defendants were correct on the damage issue, it would have made little sense to proceed to trial, as the Court would be required to instruct the jury on the law as to recoverable damages. If plaintiff cannot, as a matter of law, recover the type of damages he seeks, the trial would have essentially been a pointless exercise in futility. Deciding the issue now, however late it has been raised, still ensures that the parties, the Court and the jurors do not spend time or energy on claims for which plaintiff cannot recover the damages he seeks. While the Court acknowledges the costs plaintiff has incurred due to the delay of trial,

3

judicial economy and fairness to the parties require resolution of the damage issues prior to the commencement of trial.

Plaintiff also makes two threshold arguments that merit only brief comment. First, plaintiff cites Dixie LLC's eleventh affirmative defense in its answer to argue that Dixie LLC has long known about this issue. See Docket # 9 at 11; Docket # 198 at 6. The eleventh affirmative defense is that plaintiff's injuries "do not arise out of any [RICO] predicate acts" and that plaintiff "is therefore without standing." Docket # 9 at 11. That issue is different than the one Dixie LLC now raises — that plaintiff's damages are not recoverable as injuries to "business or property" under the RICO statute. Second, plaintiff claims that Judge Geraci decided this issue at summary judgment, which is incorrect. See generally Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019). Accordingly, the Court turns to the merits of the pending motion.

**Cognizable Damages in Civil RICO claims:** Defendants argue that plaintiff's requested "loss of earnings" damages are not recoverable in a civil RICO action because they are predicated on the bodily invasion plaintiff allegedly sustained when THC was introduced into his system through the ingestion of Dixie X. The Court agrees.

4

RICO establishes a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Defendants' argument implicates the first clause in this provision: that one must be injured "in his business or property" in order to recover under Section 1964(c).

This statutory language has a long history.  Congress modeled Section 1964(c) and its private right of action on the "the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," Holmes v. Secs. Inv'r Protection Corp., 503 U.S. 258, 267 (1992), which provides: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ."  15 U.S.C. § 15(a) (emphasis added).  In the context of the Clayton Act, the Supreme Court has held that the "business or property" clause encompasses harm to "commercial interests or enterprises," Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 264 (1972), but not "personal injuries suffered."  Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979).  Compare id. ("[A] consumer . . . acquiring goods or services for personal use[] is injured in 'property' when the price of those goods or services is artificially inflated by reason of the

5

anticompetitive conduct complained of."), with Chadda v. Burcke, 180 F. App'x 370, 371-72 (3d Cir. 2006) (summary order) (consumer's injuries suffered from use of a cosmetic "at most" asserted a "personal injury" that did not support an antitrust claim).

In interpreting and applying Section 1964(c), courts have taken the same approach. "[A] plaintiff only has standing [under civil RICO] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."[2] Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (emphasis added). An injury to "business or property" under Section 1964(c) contemplates "a proprietary type of damage" or "economic injury." Bascuñán v. Elsaca, 874 F.3d 806, 817 (2d Cir. 2017). As a simple example, "a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his

---

[2] Although the issue is sometimes framed as one of "standing," as in Sedima, the Court notes that this label is "misleading." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014). The Supreme Court has made clear that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." Id.; see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016) ("[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (internal quotation marks omitted)); Safe Streets Alliance v. Hickenlooper, 859 F.3d 865, 887 (10th Cir. 2017) ("[W]hat we once called 'RICO standing' or 'statutory standing' we now properly characterize as the usual pleading-stage inquiry: whether the plaintiff has plausibly pled a cause of action under RICO.").

building is the type of injury for which § 1964(c) permits suit."
Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984),
vacated on other grounds, 473 U.S. 922 (1985).

The limitation is perhaps easier to state than to apply. A
fundamental difficulty is that money "is a form of property,"
Reiter, 442 U.S. at 338, and "[m]ost personal injuries" will entail
"some pecuniary consequences," including "loss of earnings, loss
of consortium, loss of guidance, mental anguish, and pain and
suffering." Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992). A
litigant could easily recast damages for personal injury as a
financial loss of "property" in order to invoke civil RICO. See,
e.g., id. (noting that, theoretically, one could view the "economic
aspects of [a personal injury]" as "injuries to 'business or
property'"); Grogan v. Platt, 835 F.2d 844, 846 (11th Cir. 1988)
(discussing plaintiffs' argument that "persons who are killed or
injured by RICO predicate acts suffer real economic consequences
as a result"). As a result, in deciding whether an injury is "to
business or property" — and thus recoverable under civil RICO — or
is personal — and thus not recoverable — courts do not look solely
at whether there is a "financial loss." Doe, 958 F.3d at 770.
Instead, they ask whether the plaintiff seeks to recover for a
loss that flows from, or is derivative of, a personal injury. If

7

it does, then it is not recoverable under civil RICO.  See <u>Jackson</u> <u>v. Sedgwick Claims Mgmt. Servs., Inc.</u>, 731 F.3d 556, 565-66 (6th Cir. 2013) ("[B]oth personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c)."); <u>Grogan</u>, 835 F.2d at 848 (holding that plaintiffs "cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim").

In recognition of this distinction, courts have held that lost earnings or wages are not recoverable if they flow from a personal injury.  See <u>Evans v. City of Chicago</u>, 434 F.3d 916, 926-27 (7th Cir. 2006) ("The loss of income as a result of being unable to pursue employment opportunities while allegedly falsely imprisoned . . . are quintessentially pecuniary losses derivative of personal injuries arising under tort law."), <u>overruled on other</u> <u>grounds</u>, <u>Hill v. Tangherlini</u>, 724 F.3d 965 (7th Cir. 2013); <u>Jackson</u>, 731 F.3d at 565.  Here, plaintiff does not allege that defendants engaged in a fraudulent scheme that directly caused his loss of employment.  To the contrary, plaintiff acknowledges that "[t]he nexus between the RICO violations . . . and [plaintiff's] resulting economic damages . . . <u>is the harm of the THC that was</u> <u>introduced into [his] system by Defendants' product</u>."  Docket # 198 at 7 (emphasis added).  In other words, what connects

8

defendants' fraudulent scheme to plaintiff's loss of employment and earnings is a personal injury: the bodily invasion that plaintiff suffered when he unwittingly ingested THC. Cf. Doe v. Brown Univ., 304 F. Supp. 3d 252, 265 (D.R.I. 2018) (plaintiff sufficiently alleged tort of battery, where she claimed defendant "spiked" her drink, which caused her "harmful mental and physical effects"). Unfortunately for plaintiff, he may not recover lost earnings arising from that sort of personal injury in connection with a civil RICO claim. Accord Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) (noting that smokers cannot assert RICO claims for fraudulent cigarette marketing "because the RICO statute requires an injury to 'business of property'"); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) ("RICO plaintiffs may recover damages for harm to business and property only, not physical and emotional injuries due to harmful exposure to toxic waste."); Aston v. Johnson & Johnson, 248 F. Supp. 3d 43, 49-50 (D.D.C. 2017) (loss of earnings in connection with pharmaceutical drug); Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012) (plaintiffs could not recover lost wages and out-of-pocket expenses caused by sexual abuse); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 66 (D.N.H. 2013) ("lost income" due to

plaintiff's inability to work from smoking); <u>Gotlin v. Lederman</u>, 367 F. Supp. 2d 349, 357 (E.D.N.Y. 2005) (where plaintiffs alleged that defendants fraudulently misrepresented quality of cancer treatment, dismissing civil RICO claim and noting that "allegations of a financial loss incidental to a personal injury such as loss of earnings or pain and suffering are not considered injury to property or business"), <u>aff'd</u>, 483 F. App'x 583 (2d Cir. 2012) (summary order); <u>Gause v. Philip Morris</u>, No. 99-CV-6226, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000) (where plaintiff alleged tobacco companies fraudulently marketed cigarettes and thereby caused her to smoke and develop emphysema, she could not recover lost income under civil RICO on the theory that she was unable to work due to her illness), <u>aff'd</u>, 29 F. App'x 761 (2d Cir. 2002) (summary order).

The cases that plaintiff cites in his opposition memorandum do not persuade the Court otherwise. Indeed, many of those cases demonstrate the distinction that courts draw between business/property injuries and personal injury, as they involve economic harm flowing directly from RICO predicate acts without any intervening personal injury. <u>See</u> <u>Denney v. Deutsche Bank AG</u>, 443 F.3d 253, 260, 265 (2d Cir. 2006) (scheme to market unlawful tax strategies allegedly caused plaintiffs to, <u>inter alia</u>, pay

10

"excessive fees" for the advice, sustain penalties from the IRS, and incur costs to remediate their tax situations); City of New York v. Fedex Ground Package Sys., Inc., 175 F. Supp. 3d 351, 369-71 (S.D.N.Y. 2016) (delivery service's circumvention of New York cigarette taxes caused state and local governments to lose tax revenue); Kriss v. Bayrock Grp. LLC, No. 10-CV-3959, 2016 WL 7046816, at *19 (S.D.N.Y. Dec. 2, 2016) (real estate organization, which was engaged in fraudulent activities, enticed "real estate finance professionals" to join organization and caused them to pass up "lucrative opportunities" elsewhere); Rodonich v. House Wreckers Union, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) (union unlawfully disciplined union members in scheme to suppress dissent, which caused lost wages).

Plaintiff cites two cases as supporting the view that he may recover lost earnings resulting from his claimed bodily invasion. The Court is not convinced by either. First is Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963 (E.D.N.Y. 1995). In Kubecka, it was alleged that the defendants murdered two executives in connection with a dispute over garbage disposal contracts in Long Island. Kubecka, 898 F. Supp. at 966. The plaintiffs included two corporations that alleged they were "injured in their business or property . . . [when] their executives were murdered and thereby

11

removed as executives." Id. at 969.  The court agreed, apparently accepting that the murders interfered with the corporations' operations in such a way as to constitute an injury to "business or property" under RICO.  Id.  Whatever the soundness of that rationale with respect to corporate losses, it does not support the proposition that an individual who loses his job due to personal injury caused by RICO predicate acts may maintain a RICO claim.

The second case is Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 36 F. Supp. 2d 560 (E.D.N.Y. 1999). There, medical insurers sued tobacco companies to recover "economic damages they incurred in the medical treatment of diseases caused by tobacco use."  Blue Cross, 36 F. Supp. 2d at 565.  They claimed tobacco companies had fraudulently misrepresented the health consequences of smoking and brought RICO claims premised on, among other things, mail and wire fraud.  Id. at 565-66.  The court held that the insurers' medical expenditures constituted a loss to business or property and that "[a]ny personal injuries to smokers . . . caused by [tobacco companies'] alleged racketeering are separate and distinct from the [insurers'] economic injuries suffered by their businesses."  Id. at 569-71.

Blue Cross is unpersuasive. As a general matter, the reasoning in Blue Cross is inconsistent with the history, logic, and interpretation of the "business or property" clause that the Court has described above. For that reason, the decision "has been criticized by numerous courts" and has been acknowledged to "rest[] on tenuous legal footing." Magnum v. Archdiocese of Philadelphia, No. 06-CV-2589, 2006 WL 3359642, at *4 n.6 (E.D. Pa. Nov. 17, 2006). Regardless, even if the Court were to accept the distinction that Blue Cross drew between insurers and insureds, that distinction does not help plaintiff: he is not attempting to recover economic damages that are "separate and distinct" from the bodily invasion he suffered from unwittingly consuming THC. As plaintiff himself admitted, his "economic damages" resulted from "the harm of the THC that was introduced into [his] system by Defendants' product." Docket # 198 at 7; accord Zimmerman, 888 F. Supp. 2d at 330 (distinguishing Blue Cross on the basis that "Plaintiffs' alleged lost wages and out-of-pocket expenses are, in their own words, closely associated with the personal injuries they incurred as a result of Defendants' misconduct" (internal quotation marks omitted)).

In sum, because plaintiff's loss of earnings flows from, and is derivative of, a personal injury he suffered, his lost earnings

do not constitute an injury "to business or property" that is recoverable in a civil RICO action. And because plaintiff does not seek to recover any other damages, his RICO claim fails as a matter of law and must be dismissed. See Fed. R. Civ. P. 56(f).

**Plaintiff's Fraud Claim:** Noting that New York only permits recovery for "out-of-pocket" losses in a fraud action, defendants next assert that a fraud plaintiff is categorically prohibited from recovering lost earnings. Docket # 194 at 4-6. The Court disagrees.

In New York, if a plaintiff can prove the elements of a claim for fraud, he is entitled to recover "any proximately caused damages." Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 494 (2d Dep't 2011); see also Williams v. Goldberg, 109 N.Y.S. 15, 16 (App. Term. 1908) ("All manner of fraud is abhorrent to the law, and if one person sustains injury through the fraud of another he will be afforded a proper remedy."); Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 307 (2d Cir. 1986) ("Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation."); 60A N.Y.Jur.2d Fraud and Deceit § 190 ("The injured party is entitled to recover in a tort action for deceit only such damages as result directly, necessarily, and proximately

14

from the fraud." (footnotes omitted)). What damages are recoverable in a given case will necessarily depend on the nature of the fraud and of the resulting injuries. Hotaling v. A.B. Leach & Co., 247 N.Y. 84, 88 (1928) ("Varying circumstances must logically require variation in the application of th[e] measure of damages.").

Where the fraud occurs in the context of a business transaction, the measure of damages will ordinarily be "the difference between the amount paid and the value of the article received." Hotaling, 247 N.Y. at 87-88. Where the fraud proximately causes other consequential expenses, such damages may also be recovered. See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 423 (1996) (noting that consequential damages are recoverable in fraud action so long as they "naturally flow[]" from the fraud); see, e.g., Idrees v. Am. Univ. of the Caribbean, 546 F. Supp. 1342, 1350 (S.D.N.Y. 1982) (student fraudulently induced to enroll in medical school could recover "tuition, inscription fee, application fee and round-trip air fare between New York and [the school]"); Orbit Holding Corp. v. Anthony Hotel Corp., 503 N.Y.S.2d 780, 783 (1st Dep't 1986) (where seller of property fraudulently concealed lease, purchaser could recover for costs of settling dispossess proceeding with tenant); Cayuga

Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y.S.2d 606, 619 (4th Dep't 1983) (fraud plaintiff could recover damages for lost crops that resulted from the purchase of defective machine).

Finally — and more relevant here — New York courts have long permitted a fraud plaintiff to recover damages for personal injury proximately caused by fraud. See Kuelling v. Roderick Lean Mfg. Co., 183 N.Y. 78, 89 (1905) (collecting cases and holding that "one who sells an article, knowing it to be dangerous by reason of concealed defects . . . is liable in damages to any person . . . who suffers an injury by reason of his willful and fraudulent deceit and concealment."); Tulloch v. Haselo, 218 N.Y.S. 139, 141 (3d Dep't 1926) ("[A] cause of action for deceit may arise where, as the result of false representation, the damage results in personal injuries."); see, e.g., Simcuski v. Saeli, 44 N.Y.2d 442, 451-53 (1978) (where medical provider fraudulently advised patient about treatment, patient could recover damages for the "depriv[ation] of the opportunity for [a] cure"); Kuelling, 183 N.Y. at 88-89 (fraudulent concealment of defect in agricultural implement, which caused plaintiff "severe injuries," gave rise to fraud claim and recovery of proximately caused damages); Williams, 109 N.Y.S. at 16 (tenant could recover damages in fraud action for physical injuries incurred when ceiling collapsed on her, where

16

defendant's agent fraudulently misrepresented ceiling's condition); Tulloch, 218 N.Y.S. at 142 (positing that if a person misrepresented the safety of a gun and a recipient were injured "by reason of the defects in the gun," a "cause of action for common-law deceit would arise in his favor"); Young v. Robertshaw Controls Co., 481 N.Y.S.2d 891, 893-94 (3d Dep't 1984) (finding that plaintiff stated viable fraud claim, where she alleged that fraudulent concealment of defective control valve caused the explosion of a water heater and the death of her husband, and where she sought compensatory damages for husband's "conscious pain and suffering and wrongful death"); see also City of New York v. Lead Indus. Ass'n, 597 N.Y.S.2d 698, 700 (1st Dep't 1993) ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud.").

The position of New York courts on the scope of recoverable damages in a fraud action mirrors in large part that of the Restatement (Second) of Torts:

> The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

      (b)   pecuniary loss suffered otherwise as a consequence
            of the recipient's reliance upon the
            misrepresentation.

Restatement (Second) of Torts § 549(1)(a)-(b) (1977); see also

Clearview Concrete Prods. Corp. v. S. Charles Gheradi, Inc., 453

N.Y.S.2d 750, 755 (2d Dep't 1982) (citing Section 549 favorably).

In addition to those categories of damages, the Restatement

provides that "[o]ne who by a fraudulent misrepresentation . . .

causes physical harm to [a] person . . . who justifiably relies

upon the misrepresentation[] is subject to liability to the other."

Id. § 557A (emphasis added). The "ordinary rules as to legal

cause" — i.e., proximate cause — govern claims for fraudulent

misrepresentation causing physical harm. Id. § 557A cmt.; see

generally id. § 431 (discussing "legal cause").

    Plaintiff's fraud claim fits within this overall framework.

As defendants acknowledge in their briefing, plaintiff is

essentially alleging that he suffered a personal injury as a result

of defendants' fraud: he was induced to consume Dixie X by

defendants' misrepresentations, which caused him to suffer a

bodily invasion through the ingestion of THC and which, in turn,

rendered him ineligible for his employment. See Docket # 194 at

2; Docket # 200 at 7-9, 15; Docket # 201 at 7. Defendants also

acknowledge that the damages plaintiff seeks are intended to

compensate for the losses he incurred because of his personal injury. See Docket # 194 at 4; Docket # 200 at 7-9, 12; Docket # 201 at 7. Plaintiff's theory is, at its core, a fairly conventional one. A plaintiff claims he was injured by a product that he was induced to purchase by allegedly fraudulent marketing practices, and he seeks to recover for the earnings he lost because of his injury. It would be difficult for defendants to argue that this represents some novel theory of relief, as, again, they repeatedly analogize plaintiff's claim to commonplace toxic-exposure cases. See Docket # 200 at 7, 10-11; Docket # 201 at 7-8.

Thus, the fundamental question is not whether plaintiff's theory of liability or damages fits generally within the framework of a fraud claim — it does — but whether he can establish a sufficiently strong causal connection between defendants' fraud and his claimed injury (i.e., the bodily invasion of THC) and alleged damages (i.e., the loss of wages/benefits from his employment). Proximate causation is an issue of fact for the jury. See Benitez v. N.Y.C. Bd. Of Educ., 73 N.Y.2d 650, 659 (1989); 79 N.Y.Jur.2d Negligence § 58. At trial, the jury will be tasked with deciding whether defendants' fraud was "a substantial factor in bringing about [plaintiff's] injury [and associated damages],"

19

in that the fraud "had such an effect in producing the injury [and associated damages] . . . that reasonable people would regard it as a cause of the injury [and associated damages]." N.Y. Pattern Jury Instructions § 2:70 (discussing in negligence context); see also id. § 2:70 cmt. (noting that "[c]ausation is relevant both to liability and to damages"). Regarding the intervening acts of "independent" actors like plaintiff's former employer, the jury will be tasked with deciding whether "a reasonably prudent person in the defendant[s'] situation" would have "foreseen that an act of the kind committed by [the independent actor] would be a probable result" of their fraud. N.Y. Pattern Jury Instructions § 2:72 (discussing in the negligence context); see also id. cmt. ("Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed.").

To the extent defendants are inviting the Court to decide, as a matter of law, whether plaintiff will be able to sufficiently establish proximate causation at trial, the Court declines to do so. To be sure, "where only one conclusion may be drawn from the established facts[,] the question of legal cause may be decided as a matter of law." Benitez, 73 N.Y.2d at 659 (internal quotation marks and ellipsis omitted). But because proximate causation is

20

a factual issue, it necessarily requires careful examination of the underlying circumstances. The time and place for that analysis is not now. While the Court has permitted defendants to raise a dispositive issue with respect to the civil RICO claim at this late juncture, that is because it represents a purely legal issue that can be resolved on the papers. Analyzing whether proximate causation can be adequately established is a factual issue deserving of fact-finding by a jury. Even now, defendants have not submitted any sort of Rule 56 Statement of Facts or admissible evidence in connection with their motion and the Court will not embark on its own *sua sponte* analysis of the record to resolve the issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Defendants do raise other purely legal arguments concerning plaintiff's fraud claim, which the Court can dispose of now. First, defendants assert that "loss of earnings" damages are wholly unrecoverable in a fraud claim, allegedly due to New York's "out of pocket" rule. This argument is unconvincing.

21

New York's "out-of-pocket" rule provides the "standard for measuring" the loss suffered due to fraud. 60A N.Y.Jur.2d Fraud and Deceit § 281. It limits recoverable damages to "the actual pecuniary loss sustained as the direct result of the wrong." Sw. Inv'rs Grp., LLC v. JH Portfolio Debt Equities, LLC, 93 N.Y.S.3d 775, 777 (4th Dep't 2019). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" — as a result, "there can be no recovery of profits which would have been realized in the absence of fraud." Lama Holding Co., 88 N.Y.2d at 421; see also Pine Street Assocs., L.P. v. Hicks, No. 651440-2011, 2012 WL 1946822, at *6 (N.Y. Sup. Ct. May 24, 2012) ("[F]raud damages are not intended to provide a victim with 'benefit of the bargain damages,' and are limited to indemnifying the injured party for the actual losses sustained, that is, 'out-of-pocket' damages."). The rule's rationale "is that the value to the claimant of a hypothetical lost bargain is too undeterminable and speculative to constitute a cognizable basis for damages." Starr Foundation v. Am. Int'l Grp., Inc., 901 N.Y.S.2d 246, 250 (1st Dep't 2010) (internal quotation marks and citation omitted).

Relying on this rule, New York courts have sometimes held that a fraud plaintiff cannot recover for the "the loss of an

alternative bargain overlooked in favor of the fraudulent one." Geary v. Hunton & Williams, 684 N.Y.S.2d 207, 207 (1st Dep't 1999). Thus, lost profits which "would have been realized in the absence of fraud" are not recoverable, Lama Holding Co., 88 N.Y.2d at 421, nor are earnings that might be realized in connection with hypothetical future employment. See, e.g., Mihalakis v. Cabrini Med. Ctr. (CMC), 542 N.Y.S.2d 988, 990 (1st Dep't 1989) (medical student could not recover damages for "future earnings as a doctor" via fraud claim).

But these cases have no application here. Plaintiff is not seeking to obtain hypothetical lost earnings for an unrealized opportunity he could have undertaken absent the fraud; he is asking for damages to compensate for the actual job he already lost. In other words, we are not dealing with a hypothetical alternative bargain, but a realized, demonstrable loss of employment. See Cayuga Harvester, 465 N.Y.S.2d at 619 (stating that a plaintiff may not recover "profits based on the bargain it was fraudulently induced to make," but may recover damages for the "loss sustained because it made the bargain"). As numerous cases demonstrate, fraud claims premised on actual job loss are viable under New York law. See, e.g., Leidl v. Please Hold (UK) Ltd., No. 17-CV-6134, 2018 WL 1089748, at *5 (S.D.N.Y. Feb. 2, 2018) (where plaintiffs

were fraudulently induced to quit employment, they were "entitled to any damages they actually suffered in the form of lost wages" (emphasis added)); Kwon v. Yun, 606 F. Supp. 2d 344, 361 (S.D.N.Y. 2009) (collecting cases for the proposition that "loss of benefits flowing from one's previous employment all are cognizable losses in employment-related fraudulent inducement cases"); Laduzinski v. Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229, 232 (1st Dep't 2015) (where plaintiff alleged he was fraudulently induced to quit job and accept new employment, concluding plaintiff had viable fraud claim and damages based on "his loss of employment"); Navaretta v. Grp. Health, 595 N.Y.S.2d 839, 841 (3d Dep't 1993) (plaintiff could recover "for injuries resulting from her reliance on defendant's allegedly false statements," including the "loss of benefits and salary connected with her former employment" (emphasis omitted)).

Of course, there is a separate question of how to calculate the value of lost employment. Because the fraud plaintiff would no longer have the job, any inquiry into compensation for that loss may entail "hypothetical" questions of what earnings the plaintiff would have made, how long the plaintiff would have worked, etc. But such hypotheticals are not the target of the out-of-pocket rule. The case of Laduzinski v. Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015) is directly on point.

24

There, a fraud plaintiff claimed he was induced to leave his former employment by the fraudulent misrepresentations of his new employer. Laduzinski, 16 N.Y.S.3d at 230-31. Citing the out-of-pocket rule, the defendants asserted that plaintiff could not recover "alleged loss of wages he claims he would have received from his prior [employer]." Brief for Defendants-Respondents, Laduzinski v. Alvarez & Marshal Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015), 2015 WL 9312574, at *38. The First Department rejected that argument, holding that plaintiff's damages were not "speculative" and represented "the sum necessary for restoration to the position occupied before the commission of the fraud." Laduzinski, 16 N.Y.S.3d at 232.

The Fourth Department articulated similar reasoning in Cayuga Harvester, where a fraud plaintiff lost a corn crop as a result of a fraudulent misrepresentation related to a defective machine. 465 N.Y.S.2d 606, 618 (4th Dep't 1983). It rejected the defendants' claim that the valuation of the lost crops must exclude any "element of profit." Id. at 619. Rather, the plaintiff was entitled to recover the "profits that [it] would normally receive from [the] corn crop if sold at market value as a return on its investment in labor, seed, fertilizer and other expenses in the

crop," since those profits and expenditures "were lost when the corn was destroyed." Id.

The distinction between unrealized future opportunities and actual lost employment makes sense in light of the overriding purpose of damages in the fraud context, which is "to restore a party to the position occupied before commission of the fraud." Alpert v. Shea Gould Climenko & Casey, 559 N.Y.S.2d 312, 314 (1st Dep't 1990). A party is entitled to recover not only the difference in value of a fraudulent bargain, but any and all "proximately caused damages." Carbon Capital Mgmt., LLC, 932 N.Y.S.2d at 494; see also Castle & Cooke v. Lincoln Mdse. Corp., 477 N.Y.S.2d 390, 390 (2d Dep't 1984) ("Out of Pocket considerations do not . . . prevent recovery of other consequential damages proximately caused by reliance upon the misrepresentation." (internal quotation marks and emphasis omitted)); Kaddo v. King Serv. Inc., 673 N.Y.S.2d 235, 237 (3d Dep't 1998) (distinguishing between "benefit of the bargain" damages, which are not recoverable in a fraud action, and "consequential damages flowing directly from the wrong," which are). It would be inconsistent with the fraud plaintiff's right to be fully indemnified for his losses to hold that lost earnings associated with actual job loss are never recoverable in a fraud

action.  Lama Holding Co., 88 N.Y.2d at 423.  Plus, it would conflict with those cases that unequivocally permit fraud plaintiffs to recover for personal injuries, which necessarily involve "pecuniary consequences" like "loss of earnings."  Doe, 958 F.2d at 770.  In short, New York law permits a fraud plaintiff to recover lost earnings resulting from actual job loss. Accordingly, the Court rejects defendants' first argument.

Next, defendants argue that one can only recover lost wages if "[the] alleged tort caused a loss of earning capacity."  Docket # 194 at 6.

Much like their prior argument, this argument was addressed by the First Department's decision in Laduzinski.  16 N.Y.S.3d at 232.  To reiterate, the Laduzinski plaintiff alleged he was fraudulently induced to quit his employment and accept a new job offer, but he was subsequently fired once his new employer secured his contact list.  Id. at 230-31.  The plaintiff did not allege any loss of earning capacity but stated that the fraud caused him to leave "his stable and well compensated employment . . . , which brought about a setback in his career."  Id. at 231.  The court rejected defendants' argument that such damages were unrecoverable and held that the plaintiff could obtain damages to compensate for his lost employment and "restor[e] [him] to the position [he]

27

occupied before the commission of the fraud." Id. at 232. This holding cannot be reconciled with defendants' assertion, and I find the Laduzinski rationale both logical and persuasive.

Furthermore, the primary case on which defendants rely — Clanton v. Agoglitta, 615 N.Y.S.2d 68 (2d Dep't 1994) — does not stand for the broad proposition defendants ascribe to it. Clanton did not involve a fraud claim, but an automobile negligence action. Clanton, 615 N.Y.S.2d at 68. The issue before the Appellate Division was whether a jury verdict "as to damages for impairment of earning ability" deviated "materially from what would be reasonable compensation" for purposes of N.Y. C.P.L.R. § 5501(c), and the court noted that the "basic rule is that loss of earnings must be established with reasonable certainty" and that the analysis must focus "in part" on the plaintiff's "earning capacity both before and after the accident." Id. at 69. The court did not purport to make any broad holding regarding the availability of loss-of-earnings damages in a fraud action.

In sum, defendants have not persuaded the Court that plaintiff's requested damages are precluded under New York law.[3]

---

[3] To the extent defendants are merely arguing that plaintiff failed to mitigate his damages, the Court declines to address that issue. Like the issue of causation, that is a fact-sensitive question that would need to be resolved through a thorough analysis of the record evidence, which cannot be undertaken

Because the Court has rejected defendants' arguments on the fraud claim, there is presently no reason why Dr. Zaporowski should be barred from testifying to the earnings and benefits plaintiff lost when he was terminated from his employment. Whether plaintiff can sufficiently connect those damages to defendants' fraud is an issue for the jury to decide at trial.

**Subject Matter Jurisdiction:** Because the Court informed the parties prior to the issuance of this Decision and Order that it intended to dismiss the civil RICO claim — the only remaining federal cause of action — it ordered supplemental briefing concerning the Court's continuing subject matter jurisdiction. The parties have filed their supplemental arguments, Docket ## 203-05, and they confirm to the Court that it continues to have subject matter jurisdiction over this matter.

First, diversity jurisdiction exists, insofar as plaintiff alleged damages exceeding $75,000 in good faith, Docket # 1; Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC, 124 F. Supp. 3d 237, 242 (E.D.N.Y. 2015), and the parties appear to agree there is complete diversity. Docket # 203 at 6; Docket # 204 at 2; see generally 28 U.S.C. § 1332. Second, even if it did not exist, the

---

summarily at this juncture. Defendants may, of course, raise this issue at trial.

Court would exercise its discretion to retain supplemental jurisdiction over the fraud claim under 28 U.S.C. § 1367. The relevant factors support the exercise of supplemental jurisdiction: this case has been pending for more than five years, it is ready for trial, there are no novel issues of state law, and it would be unfair to the parties to force them to restart the litigation in state court. See generally Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 86 (2d Cir. 2018).

Accordingly, the Court retains subject matter jurisdiction over this action.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART defendants' motion (Docket ## 194, 200). The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but defendants' motion is otherwise denied.

By separate order, the Court will set a status conference for the purpose of rescheduling the trial.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:     Rochester, New York
           September 14, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                                    Plaintiffs,

                                                        Case # 15-CV-701-FPG
v.

                                                        DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                                    Defendants.

## INTRODUCTION

Presently before the Court are the parties' cross-motions for reconsideration of the Court's

April 17, 2019 Decision and Order, which resolved the parties' motions for summary judgment.[1]

For the reasons that follow, Defendants' motions for reconsideration (ECF Nos. 97, 106) are

GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for reconsideration

(ECF No. 112) is DENIED.

## LEGAL STANDARD

Both sides cite Federal Rule of Civil Procedure 54(b) as the basis for their motions.  Rule

54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties does not end the
> action as to any of the claims or parties and may be revised at any time before the
> entry of a judgment adjudicating all the claims and all the parties' rights and
> liabilities.

---

[1] Plaintiffs initially filed a notice of appeal after the Court issued its Decision and Order.  *See* ECF No. 92.
That appeal has since been dismissed, and the Second Circuit issued its mandate on November 12, 2019.
*See Horn v. Medical Marijuana, Inc.*, No. 19-1437, ECF No. 45 (dated Nov. 12, 2019); *see also Bedasie v.
Mr. Z Towing, Inc.*, No. 13-CV-5453, 2017 WL 6816331, at *3 (E.D.N.Y. Dec. 21, 2017) (stating that
jurisdiction returns to the district court after appeal once a mandate is issued).

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . . ." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982).

A litigant seeking reconsideration must set forth "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015); *see also Micolo v. Fuller*, No. 6:15-CV-06374, 2017 WL 2297026, at *2 (W.D.N.Y. May 25, 2017) ("To merit reconsideration under Rule 54(b), a party must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'").

## BACKGROUND

In their motions, both sides take issue with the Court's ruling on whether "Dixie X Dew Drops"—the product at issue—constituted a controlled substance under the federal Controlled Substances Act ("CSA"). *See* ECF No. 97-3 at 4; ECF No. 112-3 at 3. Some background may be helpful.

Dixie X is a CBD oil. "CBD is short for 'cannabidiol,' and it is one of the 'unique molecules' found in the *Cannabis sativa* plant." *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 119 (W.D.N.Y. 2019) (internal citation omitted). The *Cannabis sativa* plant is the plant from which marijuana and hemp are derived. *Id.* The difference between the two is that "drug-use cannabis is produced from the flowers and leaves of certain strains of the plant, while industrial-use [hemp] is typically produced from the stalks and seeds of other strains of the plant." *Id.* This leads to differences in the concentration of tetrahydrocannabinol ("THC") in each variety. THC is "the substance that gives marijuana its psychoactive properties." *Id.*

In 2012, the time of the relevant events, the general rule was that all parts and derivatives of the *Cannabis sativa* plant were defined as "marijuana" and prohibited under the CSA.[2]  *See id.* at 123 (citing 21 U.S.C. §§ 802(16), 841(a)(1)).  Despite its low THC content and lack of psychoactive effect, the industrial hemp plant and any derivatives fell within this definition because hemp "is a variety of the *Cannabis sativa* plant."  *Id.*; *United States v. White Plume*, 447 F.3d 1067, 1073 (8th Cir. 2006) (noting that "the CSA does not distinguish between marijuana and hemp").

But the CSA carved out several exceptions to this general rule.  Specifically, "[e]xcluded from the definition of marijuana were certain parts of the plant that are incapable of germination: (1) the mature stalks of the *Cannabis sativa* plant, (2) fiber produced from the stalks of the *Cannabis sativa* plant, (3) oil or cake made from the seeds of the *Cannabis sativa* plant, (4) any compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake[], and (5) the sterilized seed of the *Cannabis sativa* plant."  *Horn*, 383 F. Supp. 3d at 123.  Importantly, however, "resin extracted from mature hemp stalks was not excepted from the definition of marijuana."  *Id.*; *see also* 21 U.S.C. § 802(16) (2012).  As a result, hemp-based products could only be lawfully manufactured and sold in the United States to the extent they were derived from excepted parts of the *Cannabis sativa* plant (and thus were not considered marijuana under the CSA).

But there was another wrinkle: the CSA also separately prohibited THC, *see* 21 U.S.C. § 812(c)(17), and many hemp-based products contain "trace amounts of THC."  *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1085 (9th Cir. 2003) [hereinafter "*Hemp I*"].  This

---

[2] The CSA has since been amended to legalize industrial hemp production.  *See Horn*, 383 F. Supp. 3d at 124 (discussing legislative history).

raised a question: were products made from excepted parts of the *Cannabis sativa* plant nonetheless unlawful because they contained miniscule, non-psychoactive amounts of THC?

In a pair of cases from the early 2000s, the Ninth Circuit answered that question in the negative. *See Hemp I*, 333 F.3d at 1089-90; *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 357 F.3d 1012 (9th Cir. 2004) [hereinafter "*Hemp II*"]. First, it held that the prohibition against THC referred to synthetic, not naturally occurring, THC. *See Hemp I*, 333 F.3d at 1089-90; *Hemp II*, 357 F.3d at 1017. Second, it held that products made from excepted parts of the *Cannabis sativa* plant "were not included in the definition of marijuana—and therefore were not unlawful under the CSA—*even if* they contained trace amounts of [naturally occurring] THC." *Horn*, 383 F. Supp. 3d at 123. The Ninth Circuit reviewed the legislative history and concluded that "Congress 'knew what it was doing' when it chose to exempt certain derivatives from the definition of marijuana notwithstanding the presence of trace amounts of THC." *Id.* at 124.

Based on these conclusions, the Ninth Circuit invalidated new DEA regulations to the extent they purported to ban hemp-based products that contained trace amounts of naturally occurring THC. *See Hemp II*, 357 F.3d at 1018-19. But products containing synthetic THC or marijuana were still prohibited under the CSA. *See Horn*, 383 F. Supp. 3d at 124.

This Court relied on the above authority to conclude that, in 2012, Dixie X was a controlled substance. *See Horn*, 383 F. Supp. 3d at 124. Given the apparent absence of dispute, the Court proceeded on the assumption that Dixie X's CBD byproduct constituted a resin extracted from the mature stalk. *See id.* at 124. This led the Court to conclude that Plaintiffs had a sufficient claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as a RICO claim may be predicated on the distribution and sale of a controlled substance like marijuana. *Id.* at 131-32.

Case 22-878, Document 27, 03/10/2022, 3275575, Page81 of 104

**DISCUSSION**

Both sides now move for reconsideration of this aspect of the Court's prior order. Defendants argue that the Court erred insofar as it assumed that Dixie X contained "resin extract derived from the *Cannabis sativa* plant" and thus constituted marijuana.  ECF No. 97-1 at 5; *see also* ECF No. 106.  Defendants dispute that fact and contend there is no evidence in the record to support that conclusion.

Plaintiffs, on the other hand, dispute the Court's reasoning but not its conclusion.  They contend that "any product that contains any amount of THC was a Schedule I controlled substance in 2012."  ECF No. 112-3 at 3.

The Court takes up Plaintiffs' argument first and rejects it.  Plaintiffs assert that Dixie X was a controlled substance because it contained THC, which was a Schedule I controlled substance in 2012.  *See* 21 C.F.R. § 1308.11(d)(31).  They also assert that Dixie X remained a controlled substance under 21 C.F.R. § 1308.35 because it was intended for human consumption.  *See* 21 C.F.R. § 1308.35(a) (exempting certain cannabis-based products from the CSA so long as they are not intended for human consumption).

The problem with Plaintiffs' argument is that it runs headlong into the *Hemp* cases, where the Ninth Circuit invalidated the very regulations on which Plaintiffs rely.  *See Hemp II*, 357 F.3d at 1019 (permanently enjoining enforcement of the regulations).  The court stated in no uncertain terms that those regulations "may not be enforced with respect to THC that is found within the parts of *Cannabis* plants that are excluded from the CSA's definition of 'marijuana' or that is not synthetic."  *Id.* at 1018.  Accordingly, the mere presence of naturally occurring THC in a product does not render it a controlled substance so long as it is derived from an excepted part of the

*Cannabis sativa* plant.  *See id.* at 1018-19.  Therefore, the Court denies Plaintiffs' motion for reconsideration.

Defendants' argument is persuasive, however.  Defendants clarify that they dispute that Dixie X contains a resin extracted from a mature hemp stalk.  They submit the affidavit of Stuart Titus, CEO of Medical Marijuana, Inc., who avers that the CBD extract was not produced from the resin of any mature stalks.  ECF No. 97-2 at 2.

Despite having an opportunity to do so, Plaintiffs do not proffer any evidence to show that Dixie X contains synthetic THC or is derived from a non-excepted part of the *Cannabis sativa* plant.  Instead, Plaintiffs proffer supplemental affidavits of Kenneth D. Graham, their toxicology expert, who merely reiterates his opinions about the legality of hemp-based products.  *See* ECF Nos. 112-1, 120.  Those affidavits fail to create a genuine issue of material fact.  *See SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 268 (D. Conn. 2017) ("As a general rule an expert's testimony on issues of law is inadmissible.").

Accordingly, because Plaintiffs have not presented any evidence to show that Dixie X contains either synthetic THC or natural THC derived from marijuana—as the CSA defines that term—Plaintiffs cannot prove their RICO claim to the extent it is premised on the allegation that Dixie X is a controlled substance.  *See Horn*, 383 F. Supp. 3d at 131-32 (discussing RICO standards).

Nevertheless, the Court disagrees with Defendants that the RICO claim should be dismissed.  Plaintiffs premise their RICO claim not only on Defendants' alleged distribution of a controlled substance, but also on Defendants' alleged mail and wire fraud.[3]  *See* ECF No. 1 at 10-

---

[3] Initially, Plaintiffs also alleged that Defendants violated 18 U.S.C. § 1957, but they did not present that theory in their summary judgment materials.  *Compare* ECF No. 1 at 11, *with* ECF No. 60-25, *and* ECF No. 69-26.  Accordingly, that theory has been abandoned.  *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order).

11; ECF No. 2 at 4.  Because the Court concluded that the RICO claim survived summary judgment on the controlled-substance theory, it previously declined to address whether "Defendants also engaged in other predicate acts of racketeering, including mail and wire fraud."  *Horn*, 383 F. Supp. 3d at 132 n.11.  The Court must now address those issues.[4]

Plaintiffs bring their RICO claim under 18 U.S.C. § 1962(c), which "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 72-73 (E.D.N.Y. 2009) (internal quotation marks omitted).  "To establish a civil RICO claim . . . a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation."  *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (internal quotation marks omitted).

"The pattern of racketeering activity must consist of two or more predicate acts of racketeering," *id.*, which must be "related" and must "pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001).  Mail and wire fraud constitute racketeering activity.  18 U.S.C. § 1961(1)(B).  "The mail and wire fraud statutes prohibit the use of those means of communication in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'"  *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 256 (2d Cir. 2004), *rev'd in part and vacated in part on other grounds by Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).  False advertising can constitute mail or wire fraud.  *See, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d

---

[4] The Court confines its analysis to those arguments that the parties raised in their summary-judgment and reconsideration briefing.

525, 539 (S.D.N.Y. 2014) (allegedly false marketing materials could constitute predicate racketeering activities based on mail and wire fraud statutes); *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765 (8th Cir. 1992) (predicate acts of mail and wire fraud existed for civil RICO claim, where defendant falsely advertised his ability to provide commercial financing to prospective customers); *United States v. Andreadis*, 366 F.2d 423 (2d Cir. 1966) (affirming mail and wire fraud convictions of defendant who fraudulently marketed "miracle weight-reducing drug").

The threat of continued criminal activity can be "closed-ended" or "open-ended." *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). "Criminal activity that occurred over a long period of time in the past has closed-ended continuity, regardless of whether it may extend into the future. As such, closed-ended continuity is 'primarily a temporal concept,' and it requires that the predicate crimes extend 'over a substantial period of time.'" *Id.* (internal citations omitted). "[T]his Circuit generally requires that the crimes extend over at least two years." *Id.*

Open-ended continuity requires "criminal activity that by its nature projects into the future with a threat of repetition." *Id.* (internal quotation marks omitted). "Some crimes may by their very nature include a future threat, such as in a protection racket." *Id.* "When the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future. And similarly, criminal activity is continuous when the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful." *Id.* (internal quotation marks and citations omitted).

For substantially the same reasons that Douglas Horn's fraudulent inducement claim survived summary judgment, the Court concludes that Douglas Horn may proceed with his RICO claim based on predicate acts of mail and wire fraud. *See Horn*, 383 F. Supp. 3d at 128-31. There is evidence that Defendants advertised in at least three different media—on their website, in

YouTube videos, and via their customer service representatives—that Dixie X did not contain THC.  *See id.* at 129-30.  There is evidence that these statements were false; "indeed, Defendants' own testing revealed that the product contained detectible amounts of THC."  *Id.* at 129.  Because Defendants tested Dixie X and found that it contained THC, yet advertised to the contrary, there is a basis to conclude that these statements were not mere misstatements or puffery, but part of a scheme to defraud.  Furthermore, as the Court previously reasoned, Defendants had a motive to defraud consumers: "[a] jury could reasonably conclude that, to sell their products, Defendants needed to distinguish Dixie X from its unlawful counterparts; misrepresenting the THC content in the product would go a long way to dispelling consumers' concerns, as it did in Plaintiffs' case."  *Id.* at 130.

In addition, these predicate acts are related and meet the test for open-ended continuity.  Although the racketeering activity occurred during a circumscribed timeframe in 2012, there is sufficient evidence to conclude that Defendants' alleged acts of mail and wire fraud were "the regular way of operating [the] business" even though the business itself was "primarily lawful."  *Reich*, 858 F.3d at 60.  This is not a case where a defendant's scheme targets a particular victim, sets a specific goal, or is otherwise "inherently terminable."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999); *see also Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (no threat of continuing criminal activity where misleading advertising stemmed from "one-time change in pricing policy").  Rather, Defendants falsely advertised Dixie X through a variety of media, targeting consumers nationally.  Their claim that that Dixie X contained no THC was not one-off promotional puffery; it was a fundamental selling point of the product.  In other words, Defendants' false pitch about Dixie X could reasonably be viewed as their regular way of advertising, promoting, and selling the product, and there was no

"obvious ending point" to that scheme. *Alkhatib v. N.Y. Motor Grp., LLC*, No. CV-13-2337, 2015

WL 3507340, at *21 (E.D.N.Y. June 3, 2015). The fact that Defendants later updated their website

to reflect Dixie X's THC content does not undermine this conclusion. This is because "[w]hether

predicate acts these pose a threat of future conduct is evaluated as of the time the acts are committed."

*Id.* at *20.

Accordingly, Defendants are not entitled to summary judgment on Douglas Horn's RICO

claim.[5] But for the same reasons set forth in the prior order, Douglas Horn is also not entitled to

summary judgment on the RICO claim, and Defendants are entitled to summary judgment on

Cindy Harp-Horn's RICO claim. *See Horn*, 383 F. Supp. 3d at 133.

## CONCLUSION

For the reasons discussed above, Defendants' motions for reconsideration (ECF Nos. 97,

106) are GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for

reconsideration (ECF No. 112) is DENIED. The Court's prior order is modified insofar as Douglas

Horn may now proceed with his RICO claim only to the extent it is premised on predicate acts of

wire and mail fraud. He may not proceed with his claim on the theory that Dixie X is a controlled

substance. By separate order, the Court will schedule a status conference to hear from the parties

on the progress of this action.

IT IS SO ORDERED.

Dated: November 21, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[5] As the Court previously noted, Defendants are not precluded from raising issues of authentication and
hearsay in their pretrial motions. *See Horn*, 383 F. Supp. 3d at 131. To the extent Defendants prevail on
their arguments, the Court may revisit whether the RICO claim may proceed to trial. *Id.*

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                          Plaintiffs,
                                                    Case # 15-CV-701-FPG
v.
                                                    DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,


                          Defendants.


## INTRODUCTION

Plaintiffs Douglas J. Horn and Cindy Harp-Horn bring suit against Defendants Medical Marijuana, Inc. ("MMI"), Dixie Elixirs and Edibles ("Dixie LLC"), Red Dice Holdings, LLC ("RDH"), and Dixie Botanicals.[1]  ECF No. 1.  Plaintiffs allege that Defendants engaged in fraud, negligence, and unlawful conduct with respect to the sale and marketing of their hemp-based consumable oil—"Dixie X Dew Drops."  Before the Court are six motions: (1) Plaintiffs' motion for partial summary judgment (ECF No. 60); (2) Defendants MMI and RDH's motion for summary judgment (ECF No. 61); (3) Defendant Dixie LLC's motion for summary judgment (ECF No. 62); (4) Plaintiffs' motion to amend (ECF No. 68); (5) Dixie LLC's motion to strike (ECF No. 71); and (6) Defendants MMI and RDH's motion to strike (ECF No. 74).  The Court resolves all of these motions in this omnibus order.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] In August 2016, the Clerk of Court filed an entry of default against Dixie Botanicals after it failed to appear.  *See* ECF Nos. 22, 28.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material

facts are genuine where the evidence is such that a reasonable jury could return a verdict for the

non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding

whether genuine issues of material fact exist, the court construes all facts in a light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party

"may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am.*

*Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND[2]

This case concerns a product called CBD oil.  CBD is short for "cannabidiol," and it is one

of the "unique molecules" found in the *Cannabis sativa* plant.  ECF No. 61-8 at 18.  The *Cannabis*

*sativa* plant is better known as the plant from which marijuana is derived.  But it is also the species

of plant from which industrial hemp is derived.  The Eighth Circuit provides a helpful description:

> Both industrial hemp and the drug commonly known as marijuana derive from the
> plant designated *Cannabis sativa* L. In general, drug-use cannabis is produced from
> the flowers and leaves of certain strains of the plant, while industrial-use cannabis
> is typically produced from the stalks and seeds of other strains of the plant. All
> cannabis plants contain tetrahydrocannabinol (THC), the substance that gives
> marijuana its psychoactive properties, but strains of the plant grown for drug use
> contain a higher THC concentration than those typically grown for industrial use.

*Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 955 (8th Cir. 2009) (emphasis added).  In

other words, the distinction is one of degree—while "the marijuana plant and industrial hemp plant

come from the same botanical species," the "hemp plant has been crossbred to have low

---

[2] Generally, when cross-motions for summary judgment are filed, the court "must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party."  *Physicians Comm. for Responsible Medicine v. Leavitt*, 331 F. Supp. 2d 204, 206 (S.D.N.Y. 2004).  However, for purposes of describing the background of the case, the Court describes the facts as taken in the light most favorable to Plaintiffs, unless otherwise noted.

concentrations of THC." Shelly B. DeAdder, *The Legal Status of Cannabidiol Oil and the Need for Congressional Action*, 9 BIOPLR 68, 72 (2015). CBD can be extracted from both the marijuana and hemp varieties of *Cannabis sativa*. *See id.* at 72 & n.34.

Products containing CBD have become hot commodities in recent years, and sales are "projected to grow tremendously." W. Michael Schuster & Jack Wroldsen, *Entrepreneurship and Legal Uncertainty: Unexpected Federal Trademark Registrations for Marijuana Derivatives*, 55 AMBLJ 117, 135 (2018). Advocates claim that CBD provides numerous health benefits, particularly in the area of pain management. *See id.* at 128-29; *see also* ECF No. 61-8 at 19.

The product at issue here is a hemp-derived CBD oil called "Dixie X Dew Drops" (hereinafter "Dixie X"). Cindy Orser, Defendants' scientific expert, explains how these products are generally created. There is an initial "extraction step," where hemp is combined with a solvent like ethanol, butane, pressurized $CO_2$, or propane. ECF No. 61-8 at 79-80. This process yields a CBD extract, which is then distilled to remove plant compounds, solvents, THC, and other materials. *Id.* at 83. The intended end-product is a pure CBD concentrate that can then be infused into a consumable final product.

Like other CBD oil products, Dixie X contains CBD that is "isolate[d] and extract[ed]" from hemp plants. ECF No. 60-8 at 1; *see also* ECF No. 69-4 at 12-13. The resulting CBD is then "infuse[d] . . . into [a] line of hemp products." ECF No. 60-8 at 1. The label on Dixie X indicates that it contains "[p]ure glycerin, hemp whole plant extract, CBD extract derived from medicinal hemp, [and] cinnamon extract." ECF No. 60-15 at 1 (asterisk omitted). Importantly, despite the extraction and distillation process, Dixie X contains a detectible, albeit small, amount of THC. *See, e.g.*, ECF No. 60-14.

3

All three defendants played a role in the sale of Dixie X. MMI and Dixie LLC entered into a joint venture to produce, distribute, and sell Dixie X. *See* ECF No. 69-2 at 1. They formed RDH for that purpose in April 2012. *Id.* MMI would hold a 60% ownership stake in RDH, while Dixie LLC would hold a 40% stake. *See* ECF No. 68-2 at 106. Tripp Keber, who was also Dixie LLC's managing member, would act as the manager of RDH.[3] *Id.* at 2. In practice, it appears that MMI provided financial support for the venture, Dixie LLC manufactured Dixie X, and RDH was responsible for selling the product. *See* ECF No. 61-1 ¶¶ 3-5. There is also a question of fact as to whether Keber acted as a director of MMI, though the exact dates of his tenure are unclear from the record. *Compare* ECF No. 61-11 ¶ 12, *with* ECF No. 68-2 at 79.

In September 2012, Plaintiffs purchased a 500 mg bottle of Dixie X. They had researched the product from various sources, and they hoped it would relieve the pain and inflammation Douglas was then suffering from as a result of a motor vehicle accident.[4] Plaintiffs claimed to have relied on four sources in deciding to purchase Dixie X.

Plaintiffs first learned about Dixie X in an issue of "High Times" magazine—a periodical dedicated to marijuana culture and news. In an article titled "High & Healthy" by Elise McDonough, there was the following writeup:

> CBD for Everyone!
>
> Using a proprietary extraction process and a strain of high-CBD hemp grown in a secret, foreign location, Colorado's Dixie Elixirs and Edibles now offers a new product line called Dixie X, which contains 0% THC and up to 500 mg of CBD. This new CBD-rich medicine will be available in several forms, including a tincture, a topical and in capsules. Promoted as "a revolution in medical hemp-powered wellness," the non-psychoactive products will first roll out in Colorado

---

[3] "Tripp" appears to be the nickname of Vincent M. Keber, III. *See* ECF No. 69-2 at 2 (stating that "Vincent M. Keber, III" acted as manager of RDH); ECF No. 69-4 at 25 (stating that "Tripp Keber" is "President" of RDH).

[4] For ease of reference, the Court refers to Plaintiffs by their first names.

MMCs (medical marijuana centers), with plans to quickly expand outside the medical marijuana market. "It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado—and ultimately all individuals who are interested in utilizing CBD for medicinal benefit—will be able to have access to it," says Tripp Keber, Dixie's managing director. "We are importing industrial hemp from outside the US using an FDA import license—it's below federal guidelines for THC, which is 0.3%—and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal law as it's related to the Dixie X [hemp-derived] products."

ECF No. 61-7 at 42.

After reviewing the article, Plaintiffs decided to conduct further research. They watched two YouTube videos of interviews between podcasters and a person who identifies himself as Tripp Keber (the "YouTube interviews").[5] In these videos, Keber stated that Dixie X did not contain THC.[6]

Plaintiffs also reviewed an FAQ on the Dixie X website, which provided further information on the product:

**Is CBD from hemp legal?**

Our revolutionary Hemp oil cannabidiol (CBD) wellness products are legal to consume both here in the U.S. and in many countries abroad. The United States currently considers industrial hemp products to be legal as long as they are derived from industrial hemp and not from any part of the plants categorized . . . as marijuana. Dixie x's parent company Medical Marijuana, Inc., is a publicly traded company . . . that does not grow, sell or distribute any substances that violate United States Law or the controlled substance act. . . . .

**What is the difference between CBD from hemp and CBD from medical cannabis?**

---

[5] Plaintiffs cite a third YouTube video in their materials, but it appears that this video was posted on YouTube after Plaintiffs purchased Dixie X. *See* ECF No. 60-1 ¶ 7(c). The Court therefore disregards that video.

[6] Plaintiffs failed to identify with specificity the times at which Keber made the relevant statements in the YouTube videos. The Court did not exhaustively review the YouTube videos, but only reviewed them in part to verify that Keber made the alleged statements. *Cf.* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party to cite "particular parts of materials in the record" when supporting factual positions).

> While the two plants are botanically related, our hemp contains no THC . . . . Medical cannabis contains THC and may provide relief from various ailments, however, with a psychotropic effect.

ECF No. 60-8 at 1-2.

Finally, Cindy called a "1-800" number associated with Dixie X and spoke to a customer service representative. ECF No. 61-6 at 88-89. The representative confirmed that Dixie X contained "zero percent THC." *Id.* at 91.

After reviewing all of this information, Plaintiffs decided to purchase Dixie X. On September 17, 2012, Cindy ordered a 500mg tincture of Dixie X through the Dixie X website and had it delivered to Plaintiffs' home in Lockwood, NY. Shortly thereafter, Douglas consumed the product.

In October 2012, as part of its normal practice, Douglas's employer, Enterprise Trucking, required that he submit to a random drug test. A few days after the drug test, Enterprise notified Douglas that he had tested positive for THC. At 29 ng/mL, Douglas's sample contained almost double the "cutoff" concentration of THC. Enterprise thereafter terminated Douglas's employment. Cindy, who worked with Douglas at Enterprise Trucking, resigned from the company because she believed it would be unsafe to work alone.

Soon thereafter, Plaintiffs purchased a second bottle of Dixie X to determine whether it had caused the positive test result. They sent the bottle to EMSL Analytical, Inc., for testing. Testing confirmed that Dixie X contained THC.

In August 2015, Plaintiffs brought this action, alleging that Dixie X caused Douglas's positive drug test and thereby caused him to lose his employment. Plaintiffs raise nine claims against Defendants:

1. Deceptive business practices and false advertising under New York General Business Law §§ 349, 350;

2. Fraudulent inducement;

3. Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO");

4. Strict Products Liability;

5. Breach of Contract;

6. Breach of Express Warranty;

7. Unjust Enrichment;

8. Negligence; and

9. Negligent Infliction of Emotional Distress.

ECF No. 1.

Before turning to the motions, the Court discusses a legal issue that is foundational to this litigation: whether, in 2012, Dixie X constituted a controlled substance under the federal Controlled Substances Act ("CSA"). *See* 21 U.S.C. § 801 *et seq.* Plaintiffs argue that Dixie X is a controlled substance because it contains THC. Defendants counter that Dixie X is not a controlled substance because it is derived from lawfully imported hemp and contains less than .3% THC. This percentage is allegedly the maximum amount of THC that an imported industrial hemp plant can lawfully contain.

Taking the facts in the light most favorable to Plaintiffs, the Court agrees that, in 2012, Dixie X constituted a controlled substance under the CSA. But it reaches this conclusion for reasons different than those articulated by Plaintiffs.

Marijuana is a controlled substance under the CSA, and therefore, as a general matter, it is unlawful to distribute or dispense it. *See* 21 U.S.C. §§ 802(16), 841(a)(1). In 2012, the CSA defined marijuana as follows:

> The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2012). Breaking this definition down, the Court notes that marijuana was broadly defined to include "all parts" of the *Cannabis sativa* plant. The industrial hemp plant fell within this definition because it is a variety of the *Cannabis sativa* plant. *See, e.g.*, *Monson*, 589 F.3d at 961-62; *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1085 n.2 (9th Cir. 2003) [hereinafter "*Hemp I*"].

As the statute made clear, however, the definition of marijuana contained several exceptions. Excluded from the definition of marijuana were certain parts of the plant that are incapable of germination: (1) the mature stalks of the *Cannabis sativa* plant, (2) fiber produced from the stalks of the *Cannabis sativa* plant, (3) oil or cake made from the seeds of the *Cannabis sativa* plant, (4) any compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake (excluding resin extracts), and (5) the sterilized seed of the *Cannabis sativa* plant. 21 U.S.C. § 802(16) (2012).

It bears emphasizing that resin extracted from mature hemp stalks was not excepted from the definition of marijuana. *See Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 357 F.3d 1012, 1018 (9th Cir. 2004) (internal quotation marks omitted) [hereinafter "*Hemp II*"]. Congress apparently included this "exception to the exception" for resin extract "out of concern that the

'active principle' in marijuana, later understood to be THC, might be derived from nonpsychoactive hemp and so be used for psychoactive purposes." *Id.* at 1018 n.5.

A few conclusions may be drawn from the definition of marijuana as it stood in 2012. First, the industrial hemp plant came within the statutory definition of marijuana despite its low THC concentration. At the time, the CSA made no distinction on the basis of THC concentration. *See Monson*, 589 F.3d at 961 ("[M]arijuana is defined to include *all* Cannabis sativa L. plants, regardless of THC concentration."); *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 7-8 (1st Cir. 2000).

Second, and perhaps counterintuitively, certain derivatives of the industrial hemp plant were not included in the definition of marijuana—and therefore were not unlawful under the CSA—*even if* they contained trace amounts of THC. The Ninth Circuit reached this conclusion in a pair of cases from the early 2000s. *See Hemp I*, 33 F.3d at 1091; *Hemp II*, 357 F.3d at 1018. At issue in those cases were the validity of DEA rules that would have banned the possession and sale of products made from sterilized hemp seed, hemp-seed oil, and hemp-seed cake. *See Hemp I*, 333 F.3d at 1085; *Hemp II*, 357 F.3d at 1013-14. These products contain "minuscule trace amounts of THC" but do not have psychoactive effects. *Hemp I*, 333 F.3d at 1085. The Ninth Circuit observed that these products fit "within the plainly stated exception[s] to the CSA definition of marijuana." *Hemp II*, 357 F.3d at 1017. The legislative history also indicated that Congress was aware that "hemp seed and oil contain small amounts of the active marijuana ingredient in marijuana, but that the active ingredient was not present in sufficient proportion to be harmful." *Hemp I*, 333 F.3d at 1089. Thus, Congress "knew what it was doing" when it chose to exempt certain derivatives from the definition of marijuana notwithstanding the presence of trace amounts of THC. *Hemp II*, 357 F.3d at 1018.

Third, the exemption for certain hemp-based products containing naturally-occurring THC did not extend to resin extracted from the plant. As discussed above, there was an explicit "exception to the exception" for such resins. *See id.* at 1018 n.5. In practical effect, this means that the legality of a hemp-based product turned on the manner in which it is produced: an oil made from hemp seeds was exempt and lawful, while a resin extracted from hemp stalks was not exempt and was unlawful. *See* 21 U.S.C. § 802(16) (2012).

The legal landscape has since shifted. In 2014, Congress passed the Agricultural Act of 2014. *See* 7 U.S.C. 5940. This legislation legalized industrial hemp cultivation under restricted conditions relating to research. Then, in 2018, as part of a more extensive legalization of industrial hemp production, the CSA was amended to exclude hemp from the definition of marijuana. *See* 21 U.S.C. § 802(16)(B)(i). Hemp is defined as the "Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1). Thus, it appears that the CSA now excludes from the definition of marijuana *any* part, derivative, or extract of the *Cannabis sativa* plant if its THC concentration falls below that threshold level.

For purposes of this litigation, however, the question is whether Dixie X constituted a controlled substance in 2012. Based on the plain language of the statute, and taking the facts in the light most favorable to Plaintiffs, the Court answers that question in the affirmative. Dixie X is a mixture that contains extract from the *Cannabis sativa* plant. Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a "resin extracted from" the *Cannabis sativa* plant. 21 U.S.C. 802(16) (2012) (defining marijuana to include "the resin extracted from any part" of the *Cannabis sativa* plant, as well as "every

10

compound" or "mixture" of the resin).  And Dixie X cannot come within any exception because resin extracts are explicitly excluded.  *See id.*; *Hemp II*, 357 F.3d at 1018 n.5.  In 2012, the CSA granted no exceptions to hemp derivatives on the basis of low THC concentration.  Accordingly, Dixie X constituted a controlled substance under the CSA, and it was therefore unlawful to "knowingly or intentionally . . . manufacture, distribute, or dispense" it.  21 U.S.C. § 841(a)(1).

## DISCUSSION

Before the Court are six motions.  Substantively, Defendants move for summary judgment on all claims,[7] and Plaintiffs move for partial summary judgment on the issue of liability on the New York General Business Law claims and the RICO violation.  Procedurally, Plaintiffs have filed a motion to amend, and Defendants have filed two motions to strike certain evidence Plaintiffs submitted in connection with the motions for summary judgment.  The Court will address the motion to amend and motions to strike before proceeding to the merits.

## I.  Motion to Amend

Plaintiffs move to amend their complaint in three respects.  First, they argue that Defendant "Dixie Elixirs and Edibles" is misnamed and should be corrected to "Dixie Holdings, LLC a/k/a Dixie Elixirs."  ECF No. 68-1 at 2.  Second, Plaintiffs seek leave to withdraw three of their

---

[7] Defendants MMI and RDH also move for judgment on the pleadings under Rule 12(c).  The Court finds such motion untimely and declines to address it.  Under Rule 12(c), a motion for judgment on the pleadings must be made after pleadings are closed but "early enough not to delay trial."  Fed R. Civ. P. 12(c).  Here, Defendants filed their answer in February 2016, and the deadline to amend pleadings was in March 2017. Defendants therefore had an extensive period in which to challenge Plaintiffs' complaint, but they waited more than one year after the later deadline, when discovery had already been completed, to raise their arguments.  Under these circumstances, the Court concludes that consideration of Defendants' motion would delay trial—even though a trial date has not been set—insofar as it would require further litigation on issues tangential to the merits and would prevent timely resolution of those claims for which summary judgment is inappropriate.  *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement.").

briefing on whether the printouts of the website FAQs can be authenticated.   *See, e.g.*, *United States v. Gasperini*, 894 F.3d 482, 489-90 (2d Cir. 2018) (discussing issue); *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14 Civ. 5213, 2017 WL 3669625, at *3 n.7 (S.D.N.Y. Aug. 8, 2017) (same).   Likewise, while Defendants argue that Plaintiffs failed to disclose the YouTube videos in discovery, they do not cite any specific discovery request that Plaintiffs did not adequately answer or supplement.   Consequently, the Court concludes that these issues are better raised in the context of pretrial motions than on summary judgment.   To the extent Defendants prevail on their arguments, the Court may revisit whether the fraudulent inducement claim may proceed to trial.

In sum, Plaintiffs' fraudulent inducement claim is viable as to Douglas's claim for damages resulting from Defendants' misrepresentation that Dixie X did not contain THC.   Defendants are otherwise entitled to summary judgment on the claim.

### c.   RICO

Plaintiffs and Defendants move for summary judgment on the RICO claim.   Plaintiffs argue that all of the elements are satisfied as a matter of law based on the record evidence.   Defendants counter that there is insufficient evidence to prove that they engaged in a pattern of racketeering activity.   The Court concludes that there are genuine issues of material facts that preclude summary judgment in either side's favor.

Plaintiffs bring their RICO claim under 18 U.S.C. § 1962(c).[9]   That provision "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities

---

[9] In their Civil Rico Statement, Plaintiffs asserted violations of subsections (a), (b), (c), and (d) of Section 1962.   Plaintiffs do not argue in their summary judgment briefing that they have viable claims under any subsection besides subsection (c).   *See* ECF No. 60-25 at 5-7.   The Court limits its analysis accordingly. *See Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012).

of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 72-73 (E.D.N.Y. 2009) (internal quotation marks omitted). "To establish a civil RICO claim . . . a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (internal quotation marks omitted).

"The pattern of racketeering activity must consist of two or more predicate acts of racketeering," *id.*, which must be "related" and must "pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001). Racketeering activity is defined to include "any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . . punishable under any law of the United States." 18 U.S.C. § 1961(1)(D). This definition extends to the cultivation, manufacture, and sale of marijuana. *See, e.g.*, *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (operation of marijuana cultivation facility "necessarily would involve *some* racketeering activity").

In this case, Plaintiffs have provided sufficient evidence to show a pattern of racketeering activity. Specifically, Douglas avers that he purchased two bottles of Dixie X—a controlled substance constituting marijuana under the CSA—from Defendants. These two transactions constitute two predicate acts of racketeering activity.[10] *See* 18 U.S.C. § 1961(1)(D). This is so even if Defendants subjectively believed that Dixie X was not a controlled substance, as such belief

---

[10] To be sure, each defendant played a different role in the venture, and it appears that RDH had the responsibility of selling and distributing Dixie X to consumers. Nevertheless, liability under RICO also extends to those who have "some part in directing" the affairs of the enterprise. *DeFalco*, 244 F.3d at 309.

would not preclude a finding that they violated the CSA.  It is unlawful "for any person knowingly or intentionally" to distribute or dispense a controlled substance.  21 U.S.C. § 841(a)(1).  A defendant satisfies the knowledge requirement if he "knew he possessed a substance listed on the schedules" or, alternatively, if he "knew the identity of the substance he possessed" whether or not he knew it was listed on the schedules.  *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015).  Here, there are sufficient facts from which it can be inferred that Defendants knew the identity of the substance they possessed—a mixture containing a resin extract derived from the *Cannabis sativa* plant.  In 2012, that substance fell within the definition of marijuana under the CSA.  21 U.S.C. § 802(16) (2012); *see also McFadden*,135 S. Ct. at 2304 ("[I]gnorance of the law is typically no defense to criminal prosecution.").

These transactions also meet the relatedness and continuity requirements.  *See DeFalco*, 244 F.3d at 320.  The transactions are related, in that the sale of these controlled substances was the business of Defendants' venture.  *See Reich v. Lopez*, 858 F.3d 55, 61-62 (2d Cir. 2017).  Defendants' activities also presented a threat of continued criminal activity.  The sale of hemp-based CBD products was no mere aberration of unlawful conduct: it was the *raison d'être* of Defendants' venture.  *See id.* at 60 (stating that criminal activity poses a continuous threat when the "predicate acts were the regular way of operating that business").  Indeed, in a June 2012 SEC filing, MMI indicated that it intended to invest heavily in RDH to "expand[] its operations state by state" and to "rais[e] additional capital to expand the operations of the company."  ECF No. 69-4 at 32.  Given the inherent illegality of the product and Defendants' intent to continue and expand those operations, Plaintiffs have provided sufficient evidence to prove a pattern of racketeering

activity.[11]  Therefore, Defendants are not entitled to summary judgment based on the arguments they raise.

But Plaintiffs are not entitled to summary judgment either.  There is a genuine issue of material fact on one necessary element: whether Defendants' conduct proximately caused Douglas's injuries.  "[A] plaintiff suing under RICO must establish that the RICO offense was the 'proximate cause' of the plaintiff's injuries."  *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018).  "Proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged, and a link that is too remote, purely contingent, or indirect is insufficient."  *Id.* (internal quotation marks, ellipses, brackets omitted).

Here, there is a genuine dispute of material fact as to whether Dixie X caused Douglas's positive drug test and thereby caused him to lose his job.  Plaintiffs aver that Douglas had not used marijuana "for the 14 years [he] was a trucker," ECF No. 60-6 ¶ 18, and Plaintiffs' expert opines that Douglas's positive drug test resulted from his "daily use of Dixie X" in the days leading up to the test.  ECF No. 60-21 at 5.

Defendants dispute this conclusion.  Although Defendants do not contend that Douglas smoked marijuana or otherwise consumed a THC-laden product besides Dixie X, Defendants' expert asserts there is insufficient evidence to make a scientifically valid connection between Douglas's consumption of Dixie X and his positive drug test.  The expert notes that there are many variables that affect whether and to what extent THC will stay in one's system, including dosage, frequency of use, individual rates of absorption and metabolism, etc.  ECF No. 61-9 at 4.  The expert opines that the absence of evidence on two relevant variables—the amount of THC contained in the *specific* bottle of Dixie X which Douglas consumed, and the exact amount of

---

[11] In light of this conclusion, the Court need not assess whether, as Plaintiffs claim, Defendants also engaged in other predicate acts of racketeering, including mail and wire fraud.  *See* ECF No. 2 at 3-4.

Dixie X that Douglas consumed prior to his drug test—renders it "impractical to calculate . . . a range of expected contaminating THC metabolite" in Douglas's urine sample at the time of his test. *Id.* at 4-5. And, as a result, "no one can opine with any degree of scientific confidence that it was the Dixie product used by [Douglas] that caused him to fail his" drug test. *Id.* at 5. The Court may not resolve this factual dispute on summary judgment. *See Scanner Techs. Corp. v. Icos Vision Sys. Corp., N.V.*, 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment.").

The Court does conclude that Plaintiffs are not entitled to recover under RICO for any damages Cindy sustained. The link between Cindy's pecuniary losses and Defendants' racketeering activity is "too remote" and "indirect" to satisfy the requirement of proximate causation. *Empire Merchs., LLC*, 902 F.3d at 141. Defendants' conduct did not directly cause Cindy to terminate her employment; it was only because Douglas was terminated that Cindy suffered any harm as a result of Defendants' conduct. *See id.* (stating that a court should "rarely go beyond the first step when assessing causation under civil RICO" (internal quotation marks omitted)). Such indirect, derivative injuries are not cognizable under civil RICO. *See id.* at 141-44.

Because genuine issues of material facts exist as to Plaintiffs' RICO claim, summary judgment is inappropriate in their favor. Defendants are entitled to summary judgment on the RICO claim only as to Cindy's claim for damages.

### d. Strict Products Liability, Negligence, and Negligent Infliction of Emotional Distress Claims

Plaintiffs argue that Defendants are liable under theories of strict products liability, negligence, and negligent infliction of emotional distress. The first two of these claims fail because

uncorroborated testimony of upsetness will not." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 376 (E.D.N.Y. 2012) (internal brackets and quotation marks omitted).

In this case, Plaintiffs' situation does not fall into any of the special circumstances for which a claim is recognized. *See Vaughn v. Am. Multi Cinema, Inc.*, No. 09 Civ. 8911, 2010 WL 3835191, at *5 (S.D.N.Y. Sept. 13, 2010) (termination of employment not a special circumstance giving rise to claim for negligent infliction of emotional distress). Furthermore, Plaintiffs offer no evidence to otherwise establish a guarantee of genuineness: they do not even provide evidence from Douglas concerning the degree to which he suffered psychological trauma because of these events, let alone evidence from a medical or valid corroborating source. *See Luna*, 676 F. Supp. 2d at 208 (plaintiff, who had been served chicken dinner with "part of a lizard" in it, had viable claim for emotional distress, where plaintiff proffered medical testimony to support claim of psychological injury). Under these circumstances, Plaintiffs do not have a viable claim for negligent infliction of emotional distress.

Accordingly, without cognizable personal, property, or psychological injury, Plaintiffs' claims for negligence, strict products liability, and negligent infliction of emotional distress fail. Defendants are entitled to summary judgment on these claims.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to amend (ECF No. 68) is GRANTED IN PART and DENIED IN PART. Defendants' motions to strike (ECF Nos. 71, 74) are DENIED. Plaintiffs' motion for partial summary judgment (ECF No. 60) is DENIED. Defendants' motions for summary judgment (ECF No. 61, 62) are GRANTED IN PART and DENIED IN PART.

As a result of these rulings, the only surviving claims are Douglas's claims for fraudulent inducement and civil RICO. All other claims against Defendants are dismissed. The Clerk of

Court is directed to amend the name of Defendant "Dixie Elixirs and Edibles" to "Dixie Holdings, LLC a/k/a Dixie Elixirs." By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action.

IT IS SO ORDERED.

Dated: April 17, 2019
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court