# 22-349

## In the
## United States Court of Appeals
## For the Second Circuit



DOUGLAS J. HORN,

*Plaintiff-Appellant,*

- and -

CINDY HARP-HORN,

*Plaintiff,*

– v. –

MEDICAL MARIJUANA, INC., DIXIE HOLDINGS, LLC,
AKA DIXIE ELIXIRS and RED DICE HOLDINGS, LLC,

*Defendants-Appellees,*

- and -

DIXIE BOTANICALS,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## APPENDIX

MURA LAW GROUP, PLLC
*Attorneys for Defendants-Appellees*
 *Medical Marijuana, Inc. and*
 *Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800

THE LINDEN LAW GROUP, P.C.
*Attorneys for Plaintiff-Appellant*
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532

MAZZOLA LINDSTROM LLP
 *Attorneys for Defendant-Appellee*
 *Dixie Holdings, LLC,*
 *AKA Dixie Elixirs*
1350 Avenue of the Americas,
2nd Floor
New York, New York 10019
(646) 250-6666

i

# Table of Contents

**Page**

Docket Entries ............................................................. A-1

Complaint and Jury Demand, Dated August 5, 2015 ................... A-29

    Exhibit A to Complaint -
    Magazine Advertisement for an Industrial Hemp Product
    Called "Dixie X" ..................................................... A-47

Plaintiffs' Civil Rico Statement, Filed August 6, 2015 ................ A-48

Answer and Affirmative Defenses by Defendant
    Dixie Elixirs and Edibles, Dated October 23, 2015 .................. A-57

Answer and Affirmative Defenses by Defendants
    Medical Marijuana, Inc. and Red Dice Holdings, LLC,
    Dated February 19, 2016 ........................................... A-70

Decision and Order of Honorable Frank P. Geraci, Jr.,
    Dated April 17, 2019 ............................................... A-86

Decision and Order of Honorable Frank P. Geraci, Jr.,
    Dated October 2, 2019 ............................................. A-115

Decision and Order of Honorable Frank P. Geraci, Jr.,
    Dated November 21, 2019 ......................................... A-119

Decision and Order of Honorable Frank P. Geraci, Jr.,
    Dated September 16, 2020 ......................................... A-129

Dixie Holdings, LLC's Motion in *Limine* to
    Preclude Testimony of Mark P. Zaporowski, Ph.D.,
    Dated July 22, 2021 ............................................... A-135

    Attachment to Motion in *Limine* -
    Plaintiff's Final Pre-Trial Order Compliance,
    Dated June 22, 2021 ............................................... A-142

Letter from Jeffrey Benjamin to Honorable
    Jonathan W. Feldman, Dated July 26, 2021 ...................... A-145

Memorandum of Law in Opposition to Motion,
    Dated July 29, 2021 ............................................... A-147

    Exhibit A to Memorandum of Law -
    Economic Loss Valuation Report of Mark P. Zaporowski,
    Ph.D., Regarding Douglas Horn, Dated August 17, 2020 ........ A-165

ii

**Page**

Memorandum of Law in Reply to Motion in *Limine*,
Dated August 2, 2021 ............................................................... A-172

Reply Memorandum in Response to Plaintiffs'
Opposition to Motion, Dated August 2, 2021 .......................... A-189

Medical Marijuana, Inc. and Red Dice Holdings, LLC's
Memorandum of Law in in Response to Court's
Request for Briefing on Supplemental Jurisdiction,
Dated August 10, 2021 ............................................................. A-205

Dixie Holdings, LLC's Memorandum of Law in Response
to Court's Request for Briefing on Supplemental
Jurisdiction, Dated August 10, 2021 ......................................... A-217

Decision and Order of Honorable Jonathan W. Feldman,
Dated September 14, 2021 ........................................................ A-221

Notice of Motion for Granting Final Order and Judgment,
Dated November 18, 2021 ........................................................ A-251

Memorandum of Law in Support of Motion,
Dated November 19, 2021 ........................................................ A-252

Medical Marijuana, Inc. and Red Dice Holdings, LLC's
Memorandum of Law in Response to Plaintiff's Motion,
Dated November 29, 2021 ........................................................ A-263

Decision and Order of Honorable Jonathan W. Feldman,
Dated January 20, 2022 ............................................................ A-272

Interim Judgment of The United States District Court,
Western District of New York, Dated January 25, 2022 .......... A-284

Notice of Appeal, Dated February 16, 2022 ................................. A-285

## A-1

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,CASREF,CONSENT,MEDIATION

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:15-cv-00701-JWF

| | |
|---|---|
| Horn, et al v. Medical Marijuana, Inc., et al | Date Filed: 08/06/2015 |
| Assigned to: Retired Mag Jdg JRS Jonathan W Feldman | Jury Demand: Plaintiff |
| Cause: 18:1962 Racketeering (RICO) Act | Nature of Suit: 470 Racketeer/Corrupt Organization |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Douglas J. Horn**        represented by   **Jeffrey M. Benjamin**
Kupillas Unger & Benjamin LLP
1 Linden Place
Suite 410-A
Great Neck, NY 11021
212-655-9536
Fax: 718-425-0692
Email: jbenjamin@nyfraudlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank T. Housh**
70 Niagara Street
Buffalo, NY 14202
716-362-1128
Fax: 716-362-1150
Email: frank@houshlaw.com
*TERMINATED: 06/26/2017*

**Plaintiff**

**Cindy Harp-Horn**        represented by   **Jeffrey M. Benjamin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank T. Housh**
(See above for address)
*TERMINATED: 06/26/2017*

V.

**Defendant**

**Medical Marijuana, Inc.**        represented by   **Roy A. Mura**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square

A-2

Buffalo, NY 14203
716-855-2800
Fax: 716-855-2816
Email: roy.mura@muralaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Solomon Gvertz**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716-855-2800
Fax: 716-855-2816
Email: daniel.gvertz@muralaw.com
*TERMINATED: 01/08/2021*

**Eric T. Boron**
Hurwitz Fine P.C.
1300 Liberty Building
Buffalo, NY 14202
716-849-8900
Fax: 716-855-0874
Email: eric.boron@muralaw.com
*TERMINATED: 05/16/2018*

**Scott David Mancuso**
Mura & Storm, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716 855-2800
Fax: 716 855-2816
Email: scott.mancuso@muralaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dixie Holdings, LLC**          represented by **Jean-Claude Mazzola**
*also known as*                                   Mazzola Lindstrom, LLP
Dixie Elixirs                                     1350 Avenue of the Americas
                                                 2nd Floor
                                                 New York, NY 10019
                                                 646-250-6666
                                                 Email: jeanclaude@mazzolalindstrom.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Wendy J. Lindstrom**
Messner Reeves LLP
805 Third Ave
18th Floor
New York, NY 10022
646-663-1853
Fax: 646-663-1895

A-3

Email: wlindstrom@messner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hanoch Sheps**
Mazzola Lindstrom LLP
1350 Avenue of the Americas, 2nd Fl.
New York, NY 10019
201-696-6881
Email: hanoch@mazzolalindstrom.com
*ATTORNEY TO BE NOTICED*

**Jean E. Smith-Gonnell**
Messner Reeves LLP
1430 Wynkoop Street
Suite 300
Denver, CO 80202
303-623-1800
Fax: 303-623-0552
Email: jgonnell@messner.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
Mazzola Lindstrom, LLP
1350 Avenue of the Americas
2nd Floor
New York, NY 10019
646-813-4345
Email: richardlerner@msn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Red Dice Holdings, LLC.**          represented by   **Roy A. Mura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Solomon Gvertz**
(See above for address)
*TERMINATED: 01/08/2021*

**Eric T. Boron**
(See above for address)
*TERMINATED: 05/16/2018*

**Scott David Mancuso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dixie Botanicals**

A-4

| Date Filed | # | Docket Text |
|---|---|---|
| 08/06/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0209-2334467.), filed by Douglas Horn, Cindy Harp-Horn. (Attachments: # 1 Exhibit Advertisement) (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 2 | RICO STATEMENT by Cindy Harp-Horn, Douglas Horn. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 3 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 4 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/06/2015 | 5 | Original Summons Filed. (Benjamin, Jeffrey) (Entered: 08/06/2015) |
| 08/07/2015 | | E-Filing Notification: Attorney is directed to e-file a civil cover sheet using the continuation of exhibits event found under responses and replies re 1 COMPLAINT (Benjamin, Jeffrey) (SG) (Entered: 08/07/2015) |
| 08/07/2015 | 6 | CONTINUATION OF EXHIBITS by Cindy Harp-Horn, Douglas Horn. to 1 Complaint *Civil Action Sheet* filed by Cindy Harp-Horn, Douglas Horn. (Benjamin, Jeffrey) (Entered: 08/07/2015) |
| 08/11/2015 | | Case Assigned to Hon. Frank P. Geraci, Jr.. (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution (DLC) (Entered: 08/11/2015) |
| 08/11/2015 | 7 | Summons Issued as to Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: #(1) Summon II, #(2) Summon III.)(DLC) (Entered: 08/11/2015) |
| 08/11/2015 | | E-Filing Notification: No summon submitted for Dixie Botanicals. (DLC) (Entered: 08/11/2015) |
| 09/25/2015 | 8 | STIPULATION *To Extend Time to Respond* by Dixie Elixirs and Edibles. (Lindstrom, Wendy) (Entered: 09/25/2015) |
| 09/29/2015 | | ATTENTION CORPORATION PLAINTIFFS/DEFENDANTS: All Corporate Disclosure Statements pursuant to Fed. R. Civ. P. 7.1 (b) are to be filed within seven (7) days of this notice. (KLH) (Entered: 09/29/2015) |
| 10/23/2015 | 9 | ANSWER to 1 Complaint by Dixie Elixirs and Edibles.(Lindstrom, Wendy) (Entered: 10/23/2015) |
| 10/23/2015 | 10 | Corporate Disclosure Statement by Dixie Elixirs and Edibles. (Lindstrom, Wendy) (Entered: 10/23/2015) |
| 02/19/2016 | 11 | ANSWER to 1 Complaint by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Certificate of Service)(Mura, Roy) (Entered: 02/19/2016) |
| 02/19/2016 | 12 | Corporate Disclosure Statement by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 02/19/2016) |

| 02/22/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution(SG) (Entered: 02/22/2016) |
|---|---|---|
| 02/25/2016 | 13 | ORDER REFERRING CASE to Hon. Hugh B. Scott, United States Magistrate Judge, for all pretrial matters excluding dispositive motions. The parties are encouraged to consider consenting to jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Consent forms are available from the chambers of the Magistrate Judge or the office of the Clerk of the Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/25/2016. (MC) (Entered: 02/25/2016) |
| 02/25/2016 | 14 | ORDER TO SHOW CAUSE: Plaintiff is hereby Ordered to Show Cause, in writing and before March 4, 2016, why this case should not be dismissed as against Defendant Dixie Botanicals under Fed. R. Civ. P. 4(m) for failure to effect service within 120 days. Failure to comply with this Order will result in the dismissal of this action as against Dixie Botanicals. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/25/16. (SCE) (Entered: 02/25/2016) |
| 02/26/2016 | 15 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT**<br><br>**TEXT OF THE ORDER**<br><br>This case has been referred to the undersigned for pretrial proceedings. A scheduling conference will be held on **4/13/2016 at 10:30 AM,** in the courtroom of the undersigned at 2 Niagara Square, Buffalo, New York.<br><br>PRIOR TO THE SCHEDULING CONFERENCE, THE PARTIES ARE DIRECTED TO COMPLY WITH THE REQUIREMENTS OF RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE. This means that, at a minimum,<br><br>(1) the parties are to have exchanged initial disclosures as required by Rule 26(a)(1);<br><br>(2) the parties are to have met or conferred as required under Rule 26(f); and<br><br>(3) the parties are to have filed a proposed discovery plan at least seven (7) days prior to the scheduling conference as also required by Rule 26(f).<br><br>Under 28 U.S.C. § 636(c), the Magistrate Judge is available to conduct any or all proceedings in this case, including a jury or non-jury trial and entry of final judgment. (*See also* Fed. R. Civ. P. 73.) The parties are encouraged to consider potential benefits of a Rule 73 consent; however, there will be no adverse consequences at all should the parties decline.<br><br>SO ORDERED. Issued by Hon. Hugh B. Scott on 2/26/2016. (GAI) (Entered: 02/26/2016) |
| 03/04/2016 | 16 | RESPONSE TO ORDER TO SHOW CAUSE by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/04/2016) |
| 03/08/2016 | 17 | AFFIDAVIT of Service for Summ & Comp, RICO, CACC served on Dixie Botanicals on March 1, 2016, filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/08/2016) |
| 04/01/2016 | | ***CALENDAR NOTICE: Due to the Court's calendar, the Scheduling Conference set for 4/13/2016 will be delayed to 2:00 PM that day. Issued by Hon. Hugh B. Scott on 4/1/2016. (GAI) (Entered: 04/01/2016) |
| 04/05/2016 | 19 | NOTICE of Appearance by Eric T. Boron on behalf of Medical Marijuana, Inc., Red Dice |

A-6

|  |  | Holdings, LLC. (Boron, Eric) (Entered: 04/05/2016) |
|---|---|---|
| 04/13/2016 | 20 | Minute Entry for proceedings held before Hon. Hugh B. Scott: Scheduling Conference held on 4/13/2016.<br><br>Court will adjust deadlines to fit expert discovery within overall discovery deadline, but proposed timeframe is generally acceptable. Scheduling order will issue shortly.<br><br>APPEAR: Jeffrey M. Benjamin (Pltf) (by phone); Wendy J. Lindstrom (Deft Dixie Elixirs and Edibles) (by phone); Eric T. Boron (other defts). (Court Reporter FTR Gold.) (GAI) (Entered: 04/14/2016) |
| 04/14/2016 | 21 | SCHEDULING/CASE MANAGEMENT ORDER (Please Note: This docket text does not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>Discovery completed by 9/15/2017. Dispositive Motions due by 11/17/2017.<br><br>Signed by Hon. Hugh B. Scott on 4/14/2016. (GAI) (Entered: 04/14/2016) |
| 04/18/2016 | 22 | REQUEST FOR CLERK'S ENTRY OF DEFAULT against Dixie Botanicals by Douglas J. Horn, Cindy Harp-Horn.(Benjamin, Jeffrey) Modified on 8/5/2016 to correct title and terminate as a motion(SG). (Entered: 04/18/2016) |
| 05/18/2016 | 23 | Stipulation-Selection of Mediator by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 05/18/2016) |
| 08/03/2016 | 24 | NOTICE by Cindy Harp-Horn, Douglas J. Horn *Consent Order Granting Substitution of Attorney* (Housh, Frank) (Entered: 08/03/2016) |
| 08/03/2016 | 25 | NOTICE of Appearance by Frank T. Housh on behalf of All Plaintiffs (Housh, Frank) (Entered: 08/03/2016) |
| 08/04/2016 | 26 | -CLERK TO FOLLOW UP-<br><br>TEXT ORDER RE: 25 Notice of Appearance filed by Cindy Harp-Horn, Douglas J. Horn.<br><br>The Court recuses itself from this case and asks the Clerk of the Court to arrange for referral to another Magistrate Judge.<br><br>SO ORDERED. Issued by Hon. Hugh B. Scott on 8/4/2016. (GAI) (Entered: 08/04/2016) |
| 08/04/2016 | 27 | TEXT ORDER REFERRING CASE: In light of Judge Scott's recusal, this case is now referred to Hon. Michael J. Roemer, United States Magistrate Judge, for all pretrial matters excluding dispositive motions. The parties are encouraged to consider consenting to jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Consent forms are available from the chambers of the Magistrate Judge or the office of the Clerk of the Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/4/16.(SCE) (Entered: 08/04/2016) |
| 08/05/2016 |  | E-Filing Notification: Incorrect event used to electronically file document. For future reference, use (Request for Clerk's Entry of Default) event. No action required. 22 REQUEST FOR CLERK'S ENTRY OF DEFAULT against Dixie Botanicals (SG) (Entered: 08/05/2016) |
| 08/29/2016 | 28 | Clerk's ENTRY OF DEFAULT as to Dixie Botanicals (SG) (Entered: 08/29/2016) |

| | | |
|---|---|---|
| 09/12/2016 | | SCHEDULING NOTICE. Status Conference set for 9/21/2016 11:00 AM before Hon. Michael J. Roemer. Local counsel shall appear in person. Out of town counsel for defendant Dixie Elixirs & Edibles may participate by teleconference and shall supply the Court with a telephone number as the Court will initiate the call. (RAZ) (Entered: 09/12/2016) |
| 09/19/2016 | | SCHEDULING NOTICE. Status Conference set for 9/21/2016 at 11:00 AM has been RESCHEDULED to 9/26/2016 02:30 PM before Hon. Michael J. Roemer. Out of town counsel for defendant Dixie Elixirs & Edibles may participate by teleconference and shall supply the Court with a telephone number as the Court will initiate the call. (RAZ) (Entered: 09/19/2016) |
| 09/26/2016 | 29 | Minute Entry for proceedings held before Hon. Michael J. Roemer: Status Conference held on 9/26/2016. Mr. Housh recently entered his appearance in place of Mr. Benjamin. Parties previously selected a mediator, however, no mediation has been conducted. Court to issue a new case management order. Parties to confer and submit joint proposed case management deadlines within one week. APPEARANCES: Frank Housh, Esq. for plaintiffs; Eric Boron, Esq. for defendants Medical Marijuana, Inc and Red Dice Holdings, LLC; Wendy Lindstrom, Esq. and Hanoch Sheps, Esq. (via telephone) for defendant Dixie Elixers and Edibles. (Court Reporter FTR Gold.) (JDK) (Entered: 09/26/2016) |
| 10/05/2016 | 30 | Proposed Pretrial Order *Amended Case Management Order* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Certificate of Service)(Housh, Frank) (Entered: 10/05/2016) |
| 10/07/2016 | 31 | CASE MANAGEMENT ORDER (Please Note: This docket text does not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)<br><br>First Mediation Session due by 1/30/2017. Motions to Join Parties/Amend Pleadings due by 3/21/2017. Motions to Compel Discovery due by 5/1/2017. Discovery completed by 6/1/2017. Plaintiff Expert Witness ID due by 9/1/2017. Defendant Expert Witness ID due by 10/2/2017. Dispositive Motions due by 5/1/2018. Mediation To End by 5/1/2018. Signed by Hon. Michael J. Roemer on 10/7/2016. (RAZ) (Entered: 10/07/2016) |
| 12/13/2016 | 32 | NOTICE of Appearance by Hanoch Sheps on behalf of Dixie Elixirs and Edibles (Sheps, Hanoch) (Entered: 12/13/2016) |
| 12/14/2016 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(NRE) (Entered: 12/14/2016) |
| 12/29/2016 | | SCHEDULING NOTICE. Discovery Hearing set for 1/9/2017 02:00 PM before Hon. Michael J. Roemer. (RAZ) (Entered: 12/29/2016) |
| 01/09/2017 | 33 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Discovery Hearing held on 1/9/2017. Pltf to respond to discovery demands by 1/22/2017. As requested by the parties, First Mediation Session due by 2/28/2017. Appearances: Frank T. Housh, Esq. on behalf of pltfs; Eric T. Boron, Esq. on behalf of defts Medical Marijuana, Inc., Red Dice Holdings, LLC; Hanoch Sheps, Esq. via teleconference on behalf of deft Dixie Elixirs and Edibles. (Court Reporter FTR Gold.) (RAZ) (Entered: 01/10/2017) |
| 02/14/2017 | 34 | Mediation Certification by Michael Menard(Menard, Michael) (Entered: 02/14/2017) |
| 05/15/2017 | 35 | MOTION to appear pro hac vice for Jean E. Smith-Gonnell ($150 fee paid; receipt number BUF055382) by Dixie Elixirs and Edibles. (Attachments: # 1 Sponsoring |

|  |  |  |
|---|---|---|
|  |  | Affidavit, # 2 Petition, # 3 Attorney's Oath, # 4 Civility Oath, # 5 Attorney Database, # 6 CM/ECF Registration)(NRE) (Entered: 05/17/2017) |
| 05/17/2017 |  | Verified admission to the Colorado State Bar for Attorney Jean E. Smith-Gonnell. (NRE) (Entered: 05/17/2017) |
| 05/19/2017 | 36 | TEXT ORDER granting 35 Motion for Jean E. Smith-Gonnell to appear pro hac vice on behalf of Dixie Elixirs and Edibles. SO ORDERED. Issued by Hon. Michael J. Roemer on 5/19/2017. (RAZ)<br><br>-CLERK TO FOLLOW UP- (Entered: 05/19/2017) |
| 06/21/2017 | 37 | MOTION to Substitute Attorney *Frank Housh, Esq.* by Cindy Harp-Horn, Douglas J. Horn.(Housh, Frank) (Entered: 06/21/2017) |
| 06/22/2017 | 38 | First MOTION for Extension of Time to Complete Discovery by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Affidavit Declaration of Counsel)(Benjamin, Jeffrey) (Entered: 06/22/2017) |
| 06/23/2017 | 39 | TEXT ORDER granting 37 Motion to Substitute Attorney. SO ORDERED. Issued by Hon. Michael J. Roemer on 6/23/2017. (RAZ)<br><br>-CLERK TO FOLLOW UP- (Entered: 06/23/2017) |
| 06/23/2017 |  | SCHEDULING NOTICE as to 38 First Motion for Extension of Time to Complete Discovery . Responses due by 7/5/2017. Motion Hearing set for 7/10/2017 11:00 AM before Hon. Michael J. Roemer. (RAZ) (Entered: 06/23/2017) |
| 07/05/2017 | 40 | DECLARATION re 38 First MOTION for Extension of Time to Complete Discovery filed by Medical Marijuana, Inc. and Red Dice Holdings, Inc. . (Attachments: # 1 Memorandum of Law in Opposition to Plaintiffs' Motion for Extension of Deadline Dates in Case Management Order, # 2 Certificate of Service)(Boron, Eric) Modified on 7/6/2017 to add filer (SG). (Entered: 07/05/2017) |
| 07/06/2017 |  | E-Filing Notification: Red Dice Holdings, Inc. added as filer re 40 DECLARATION re 38 First MOTION for Extension of Time to Complete Discovery (SG) (Entered: 07/06/2017) |
| 07/10/2017 | 41 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Motion Hearing held on 7/10/2017 re 38 First Motion for Extension of Time to Complete Discovery filed by Cindy Harp-Horn, Douglas J. Horn.<br><br>Court denied pltf's motion for reasons stated on the record. Parties to follow the current 31 Case Management Order. Appearances: No appearance on behalf of pltfs; Eric T. Boron, Esq. on behalf of defts Medical Marijuana, Inc., Red Dice Holdings, LLC; Wendy J. Lindstrom, Esq. on behalf of deft Dixie Elixirs and Edibles. (Court Reporter FTR Gold.) (RAZ) (Entered: 07/10/2017) |
| 07/13/2017 | 42 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 7/10/2017, before Judge Michael J. Roemer. Court Reporter/Transcriber Michelle McLaughlin, Telephone number 716-332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 8/3/2017. Redacted Transcript Deadline set for 8/14/2017. Release of Transcript Restriction set for 10/11/2017. (KM) (Entered: 07/13/2017) |
| 08/31/2017 | 43 | Mediation Certification by Michael Menard(AGB) (Main Document 43 replaced on 10/26/2017) (AGB). (Entered: 08/31/2017) |

A-9

| | | |
|---|---|---|
| 11/28/2017 | 44 | Mediation Certification by Michael Menard(AGB) (Entered: 11/28/2017) |
| 12/07/2017 | 45 | Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 12/07/2017) |
| 12/11/2017 | 46 | RESPONSE to Motion re 45 Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Boron, Eric) (Entered: 12/11/2017) |
| 12/11/2017 | | SCHEDULING NOTICE as to 45 Second Motion for Extension of Time to Complete Discovery *Letter of Counsel*. Oral Argument set for 12/18/2017 11:00 AM before Hon. Michael J. Roemer. (RAZ) (Entered: 12/11/2017) |
| 12/13/2017 | 47 | Second MOTION for Extension of Time to Complete Discovery *Plaintiffs' Reply* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Exhibit 10/19 Email, # 2 Exhibit 11/7 Email, # 3 Exhibit 11/15 Email)(Benjamin, Jeffrey) (Entered: 12/13/2017) |
| 12/14/2017 | 48 | RESPONSE to Motion re 45 Second MOTION for Extension of Time to Complete Discovery *Letter of Counsel* filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/14/2017) |
| 12/18/2017 | 49 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Oral Argument re 45 Second Motion for Extension of Time to Complete Discovery held on 12/18/2017. <br><br>Court granted said motion and directed that the expert deposition be completed by the end of February 2018. Pltf shall turn over all outstanding discovery records to defts no later than 1/5/2018. Appearances: Jeffrey M. Benjamin, Esq. on behalf of pltfs via teleconference; Eric T. Boron, Esq. on behalf of deft Medical Marijuana and Red Dice Holdings; Hanoch Sheps, Esq. on behalf of deft Dixie Elixirs via teleconference. (Court Reporter FTR Gold.) (RAZ) (Entered: 12/18/2017) |
| 02/13/2018 | 50 | Mediation Certification by Michael Menard(AGB) (Entered: 02/13/2018) |
| 04/10/2018 | 51 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Boron, Eric) (Entered: 04/10/2018) |
| 04/11/2018 | 52 | TEXT ORDER: Defendants' motion for an extension of time is granted. Dispositive motions shall be filed on or before June 15, 2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by June 17, 2018 to schedule a trial date. Issued by Hon. Michael J. Roemer on April 11, 2018. (MLM) (Entered: 04/11/2018) |
| 06/07/2018 | 53 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Letter of Counsel*. (Mura, Roy) (Entered: 06/07/2018) |
| 06/08/2018 | 54 | TEXT ORDER re 53 Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. Defendants' request for an extension of time to file dispositive motion is granted. Dispositive motions shall be filed on or before 7/30/2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by 8/3/2018 to schedule a trial date. SO ORDERED. Issued by Hon. Michael J. Roemer on 6/8/2018. (RAZ) (Entered: 06/08/2018) |
| 06/25/2018 | 55 | NOTICE of Appearance by Hanoch Sheps on behalf of Dixie Elixirs and Edibles (Sheps, Hanoch) (Entered: 06/25/2018) |
| 06/25/2018 | 56 | NOTICE of Appearance by Jean-Claude Mazzola on behalf of Dixie Elixirs and Edibles (Mazzola, Jean-Claude) (Entered: 06/25/2018) |

Case 22-349, Document 54, 07/15/2022, 3348706, Page13 of 288

**A-10**

| 06/28/2018 | 57 | Letter filed by Dixie Elixirs and Edibles as to Dixie Botanicals, Dixie Elixirs and Edibles, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Sheps, Hanoch) (Entered: 06/28/2018) |
|---|---|---|
| 07/06/2018 | 58 | TEXT ORDER re 57 Letter filed by Dixie Elixirs and Edibles. Defendants' request for an extension of time to file dispositive motions is granted. Dispositive motions shall be filed on or before 8/30/2018. If no dispositive motions are filed, counsel shall contact Judge Geraci's chambers by 9/4/2018 to schedule a trial date. SO ORDERED. Issued by Hon. Michael J. Roemer on 7/6/2018. (RAZ) (Entered: 07/06/2018) |
| 08/08/2018 | 59 | Mediation Certification by Michael Menard(AGW) (Entered: 08/08/2018) |
| 08/30/2018 | 60 | MOTION for Summary Judgment *by Plaintiffs* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Statement of Undisputed Facts L.R. 56(a)(1), # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Affidavit Plaintiffs, # 7 Exhibit 1, # 8 Exhibit 2, # 9 Exhibit 3, # 10 Exhibit 4, # 11 Exhibit 5, # 12 Exhibit 6, # 13 Exhibit 7, # 14 Exhibit 8, # 15 Exhibit 9, # 16 Exhibit 10, # 17 Exhibit 11, # 18 Exhibit 12, # 19 Exhibit 13, # 20 Exhibit 14, # 21 Affidavit Expert, # 22 Exhibit I, # 23 Exhibit II, # 24 Exhibit III, # 25 Memorandum in Support)(Benjamin, Jeffrey) (Entered: 08/30/2018) |
| 08/30/2018 | 61 | MOTION for Summary Judgment *and/or for Judgment on the Pleadings* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Statement of Undisputed Facts, # 2 Declaration Declaration of Roy A. Mura, Esq., # 3 Exhibit Exhibit A to Declaration of Roy A. Mura -- Complaint, # 4 Exhibit Exhibit B to Declaration of Roy A. Mura -- Answer of MMI and RDH, # 5 Exhibit Exhibit C to Declaration of Roy A. Mura -- EBT of Douglas Horn, # 6 Exhibit Exhibit D to Declaration of Roy A. Mura -- EBT of Cindy Harp-Horn, # 7 Exhibit Exhibit E to Declaration of Roy A. Mura -- Fall 2012 High Times Medical Marijuana Magazine, # 8 Exhibit Exhibit F to Declaration of Roy A. Mura -- EBT of Dr. Cindy Orser, # 9 Exhibit Exhibit G to Declaration of Roy A. Mura -- Expert Report of Dr. Cindy Orser, # 10 Exhibit Exhibit H to Declaration of Roy A. Mura -- CannLabs Testing Certificates, # 11 Declaration Declaration of Stuart W. Titus, PhD, # 12 Declaration Declaration of Michelle L. Sides, Esq., # 13 Exhibit Exhibit A to Declaration of Michelle L. Sides, # 14 Memorandum in Support)(Mura, Roy) (Attachment 8 replaced on 12/29/2020) (CGJ). (Entered: 08/30/2018) |
| 08/30/2018 | 62 | MOTION for Summary Judgment by Dixie Elixirs and Edibles. (Attachments: # 1 Memorandum in Support, # 2 Affidavit, # 3 Affidavit, # 4 Statement of Undisputed Facts, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit)(Mazzola, Jean-Claude) (Entered: 08/30/2018) |
| 09/03/2018 | 63 | TEXT ORDER: On 8/30/18, all parties filed motions for summary judgment. Responses to these motions are due by 9/28/18, and replies may be filed by 10/12/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/18. (JO) (Entered: 09/03/2018) |
| 09/20/2018 | 64 | First MOTION for Extension of Time to File Response/Reply as to 63 Text Order *re Defts' Motions for Summ Judg* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 09/20/2018) |
| 09/21/2018 | 65 | TEXT ORDER GRANTING 64 Motion for Extension of Time to File Response/Reply. All responses are now due 11/2/18, and parties may reply by 11/16/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/21/18. (JO) (Entered: 09/21/2018) |
| 10/30/2018 | 66 | Second MOTION for Extension of Time to File Response/Reply as to 62 MOTION for Summary Judgment , 61 MOTION for Summary Judgment *and/or for Judgment on the Pleadings Plaintiffs* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/30/2018) |

| 10/31/2018 | 67 | TEXT ORDER GRANTING 66 Second Motion for Extension of Time to File Response/Reply. All responses are now due November 16, 2018, and parties may reply by November 30, 2018. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/31/2018. (SFR) Modified on 10/31/2018 (SFR). (Entered: 10/31/2018) |
|---|---|---|
| 11/16/2018 | 68 | MOTION to Amend/Correct *Proposed First Amended Complaint* by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Operating Agreement, # 3 Exhibit Proposed Amended Complaint)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 69 | RESPONSE in Opposition re 61 MOTION for Summary Judgment *and/or for Judgment on the Pleadings* filed by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Op Agr, # 3 Exhibit Dixie v. MMI, # 4 Exhibit SEC FIling, # 5 Exhibit Magazine, # 6 Exhibit First FAQ, # 7 Exhibit Second FAQ, # 8 Exhibit Invoice, # 9 Exhibit CRL Test, # 10 Exhibit Lab Test, # 11 Exhibit Email, # 12 Exhibit Cert of Analysis, # 13 Exhibit Bottle Label, # 14 Exhibit Launch, # 15 Exhibit Tamar Wise, # 16 Exhibit Deft Expert Dep, # 17 Exhibit Pltf Econ CV, # 18 Exhibit Expert Econ Report, # 19 Affidavit Plaintiffs' Affid, # 20 Affidavit Plaintiffs' Suppl Affid, # 21 Affidavit Affid Ellen Voie, # 22 Affidavit Affid Dr. Graham, # 23 Exhibit Graham CV, # 24 Exhibit Graham Report, # 25 Exhibit Graham Report 2, # 26 Memorandum in Support MOL - MMI)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 70 | RESPONSE in Opposition re 62 MOTION for Summary Judgment filed by Cindy Harp-Horn, Douglas J. Horn. (Attachments: # 1 Declaration, # 2 Exhibit Magazine, # 3 Exhibit First FAQ, # 4 Exhibit Second FAQ, # 5 Exhibit Invoice, # 6 Exhibit CRL Test, # 7 Exhibit Lab Test, # 8 Exhibit Email, # 9 Exhibit Cert of Analysis, # 10 Exhibit Bottle Label, # 11 Exhibit Launch, # 12 Exhibit Tamar Wise, # 13 Exhibit Deft Expert Dep, # 14 Exhibit Pltf Expert CV, # 15 Exhibit Pltf Expert Econ Report, # 16 Affidavit Pltf Affidavit, # 17 Affidavit Pltf Suppl Affid, # 18 Affidavit Affid Ellen Voie, # 19 Affidavit Affid Dr Graham, # 20 Exhibit Graham CV, # 21 Exhibit Graham Report, # 22 Exhibit Graham Report 2, # 23 Memorandum in Support MOL Dixie)(Benjamin, Jeffrey) (Entered: 11/16/2018) |
| 11/16/2018 | 71 | MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* by Dixie Elixirs and Edibles.(Sheps, Hanoch) (Entered: 11/16/2018) |
| 11/16/2018 | 72 | MEMORANDUM OF LAW in Support of 71 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* by Dixie Elixirs and Edibles. (Attachments: # 1 Declaration JC Declaration, # 2 Exhibit Dr. Orser excerpts, # 3 Exhibit Doug Horn excerpts)(Sheps, Hanoch) Modified on 11/19/2018 to correct event and add correct link (NRE). (Entered: 11/16/2018) |
| 11/16/2018 | 73 | MEMORANDUM in Opposition re 60 MOTION for Summary Judgment *by Plaintiffs* filed by Dixie Elixirs and Edibles. (Attachments: # 1 Declaration JC Declaration, # 2 Exhibit Counterstatement of Facts)(Sheps, Hanoch) (Entered: 11/16/2018) |
| 11/16/2018 | 74 | First MOTION to Strike *Plaintiffs' Summary Judgment Evidence* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration Declaration of Daniel S. Gvertz, Esq., # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Memorandum in Support Memorandum in Support)(Gvertz, Daniel) (Entered: 11/16/2018) |
| 11/16/2018 | 75 | RESPONSE in Opposition re 60 MOTION for Summary Judgment *by Plaintiffs* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Exhibit Exhibit A, # 2 Memorandum in Support Memorandum in opposition, # 3 Statement of Undisputed Facts Response to plaintiffs' statement of facts)(Gvertz, Daniel) (Entered: 11/16/2018) |
| 11/17/2018 | 76 | TEXT SCHEDULING ORDER: On 11/16/18, the Court received three motions: two |

A-12

|  |  |  |
|---|---|---|
|  |  | motions to strike by Defendants, ECF Nos. 71 , 72 , and 74 (the motions at ECF Nos. 71 and 72 are documents in support of a single motion to strike), and a motion to amend the Complaint by Plaintiffs, ECF No. 68 . Responses from the parties opposing these motions are due by 11/30/18, and the moving parties may reply by 12/7/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/17/18. (JO) (Entered: 11/17/2018) |
| 11/19/2018 |  | E-Filing Notification: regarding 72 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* . Document filed improperly as a motion. Court terminated motion and modified docket text to correctly reflect filing event. No action required. (NRE) (Entered: 11/19/2018) |
| 11/27/2018 | 77 | First MOTION for Extension of Time to File Response/Reply as to 71 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* , 76 Text Order, 74 First MOTION to Strike *Plaintiffs' Summary Judgment Evidence and for Replies as to MSJs* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 11/27/2018) |
| 11/28/2018 | 78 | Mediation Certification by Michael Menard(AGW) (Entered: 11/28/2018) |
| 11/28/2018 | 79 | TEXT ORDER GRANTING Plaintiffs' unopposed 77 Motion for Extension of Time to File Response/Reply. Responses from the parties opposing motions at ECF Nos. 68 , 71 , and 74 are now due by 12/7/18, and the moving parties may reply by 12/14/18. Replies for the pending motions for summary judgment, ECF Nos. 60 , 61 , and 62 , are now also due by 12/7/18. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/28/18. Modified on 11/28/2018 to include new deadline for motions for summary judgment. (JO) (Entered: 11/28/2018) |
| 12/07/2018 | 80 | MEMORANDUM in Opposition re 72 MOTION to Strike 60 MOTION for Summary Judgment *by Plaintiffs* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 81 | MEMORANDUM in Opposition re 74 First MOTION to Strike *Plaintiffs' Summary Judgment Evidence* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 82 | MEMORANDUM in Opposition re 68 MOTION to Amend/Correct *Proposed First Amended Complaint* filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/07/2018) |
| 12/07/2018 | 83 | REPLY to Response to Motion re 60 MOTION for Summary Judgment *by Plaintiffs Reply to Dixie Opposition* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 84 | REPLY to Response to Motion re 60 MOTION for Summary Judgment *by Plaintiffs Reply to MMI/RDH Opposition* filed by Cindy Harp-Horn, Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 12/07/2018) |
| 12/07/2018 | 85 | REPLY/RESPONSE to re 70 Response in Opposition to Motion,,, filed by Dixie Elixirs and Edibles. (Sheps, Hanoch) (Entered: 12/07/2018) |
| 12/07/2018 | 86 | MEMORANDUM in Support re 61 MOTION for Summary Judgment *and/or for Judgment on the Pleadings* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Gvertz, Daniel) (Entered: 12/07/2018) |
| 12/07/2018 | 87 | RESPONSE in Opposition re 68 MOTION to Amend/Correct *Proposed First Amended Complaint* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Exhibit Scheduling Order)(Gvertz, Daniel) (Entered: 12/07/2018) |
| 04/17/2019 | 88 | DECISION AND ORDER: Plaintiffs' motion to amend 68 is GRANTED IN PART and DENIED IN PART. Defendants' motions to strike [71, 74] are DENIED. Plaintiffs' |

**A-13**

| | | |
|---|---|---|
| | | motion for partial summary judgment 60 is DENIED. Defendants' motions for summary judgment 61 62 are GRANTED IN PART and DENIED IN PART. As a result of these rulings, the only surviving claims are Douglas's claims for fraudulent inducement and civil RICO. All other claims against Defendants are dismissed. The Clerk of Court is directed to amend the name of Defendant "Dixie Elixirs and Edibles" to "Dixie Holdings, LLC a/k/a Dixie Elixirs." By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 4/17/2019. (MFM)<br><br>-CLERK TO FOLLOW UP- (Entered: 04/17/2019) |
| 04/19/2019 | 89 | TEXT ORDER Status Conference set for 5/16/2019 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 4/19/19. (PR) (Entered: 04/19/2019) |
| 04/25/2019 | 90 | Letter MOTION to change the Status Conference date filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Mazzola, Jean-Claude) Modified on 4/26/2019 to correct event(KLH). (Entered: 04/25/2019) |
| 04/26/2019 | | E-Filing Notification regarding 90 Letter: This document contains a request for relief and should be filed as a motion. No action required - Clerk corrected entry. (KLH) (Entered: 04/26/2019) |
| 05/02/2019 | 91 | TEXT ORDER granting defendant Dixie Elixirs's 90 Letter request to adjourn the 5/16 status conference. The case is adjourned to 6/20/2019 at 09:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. The parties shall notify the Court if they intend to mediate the case and wish to have the status conference rescheduled for a later date. IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 5/2/19. (PR) (Entered: 05/02/2019) |
| 05/16/2019 | 92 | NOTICE OF APPEAL as to 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, by Cindy Harp-Horn, Douglas J. Horn. Filing fee $ 505, receipt number 0209-3454145. Appeal Record due by 9/13/2019. (Benjamin, Jeffrey) (Entered: 05/16/2019) |
| 06/17/2019 | 93 | First MOTION for Leave to Appear by Phone *for Conf 6/20/19* by Cindy Harp-Horn, Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 06/17/2019) |
| 06/18/2019 | 94 | TEXT ORDER granting 93 Motion for Leave to Appear by telephone. The Court will supply counsel in advance with the Court's conference center instructions. IT IS SO ORERED. Signed by Hon. Frank P. Geraci, Jr. on 6/18/19. (PR) (Entered: 06/18/2019) |
| 06/20/2019 | 95 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 6/20/2019. Plaintiff's filed 92 Interlocutory Appeal of 88 Decision and Order. Second Circuit argument scheduled next month. A further mediation session has been scheduled. Status Conference is scheduled for 8/15/2019 at 2:30 PM before Hon. Frank P. Geraci, Jr., to be held in US Courthouse, 2 Niagara Square, Buffalo, NY 14202. Counsel may appear by telephone. Appearances: For Pltf's - Jeffrey Benjamin, Esq., (by telephone); For Deft's - Roy Mura, Esq., (Medical Marijuana, Inc., Red Dice Holdings, LLC); Jean-Claude Mazzola, Esq., and Hanoch Sheps, Esq., (by telephone) (Dixie Holdings, LLC). (Court Reporter Christi Macri.) (JDK) (Entered: 06/21/2019) |
| 06/25/2019 | 96 | NOTICE of Appearance by Scott David Mancuso on behalf of Medical Marijuana, Inc., Red Dice Holdings, LLC. (Mancuso, Scott) (Entered: 06/25/2019) |
| 07/17/2019 | 97 | MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, by Medical |

A-14

|  |  | Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration Declaration of Roy A. Mura, Esq., # 2 Declaration Declaration of Stuart W. Titus, PhD, # 3 Memorandum in Support Memorandum of Law in Support)(Mura, Roy) (Entered: 07/17/2019) |
|---|---|---|
| 07/18/2019 | 98 | TEXT SCHEDULING ORDER: On July 17, 2019, Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC filed a motion for reconsideration 97 . Plaintiffs and Defendant Dixie Holdings, LLC shall file responses by August 16, 2019, and the moving defendants shall file a reply within fifteen days of the responses. To the extent the parties intend to challenge the moving defendants' factual assertions, they must do so in the manner contemplated by Federal Rule of Civil Procedure 56(c)(1). In addition to the merits, the parties shall address whether this court has jurisdiction to consider the motion given the pending appeal. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 7/18/2019. (MFM) (Entered: 07/18/2019) |
| 08/06/2019 |  | TEXT SCHEDULING ORDER: In light of the ongoing briefing of Defendants' motion 97 , the Court reschedules the Status Conference set for 8/15/2019 to a future date. Specifically, the Status Conference is now set for 9/20/2019 at 02:00 PM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/6/2019. (MFM) (Entered: 08/06/2019) |
| 08/07/2019 | 99 | DESIGNATION of Record on Appeal by Douglas J. Horn re 92 Notice of Appeal, CLERK TO FOLLOW UP (Benjamin, Jeffrey) (Entered: 08/07/2019) |
| 08/08/2019 | 100 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals. 99 Index to Record on Appeal. (KM) (Entered: 08/08/2019) |
| 08/08/2019 | 101 | TEXT ORDER: Consistent with the Court's prior order, counsel may appear by telephone at the 9/20/2019 status conference. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/8/2019. (MFM) (Entered: 08/08/2019) |
| 08/09/2019 | 102 | MOTION for Certificate of Appealability *by Plaintiffs* by Douglas J. Horn. (Attachments: # 1 Declaration of Plaintiff's Counsel, # 2 Exhibit A - Voie Affidavit, # 3 Exhibit B - Notice of Appeal)(Benjamin, Jeffrey) (Entered: 08/09/2019) |
| 08/12/2019 | 103 | TEXT SCHEDULING ORDER: On 8/9/2019, Plaintiffs filed a motion under FRCP 54(b) as to Cindy Horn's claims. Defendants shall file responses to the motion by 9/2/2019, and Plaintiffs may file a reply by 9/16/2019. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/12/2019. (MFM) (Entered: 08/12/2019) |
| 08/14/2019 | 104 | Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 08/14/2019) |
| 08/15/2019 | 105 | First MOTION for Extension of Time to File Response/Reply as to 98 Text Order,, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 08/15/2019) |
| 08/15/2019 | 106 | MEMORANDUM in Support re 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, filed by Dixie Holdings, LLC. (Mazzola, Jean-Claude) (Entered: 08/15/2019) |
| 08/16/2019 | 107 | TEXT ORDER granting 105 Plaintiffs' Motion for Extension of Time. Plaintiffs' response to the Motion for Reconsideration is now due 9/13/2019, and the moving defendants may file a reply within 15 days thereafter. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/16/2019. (MFM) (Entered: 08/16/2019) |

| 08/30/2019 | 108 | MEMORANDUM in Opposition re 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 08/30/2019) |
| 09/02/2019 | 109 | MEMORANDUM in Opposition re 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs* filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 09/02/2019) |
| 09/03/2019 | 110 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *requesting leave to appear at 9/20/2019 status conference by telephone*. (Mura, Roy) (Entered: 09/03/2019) |
| 09/03/2019 | | TEXT SCHEDULING ORDER: Because briefing on the pending motions remains ongoing, the status conference set for 9/20/19 is CANCELLED. Rather than rescheduling it at the present time, the Court will schedule a status conference once the pending motions are resolved. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/2019. (MFM) (Entered: 09/03/2019) |
| 09/03/2019 | 111 | TEXT ORDER: Defendants' letter request to appear by telephone 110 is DENIED AS MOOT. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/3/2019. (MFM) (Entered: 09/03/2019) |
| 09/13/2019 | 112 | Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,, *for Revision of Decision* by Douglas J. Horn. (Attachments: # 1 Affidavit Graham Affdiavit, # 2 Declaration Declaration of Counsel, # 3 Memorandum in Support MOL in Opp and Supp of Cross)(Benjamin, Jeffrey) (Entered: 09/13/2019) |
| 09/16/2019 | 113 | TEXT ORDER: On September 13, 2019, Plaintiffs filed an omnibus Opposition to Defendants' Motion for Reconsideration and Cross-Motion for Reconsideration 112 . Defendants may file a reply/response by 10/7/2019. No further briefing on the motions for reconsideration will be permitted without prior leave of court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/16/2019. (MFM) (Entered: 09/16/2019) |
| 09/16/2019 | 114 | DECLARATION re 109 Memorandum in Opposition to Motion, 104 Supplemental MOTION for Certificate of Appealability *Decl as to Douglas Claims*, 102 MOTION for Certificate of Appealability *by Plaintiffs*, 108 Memorandum in Opposition to Motion, filed by Douglas J. Horn *Omnibus Reply* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/16/2019) |
| 10/03/2019 | 115 | DECISION AND ORDER denying 102 104 Plaintiffs' Motions for Partial Judgment under Rule 54(b). SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/2/2019. (MFM) (Entered: 10/03/2019) |
| 10/07/2019 | 116 | MEMORANDUM in Opposition re 112 Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 10/07/2019) |
| 10/07/2019 | 117 | REPLY to Response to Motion re 112 Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, , 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to |

| | | |
|---|---|---|
| | | Strike,,,,,,, *and Opposition to Plaintiffs' Cross Motion* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Memorandum in Support)(Mura, Roy) (Entered: 10/07/2019) |
| 10/17/2019 | 118 | MOTION for Extension of Time to File Response/Reply as to 117 Reply to Response to Motion,, 116 Memorandum in Opposition to Motion, *on Pltf's Cross-Motion FRCP 54(b)* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/17/2019) |
| 10/18/2019 | 119 | TEXT ORDER granting 118 Plaintiffs' Motion for Extension of Time. Plaintiffs may file their reply re: cross-motion for reconsideration by November 1, 2019. No further briefing is permitted absent prior leave of Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/18/2019. (MFM) (Entered: 10/18/2019) |
| 10/31/2019 | 120 | AFFIDAVIT in Support re 112 Cross MOTION for Reconsideration re 106 Memorandum in Support of Motion, 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *Reply Affid on Pltf Cross-Motion* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 10/31/2019) |
| 11/01/2019 | 121 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *requesting leave to file sur-reply memorandum of law.* (Mura, Roy) (Entered: 11/01/2019) |
| 11/04/2019 | 122 | TEXT ORDER granting 121 Defendants MMI and RDH's Letter Request to File Response to Plaintiffs' Reply 120 . Defendants may file a response by 11/8/2019. No further briefing is permitted absent prior leave of Court. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/4/2019. (MFM) (Entered: 11/04/2019) |
| 11/08/2019 | 123 | MEMORANDUM in Support re 97 MOTION for Reconsideration re 88 Order on Motion for Summary Judgment,,,,,,,,,,,,, Order on Motion to Amend/Correct,,,, Order on Motion to Strike,,,,,,, *Sur-Reply Memorandum of Law in Further Support of Motion for Reconsideration* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 11/08/2019) |
| 11/22/2019 | 124 | DECISION AND ORDER: Defendants' motions for reconsideration 97 106 are GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for reconsideration 112 is DENIED. The Court's prior order is modified insofar as Douglas Horn may now proceed with his RICO claim only to the extent it is premised on predicate acts of wire and mail fraud. He may not proceed with his claim on the theory that Dixie X is a controlled substance. By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/21/2019. (MFM) (Entered: 11/22/2019) |
| 11/22/2019 | | TEXT SCHEDULING ORDER: Status Conference set for 12/13/2019 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. The parties may appear by phone. Prior to the hearing, the parties should contact chambers to receive instructions on how to call in to the hearing. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/22/2019. (MFM) (Entered: 11/22/2019) |
| 12/13/2019 | 125 | SCHEDULING ORDER: Final Pretrial Conference set for 9/3/2020 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. Jury Trial rescheduled for 10/19/2020 at 08:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. See Order for further details and deadlines regarding submissions. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 12/13/2019. (MFM) (Entered: 12/13/2019) |
| 12/13/2019 | 126 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 12/13/2019. The Court sets a trial date of 9/21/20 at 8:30 a.m. The Court will |

**A-17**

| | | |
|---|---|---|
| | | issue its pretrial order setting the pretrial conference date. By telephone: Jeffrey Benjamin, Esq.; Jean Claude Mazzola, Esq.; Hanoch Sheps, Esq.; Scott Mancuso, Esq. (Court Reporter Christi Macri.) (PR) (Entered: 12/16/2019) |
| 12/30/2019 | 127 | MANDATE of USCA as to 92 Notice of Appeal. It is hereby ordered that pursuant to Local Rule 31.2(a)(1)(A), Appellant's brief must be filed on or before October 22, 2019. The appeal will be dismissed effective October 22, 2019 if brief is not filed by the date. (KM) (Entered: 12/30/2019) |
| 08/18/2020 | 128 | TEXT ORDER: the parties' joint stipulation for an extension of the pretrial-order deadlines is GRANTED. The Final Pretrial Conference is now scheduled for 10/2/2020 at 10:00 AM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. All submission deadlines are adjourned to the same extent, except that the parties need not submit voir dire information and jury instructions until 30 days prior to the new trial date. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 8/18/2020. (MFM) (Entered: 08/18/2020) |
| 09/15/2020 | 129 | First MOTION to Vacate 124 Order on Motion for Reconsideration,,,,, and in Limine by Douglas J. Horn. (Attachments: # 1 Declaration Counsel Declaration, # 2 Supplement CSA Decision Tree, # 3 Exhibit Williams Case, # 4 Exhibit DEA Drug Code, # 5 Exhibit DOT Compliance Notice, # 6 Exhibit Subject Order, # 7 Exhibit Prior Order on MSJ, # 8 Affidavit Affidavit, # 9 Memorandum in Support MOL in Support)(Benjamin, Jeffrey) (Entered: 09/15/2020) |
| 09/15/2020 | 130 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Mura, Roy) (Entered: 09/15/2020) |
| 09/16/2020 | 131 | REPLY/RESPONSE to re 130 Letter to Deft Letter of 9/15/20 filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/16/2020) |
| 09/17/2020 | 132 | DECISION AND ORDER: Plaintiffs' Rule 60(b) motion (ECF No. 129 ) is DENIED. The pretrial conference will go forward as scheduled, and all associated deadlines remain in place. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/16/2020. (MFM) (Entered: 09/17/2020) |
| 09/17/2020 | 133 | Exhibit List by Douglas J. Horn.. (Benjamin, Jeffrey) (Main Document 133 replaced on 12/16/2020) (CGJ). (Entered: 09/17/2020) |
| 09/17/2020 | 134 | Witness List by Douglas J. Horn. (Benjamin, Jeffrey) (Main Document 134 replaced on 12/16/2020) (CGJ). (Entered: 09/17/2020) |
| 09/17/2020 | 135 | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. Combined Pre-Trial Statement. (Benjamin, Jeffrey) (Entered: 09/17/2020) |
| 09/18/2020 | 136 | PRETRIAL STATEMENT by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 09/18/2020) |
| 09/18/2020 | 137 | PRETRIAL STATEMENT by Dixie Botanicals and Dixie Elixirs and Edibles. (Attachments: # 1 Exhibit)(Mazzola, Jean-Claude) Modified on 9/21/2020 (TF). (Entered: 09/18/2020) |
| 09/21/2020 | | E-Filing Notification: RE 137 PRETRIAL STATEMENT, refiled amended/corrected Pretrial Statement as 138 Amended/Corrected Pretrial Statement. Modified entries on 9/21/2020 and 9/22/2020 (TF). (Entered: 09/21/2020) |
| 09/21/2020 | 138 | AMENDED/CORRECTED PRETRIAL STATEMENT by Dixie Holdings, LLC. (Attachments: # 1 Exhibit Pretrial Exhibits)(Sheps, Hanoch) Modified on 9/22/2020 (TF). |

**A-18**

| | | |
|---|---|---|
| | | (Entered: 09/21/2020) |
| 09/23/2020 | 139 | MOTION for Leave to Appear Video *or Phone for PT Conf* by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 09/23/2020) |
| 09/23/2020 | 140 | TEXT ORDER granting Plaintiff's request for leave to appear by phone or video. The Court will prepare a Zoom videoconference for the pretrial conference. All of the parties are free to attend the pretrial conference in person or by video. Chambers will send instructions via email prior to the pretrial conference. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/23/2020. (MFM) (Entered: 09/23/2020) |
| 09/25/2020 | 141 | First MOTION in Limine by Dixie Holdings, LLC. (Attachments: # 1 Declaration of Jean-Claude Mazzola, # 2 Exhibit Dixie Request for Production, # 3 Exhibit Graham Depo Excerpts, # 4 Exhibit Declaration of Dr. Cindy Orser, # 5 Memorandum in Support) (Sheps, Hanoch) (Entered: 09/25/2020) |
| 09/25/2020 | 142 | MOTION in Limine by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Memorandum in Support)(Mura, Roy) (Entered: 09/25/2020) |
| 09/29/2020 | 143 | First MOTION for Extension of Time to File Response/Reply as to 141 First MOTION in Limine , 142 MOTION in Limine *of Defendants* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 09/29/2020) |
| 09/29/2020 | 144 | RESPONSE to Motion re 143 First MOTION for Extension of Time to File Response/Reply as to 141 First MOTION in Limine , 142 MOTION in Limine *of Defendants* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 09/29/2020) |
| 09/30/2020 | 145 | TEXT ORDER: Plaintiffs request an extension of time - to October 23, 2020 - to respond to Defendants' motions in limine. ECF No. 143 . Defendants, in turn, ask that they be given an opportunity to reply if Plaintiffs' request is granted, and they also argue that the final pretrial conference should be rescheduled in light of the briefing. <br><br> Plaintiffs' request for an extension of time is GRANTED, in that they may respond to the motions in limine by October 23, 2020. Likewise, all of the defendants may file replies by November 30, 2020. The Court will then take the motions under advisement. <br><br> Nevertheless, the Court will not reschedule the final pretrial conference. The primary purpose of the pretrial conference is to determine the date, length, and schedule for the trial. Defendants' motions in limine may alter the extent of the evidence and therefore change the length of the trial, but the Court is confident the parties will be able to select a trial date and reasonably estimate the length of the trial in either scenario. Moreover, insofar as the Court will allow the parties to fully brief the issues presented in the motions in limine, it will not be necessary to conduct oral argument on the motions at the conference. <br><br> SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 9/30/2020. (MFM) (Entered: 09/30/2020) |
| 10/02/2020 | 146 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Appearances via Zoomgov.com: Jeffrey Benjamin, Esq./pl.; Roy Mura, Esq/def Medical Marijuana and Red Dice Holdings LLC; Jean-Claude Mazzola, Esq./def. Dixie Holdings, LLC; Hanoch Sheps, Esq./Dixie Holdings, LLC. Matter on for Final Pretrial Conference. Final Pretrial Conference not held. Trial Date Status Conference held on 10/2/2020. Jury Trial reset from 10/19/2020 to 5/10/2021 in 2 Niagara Square, Buffalo, NY 14202 before Hon. |

| | | Frank P. Geraci, Jr. A new pretrial order will be issued with the new trial date. (Court Reporter Christi Macri.) (LMD) (Entered: 10/02/2020) |
|---|---|---|
| 10/05/2020 | 147 | AMENDED PRETRIAL ORDER: The Final Pretrial Conference is now set for 4/2/2021 at 03:00 PM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Frank P. Geraci, Jr. The conference will be conducted by Zoom videoconference, and all parties are to appear by videoconference. The Jury Trial is set to begin on 5/10/2021 at 08:30 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350.<br><br>As discussed at the pretrial conference held on 10/2/2020, it may be possible to reschedule the trial for an earlier date if the parties consent to magistrate judge jurisdiction. The Court will notify the parties in the coming weeks if this option will be available, and, if so, the parties are encouraged to consider it. In addition, given the lengthy period before trial, the parties are encouraged to reconnect with the mediator and continue settlement discussions.<br><br>See Order for further details and deadlines. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/5/2020. (MFM) (Entered: 10/05/2020) |
| 10/06/2020 | 148 | First MOTION to Adjourn Trial by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 10/06/2020) |
| 10/06/2020 | 149 | RESPONSE in Opposition re 148 First MOTION to Adjourn Trial filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 10/06/2020) |
| 10/07/2020 | 150 | TEXT ORDER resolving 148 Plaintiffs' Motion to Adjourn. The parties shall meet and confer to determine mutually agreeable dates to schedule the trial, except that the trial will not be scheduled beyond August 2021. Once the parties have decided on such dates, they shall file a **joint** report identifying any mutually agreeable dates. At that time, the Court will determine whether and when to adjourn the trial. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 10/7/2020. (MFM) (Entered: 10/07/2020) |
| 10/23/2020 | 151 | DECLARATION re 141 First MOTION in Limine , 142 MOTION in Limine filed by Douglas J. Horn *Plaintiff's Opposition* filed by Douglas J. Horn. (Attachments: # 1 Affidavit Plaintiff's Affidavit, # 2 Affidavit Wayback Affidavit, # 3 Affidavit Berryhill Affidavit, # 4 Affidavit Graham Affidavit, # 5 Affidavit WMSL Affidavit, # 6 Memorandum in Support Memo of Law in Opp)(Benjamin, Jeffrey) (Entered: 10/23/2020) |
| 11/25/2020 | 152 | First MOTION for Extension of Time to File Response/Reply as to 141 First MOTION in Limine by Dixie Holdings, LLC.(Sheps, Hanoch) (Entered: 11/25/2020) |
| 11/25/2020 | 153 | TEXT ORDER granting 152 First MOTION for Extension of Time. Defendant Dixie Elixirs may file a reply by 12/14/2020. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 11/25/2020. (MFM) (Entered: 11/25/2020) |
| 12/14/2020 | 154 | REPLY/RESPONSE to re 144 Response to Motion, 142 MOTION in Limine filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 12/14/2020) |
| 12/14/2020 | 155 | First MOTION for Leave to File *Sur-Reply* by Douglas J. Horn.(Benjamin, Jeffrey) (Entered: 12/14/2020) |
| 12/14/2020 | 156 | REPLY to Response to Motion re 141 First MOTION in Limine filed by Dixie Holdings, LLC. (Attachments: # 1 Declaration of Jean-Claude Mazzola)(Sheps, Hanoch) (Entered: 12/14/2020) |
| 12/15/2020 | 157 | TEXT ORDER resolving 155 Motion for Relief filed by Plaintiffs. |

A-20

|  |  | The Court grants Plaintiffs' request to file a sur-reply. The sur-reply is due by 1/15/2021.<br><br>Plaintiffs also seek further guidance on trial/mediation. The Court concludes that a short status conference on trial/mediation is appropriate. The status conference is set for 1/22/2021 01:30 PM in US Courthouse, 100 State Street, Rochester NY 14614. The conference will be conducted by Zoom videoconference, and all parties are to appear by videoconference. Instructions will be sent to counsel prior to the conference. If the public wishes to participate (by telephone only), the particulars can be obtained by contacting chambers at 585-613-4090.<br><br>In order to ensure that there will be no scheduling conflicts, and consistent with the Court's prior order (ECF No. 150), **the parties are hereby ordered to meet and confer regarding possible trial dates no later than one week before the status conference.**<br><br>SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 12/15/2020. (MFM) (Entered: 12/15/2020) |
| 12/15/2020 |  | Set/Reset Hearings: Status Conference set for 1/22/2021 01:30 PM in US Courthouse, 100 State Street, Rochester NY 14614 before Hon. Frank P. Geraci, Jr. via Zoom. (MFM) (Entered: 12/15/2020) |
| 12/15/2020 | 158 | NOTICE of Appearance by Richard E. Lerner on behalf of Dixie Holdings, LLC (Lerner, Richard) (Entered: 12/15/2020) |
| 01/15/2021 | 159 | REPLY/RESPONSE to re 154 Reply/Response, 156 Reply to Response to Motion *Combined Sur-Reply of Plaintiff* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Exh 1 - Google Response)(Benjamin, Jeffrey) (Entered: 01/15/2021) |
| 01/22/2021 | 160 | Minute Entry for proceedings held before Hon. Frank P. Geraci, Jr.: Status Conference held on 1/22/2021. The Court may be required to move the present trial date to October and requests that the parties discuss consenting to try the case before a magistrate judge if they want a trial sooner than October. The Court sets a further Status Conference on 2/5/2021 03:00 PM before Hon. Frank P. Geraci, Jr. Jeffrey Benjamin, Esq., Roy Mura, Esq.; Jean Claude Mazzola, Esq.; Hanoch Sheps, Esq., by Zoom (Court Reporter Christi Macri.) (PR) (Entered: 01/24/2021) |
| 01/26/2021 | 161 | TEXT ORDER: On January 24, 2021, the Court received a letter from MMI and RDH, indicating that Attorney Daniel Gvertz no longer practices at counsel's firm and does not represent those defendants. Accordingly, the Clerk of Court is directed to terminate Attorney Gvertz's appearance. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 1/26/2021. (MFM)-CLERK TO FOLLOW UP- (Entered: 01/26/2021) |
| 02/03/2021 | 162 | TEXT ORDER: The parties have notified the Court that they intend to consent to magistrate-judge jurisdiction before Judge Feldman. In accordance with Local Rule 73, the parties are directed to submit the required paperwork to the Clerk of Court by February 5, 2021, after which Judge Feldman will set a status conference. The status conference scheduled for February 5, 2021 before this Court is CANCELLED. SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/3/2021. (MFM) (Entered: 02/03/2021) |
| 02/04/2021 | 163 | Disregard as filed in Error - STIPULATION *to Magistrate Judge* by Dixie Holdings, LLC. (Sheps, Hanoch) Modified on 2/5/2021 (TF). (Entered: 02/04/2021) |
| 02/04/2021 | 164 | TEXT ORDER REFERRING CASE to Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B). IT IS SO ORDERED. Signed by Hon. Frank P. Geraci, Jr. on 2/4/2021. (MFM) (Entered: 02/04/2021) |

| 02/04/2021 | 165 | CONSENT to Jurisdiction by US Magistrate Judge by Dixie Botanicals, Dixie Holdings, LLC, Cindy Harp-Horn, Douglas J. Horn, Medical Marijuana, Inc., Red Dice Holdings, LLC. Case reassigned to Magistrate Judge Jonathan W. Feldman. Signed by Hon. Frank P. Geraci, Jr. on 2/4/2021. (CGJ) (Entered: 02/04/2021) |
|---|---|---|
| 02/05/2021 | | E-Filing Notification: 163 STIPULATION to Magistrate Judge, should not be efiled, document removed, No action required. (TF) (Entered: 02/05/2021) |
| 02/08/2021 | 166 | TEXT ORDER: The Court would like to hold a virtual status conference on Tuesday February 16, 2021 at 11:00 a.m. The Court requests that lead counsel be present and prepared to discuss the following:<br><br>1. Scheduling oral argument on the pending motions in limine.<br><br>2. Establishing a day certain trial date.<br><br>3. Scheduling a Final Pretrial Conference.<br><br>4. Status report on any settlement efforts engaged in by the parties.<br><br>The Court requests that any communication with the Court be conducted through or facilitated by Matthew Meyers, Esq., the law clerk who will be assisting this Court in the trial management of this case. Status Conference set for 2/16/2021 11:00 AM before Magistrate Judge Jonathan W. Feldman via Zoom for Government. Parties will be emailed the Zoom for Government link for this conference. Signed by Magistrate Judge Jonathan W. Feldman on 2/8/2021. (LMD) (Entered: 02/08/2021) |
| 02/10/2021 | 167 | TEXT ORDER. The Status Conference set for 2/16/2021 is reset to 2/11/2021 03:00 PM before Magistrate Judge Jonathan W. Feldman. The Parties will receive a cancellation of the 2/16/2021 Zoom for Government invite and new invite for 2/11/2021 at 3:00 PM. The conference is to discuss the issues as mentioned in the 166 Text Order. Signed by Magistrate Judge Jonathan W. Feldman on 2/10/2021. (LMD) (Entered: 02/10/2021) |
| 02/11/2021 | 168 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Status Conference held via zoomgov.com on 2/11/2021. Appearances via video conference: Jeffrey Benjamin, Esq./plaintiffs, Roy Mura, Esq. for Def. Medical Marijuana, Inc.; Jean Claude-Mazzola, Esq. for Def. Dixie Holdings and Hanoch Sheps, Esq. for Def. Dixie Holdings and Hon. Jonathan w. Feldman. Jury trial date set for 7/26/2021 for 2 weeks at 2 Niagara Square, Buffalo, NY 14202 for 2 weeks. Final Pretrial Conference set for 6/29/2021 at 10 AM at 100 State Street, Rochester, NY 14614. Motion Hearing re: Motions in Limine set for 3/4/2021 10:00 AM via Zoomgov.com before Magistrate Judge Jonathan W. Feldman. Pretrial Order to be issued. Zoom invites will be sent for the argument on the in limine motions. (Court Reporter Zoomgov.com recording.) (LMD) (Entered: 02/12/2021) |
| 03/04/2021 | 169 | TEXT ORDER: The supplemental briefing as ordered by the Court at the March 4, 2021 hearing is due by **March 18, 2021**. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 3/4/2021. (MFM) (Entered: 03/04/2021) |
| 03/04/2021 | 170 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for government: Jeffrey Benjamin, Esq./plaintiff; Roy Mura, Esq. for Medical Marijuana, Inc. and Red Dice Holdings; Scott Mancuso, Esq./Medical Marijuana Inc. and Red Dice Holdings; Jean Claude Mazzola, Esq./Dixie Defendants; Hanoch Sheps, Esq./Dixie Defendants: Motion Hearing held on 3/4/2021 re 141 First MOTION in Limine filed by Dixie Holdings, LLC, 142 MOTION in Limine filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. Court Reserves decision and |

| | | supplemental letter briefs due 3/18/2021. (Court Reporter Zoom for Government Recording.) (LMD) (Entered: 03/10/2021) |
|---|---|---|
| 03/18/2021 | 171 | Letter filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Supplemental Letter Brief*. (Sheps, Hanoch) (Entered: 03/18/2021) |
| 03/18/2021 | 172 | RESPONSE in Opposition re 141 First MOTION in Limine , 142 MOTION in Limine *Supplemental Letter Brief* filed by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 03/18/2021) |
| 03/18/2021 | 173 | Letter filed by Medical Marijuana, Inc., Red Dice Holdings, LLC. as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Supplemental Letter Brief in Further Support of Defendants' Motion in Limine*. (Mura, Roy) (Entered: 03/18/2021) |
| 04/29/2021 | 174 | **FINAL PRETRIAL ORDER & DECISION AND ORDER granting in part and denying in part Defendants' Motions in Limine.**<br><br>For the reasons stated herein, the Court grants in part and denies in part Defendants' motions in limine. Docket ## 141, 142. In addition, this Order contains the Court's Final Pretrial Order, which sets forth the relevant dates, deadlines, and responsibilities of the parties related to the upcoming jury trial. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 4/29/2021. (MFM) (Entered: 04/29/2021) |
| 05/13/2021 | | SCHEDULING ORDER *TIME CHANGE ONLY*: The Final Pretrial Conference is now set for 6/29/2021 at **1:30 PM** in US Courthouse, 100 State Street, Rochester NY 14614 before Magistrate Judge Jonathan W. Feldman. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 5/13/2021. (MFM) (Entered: 05/13/2021) |
| 06/15/2021 | 175 | TEXT ORDER: The parties have contacted chambers, jointly requesting a brief extension to the June 15, 2021 deadline for the submission of pretrial materials. That request is GRANTED, and all such materials are now due by June 18, 2021 at 5:00 p.m. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 6/15/2021. (MFM) (Entered: 06/15/2021) |
| 06/18/2021 | 176 | Proposed Voir Dire by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 06/18/2021) |
| 06/18/2021 | 177 | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Pre-Trial Stmt*. (Benjamin, Jeffrey) (Entered: 06/18/2021) |
| 06/18/2021 | 178 | Proposed Voir Dire by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mura, Roy) (Entered: 06/18/2021) |
| 06/28/2021 | 179 | Trial Document by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *Pltf Amended PT Stmt*. (Benjamin, Jeffrey) (Entered: 06/28/2021) |
| 06/29/2021 | 180 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances in person: Jeffrey Benjamin, Esq. and Frank Housh, Esq./plaintiffs, Roy Mura, Esq. and Scott David Manucso for Def. Medical Marijuana, Inc. and Def. Red Dice Holdings LLC, Richard Lerner, Esq., Jean-Claude Mazzola, Esq. and Hanoch Sheps, Esq. for Def. Dixie Holdings. Final Pretrial Conference held on 6/29/2021. (LMD) Modified on 6/30/2021 (LMD). (Entered: 06/30/2021) |
| 06/30/2021 | | E-Filing Notification: The following minute entry was modified to correct the appearances: 180 Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances in person: Jeffrey Benjamin, Esq. and Frank Housh, |

**A-23**

| | | |
|---|---|---|
| | | Esq./plaintiffs, Roy Mura, Esq. and Scott David Manucso for Def. Medical Marijuana, Inc. and Def. Red Dice Holdings LLC, Richard Lerner, Esq., Jean-Claude Mazzola, Esq. and Hanoch Sheps, Esq. for Def. Dixie Holdings. Final Pretrial Conference held on 6/29/2021. (LMD) Modified on 6/30/2021 (LMD). (LMD) (Entered: 06/30/2021) |
| 07/05/2021 | 181 | MOTION Trial Testimony by Video *of Party Officers* by Douglas J. Horn. (Attachments: # 1 Declaration Decl of Pltf Counsel, # 2 Exhibit A - Subp Keber, # 3 Exhibit B - Subp Smith, # 4 Exhibit C - Subp Sides, # 5 Exhibit D - Affidavit of Smith, # 6 Exhibit E - Affidavit of Sides)(Benjamin, Jeffrey) (Entered: 07/05/2021) |
| 07/06/2021 | 182 | TEXT ORDER: Plaintiff has filed a Motion for Trial Testimony by Video and Service of Subpoenas by Other Means. Docket # 181 . Expedited briefing is required due to the upcoming trial date. Therefore, responses are due by 5:00 p.m. on July 12, 2021. Reply papers are due by 5:00 p.m. on July 13, 2021. Oral Argument is set for July 14, 2021 at 11:00 AM in Courtroom 2 before Magistrate Judge Jonathan W. Feldman. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/6/21. (BJJ) (Entered: 07/06/2021) |
| 07/08/2021 | 183 | MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Attachments: # 1 Declaration of Roy A. Mura, Esq. in Support of Motion to Quash Subpoena, # 2 Exhibit A to Declaration of Roy A. Mura, Esq.)(Mura, Roy) (Entered: 07/08/2021) |
| 07/09/2021 | 184 | TEXT ORDER: Defendants have filed a Motion to Quash Plaintiff's Subpoena of Michelle Sides, Esq. Docket # 183 . Expedited briefing is required due to the upcoming trial date. Therefore, Plaintiff's response is due by 5:00 p.m. on July 13, 2021. Oral Argument for this Motion and the Motion for Trial Testimony and Subpoenas, Docket # 181 , is set for July 14, 2021 at 11:00 AM in Courtroom 2 before Magistrate Judge Jonathan W. Feldman.<br><br>If any party wishes to appear at the oral argument by Zoom, it shall request the Zoom link by emailing feldman@nywd.uscourts.gov no later than Monday, July 12, 2021 at noon.<br><br>SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/9/21. (BJJ) (Entered: 07/09/2021) |
| 07/12/2021 | 185 | TEXT ORDER re 184 : Oral Argument on motions rescheduled for 7/14/2021 03:00 PM before Magistrate Judge Jonathan W. Feldman. The Zoom link has been sent to the parties. Note the time change only. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/12/21. (BJJ) (Entered: 07/12/2021) |
| 07/12/2021 | 186 | RESPONSE to Motion re 181 MOTION Trial Testimony by Video *of Party Officers* filed by Dixie Holdings, LLC. (Attachments: # 1 Exhibit Dixie Rule 26)(Sheps, Hanoch) (Entered: 07/12/2021) |
| 07/12/2021 | 187 | OBJECTIONS filed by Defendant Dixie Holdings, LLC.. (Sheps, Hanoch) (Entered: 07/12/2021) |
| 07/12/2021 | 188 | OBJECTIONS *to Plaintiff's Proposed Substantive Jury Instructions* filed by Defendants Medical Marijuana, Inc., Red Dice Holdings, LLC... (Mura, Roy) (Entered: 07/12/2021) |
| 07/13/2021 | 189 | LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021. (Attachments: # 1 Rosenberg Affidavit) (MFM) (Entered: 07/13/2021) |
| 07/13/2021 | 190 | DECLARATION re 183 MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.*, 181 MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn In *Opp and Reply* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Keber POS, # 2 |

| | | |
|---|---|---|
| | | Exhibit Sides POS, # <u>3</u> Exhibit Keber POS2, # <u>4</u> Exhibit Smith POS)(Benjamin, Jeffrey) (Entered: 07/13/2021) |
| 07/14/2021 | 191 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings LLC. Motion Hearing held on 7/14/2021 re <u>189</u> LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021, re <u>183</u> MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC., <u>181</u> MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn. Judge Feldman resolved the parties' motions as stated on the record. (Court Reporter Diane Martens.) (LMD) Modified on 7/15/2021 (LMD). (Entered: 07/15/2021) |
| 07/15/2021 | | E-Filing Notification: The following entry was modified to include the letter motion <u>189</u> in the entry. 191 Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings LLC. Motion Hearing held on 7/14/2021 re <u>189</u> LETTER MOTION submitted by Plaintiffs to chambers via email on July 12, 2021, re <u>183</u> MOTION to Quash *Plaintiff's Subpoena of Michelle Sides, Esq.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC., <u>181</u> MOTION Trial Testimony by Video *of Party Officers* filed by Douglas J. Horn. Judge Feldman resolved the parties' motions as stated on the record. (Court Reporter Diane Martens.) (LMD) Modified on 7/15/2021 (LMD). (Entered: 07/15/2021) |
| 07/20/2021 | 192 | TEXT ORDER: Counsel for the three defendants have notified the Court that they will stipulate that the August 23, 2012 audio recording of Mr. Keber meets the authentication requirements of authenticating the exhibit under Federal Rule of Evidence 901. Accordingly, the recording will be deemed to satisfy the requirement of authentication without additional proof by plaintiff. Defendants' Stipulation as to authentication is without prejudice to all other evidentiary objections, including relevance. In light of the stipulation, the Court agrees with defendants that the telephonic deposition of Mr. Keber is no longer necessary, and the Court's previous oral ruling is hereby VACATED in that respect. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/20/2021. (MFM) (Entered: 07/20/2021) |
| 07/22/2021 | <u>193</u> | Proposed Jury Instructions submitted by Cindy Harp-Horn, Douglas J. Horn at the final pretrial conference.(MFM) (Entered: 07/22/2021) |
| 07/22/2021 | <u>194</u> | MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* by Dixie Holdings, LLC. (Attachments: # <u>1</u> Exhibit Plaintiffs Final Pre-Trial Order Compliance) (Sheps, Hanoch) (Entered: 07/22/2021) |
| 07/23/2021 | 195 | TEXT SCHEDULING ORDER: As discussed at today's hearing, Plaintiffs may respond to Dixie Holdings, LLC's motion in limine (Docket # 194) by 5 P.M. on July 29, 2021. Plaintiffs may file any cross-motions for relief by that same date. Defendants may file a reply to the motion in limine by 5 P.M. on August 2, 2021, and may also respond to any cross-motion by that same date. Oral argument on all motions is presently scheduled for 10:30 A.M. on August 5, 2021, to be held via videoconference. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/23/2021. (MFM) (Entered: 07/23/2021) |
| 07/23/2021 | 196 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Status Conference held on 7/23/2021. Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and |

| | | |
|---|---|---|
| | | Richard Lerner, Esq./def. Dixie Holdings LLC. Status Conference held. Trial date adjourned. Text Scheduling Order issued. (Court Reporter Zoom for Government Recording.) (LMD) (Entered: 07/25/2021) |
| 07/26/2021 | | TEXT SCHEDULING ORDER *TIME CHANGE ONLY*: Oral Argument reset for August 5, 2021 at **2:30 PM** before Magistrate Judge Jonathan W. Feldman via videoconference. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/26/2021. (MFM) (Entered: 07/26/2021) |
| 07/26/2021 | 197 | Letter filed by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *re: Trial Scheduling.* (Benjamin, Jeffrey) (Entered: 07/26/2021) |
| 07/29/2021 | 198 | MEMORANDUM in Opposition re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Douglas J. Horn. (Attachments: # 1 Exhibit Zap Report)(Benjamin, Jeffrey) (Entered: 07/29/2021) |
| 07/29/2021 | 199 | TEXT ORDER: All counsel have communicated with the Court about setting a new trial date. The Court will try to accommodate counsel's schedules, recognizing that all counsel have various dates when they are and are not available. Defendant Dixie has moved to dismiss plaintiff's entire case, but, if it is unsuccessful, represents that it is ready to proceed to trial immediately. Defendants MMI/RDH take no position with respect to the dismissal motion, but request that the trial not occur between August 11 and August 18. Plaintiff opposes the dismissal motion and requests that the trial not commence on August 9th or any time prior to October 11.<br><br>Based on the foregoing, the trial will not be proceeding on August 9. The Court will discuss with counsel possible trial dates at the conclusion of the hearing on Dixie's dispositive motion on August 5, 2021. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 7/29/2021. (MFM) (Entered: 07/29/2021) |
| 08/02/2021 | 200 | REPLY to Response to Motion re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mancuso, Scott) (Entered: 08/02/2021) |
| 08/02/2021 | 201 | REPLY/RESPONSE to re 194 MOTION in Limine *to Preclude Testimony of Mark P. Zaporowski, Ph.D.* filed by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 08/02/2021) |
| 08/03/2021 | 202 | TEXT ORDER: The Court has reviewed (1) Plaintiff's Memorandum of Law in Opposition to Defendant Dixie's Motion in Limine to Preclude the Testimony of Expert Mark P. Zaporowski (Docket # 198); (2) Defendants MMI and RDH's Memorandum of Law in Reply to Defendant Dixie's Motion in Limine (Docket #200); and (3) Defendant Dixie's Reply Memorandum in Response to Plaintiff's Opposition to Motion to Preclude (Docket #201).<br><br>After careful consideration of these thorough submissions and the arguments made therein, the Court does not believe additional oral argument is necessary for the Court to resolve the motion. Based on the briefing, the Court has determined that plaintiff's Civil RICO claim must be dismissed as a matter of law. *See* Fed. R. Civ. P. 56(f)(1)-(3). The Court will issue a Decision and Order setting forth the legal and factual basis for this determination. Before doing so, however, the Court directs the parties to brief the issue of whether the Court should exercise supplemental jurisdiction over Plaintiff's sole remaining cause of action: a state law claim for fraudulent inducement. *See Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018).<br><br>The Court directs that the parties simultaneously file briefs on the supplemental |

**A-26**

| | | |
|---|---|---|
| | | jurisdiction question on or before **August 10, 2021**. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 8/3/2021. (MFM) (Entered: 08/03/2021) |
| 08/10/2021 | 203 | MEMORANDUM/BRIEF re 202 Text Order,,,,, by Medical Marijuana, Inc., Red Dice Holdings, LLC.. (Mancuso, Scott) (Entered: 08/10/2021) |
| 08/10/2021 | 204 | MEMORANDUM/BRIEF re 202 Text Order,,,,, by Dixie Holdings, LLC. (Sheps, Hanoch) (Entered: 08/10/2021) |
| 08/10/2021 | 205 | Letter filed by Douglas J. Horn as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. *re: jurisdiction and certification*. (Benjamin, Jeffrey) (Entered: 08/10/2021) |
| 09/14/2021 | 206 | DECISION AND ORDER: Defendants' motion in limine (Docket ## 194, 200) is GRANTED IN PART and DENIED IN PART. The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but the motion is otherwise denied. By separate order, the Court will set a status conference for the purpose of rescheduling the trial. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/14/2021. (MFM) (Entered: 09/14/2021) |
| 09/15/2021 | | TEXT SCHEDULING ORDER: A status conference to set a trial date is scheduled for 9/21/2021 at 3:30 PM via videoconference before Magistrate Judge Jonathan W. Feldman. Invites will be sent by email to the parties. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/15/2021. (MFM) (Entered: 09/15/2021) |
| 09/16/2021 | | TEXT SCHEDULING ORDER *DATE & TIME CHANGE*: Status Conference reset for 9/24/2021 at 11:30 AM via videoconference before Magistrate Judge Jonathan W. Feldman. Invites to be sent by email. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 9/16/2021. (MFM) (Entered: 09/16/2021) |
| 09/24/2021 | 207 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances: Appearances via Zoom for Government: Jeffrey Benjamin, Esq./pls; Roy A. Mura, Esq. and Scott Mancuso, Esq./def. Medical Marijuana Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq. and Richard Lerner, Esq./def. Dixie Holdings. Status Conference held on 9/24/2021. Proposed trial dates discussed. Plaintiff's counsel will check with his clients and let the court and counsel know which dates are selected. (Zoom for Government Recording.) (LMD) (Entered: 09/24/2021) |
| 10/12/2021 | | TEXT SCHEDULING ORDER: The Jury Trial is now set to begin on 1/18/2022 at 09:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350, for one week. The Final Pretrial Conference is now set for 12/2/2021 at 11:00 AM, to be held by videoconference. No more than one week before the pretrial conference, the parties *shall* submit revised proposed jury instructions and revised witness/exhibit lists, and *may* submit any other materials listed in the Court's Final Pretrial Order. Docket # 174. All submissions should conform to the Court's Final Pretrial Order. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 10/12/2021. (MFM) (Entered: 10/12/2021) |
| 11/19/2021 | 208 | MOTION for Certificate of Appealability *by Plaintiff* by Douglas J. Horn. (Attachments: # 1 Memorandum in Support Memo of Law)(Benjamin, Jeffrey) (Entered: 11/19/2021) |
| 11/19/2021 | 209 | TEXT ORDER: On 11/19/2021, Plaintiff filed 208 MOTION for Certificate of Appealability. Defendants shall respond to the motion by 11/29/2021, and Plaintiff may file a reply by 12/1/2021. Notwithstanding Plaintiff's motion, the parties shall submit their trial materials in accordance with the Court's prior scheduling order dated 10/12/2021. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 11/19/2021. (MFM) (Entered: 11/19/2021) |
| | | |

| 11/25/2021 | 210 | Proposed Jury Instructions by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
| 11/25/2021 | 211 | Witness List by Douglas J. Horn. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
| 11/25/2021 | 212 | Exhibit List *Plaintiff* by Douglas J. Horn.. (Benjamin, Jeffrey) (Entered: 11/25/2021) |
| 11/29/2021 | 213 | RESPONSE to Motion re 208 MOTION for Certificate of Appealability *by Plaintiff memorandum of law in response to Plaintiffs two-part motion* filed by Medical Marijuana, Inc.. (Mancuso, Scott) (Entered: 11/29/2021) |
| 11/29/2021 | 214 | Letter filed by Dixie Holdings, LLC as to Dixie Botanicals, Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. . (Attachments: # 1 Exhibit Dkt 137, Exhibit C, Defense exhibit list, # 2 Exhibit Dkt 176, Defense Witness List, # 3 Exhibit Dkt 187, Opposition to Jury Instructions)(Sheps, Hanoch) (Entered: 11/29/2021) |
| 11/29/2021 | 215 | OBJECTIONS *to Plaintiff's Proposed Substantive Jury Instructions* filed by Defendants Medical Marijuana, Inc., Red Dice Holdings, LLC... (Mura, Roy) (Entered: 11/29/2021) |
| 12/02/2021 | 216 | Minute Entry for proceedings held before Magistrate Judge Jonathan W. Feldman: Appearances via Zoom for Government: : Jeffrey Benjamin, Esq./pl; Roy Mura, Esq. and Scott Mancuso, Esq./defs Medical Marijuana, Inc. and Red Dice Holdings, LLC, Jean-Claude Mazzola, Esq., Hanoch Sheps, Esq.; and Richard Lerner, Esq for Defendant Dixie Holdings, LLC. Matter on for Final Pretrial Conference. Final Pretrial Conference not held. Motion Hearing held on 12/2/2021 re 208 MOTION for Certificate of Appealability *by Plaintiff* filed by Douglas J. Horn to be granted with consent of defendants, except that court will decide whether it will request additional briefing. Jury Trial set for 1/18/2022 in Buffalo is cancelled. (Court Reporter Diane Martens.) (LMD) (Entered: 12/03/2021) |
| 01/24/2022 | 217 | DECISION AND ORDER granting 208 Motion for Certificate of Appealability. The Clerk of Court is directed to enter partial final judgment on Douglas J. Horn's civil RICO claim predicated on mail and wire fraud, which the Court dismissed in its September 14, 2021 Decision & Order. *See* Docket # 206. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 1/20/2022. (MFM)<br><br>-CLERK TO FOLLOW UP- (Entered: 01/24/2022) |
| 01/25/2022 | 218 | INTERIM JUDGMENT in favor of Dixie Holdings, LLC, Medical Marijuana, Inc., Red Dice Holdings, LLC. against Cindy Harp-Horn, Douglas J. Horn. Signed by Mary C. Loewenguth, Clerk of Court on 1/25/2022. (CGJ) (Entered: 01/25/2022) |
| 02/15/2022 | 219 | Letter filed by Plaintiffs Cindy Harp-Horn, Douglas J. Horn. (submitted to chambers via email on 2/15/2022) (MFM) (Entered: 02/15/2022) |
| 02/15/2022 | 220 | TEXT ORDER: On 2/15/2022, Plaintiffs filed a letter requesting that the Court modify its January 20, 2022 Decision & Order so as to allow immediate appeal of "those other narrow and dispositive issues previously dismissed [and denied certification as final] by Judge Geraci," specifically, "Plaintiffs primary claims under RICO predicated on Controlled Substances, and under NY GBL §§349 and 350." Docket # 219 at 1.<br><br>Plaintiffs' request is DENIED. The Court engaged in a careful balancing of the judicial administrative interests and equities involved before deciding to grant partial final judgment pursuant to Federal Rule of Civil Procedure 54(b). The Court's analysis was in part premised on the discreteness of the issue to be appealed and the unusual circumstances surrounding the dismissal of Plaintiffs' last remaining civil RICO theory. *See* Docket # 217 at 5-7, 8-12. While there is some intuitive appeal to Plaintiffs' request for a single, "unified appeal on all issues," Docket # 219 at 1, permitting a massively expanded appeal would not only be inconsistent with District Judge Geraci's prior order |

| | | |
|---|---|---|
| | | on the matter, see Docket # 115, it would also undermine the very reasons the Court articulated for granting Rule 54(b) relief. Accordingly, the Court denies Plaintiffs' letter request. SO ORDERED. Signed by Magistrate Judge Jonathan W. Feldman on 2/15/2022. (MFM) (Entered: 02/15/2022) |
| 02/16/2022 | 221 | NOTICE OF APPEAL as to 217 Order on Motion for Certificate of Appealability, 206 Order on Motion in Limine, 218 Judgment by Douglas J. Horn. Filing fee $ 505, receipt number ANYWDC-4504453. Appeal Record due by 5/17/2022. (Benjamin, Jeffrey) (Entered: 02/16/2022) |
| 02/17/2022 | | Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (CGJ) (Entered: 02/17/2022) |
| 02/17/2022 | | Within 14 days of filing the Notice of Appeal, the appellant is required to electronically file with the District Court an index of filed documents it wishes the Court of Appeals to consider, called Designation of Record on Appeal. After receipt, the Clerks Office will certify and transmit the index to the Circuit. (CGJ) (Entered: 02/17/2022) |
| 03/02/2022 | 222 | DESIGNATION of Record on Appeal by Douglas J. Horn re 221 Notice of Appeal, CLERK TO FOLLOW UP (Benjamin, Jeffrey) (Entered: 03/02/2022) |
| 03/03/2022 | 223 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals re 222 DESIGNATION of Record on Appeal. (CGJ) (Entered: 03/03/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/05/2022 01:00:07 | | |
| **PACER Login:** | appealteam | **Client Code:** | appealteam |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cv-00701-JWF |
| **Billable Pages:** | 25 | **Cost:** | 2.50 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,                            Civ. Action No.:

          Plaintiffs,

          -against-                                             **COMPLAINT and**
                                                  **JURY DEMAND**
MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

          Defendants.
----------------------------------------------------------------------------X

      Plaintiffs, DOUGLAS J. HORN and CINDY HORN (collectively "Plaintiff") by their

attorneys, JEFFREY BENJAMIN, P.C. as and for their complaint against the Defendants

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS AND EDIBLES, RED DICE HOLDINGS,

LLC, and DIXIE BOTANICALS, (collectively the "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action for damages for *inter alia*, deceptive business practices and violations of

      the New York General Business Law Art 22-A, §349 ("Deceptive Practices Act" or GBL

      §349"), GBL §350 for false advertising, the federal Racketeer Influenced and Corrupt

      Organizations Act ("RICO") 18 U.S.C. §1962(a)-(d), violations of New York State

      Uniform Commercial Code (UCC) § 2-313 for negligence in products manufacture and

      sales, UCC § 2-318, strict products liability, as well as numerous common law causes of

      action. The Complaint also seeks statutory attorneys' fees and costs pursuant to the

      statutory violations and the New York General Obligations Law ("GOL") §5-327, and

      punitive damages.

## JURISDICTION AND PARTIES

2.    This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states. This Court also has subject matter jurisdiction over certain claims herein pursuant to RICO, 18 U.S.C. §1964, and 28 U.S.C. §1331, because they arise under the laws of the United States, and over other claims herein pursuant to supplemental jurisdiction, 28 U.S.C. §1367.

3.    The venue of this action is proper in this judicial district pursuant to 18 U.S.C. §1965, because the plaintiffs live within this District, and a substantial part of the events or omissions giving rise to the claim occurred within the Western District of New York, 28 U.S.C. §1391.

4.    Plaintiffs are natural persons over eighteen years of age and maintain their residence in Lockwood, New York.

5.    Upon information and belief, the defendant MEDICAL MARIJUANA, INC. is a California business corporation which maintains its principal place of business at 4901 Morena Blvd., Suite 701, San Diego, California 92117.

6.    Upon information and belief, the defendant, MEDICAL MARIJUANA, INC. is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States.

7.    Upon information and belief, the defendant DIXIE ELIXIRS AND EDIBLES is a Colorado corporation who maintains its principal place of business at 4990 Oakland Street Denver, Colorado 80239.

8.    On information and belief, the Defendants, DIXIE ELIXIRS AND EDIBLES is engaged

in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States.

9.   Upon information and belief, the defendant RED DICE HOLDINGS LLC d/b/a DIXIE BOTANICALS is a Colorado limited liability company who maintains its principal place of business at 1610 Wynkoop Street, Suite 400, Denver, Colorado 80202.

10.   On information and belief, the defendant, RED DICE HOLDINGS LLC d/b/a DIXIE BOTANICALS is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States

11.   All of the above named Defendants aggressively market and sell their products and services nationwide generally, and within the State of New York specifically, and the causes of action alleged have a direct and harmful impact on the people of the State of New York.

## SPECIFIC FACTS as to PLAINTIFFS

12.   On or around February 24, 2012, plaintiff, Douglas J. Horn, suffered bodily injuries from a vehicle accident.  He sustained said injuries to his hip and right shoulder as a result of the accident.  Subsequent to the accident, under treatment by his doctor, he took anti-inflammatory and other medication.  Some months after the accident, he investigated natural medicines as an alternative to his other prescriptions.

13.   In or around September, 2012, plaintiff answered a magazine advertisement from defendant DIXIE BOTANICALS for an industrial hemp product called "Dixie X" which stated it had "0.00 THC" (delta-9 tetrahydrocannabinol) in it.  Annexed hereto as Exhibit "A" is a copy of such advertisement.  The product had a compound known as Cannabidiol ("CBD").  The advertisement claimed that the product treated inflammation

3

and pain.

14.     The advertising by defendant also stated that they imported the hemp product with .3% THC, but that they process it down to 0% THC.  On or around October 1, 2012, plaintiff purchased the "elixir" product, the *Dixie X CBD Dew Drops 500 mg Tincture*, with 500 mg of CBD.

15.     In October, 2012, plaintiff was a professional over-the-road hazmat commercial truck driver who, prior to 2012, worked for the same company for ten (10) years and drove professionally for twenty-nine (29) years.  Plaintiff's employment as a professional commercial driver required that he be and remain free of all illegal and impairing substances.

16.     On October 9, 2012, plaintiff submitted to a random urinalysis screening required by his employer Enterprise Transportation Company, and as required by the U.S. Department of Transportation ("DOT").

17.     On October 11, 2012, Plaintiff was informed by his employer that he had tested positive for a high level of THC.  Thereafter, Plaintiff was required to submit to additional toxicology screenings which also were positive to an unacceptable high level of THC. Plaintiff was then terminated from his employment with Enterprise of approximately 10 years.

18.     Subsequent to his termination, plaintiff ordered additional quantities of the *Dixie X CBD tincture* to have a laboratory independently test the product to determine if it did indeed contain THC.  He sent an unopened bottle of the *Dixie X CBD tincture* to EMSL Analytical, Inc. ("EMSL") for independent testing.  That laboratory informed plaintiff that it could not return the sample of the Dixie X product that was taking to plaintiff as

4

the substance was illegal and contained levels well over the federal limit as per the U.S. DEA regulations.  Plaintiff understood that the mere return of the very sample he sent to EMSL was itself a violation of law, as defendants' product was an illegal substance, and would have subjected that company to criminal and/or civil liability.

19.   In reliance on the numerous claims, assertions, allegations, false advertising and misleading press releases of the defendants, claiming the product contains "0% THC" and which does "not conflict with any federal law", plaintiff purchased and consumed from said defendants the product DIXIE X, an elixir marketed to be a natural, safe way to relieve pain, nausea, anxiety and convulsions.  Plaintiff purchased and consumed said product DIXIE X, relying upon the Defendants' numerous claims that the products were legal, safe and did not contain any narcotic or controlled substances, or derivatives.

20.   As a direct and proximate result of consuming this product, plaintiff was summarily dismissed from his employment.  In addition, he was caused to lose his accumulated benefits and suffer substantial current and future economic losses and non-economic losses inclusive of emotional pain and anguish, humiliation, and degradation.  He was fired from his long-term employment and, consequently, lost his livelihood, benefits, insurance, pension and job security.

21.   Plaintiff's damages are ongoing.  He is unable to secure employment at his former level of expertise and cannot continue in commercial trucking for at least seven years. Reputable trucking companies will not hire him based upon his positive toxicology test.

**GENERAL FACTS and ALLEGATIONS as to ALL CAUSES of ACTION**

22.   Defendants promote through advertising, distribute and sell "hemp"-based products to be used for medicinal purposes.    According to hemp.com, Hemp is a variety of the

5

"Cannabis" plant that is grown for the fiber and seeds it produces.   According to
drugs.com, Cannabis contains the chemical compound "THC" (delta-9
tetrahydrocannabinol), which is believed to be responsible for most of the characteristic
psychoactive effects of cannabis. The dried leaves and flowers of the Cannabis plant are
known as marijuana.

23.   Under §812 of the federal Controlled Substances Act ("CSA", 21 U.S.C. 812), marijuana
is considered a "Schedule 1 drug" because of its THC content.   It is defined as such
because THC has high potential for abuse, it has no currently accepted medical treatment
use in the U.S.; and there is a lack of accepted safety for use of the drug under medical
supervision. The cultivation and distribution of marijuana are felonies; and possession for
personal use is a misdemeanor.   In fact, there are examples of consumers of THC oil in
the U.S. being subjected to serious criminal felonies for the mere possession of such oil:
http://www.washingtonpost.com/news/local/wp/2015/06/08/mom-who-uses-medical-
marijuana-faces-up-to-30-years-in-prison/.

24.   Throughout their advertising media, defendants unequivocally and continually represent
on their websites, press releases and advertising media that their products contain no
illegal tetrahydrocannabinol ("THC"), and that they conduct testing multiple times and
that the products will not produce a positive toxicology test for illegal substances. The
defendants claim that their products can treat a plethora of medical conditions.
Defendants further represent that they do not grow, sell or distribute and products which
violate United States Laws and/or the federal "Controlled Substance Act."

25.   The hemp-based industry is a bourgeoning market, wherein, companies such as
defendants are manufacturing, selling and distributing products that are hemp-based and

claim that, although marijuana and hemp are similar substances, the content and ratio of the chemical components commonly known as cannabidiol ("CBD") and THC, found in varying degrees, determine whether a substance is illegal to consume or distribute in the United States.   Defendants assert among other things that THC, the clearly illegal chemical compound found in marijuana, is absent in the industrial hemp products that they sell to their respective consumers and end-users.

26.    The defendants, in concert and/or on their own account, undertook affirmative efforts to capitalize on the manufacture, production, processing, importation and distribution of illegal substances without regard to the consequences, mental or physical harm levied on the public such as plaintiff.

27.    The defendants' CBD health and wellness industry is estimated to be an over five billion dollar ($5,000,000,000) market currently.

28.    Defendants market their products as "THC free" and "non-THC," thereby misleading the public at large through their misrepresentation of the true chemical compound make-up of products like DIXIE X.

29.    As is widely known, the cultivation and distribution of marijuana is illegal in the United States. Defendants circumvent the federal prohibition by extracting CBD from industrial hemp grown outside the United States in "secret" locations which MEDICAL MARIJUANA, INC. refuses to disclose.

30.    Defendants collective advertising and marketing materials represent that their respective products can be used to treat a variety of conditions such as pain, anxiety, nausea and seizures.   In support of its false advertising and marketing, defendants specifically represent and assert unequivocally that THC is undetectable in its products.

31.   As further inducement for consumers to buy its products, support for its large scale sales expansion agenda, and in an effort to attract investors, defendants have collectively and on their own account, published numerous press releases and other materials all claiming that the collective and/or respective products complained of are non-THC, legal, safe and can treat a variety of ailments and diseases.  Certain public statements have gone so far as to claim CBD can fight metastatic cancers.

32.   Defendants claim that their products are tested multiple times during the manufacturing process, that they are legal to consume in the United States, and that they do not grow, sell or distribute any substances that violate the law.

## COUNT I
### Deceptive Business Practices/False Advertising

33.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

34.   This Cause of Action is asserted against the Defendants that Plaintiffs suffered damages as a result of the defendant's deceptive business practices and false advertising in violation of GBL §349 and §350.

35.   In the course of the within transaction, Defendants committed and/or engaged in one or more of the following acts or conduct and/or made the following misrepresentations:

a.   misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

b.   misrepresenting in advertising that Defendants had adequately tested their products;

c.   misrepresenting that the products complied New York State and the federal laws and regulations;

d.   misrepresenting that their products contained no THC;

8

> e.    misrepresenting that the ingestion of its products would not cause a positive toxicology result;
>
> f.    misrepresenting that their products had beneficial health, wellness and medical uses.

36.   All of the above misrepresentations, acts and/or conduct by express statement on Defendants involved material elements of the transaction between the parties and were unfair, illegal, false, deceptive and/or misleading.

37.   Additionally, such representations were likely to, and in fact did, harm, deceive or mislead the Plaintiffs who were acting reasonably and in reliance thereon.

38.   The conduct and actions described herein are directed at the general public and have a broad impact on consumers at large and are not isolated or unique to this transaction between the parties.

39.   The aforementioned conduct constitutes deceptive business practices and false advertising, in violation of General Business Law Art. 22-A, §349 and §350.

40.   As a result of the defendants' conduct, Plaintiffs have sustained damages for which they are entitled to recover from Defendants.

41.   The Plaintiffs are entitled to recover costs and attorney's fees from the defendant pursuant to GBL §349(h) and §350-e(3).

## COUNT II - RICO VIOLATION

42.   Plaintiffs repeat and re-allege each and every allegation made in the paragraphs above and incorporate same herein as if fully set forth.

43.   At all times relevant to this complaint, all of the defendant entities were and are enterprises as defined by 18 U.S.C. §1961(4) that are engaged in, and whose activities

9

affect, interstate and foreign commerce. Their primary purpose and function was and is to profit from the marketing, distribution, promotion, advertising and/or sale of the Dixie X Elixir product sold to Plaintiff. Upon information and belief, in addition to defendants' legitimate activities, however, they were used in a pattern of racketeering activity in violation of 18 U.S.C. §1962(a), (b), (c), (d).

44. The defendants herein are "persons" pursuant to 18 U.S.C. §1961(3).

45. The patterns of racketeering activity engaged in by the defendants involved separate but related schemes, carried out from the original sale to plaintiff of the product to the present, and directed at the plaintiffs and other individuals in violation of 18 U.S.C. §1961(1) and §1962:

   a) Selling and/or distributing a product through the U.S. mail that was known or should have been known to be a controlled substance or otherwise illegal or otherwise in violation of federal or state law;

   b) Inducing the sale of an illegal product through promises of curing medical conditions of consumer purchasers of said product;

   c) Misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

   d) Misrepresenting that the products complied New York State and the federal laws and regulations;

   e) Purposefully failing to disclose material facts regarding the product to induce the purchase of an illegal product;

f)   Concealing the true chemical content from consumers in its advertising and labelling in order to avoid inquiry into the legality of same.

46.    The pattern of racketeering activity engaged in by the defendants named herein involved fraudulent acts in support of the above schemes constituted mail and wire fraud (18 U.S.C. §1341 and §1343), engaged in monetary transactions in property derived from specific unlawful activity (18 U.S.C. §1957), all of which is "racketeering activity," as defined in 18 U.S.C. §1961(1) and §102 of the Controlled Substances Act.

47.   The above described are numerous predicate acts of wire fraud, interstate transportation of controlled substance(s) and unlawful activity involving monetary transactions relating to the plaintiffs and other consumers. The predicate acts include advertisements in multiple media, telephone calls containing misrepresentations or omissions made in furtherance of the schemes, containing misrepresentations or omissions in furtherance of the schemes, derived from specified unlawful activity. The plaintiffs herein relied upon the misrepresentations and omissions directed at the plaintiffs herein by the defendants as part of their pattern of racketeering activity, and as a result suffered monetary and property damages.

*COUNT III*
*Fraudulent Inducement*

48.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

49.   This Cause of Action is asserted against Defendants for actual, compensatory and punitive damages based upon common law fraud and/or fraud in the inducement.

50.   The conduct referred to above constitute numerous intentional misrepresentations,

11

concealments and/or omissions of fact by Defendants through media, advertising and websites.

51.    The material misstatements, concealments and/or omissions as to the ingredients, toxicology, and effects of Defendants' products, are all material inducements to Plaintiff's acquisition and use of same, were made with full knowledge of their falsity and/or with reckless disregard of the truth.

52.    On information and belief, Defendants intended that the Plaintiffs rely upon the aforementioned misrepresentations, concealments and/or omissions to induce them to acquire and consume said products.

53.    Plaintiffs reasonably relied on Defendants' intentional misrepresentations, concealments or omissions inducing them purchase and consume their products.

54.    As a result of the aforementioned conduct of Defendants, Plaintiffs were injured for which they are entitled to recover actual, compensatory and punitive damages.

55.    On information and belief, the above-mentioned acts were committed by Defendants willfully, wantonly and with reckless disregard of the rights of the Plaintiffs.

### COUNT IV
### Violations of UCC § 2-318  Products Liability

56.    Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

57.    Defendants knowingly did sell, market and distribute the product known to be defective, illegal and/or unreasonably dangerous.

58.    There was no substantial change in the condition of the *Dixie X Botanical* product and it remained in original manufactured condition prior to Plaintiffs' acquisition and

consumption.

59.   Said product(s) contained illegal and harmful substances which caused harm to Plaintiff to which he is entitled to recover.

### COUNT V
### Breach of Contract

60.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

61.   The parties entered into a written agreement for the Plaintiffs to purchase the product and the Defendants agreed to provide the product (the "Contract").

62.   Consideration was paid by Plaintiffs to Defendants as set forth in the Contract.

63.   By reason of all of the foregoing, Defendants breached the Contract between the parties by refusing or failing to perform thereon.

64.   Plaintiffs have suffered actual and compensatory damages as a result of Defendants' breach.

### COUNT VI
### Breach of Express Warranty
### Violations of UCC § 2-313

65.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

66.   Defendants made certain specific representations and express warranties in connection with the sale of the Dixie X product, as described above, regarding the nature of the product including the condition or chemical composition of its product.

67.   Such representations were expressed as statements of fact.

68.   Such representations were false by Defendants.

Case 22-349, Document 54, 07/15/2022, 3348706, Page45 of 288

**A-42**

69.     Defendants breached such express warranties in that they failed to perform the terms of such warranty to the detriment of Plaintiff.

70.     As a result of the defendant's breach, Plaintiffs have sustained damages for which they are entitled to recover from Defendants.

## COUNT VII
### Unjust Enrichment

71.     Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

72.     This Cause of Action is asserted for restitution of Plaintiff based upon common law unjust enrichment.

73.     Plaintiffs conferred their full payment price on Defendants.

74.     By unjustly retaining all of Plaintiff's funds, defendants were unjustly enriched.

75.     Defendant continues to retain the benefit conferred by Plaintiff.

## COUNT VIII
### Negligence

76.     Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

77.     Defendants did not exercise due care in the processing of its product at issue and/or distribution of the same in order to ensure its safety for human consumption, and to ensure its legality in and throughout the United States.

78.     Defendants did not exercise due care in the product testing, reporting of the results of the toxicity levels of the products, and the sale, marketing and/or distribution complained of herein.

79.     Defendants did not exercise due care to ensure that its products complied with all relevant

14

state and federal laws and regulations.

80.   Plaintiffs' harm was the natural and foreseeable consequence of the Defendants' breach of its duty to act in a reasonable manner.

81.   By reason of the foregoing breach, Plaintiffs consequently suffered significant monetary damages and are entitled to recovery.

*COUNT IX*
**Negligent Infliction of Emotional Harm**

82.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

83.   Defendants' respective acts of will and wonton disregard for the safety of consumers is extreme, outrageous and shocking.

84.   Defendants' respective reckless and/or negligent behavior has caused Plaintiffs physical harm in the ingestion of caustic, toxic, and/or an illegal substance.

85.   Defendants' respective reckless and/or negligent behavior has caused Plaintiff mental anguish, harm and injury, loss of sleep, loss of appetite, anxiety, anger and depression.

86.   By reason of the foregoing, Plaintiffs have suffered humiliation, economic harm, loss of employment, loss of social and professional stature, actual present and future financial insecurity and loss of reputation.

87.   Plaintiffs are entitled to damages in an amount to be determined at trial which is greater than the jurisdictional amount required.

15

**WHEREFORE**, Plaintiffs demand judgment against the defendants, for actual, consequential, incidental, statutory and punitive damages as follows:

i.   On all causes of action, actual and compensatory damages in a sum of money having a present value which exceeds the jurisdictional limits of this Court;

ii.  Punitive damages based on defendants' knowing and willful misrepresentations pursuant to Plaintiffs RICO and Fraud claims;

iii. Statutory damages pursuant to those causes of action;

iv.  Interest, costs, disbursements and attorneys' fees pursuant to statutory causes of action;

v.   Such other relief as the court may deem just proper.

Dated: Forest Hills, New York
        August 5, 2015


                                    JEFFREY BENJAMIN, P.C.


                                    *Jeffrey Benjamin*
                                    By:    Jeffrey Benjamin, Esq.
                                    Attorney for Plaintiffs
                                    DOUGLAS J. HORN and CINDY HORN
                                    118-21 Queens Boulevard, Suite 501
                                    Forest Hills, New York 11375
                                    (718) 263-1111

A-45

## DEMAND FOR A TRIAL BY JURY

Pursuant to the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.


Dated: Forest Hills, New York
August 5, 2015


*Jeffrey Benjamin*
Jeffrey Benjamin, Esq.

A-46

### *DISTRIBUTION LIST*

MEDICAL MARIJUANA, INC
4901 Morena Blvd., Suite 701
San Diego, California  92117

DIXIE ELIXIRS AND EDIBLES
4990 Oakland Street
Denver, Colorado 80239

RED DICE HOLDINGS LLC
d/b/a DIXIE BOTANICALS
1610 Wynkoop Street, Suite 400
Denver, Colorado 80202



# CBD for Everyone!

Using a proprietary extraction process and a strain of high-CBD hemp grown in a secret, foreign location, Colorado's Dixie Elixirs and Edibles now offers a new product line called Dixie X, which contains 0% THC and up to 500 mg of CBD. This new CBD-rich medicine will be available in several forms, including a tincture, a topical and in capsules.

Promoted as "a revolution in medicinal hemp-powered wellness," the non-psychoactive products will first roll out in Colorado MMCs (medical marijuana centers), with plans to quickly expand outside the medical-marijuana market.

"It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado—and ultimately all individuals who are interested in utilizing CBD for medicinal benefit—will be able to have access to it," says Tripp Keber, Dixie's managing director. "We are importing industrial hemp from outside the US using an FDA import license—it's below federal guidelines for THC, which is 0.3%—and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal law as it's related to the Dixie X (hemp-derived) products." ✷✷



A-48

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,          Civ. Action No.:

     Plaintiffs,

                 **PLAINTIFF CIVIL**
                 **RICO   STATEMENT**

    -against-

MEDICAL MARIJUANA, INC.
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

      Defendants.
----------------------------------------------------------------X

## PLAINTIFFS' CIVIL RICO CASE STATEMENT

   Plaintiffs file this Civil RICO Case Statement pursuant to Local Rule 9 and allege on information and belief as follows.

1. **STATE WHETHER THE ALLEGED UNLAWFUL CONDUCT IS IN VIOLATION OF 18 U.S.C. SECTIONS 1962(a), (b), (c), AND/OR (d). IF YOU ALLEGE VIOLATIONS OF MORE THAN ONE SECTION 1962 SUBSECTION, TREAT EACH AS SEPARATE RICO CLAIM.**

   Plaintiffs assert violations of 18 U.S.C. § 1962(a), (b), (c) and (d).

2. **LIST EACH DEFENDANT, AND SEPARATELY STATE THE MISCONDUCT AND BASIS OF LIABILITY OF EACH DEFENDANT.**

   On information and belief, each of the corporate entity defendants are related through acquisition or merger though they carry out separate functions toward the common goal of profit from the racketeering activity alleged:

   <u>MEDICAL MARIJUANA, INC.</u>

  a) Defendant MEDICAL MARIJUANA, INC. is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States. Their primary purpose and function was and is to profit

1

from the marketing, distribution, promotion, advertising and/or sale of *inter alia* the Dixie X Elixir product sold to Plaintiff. Defendant was further responsible for the misrepresentations in advertising that the Dixie Products were safe and legal for all consumers to consume.

DIXIE ELIXIRS AND EDIBLES,

b) DIXIE ELIXIRS AND EDIBLES is a Colorado Corporation who is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States.   On information and belief, Medical Marijuana, Inc. is the parent company of Dixie Elixers and does business under that corporate name.

RED DICE HOLDINGS, LLC

c) Red Dice Holdings LLC is a Colorado Corporation who is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States.   On information and belief, it was formed as a joint venture between Dixie Holdings and Medical Marijuana, Inc. to hold the intellectual property of the Dixie Brand of products, Dixie Elixirs and Dixie Botanicals.

DIXIE BOTANICALS

d) Dixie Botanicals is a California Corporation who is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States. On information and belief, in 2014, Dixie Botanicals was acquired by Medical Marijuana Inc.

2

3)  **LIST THE ALLEGED WRONGDOERS, OTHER THAN THE DEFENDANTS LISTED ABOVE, AND STATE THE ALLEGED MISCONDUCT OF EACH WRONGDOER.**

Additional wrongdoers not named as Defendants include: (1) unknown employees of defendants who were responsible for *inter alia* marketing, manufacturing and distributing the product which brought about plaintiffs' damages; and (2) other wrongdoers, co-conspirators and aiders and abettors may be identified during the course of discovery.

4)  **LIST THE VICTIMS, AND STATE WHEN AND HOW EACH VICTIM WAS ALLEGEDLY INJURED.**

Plaintiffs, a husband and wife, worked as a team in the commercial trucking business for the same employer for the last ten (10) years.  Cindy Harp-Horn assisted and drove alongside her husband on almost all of their work trips.   On or around October 9, 2015, Plaintiffs were immediately terminated upon their employer Enterprise Transportation's discovery of a legally unacceptable level of THC in Douglas Horn's toxicology tests.  Plaintiffs subsequently lost his accumulated benefits, his current and hope for future lucrative employment.  Plaintiff's believe that they may never replace the successful employment track they were on before taking defendants' Dixie product.   As such, plaintiffs each suffer also from non-economic losses inclusive of emotional pain and anguish, humiliation, and degradation.

5)  **DESCRIBE IN DETAIL THE PATTERN OF RACKETEERING ACTIVITY OR COLLECTION OF AN UNLAWFUL DEBT FOR EACH RICO CLAIM. A DESCRIPTION OF THE PATTERN OF RACKETEERING ACTIVITY SHALL INCLUDE THE FOLLOWING INFORMATION:**

a)  **List the predicate acts/incidents and the specific statutes allegedly violated;**

There exist numerous predicate acts of mail and wire fraud by the sending through interstate commerce the product manufactured, promoted, advertised, distributed and sold by defendants.  Most prominently, defendants each individually and to advance their common goal

3

acted in violation of 18 U.S.C. §1961(1)(A) dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), and (D) the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States.  Defendants violated 18 U.S.C. § 1341 and 18 U.S.C. § 1343 by sending their illegal product through U.S. mail and correspondence and billing through wire or electronic transfers.   And in violation of 18 U.S.C. §1957(a) in knowingly engages or attempts to engage in a monetary transaction in criminally derived property.

      **b)**    **Provide the dates of the predicate acts/incidents, the participants in the predicate acts and a description of the facts surrounding each predicate act/incident.**

The date of defendants' predicate acts of racketeering activity with respect to plaintiffs was October 1, 2012 when he received and started to consume the product.  On information and belief, defendants manufactured and advertised the product and only started to offer the product months earlier in or around February, 2012.

      **c)**    **If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under U.S.C. Title 11, the "circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b)** *(Identifying the time, place and contents of the misrepresentations or omissions, and the identity of the persons to whom and by whom the misrepresentations were made);*

Defendants used both U.S. mail and electronic mail and money transfers to promote, distribute and sell the illegal product to plaintiffs in violation of 18 U.S.C. § 1341 and 1343.

      **d)**    **State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity;**

Plaintiffs are unaware of any criminal conviction(s) related to the allegations in the instant action.

6) **DESCRIBE IN DETAIL THE ENTERPRISE FOR EACH RICO CLAIM. A DESCRIPTION OF THE ENTERPRISE SHALL INCLUDE THE FOLLOWING INFORMATION:**

   a) **State the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise.**

   At present, plaintiffs are aware only of the listed Defendants as those persons constituting the Enterprise.

   b) **Describe the structure, purpose, roles, function and course of conduct of the enterprise.**

   Plaintiffs are currently unaware before discovery of the structure, purpose, roles, function and course of conduct of the enterprise.

   c) **State whether any defendants are employees, officers, or directors of the enterprise.**

   Plaintiffs have initially alleged liability only as against corporate entities and have not as yet identified individuals.

   d) **State whether any defendants are associated with the enterprise, and if so, how.**

   Reference is respectfully made to response c) above.

   e) **State whether you allege (i) that the defendants are individuals or entities separate from the enterprise, or (ii) that the defendants are the enterprise itself; or (iii) that the defendants are members of the enterprise.**

   Plaintiffs allege that defendants are the enterprise itself.

   f) **If you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive**

instruments, or victims of the racketeering activity.

Plaintiffs allege that the defendants are perpetrators and active participants in the alleged

racketeering activity.

7) **STATE WHETHER YOU ALLEGE, AND DESCRIBE IN DETAIL, HOW THE PATTERN OF RACKETEERING / CRIMINAL ACTIVITY AND THE ENTERPRISE ARE SEPARATE OR HAVE THEY MERGED INTO ONE ENTITY.**

On information and belief, the enterprise is an association of the defendants which has an

ascertainable structure stemming from the leadership of a common principal, merged into one

common entity but with separate functions in the promotion, manufacture, distribution and sale

of the product which brought about plaintiff's damages.

8) **DESCRIBE THE RELATIONSHIP BETWEEN THE ACTIVITIES AND THE PATTERN OF RACKETEERING/CRIMINAL ACTIVITY. DISCUSS HOW THE RACKETERERING/CRIMINAL ACTIVITY DIFFERS FROM THE USUAL AND DAILY ACTIVITIES OF THE ENTERPRISE, IF AT ALL.**

Plaintiffs believe the pattern or racketeering activity does not differ from any legitimate

activities of the Enterprise..

9) **DESCRIBE WHAT BENEFITS, IF ANY, THE ENTERPRISE AND EACH DEFENDANT RECEIVED FROM THE PATTERN OF RACKETEERING/ CRIMINAL ACTIVITY.**

Benefits received by the defendants appear to be the profit from ostensibly to an extent of

an over $5,000,000,000 market.

10) **DESCRIBE THE EFFECT OF THE ENTERPRISE'S ACTIVITIES ON INTERSTATE OR FOREIGN COMMERCE.**

Defendants distribute and sell a product which is a Controlled Substance through

interstate commerce to the extent of a multi-billion dollar market

**11) IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962(a) PROVIDE THE FOLLOWING INFORMATION:**

    **a)**    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

At present, plaintiff believes that all defendants received income from the national sale of the product alleged herein.

    **b)**    **Describe the use or investment of such income.**

Plaintiffs' are unaware as to how defendants used such income other than to further the racketeering activity.

**12) IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962(b), PROVIDE THE FOLLOWING INFORMATION:**

    **a)**    **Describe in detail the acquisition of maintenance of any interest in or control of the alleged enterprise; and**

On information and belief, the defendants named herein started the illicit business alleged in the Complaint.  Plaintiffs believe that defendant Medical Marijuana, Inc. is the parent company who acquired or otherwise have a stake in the other entities named herein.

    **b)**    **State whether the same entity is both the liable "person" and the "enterprise" under § 1962(b**

Yes.

**13) IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962 (c), PROVIDE THE FOLLIWING INFORMATION:**

    **a)**  **State who is employed by or associated with the enterprise;**

Plaintiff does not have access to and is unaware of specific individuals employed by the corporate defendants before discovery.

7

    **b)  State whether the same entity is both the liable "person" and the "enterprise" under § 1962 (c)**

Yes.

**14) IF THE COMPLAINT ALLEGES A VIOLATION OF 18 U.S.C. § 1962(d), DESCRIBE IN DETAIL THE CONSPIRACY, INCLUDING THE IDENTITY OF THE CO-CONSPIRATORS, THE OBJECT OF THE CONSPIRACY, AND THE DATE AND SUBSTANCE OF THE CONSPIRATORIAL AGREEMENT.**

In order to successfully perpetrate the enterprise, defendants worked together to manufacture an innovative product which would bring about untold profit from its marketing, distribution and sale.  Each of the entities named herein played its own part in bringing the subject product to market and benefitting therefrom.  Plaintiffs believe the defendants created this market in or around February, 2012 when advertising for it began.

**15) DESCRIBE THE ALLEGED INJURY TO BUSINESS OR PROPERTY.**

As more fully stated in plaintiffs' Complaint, plaintiffs lost their substantial livelihood from the use of the product.  They were immediately terminated from anticipated lifelong and substantial employment and lost other benefits flowing therefrom.  The injury from the use of the product began on approximately October 9, 2012 and continues unabated to date.

**16) DESCRIBE THE RELATIONSHIP BETWEEN THE ALLEGED INJURY AND VIOLATION OF THE RICO STATUTE.**

If plaintiff Douglas Horn did not consume the Dixie X product, he would not have had a positive toxicology test and lost his and his wife's employment then and into the future.

**17) LIST THE DAMAGES SUSTAINED BY REASON OF THE VIOLATION OF §
1962, INDICATING THE AMOUNT FOR WHICH EACH DEFENDANT
ALLEGEDLY IS LIABLE.**

Plaintiffs lost employment at the company at a minimum salary of $100,000 each.  The

total lost salary for both plaintiffs yearly was a minimum of $200,000.  In addition to their

salaries, plaintiffs lost 401 k contributions, life insurance and other benefits for amounts that are

ongoing.

**18) LIST ALL OTHER FEDERAL CAUSES OF ACTION, IF ANY, AND PROVIDE
THE RELEVAMT STATUTE NUMBERS.**

None.

**19) LIST ALL PENDENT STATES CLAIM, IF ANY.**

None.

**20) PROVIDE ANY ADDITIONAL INFORMATION YOU FEEL WOULD BE
HELPFUL TO THE COURT IN PROCESSING YOUR RICO CLAIM.**

None.

JEFFREY BENJAMIN, P.C.

*Jeffrey Benjamin*

By:     Jeffrey Benjamin, Esq.
Attorney for Plaintiffs
DOUGLAS J. HORN and CINDY HORN
118-21 Queens Boulevard, Suite 501
Forest Hills, New York 11375
(718) 263-1111

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DOUGLAS J. HORN and CINDY HARP-HORN,

*Plaintiffs*,

-against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

*Defendants.*

Civil Action No. 15-cv-701-G

**ANSWER AND AFFIRMATIVE**
**DEFENSES**

Defendant Dixie Elixirs ("Dixie"), by their respective undersigned counsel, state as follows, upon information and belief:

### PRELIMINARY STATEMENT

1.      Defendant denies all of the allegations contained within Paragraph 1 of the Plaintiffs' Complaint.

### JURISDICTION AND PARTIES

2.      Defendant denies all of the allegations contained within Paragraph 2 of the Plaintiffs' Complaint.

3.      Defendant denies all of the allegations contained within Paragraph 3 of the Plaintiffs' Complaint.

4.      Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 of the Complaint.

5.      Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 5 of the Complaint.

Case 22-349, Document 54, 07/15/2022, 3348706, Page61 of 288

6.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 6 of the Complaint.

7.     Defendant denies the allegations contained within Paragraph 7 of the Plaintiffs' Complaint, except admits that Defendant is a Colorado Limited Liability Company with a principal place of business located at 4990 Oakland Street, Denver, CO 80209, United States.

8.     Defendant denies all of the allegations contained within Paragraph 10 of the Plaintiffs' Complaint.

9.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 9 of the Complaint.

10.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 10 of the Complaint.

11.     Defendant denies all of the allegations contained within Paragraph 11 of the Plaintiffs' Complaint.

## SPECIFIC FACTS AS TO PLAINTIFFS

12.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 of the Complaint.

13.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 13 of the Complaint.

14.     Defendant denies all of the allegations contained within Paragraph 14 of the Plaintiffs' Complaint.

15.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 15 of the Complaint.

16.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 16 of the Complaint.

17.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 17 of the Complaint.

18.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 of the Complaint.

19.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 19 of the Complaint.

20.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 of the Complaint.

21.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 21 of the Complaint.

### <u>GENERAL FACTS AND ALLEGATIONS AS TO ALL CAUSES OF ACTION</u>

22.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 22 of the Complaint.

23.     Defendant denies all of the allegations contained within Paragraph 23 of the Plaintiffs' Complaint.

24.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 24 of the Complaint.

25.     Defendant denies all of the allegations contained within Paragraph 25 of the Plaintiffs' Complaint.

26.     Defendant denies all of the allegations contained within Paragraph 26 of the Plaintiffs' Complaint.

27.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 27 of the Complaint.

28.     Defendant denies all of the allegations contained within Paragraph 28 of the Plaintiffs' Complaint.

29.     Defendant denies all of the allegations contained within Paragraph 29 of the Plaintiffs' Complaint.

30.     Defendant denies all of the allegations contained within Paragraph 30 of the Plaintiffs' Complaint.

31.     Defendant denies all of the allegations contained within Paragraph 31 of the Plaintiffs' Complaint.

32.     Defendant denies all of the allegations contained within Paragraph 32 of the Plaintiffs' Complaint.

## COUNT I

33.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

34.     Defendant denies all of the allegations contained within Paragraph 34 of the Plaintiffs' Complaint.

35.     Defendant denies all of the allegations contained within Paragraph 35 of the Plaintiffs' Complaint.

36.     Defendant denies all of the allegations contained within Paragraph 36 of the Plaintiffs' Complaint.

37.     Defendant denies all of the allegations contained within Paragraph 37 of the Plaintiffs' Complaint.

38.     Defendant denies all of the allegations contained within Paragraph 38 of the Plaintiffs' Complaint.

39.     Defendant denies all of the allegations contained within Paragraph 39 of the Plaintiffs' Complaint.

40.     Defendant denies all of the allegations contained within Paragraph 40 of the Plaintiffs' Complaint.

41.     Defendant denies all of the allegations contained within Paragraph 41 of the Plaintiffs' Complaint.

## COUNT II

42.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

43.     Defendant denies all of the allegations contained within Paragraph 43 of the Plaintiffs' Complaint.

44.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 44 of the Complaint.

45.     Defendant denies all of the allegations contained within Paragraph 45 of the Plaintiffs' Complaint.

46.     Defendant denies all of the allegations contained within Paragraph 46 of the Plaintiffs' Complaint.

47.     Defendant denies all of the allegations contained within Paragraph 47 of the Plaintiffs'
Complaint.

## COUNT III

48.     Defendant repeats and realleges each and every allegation, response, denial and denial of
information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the
prior Paragraphs of this Answer as if heretofore set out at length.

49.     Paragraph 49 of the Complaint makes no allegations to which a response is required. To
the extent that allegations are presented in Paragraph 49, Defendant denies them in their entirety.

50.     Defendant denies all of the allegations contained within Paragraph 50 of the Plaintiffs'
Complaint.

51.     Defendant denies all of the allegations contained within Paragraph 51 of the Plaintiffs'
Complaint.

52.     Defendant denies all of the allegations contained within Paragraph 52 of the Plaintiffs'
Complaint.

53.     Defendant denies all of the allegations contained within Paragraph 53 of the Plaintiffs'
Complaint.

54.     Defendant denies all of the allegations contained within Paragraph 54 of the Plaintiffs'
Complaint.

55.     Defendant denies all of the allegations contained within Paragraph 55 of the Plaintiffs'
Complaint.

## COUNT IV

Case 22-349, Document 54, 07/15/2022, 3348706, Page66 of 288

56.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

57.     Defendant denies all of the allegations contained within Paragraph 57 of the Plaintiffs' Complaint.

58.     Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 58 of the Complaint.

59.     Defendant denies all of the allegations contained within Paragraph 59 of the Plaintiffs' Complaint.

## COUNT V

60.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

61.     Defendant denies all of the allegations contained within Paragraph 61 of the Plaintiffs' Complaint.

62.     Defendant denies all of the allegations contained within Paragraph 62 of the Plaintiffs' Complaint.

63.     Defendant denies all of the allegations contained within Paragraph 63 of the Plaintiffs' Complaint.

64.     Defendant denies all of the allegations contained within Paragraph 64 of the Plaintiffs' Complaint.

## COUNT VI

65.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

66.     Defendant denies all of the allegations contained within Paragraph 66 of the Plaintiffs' Complaint.

67.     Defendant denies all of the allegations contained within Paragraph 67 of the Plaintiffs' Complaint.

68.     Defendant denies all of the allegations contained within Paragraph 68 of the Plaintiffs' Complaint.

69.     Defendant denies all of the allegations contained within Paragraph 69 of the Plaintiffs' Complaint.

70.     Defendant denies all of the allegations contained within Paragraph 70 of the Plaintiffs' Complaint.

## COUNT VII

71.     Defendant repeats and realleges each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the prior Paragraphs of this Answer as if heretofore set out at length.

72.     Paragraph 72 of the Complaint makes no allegations to which a response is required. To the extent that allegations are presented in Paragraph 72, Defendant denies them in their entirety.

73.     Defendant denies all of the allegations contained within Paragraph 73 of the Plaintiffs' Complaint.

74.     Defendant denies all of the allegations contained within Paragraph 74 of the Plaintiffs' Complaint.

Case 22-349, Document 54, 07/15/2022, 3348706, Page68 of 288

75.     Defendant denies all of the allegations contained within Paragraph 75 of the Plaintiffs'
Complaint.

## COUNT VIII

76.     Defendant repeats and realleges each and every allegation, response, denial and denial of
information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the
prior Paragraphs of this Answer as if heretofore set out at length.

77.     Defendant denies all of the allegations contained within Paragraph 77 of the Plaintiffs'
Complaint.

78.     Defendant denies all of the allegations contained within Paragraph 78 of the Plaintiffs'
Complaint.

79.     Defendant denies all of the allegations contained within Paragraph 79 of the Plaintiffs'
Complaint.

80.     Defendant denies all of the allegations contained within Paragraph 80 of the Plaintiffs'
Complaint.

81.     Defendant denies all of the allegations contained within Paragraph 81 of the Plaintiffs'
Complaint.

## COUNT IX

82.     Defendant repeats and realleges each and every allegation, response, denial and denial of
information and knowledge as set forth in its Answer to the Plaintiffs' Complaint contained in the
prior Paragraphs of this Answer as if heretofore set out at length.

83.     Defendant denies all of the allegations contained within Paragraph 83 of the Plaintiffs'
Complaint.

Case 22-349, Document 54, 07/15/2022, 3348706, Page69 of 288

84.     Defendant denies all of the allegations contained within Paragraph 84 of the Plaintiffs' Complaint.

85.     Defendant denies all of the allegations contained within Paragraph 85 of the Plaintiffs' Complaint.

86.     Defendant denies all of the allegations contained within Paragraph 86 of the Plaintiffs' Complaint.

87.     Defendant denies all of the allegations contained within Paragraph 87 of the Plaintiffs' Complaint.

## AFFIRMATIVE DEFENSES

### As and for a First Affirmative Defense:

88.     Plaintiff failed to initiate suit within the applicable statute of limitations period.

### As and for a Second Affirmative Defense:

89.     This court lacks personal jurisdiction over answering Defendant.

### As and for a Third Affirmative Defense:

90.     This court lacks subject matter jurisdiction over this dispute.

### As and for a Fourth Affirmative Defense:

91.     The Complaint fails to state a claim against answering Defendant on which relief can be granted.

### As and for a Fifth Affirmative Defense:

92.     Plaintiff failed to mitigate the damages alleged in the Complaint, even though Plaintiff had the opportunity and means of doing so. In asserting this affirmative defense, Defendant does not admit liability for damages due to the Plaintiff's injury alleged in the Complaint, nor does Defendant admit that such damages exist.

### As and for a Sixth Affirmative Defense:

93.    Plaintiff's culpable conduct contributed to the alleged damages, which are denied, by knowing and intentional assumption of the risks inherent in the activities described in the Complaint, and as such Plaintiff is barred from recovery in this action.

### As and for a Seventh Affirmative Defense:

94.    Any injuries that may have been sustained by Plaintiff, as alleged in its Complaint, occurred as a direct result of Plaintiff's own negligent conduct, and not by any conduct of answering Defendant, and as such Plaintiff is barred from recovery in this action.

### As and for an Eighth Affirmative Defense

95.    Any damages sustained by Plaintiff, as alleged in the Complaint, were proximately, directly, and solely caused by the negligent acts of third persons over whom answering Defendant had and have no direction or control.

### As and for a Ninth Affirmative Defense

96.    Any contract in this matter is void because it was devised to achieve a purpose that is illegal under statute or common law.

### As and for an Tenth Affirmative Defense

97.    Each cause of action in the Complaint is barred to the extent that Plaintiff consented to any of the alleged activity or conduct.

### As and for an Eleventh Affirmative Defense

98.    Plaintiff's injuries do not arise out of any of the predicate acts that may give rise to liability under the Racketeer Influenced and Corrupt Organizations Act as defined by 18 U.S.C. §1961(1), and Plaintiff is therefore without standing.

### As and for a Twelfth Affirmative Defense

99.    Plaintiff's Complaint contains injuries that are speculative and therefore not actionable under the Racketeer Influenced and Corrupt Organizations Act.

### As and for a Thirteenth Affirmative Defense

100.    Any alleged conduct on the part of answering Defendant was undertaken in good faith for legitimate business purposes.

### As and for a Fourteenth Affirmative Defense

101.    Plaintiff's recovery is limited or barred by express or implied warranties.

### As and for a Fifteenth Affirmative Defense

102.    Plaintiff and answering Defendant were not parties to the contract for the purchase of the product at issue and therefore had no contractual relationship.

### As and for a Sixteenth Affirmative Defense

103.    Answering Defendant performed all contractual obligations other than those which were prevented or excused, if any, and therefore did not breach the agreement.

### As and for a Seventeenth Affirmative Defense

104.    Any written agreement between the parties was intended to be the full agreement between the parties, and the Plaintiff cannot present any evidence not in writing to establish or alter the terms of the agreement.

**WHEREFORE**, Defendants respectfully demand judgment denying all relief sought by Plaintiff and dismissing the Complaint in its entirety, awarding Defendant costs, disbursements, and reasonable attorney's fees incurred in this action, and granting such other and further relief as the Court deems just and proper.

**A-69**

Dated: New York, New York
October 23, 2015

Respectfully submitted,
MESSNER REEVES LLP

By:   ___/s/_____
Wendy J. Lindstrom
*Attorneys for Defendant Dixie Elixirs LLC*
805 Third Avenue, 18th Floor
New York, NY 10022
Tel:    646-663-1860
Fax:    646-663-1895
Email: wlindstrom@messner.com

A-70

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                                        Plaintiffs,          **ANSWER AND
                                                             AFFIRMATIVE DEFENSES**

        -against-                                            Civil Action No. 15-cv-701-FPG

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                                        Defendants.

_____

        Defendants MEDICAL MARIJUANA, INC. and RED DICE HOLDINGS, LLC

("these answering defendants"), by their undersigned counsel, state as follows, upon

information and belief:

## PRELIMINARY STATEMENT

        1.      Paragraph 1 of the plaintiffs' complaint makes no specific factual

allegations as to which a response is required.   To the extent that factual allegations are

presented in Paragraph 1 of the complaint, these answering defendants deny them.

## JURISDICTION AND PARTIES

        2.      These answering defendants deny all of the allegations contained

within Paragraph 2 of the complaint.

        3.      These answering defendants deny all of the allegations contained

within Paragraph 3 of the complaint.

-1-

4.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 of the complaint.

5.     These answering defendants deny all of the allegations in Paragraph 5 of the complaint.

6.     These answering defendants deny all of the allegations contained in Paragraph 6 of the complaint, except admit the defendant Medical Marijuana, Inc., is engaged in business involving hemp-based products.

7.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 7 of the complaint.

8.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 8 of the complaint.

9.     These answering defendants deny the allegations in Paragraph 9 of the complaint.

10.     These answering defendants deny the allegations in Paragraph 10 of the complaint.

11.     These answering defendants deny the allegations in Paragraph 11 of the complaint.

## SPECIFIC FACTS AS TO PLAINTIFFS

12.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 of the complaint.

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

13.     These answering defendants deny that Exhibit A to the complaint sets forth any claim that the product treated inflammation and pain, and otherwise state they are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 13 of the complaint.

14.     These answering defendants deny the allegations contained within Paragraph 14 of the complaint as to alleged advertising, and otherwise state they are without knowledge or information sufficient to form a belief as to the remaining allegations of that paragraph of the complaint.

15.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 15 of the complaint.

16.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 16 of the complaint.

17.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 17 of the complaint.

18.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 of the complaint.

19.     These answering defendants deny the allegations of "false advertising" and "misleading press releases" as to the answering defendants and otherwise are without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 19 of the complaint.

Mura & Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

20.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 of the complaint.

21.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 21 of the complaint.

**GENERAL FACTS AND ALLEGATIONS AS TO ALL CAUSES OF ACTION**

22.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 22 of the complaint.

23.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 23 of the complaint.

24.     These answering defendants deny all of the allegations contained within Paragraph 24 of the complaint.

25.     These answering defendants deny all of the allegations contained within Paragraph 25 of the complaint.

26.     These answering defendants deny all of the allegations contained within Paragraph 26 of the complaint.

27.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 27 of the complaint.

28.     These answering defendants deny all of the allegations contained within Paragraph 28 of the complaint.

29.     These answering defendants deny all of the allegations contained within Paragraph 29 of the complaint.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

**A-74**

30.     These answering defendants deny all of the allegations contained within Paragraph 30 of the complaint.

31.     These answering defendants deny all of the allegations contained within Paragraph 31 of the complaint.

32.     These answering defendants deny all of the allegations contained within Paragraph 32 of the complaint.

<u>COUNT I</u>

33.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

34.     These answering defendants deny all of the allegations contained within Paragraph 34 of the complaint.

35.     These answering defendants deny all of the allegations contained within Paragraph 35 of the complaint.

36.     These answering defendants deny all of the allegations contained within Paragraph 36 of the complaint.

37.     These answering defendants deny all of the allegations contained within Paragraph 37 of the complaint.

38.     These answering defendants deny all of the allegations contained within Paragraph 38 of the complaint.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

39.     These answering defendants deny all of the allegations contained within Paragraph 39 of the complaint.

40.     These answering defendants deny all of the allegations contained within Paragraph 40 of the complaint.

41.     These answering defendants deny all of the allegations contained within Paragraph 41 of the complaint.

<u>COUNT II</u>

42.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

43.     These answering defendants deny all of the allegations contained within Paragraph 43 of the complaint.

44.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 44 of the complaint.

45.     These answering defendants deny all of the allegations contained within Paragraph 45 of the complaint.

46.     These answering defendants deny all of the allegations contained within Paragraph 46 of the complaint.

47.     These answering defendants deny all of the allegations contained within Paragraph 47 of the complaint.

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

A-76

## COUNT III

48.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

49.     Paragraph 49 of the complaint makes no allegations to which a response is required. To the extent that allegations are presented in Paragraph 49, these answering defendants deny them in their entirety.

50.     These answering defendants deny all of the allegations contained within Paragraph 50 of the complaint.

51.     These answering defendants deny all of the allegations contained within Paragraph 51 of the complaint.

52.     These answering defendants deny all of the allegations contained within Paragraph 52 of the complaint.

53.     These answering defendants deny all of the allegations contained within Paragraph 53 of the complaint.

54.     These answering defendants deny all of the allegations contained within Paragraph 54 of the complaint.

55.     These answering defendants deny all of the allegations contained within Paragraph 55 of the complaint.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## COUNT IV

56.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

57.     These answering defendants deny all of the allegations contained within Paragraph 57 of the complaint.

58.     These answering defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 58 of the complaint.

59.     These answering defendants deny all of the allegations contained within Paragraph 59 of the Plaintiffs' Complaint.

## COUNT V

60.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

61.     These answering defendants deny all of the allegations contained within Paragraph 61 of the complaint.

62.     These answering defendants deny all of the allegations contained within Paragraph 62 of the complaint.

Mura & Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

**A-78**

63.     These answering defendants deny all of the allegations contained within Paragraph 63 of the complaint.

64.     These answering defendants deny all of the allegations contained within Paragraph 64 of the complaint.

<u>COUNT VI</u>

65.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

66.     These answering defendants deny all of the allegations contained within Paragraph 66 of the complaint.

67.     These answering defendants deny all of the allegations contained within Paragraph 67 of the complaint.

68.     These answering defendants deny all of the allegations contained within Paragraph 68 of the complaint.

69.     These answering defendants deny all of the allegations contained within Paragraph 69 of the complaint.

70.     These answering defendants deny all of the allegations contained within Paragraph 70 of the complaint.

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

Case 22-349, Document 54, 07/15/2022, 3348706, Page82 of 288

## COUNT VII

71.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

72.     Paragraph 72 of the complaint makes no allegations to which a response is required. To the extent that allegations are presented in Paragraph 72, these answering defendants deny them in their entirety.

73.     These answering defendants deny all of the allegations contained within Paragraph 73 of the complaint.

74.     These answering defendants deny all of the allegations contained within Paragraph 74 of the complaint.

75.     These answering defendants deny all of the allegations contained within Paragraph 75 of the complaint.

## COUNT VIII

76.     These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in its Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

77.     These answering defendants deny all of the allegations contained within Paragraph 77 of the complaint.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

78.    These answering defendants deny all of the allegations contained within Paragraph 78 of the complaint.

79.    These answering defendants deny all of the allegations contained within Paragraph 79 of the complaint.

80.    These answering defendants deny all of the allegations contained within Paragraph 80 of the complaint.

81.    These answering defendants deny all of the allegations contained within Paragraph 81 of the complaint.

**COUNT IX**

82.    These answering defendants repeat and reallege each and every allegation, response, denial and denial of information and knowledge as set forth in their Answer to the complaint contained in the prior paragraphs of this Answer as if heretofore set out at length.

83.    These answering defendants deny all of the allegations contained within Paragraph 83 of the complaint.

84.    These answering defendants deny all of the allegations contained within Paragraph 84 of the complaint.

85.    These answering defendants deny all of the allegations contained within Paragraph 85 of the complaint.

86.    These answering defendants deny all of the allegations contained within Paragraph 86 of the complaint.

Mura & Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

87.     These answering defendants deny all of the allegations contained within Paragraph 87 of the complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

88.     Plaintiffs failed to initiate suit as to one or more of their Counts set forth in the complaint within the applicable statute of limitations period.

### SECOND AFFIRMATIVE DEFENSE

89.     This Court lacks personal jurisdiction over one or both of these answering defendants.

### THIRD AFFIRMATIVE DEFENSE

90.     This Court lacks subject matter jurisdiction over this dispute.

### FOURTH AFFIRMATIVE DEFENSE

91.     One or more of the Counts set forth in the complaint fails to state a claim against these answering defendants upon which relief can be granted.

### FIFTH AFFIRMATIVE DEFENSE

92.     Plaintiffs failed to mitigate the damages alleged in the Complaint, even though Plaintiffs had the opportunity and means of doing so.   In asserting this affirmative defense, these answering defendants do not admit liability for damages due to the Plaintiffs' injuries alleged in the complaint, nor do these answering defendants admit that such damages exist.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

### SIXTH AFFIRMATIVE DEFENSE

93.    Plaintiffs' culpable conduct contributed to the alleged damages, which are denied, by knowing and intentional assumption of the risks inherent in the activities described in the complaint, and as such plaintiffs are barred from recovery in this action.

### SEVENTH AFFIRMATIVE DEFENSE

94.    Any injuries that may have been sustained by plaintiffs, as alleged in their complaint, occurred as a direct result of plaintiffs' own intentional or negligent conduct, and not by any conduct of these answering defendants, and as such plaintiffs are barred from recovery in this action.

### EIGHTH AFFIRMATIVE DEFENSE

95.    Any damages sustained by plaintiffs, as alleged in the complaint, were proximately, directly, and solely caused by the intentional or negligent acts of third persons over whom these answering defendants had no direction or control.

### NINTH AFFIRMATIVE DEFENSE

96.    Any contract in this matter is void because it was devised to achieve a purpose that is illegal under statute or common law.

### TENTH AFFIRMATIVE DEFENSE

97.    Each cause of action in the complaint is barred to the extent that plaintiffs consented to any of the alleged activity or conduct.

-13-

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

## ELEVENTH AFFIRMATIVE DEFENSE

98.    Plaintiffs' injuries do not arise out of any of the predicate acts that may give rise to liability under the Racketeer Influenced and Corrupt Organizations Act as defined by 18 U.S.C. §1961(1), and plaintiffs are therefore without standing.

## TWELFTH AFFIRMATIVE DEFENSE

99.    Plaintiffs' complaint contains injuries that are speculative and therefore not actionable under the Racketeer Influenced and Corrupt Organizations Act.

## THIRTEENTH AFFIRMATIVE DEFENSE

100.    Any alleged conduct on the part of these answering defendants was undertaken in good faith for legitimate business purposes.

## FOURTEENTH AFFIRMATIVE DEFENSE

101.    Plaintiffs' recovery is limited or barred by express or implied warranties.

## FIFTEENTH AFFIRMATIVE DEFENSE

102.    Plaintiffs and these answering defendants were not parties to the contract for the purchase of the product at issue and therefore had no contractual relationship.

## SIXTEENTH AFFIRMATIVE DEFENSE

103.    These answering defendants performed all contractual obligations other than those which were prevented or excused, if any, and therefore did not breach the agreement.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## SEVENTEENTH AFFIRMATIVE DEFENSE

104.   Plaintiffs cannot obtain restitution through unjust enrichment if there was an express written agreement between the parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE

105.   Upon information and belief, the doctrine of spoliation applies in this matter to preclude plaintiffs from any recovery against these answering defendants.


**WHEREFORE**, these answering defendants respectfully demand judgment denying all relief sought by plaintiffs and dismissing the complaint in its entirety, awarding these answering defendants costs, disbursements, and reasonable attorney's fees incurred in this action, and granting such other and further relief as the Court deems just and proper.

DATED:   Buffalo, New York
         February 19, 2016

                              s/  Roy A. Mura
                              _____
                              Roy A. Mura, Esq.
                              MURA & STORM, PLLC
                              *Attorneys for Defendants Medical Marijuana,*
                              *Inc. and Red Dice Holdings, LLC*
                              930 Rand Building
                              14 Lafayette Square
                              Buffalo, New York 14203
                              (716) 855-2800

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816

A-85

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                         Plaintiffs,

      -against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                         Defendants.

_____

Civil Action No. 15-cv-701-FPG

### CERTIFICATE OF FILING & SERVICE

Roy A. Mura, Esq. hereby certifies and affirms that on the 19th day of February 2016, the Answer of defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC dated February 19, 2016 was filed with the Clerk of the United States District Court for the Western District of New York via electronic filing and served on Jeffrey Benjamin, Esq., *Attorney for Plaintiffs*.

                              s/Roy A. Mura, Esq._____
                              Roy A. Mura, Esq.

**A-86**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                                        Plaintiffs,
                                                            Case # 15-CV-701-FPG
v.
                                                            DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                                        Defendants.

## INTRODUCTION

Plaintiffs Douglas J. Horn and Cindy Harp-Horn bring suit against Defendants Medical Marijuana, Inc. ("MMI"), Dixie Elixirs and Edibles ("Dixie LLC"), Red Dice Holdings, LLC ("RDH"), and Dixie Botanicals.[1]  ECF No. 1.  Plaintiffs allege that Defendants engaged in fraud, negligence, and unlawful conduct with respect to the sale and marketing of their hemp-based consumable oil—"Dixie X Dew Drops."  Before the Court are six motions: (1) Plaintiffs' motion for partial summary judgment (ECF No. 60); (2) Defendants MMI and RDH's motion for summary judgment (ECF No. 61); (3) Defendant Dixie LLC's motion for summary judgment (ECF No. 62); (4) Plaintiffs' motion to amend (ECF No. 68); (5) Dixie LLC's motion to strike (ECF No. 71); and (6) Defendants MMI and RDH's motion to strike (ECF No. 74).  The Court resolves all of these motions in this omnibus order.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] In August 2016, the Clerk of Court filed an entry of default against Dixie Botanicals after it failed to appear.  *See* ECF Nos. 22, 28.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND[2]

This case concerns a product called CBD oil.  CBD is short for "cannabidiol," and it is one of the "unique molecules" found in the *Cannabis sativa* plant.  ECF No. 61-8 at 18.  The *Cannabis sativa* plant is better known as the plant from which marijuana is derived.  But it is also the species of plant from which industrial hemp is derived.  The Eighth Circuit provides a helpful description:

> Both industrial hemp and the drug commonly known as marijuana derive from the plant designated *Cannabis sativa* L. In general, drug-use cannabis is produced from the flowers and leaves of certain strains of the plant, while industrial-use cannabis is typically produced from the stalks and seeds of other strains of the plant. All cannabis plants contain tetrahydrocannabinol (THC), the substance that gives marijuana its psychoactive properties, but strains of the plant grown for drug use contain a higher THC concentration than those typically grown for industrial use.

*Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 955 (8th Cir. 2009) (emphasis added).  In other words, the distinction is one of degree—while "the marijuana plant and industrial hemp plant come from the same botanical species," the "hemp plant has been crossbred to have low

---

[2] Generally, when cross-motions for summary judgment are filed, the court "must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Physicians Comm. for Responsible Medicine v. Leavitt*, 331 F. Supp. 2d 204, 206 (S.D.N.Y. 2004).  However, for purposes of describing the background of the case, the Court describes the facts as taken in the light most favorable to Plaintiffs, unless otherwise noted.

concentrations of THC."  Shelly B. DeAdder, *The Legal Status of Cannabidiol Oil and the Need for Congressional Action*, 9 BIOPLR 68, 72 (2015).  CBD can be extracted from both the marijuana and hemp varieties of *Cannabis sativa*.  *See id.* at 72 & n.34.

Products containing CBD have become hot commodities in recent years, and sales are "projected to grow tremendously."  W. Michael Schuster & Jack Wroldsen, *Entrepreneurship and Legal Uncertainty: Unexpected Federal Trademark Registrations for Marijuana Derivatives*, 55 AMBLJ 117, 135 (2018).  Advocates claim that CBD provides numerous health benefits, particularly in the area of pain management.  *See id.* at 128-29; *see also* ECF No. 61-8 at 19.

The product at issue here is a hemp-derived CBD oil called "Dixie X Dew Drops" (hereinafter "Dixie X").  Cindy Orser, Defendants' scientific expert, explains how these products are generally created.  There is an initial "extraction step," where hemp is combined with a solvent like ethanol, butane, pressurized $CO_2$, or propane.  ECF No. 61-8 at 79-80.  This process yields a CBD extract, which is then distilled to remove plant compounds, solvents, THC, and other materials.  *Id.* at 83.  The intended end-product is a pure CBD concentrate that can then be infused into a consumable final product.

Like other CBD oil products, Dixie X contains CBD that is "isolate[d] and extract[ed]" from hemp plants.  ECF No. 60-8 at 1; *see also* ECF No. 69-4 at 12-13.  The resulting CBD is then "infuse[d] . . . into [a] line of hemp products."  ECF No. 60-8 at 1.  The label on Dixie X indicates that it contains "[p]ure glycerin, hemp whole plant extract, CBD extract derived from medicinal hemp, [and] cinnamon extract."  ECF No. 60-15 at 1 (asterisk omitted).  Importantly, despite the extraction and distillation process, Dixie X contains a detectible, albeit small, amount of THC. *See, e.g.*, ECF No. 60-14.

All three defendants played a role in the sale of Dixie X.  MMI and Dixie LLC entered into a joint venture to produce, distribute, and sell Dixie X.  *See* ECF No. 69-2 at 1.  They formed RDH for that purpose in April 2012.  *Id.*  MMI would hold a 60% ownership stake in RDH, while Dixie LLC would hold a 40% stake.  *See* ECF No. 68-2 at 106.  Tripp Keber, who was also Dixie LLC's managing member, would act as the manager of RDH.[3]  *Id.* at 2.  In practice, it appears that MMI provided financial support for the venture, Dixie LLC manufactured Dixie X, and RDH was responsible for selling the product.  *See* ECF No. 61-1 ¶¶ 3-5.  There is also a question of fact as to whether Keber acted as a director of MMI, though the exact dates of his tenure are unclear from the record.  *Compare* ECF No. 61-11 ¶ 12, *with* ECF No. 68-2 at 79.

In September 2012, Plaintiffs purchased a 500 mg bottle of Dixie X.  They had researched the product from various sources, and they hoped it would relieve the pain and inflammation Douglas was then suffering from as a result of a motor vehicle accident.[4]  Plaintiffs claimed to have relied on four sources in deciding to purchase Dixie X.

Plaintiffs first learned about Dixie X in an issue of "High Times" magazine—a periodical dedicated to marijuana culture and news.   In an article titled "High & Healthy" by Elise McDonough, there was the following writeup:

CBD for Everyone!

Using a proprietary extraction process and a strain of high-CBD hemp grown in a secret, foreign location, Colorado's Dixie Elixirs and Edibles now offers a new product line called Dixie X, which contains 0% THC and up to 500 mg of CBD.  This new CBD-rich medicine will be available in several forms, including a tincture, a topical and in capsules.  Promoted as "a revolution in medical hemp-powered wellness," the non-psychoactive products will first roll out in Colorado

---

[3] "Tripp" appears to be the nickname of Vincent M. Keber, III.  *See* ECF No. 69-2 at 2 (stating that "Vincent M. Keber, III" acted as manager of RDH); ECF No. 69-4 at 25 (stating that "Tripp Keber" is "President" of RDH).

[4] For ease of reference, the Court refers to Plaintiffs by their first names.

MMCs (medical marijuana centers), with plans to quickly expand outside the medical marijuana market. "It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado—and ultimately all individuals who are interested in utilizing CBD for medicinal benefit—will be able to have access to it," says Tripp Keber, Dixie's managing director. "We are importing industrial hemp from outside the US using an FDA import license—it's below federal guidelines for THC, which is 0.3%—and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal law as it's related to the Dixie X [hemp-derived] products."

ECF No. 61-7 at 42.

After reviewing the article, Plaintiffs decided to conduct further research. They watched two YouTube videos of interviews between podcasters and a person who identifies himself as Tripp Keber (the "YouTube interviews").[5] In these videos, Keber stated that Dixie X did not contain THC.[6]

Plaintiffs also reviewed an FAQ on the Dixie X website, which provided further information on the product:

**Is CBD from hemp legal?**

Our revolutionary Hemp oil cannabidiol (CBD) wellness products are legal to consume both here in the U.S. and in many countries abroad. The United States currently considers industrial hemp products to be legal as long as they are derived from industrial hemp and not from any part of the plants categorized . . . as marijuana. Dixie x's parent company Medical Marijuana, Inc., is a publicly traded company . . . that does not grow, sell or distribute any substances that violate United States Law or the controlled substance act. . . . .

**What is the difference between CBD from hemp and CBD from medical cannabis?**

---

[5] Plaintiffs cite a third YouTube video in their materials, but it appears that this video was posted on YouTube after Plaintiffs purchased Dixie X. *See* ECF No. 60-1 ¶ 7(c). The Court therefore disregards that video.

[6] Plaintiffs failed to identify with specificity the times at which Keber made the relevant statements in the YouTube videos. The Court did not exhaustively review the YouTube videos, but only reviewed them in part to verify that Keber made the alleged statements. *Cf.* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party to cite "particular parts of materials in the record" when supporting factual positions).

> While the two plants are botanically related, our hemp contains no THC . . . .
> Medical cannabis contains THC and may provide relief from various ailments,
> however, with a psychotropic effect.

ECF No. 60-8 at 1-2.

Finally, Cindy called a "1-800" number associated with Dixie X and spoke to a customer service representative.   ECF No. 61-6 at 88-89.   The representative confirmed that Dixie X contained "zero percent THC."   *Id.* at 91.

After reviewing all of this information, Plaintiffs decided to purchase Dixie X.   On September 17, 2012, Cindy ordered a 500mg tincture of Dixie X through the Dixie X website and had it delivered to Plaintiffs' home in Lockwood, NY.   Shortly thereafter, Douglas consumed the product.

In October 2012, as part of its normal practice, Douglas's employer, Enterprise Trucking, required that he submit to a random drug test.   A few days after the drug test, Enterprise notified Douglas that he had tested positive for THC.   At 29 ng/mL, Douglas's sample contained almost double the "cutoff" concentration of THC.   Enterprise thereafter terminated Douglas's employment.   Cindy, who worked with Douglas at Enterprise Trucking, resigned from the company because she believed it would be unsafe to work alone.

Soon thereafter, Plaintiffs purchased a second bottle of Dixie X to determine whether it had caused the positive test result.   They sent the bottle to EMSL Analytical, Inc., for testing. Testing confirmed that Dixie X contained THC.

In August 2015, Plaintiffs brought this action, alleging that Dixie X caused Douglas's positive drug test and thereby caused him to lose his employment.   Plaintiffs raise nine claims against Defendants:

1. Deceptive business practices and false advertising under New York General Business Law §§ 349, 350;

2. Fraudulent inducement;

3. Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO");

4. Strict Products Liability;

5. Breach of Contract;

6. Breach of Express Warranty;

7. Unjust Enrichment;

8. Negligence; and

9. Negligent Infliction of Emotional Distress.

ECF No. 1.

Before turning to the motions, the Court discusses a legal issue that is foundational to this litigation: whether, in 2012, Dixie X constituted a controlled substance under the federal Controlled Substances Act ("CSA"). *See* 21 U.S.C. § 801 *et seq.* Plaintiffs argue that Dixie X is a controlled substance because it contains THC. Defendants counter that Dixie X is not a controlled substance because it is derived from lawfully imported hemp and contains less than .3% THC. This percentage is allegedly the maximum amount of THC that an imported industrial hemp plant can lawfully contain.

Taking the facts in the light most favorable to Plaintiffs, the Court agrees that, in 2012, Dixie X constituted a controlled substance under the CSA. But it reaches this conclusion for reasons different than those articulated by Plaintiffs.

Marijuana is a controlled substance under the CSA, and therefore, as a general matter, it is unlawful to distribute or dispense it. *See* 21 U.S.C. §§ 802(16), 841(a)(1).  In 2012, the CSA defined marijuana as follows:

> The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2012).  Breaking this definition down, the Court notes that marijuana was broadly defined to include "all parts" of the *Cannabis sativa* plant.  The industrial hemp plant fell within this definition because it is a variety of the *Cannabis sativa* plant.  *See, e.g.*, *Monson*, 589 F.3d at 961-62; *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1085 n.2 (9th Cir. 2003) [hereinafter "*Hemp I*"].

As the statute made clear, however, the definition of marijuana contained several exceptions.  Excluded from the definition of marijuana were certain parts of the plant that are incapable of germination: (1) the mature stalks of the *Cannabis sativa* plant, (2) fiber produced from the stalks of the *Cannabis sativa* plant, (3) oil or cake made from the seeds of the *Cannabis sativa* plant, (4) any compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake (excluding resin extracts), and (5) the sterilized seed of the *Cannabis sativa* plant.  21 U.S.C. § 802(16) (2012).

It bears emphasizing that resin extracted from mature hemp stalks was not excepted from the definition of marijuana.  *See Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 357 F.3d 1012, 1018 (9th Cir. 2004) (internal quotation marks omitted) [hereinafter "*Hemp II*"].  Congress apparently included this "exception to the exception" for resin extract "out of concern that the

'active principle' in marijuana, later understood to be THC, might be derived from nonpsychoactive hemp and so be used for psychoactive purposes." *Id.* at 1018 n.5.

A few conclusions may be drawn from the definition of marijuana as it stood in 2012. First, the industrial hemp plant came within the statutory definition of marijuana despite its low THC concentration. At the time, the CSA made no distinction on the basis of THC concentration. *See Monson*, 589 F.3d at 961 ("[M]arijuana is defined to include *all* Cannabis sativa L. plants, regardless of THC concentration."); *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 7-8 (1st Cir. 2000).

Second, and perhaps counterintuitively, certain derivatives of the industrial hemp plant were not included in the definition of marijuana—and therefore were not unlawful under the CSA—*even if* they contained trace amounts of THC. The Ninth Circuit reached this conclusion in a pair of cases from the early 2000s. *See Hemp I*, 33 F.3d at 1091; *Hemp II*, 357 F.3d at 1018. At issue in those cases were the validity of DEA rules that would have banned the possession and sale of products made from sterilized hemp seed, hemp-seed oil, and hemp-seed cake. *See Hemp I*, 333 F.3d at 1085; *Hemp II*, 357 F.3d at 1013-14. These products contain "minuscule trace amounts of THC" but do not have psychoactive effects. *Hemp I*, 333 F.3d at 1085. The Ninth Circuit observed that these products fit "within the plainly stated exception[s] to the CSA definition of marijuana." *Hemp II*, 357 F.3d at 1017. The legislative history also indicated that Congress was aware that "hemp seed and oil contain small amounts of the active marijuana ingredient in marijuana, but that the active ingredient was not present in sufficient proportion to be harmful." *Hemp I*, 333 F.3d at 1089. Thus, Congress "knew what it was doing" when it chose to exempt certain derivatives from the definition of marijuana notwithstanding the presence of trace amounts of THC. *Hemp II*, 357 F.3d at 1018.

Third, the exemption for certain hemp-based products containing naturally-occurring THC did not extend to resin extracted from the plant.   As discussed above, there was an explicit "exception to the exception" for such resins.  *See id.* at 1018 n.5.   In practical effect, this means that the legality of a hemp-based product turned on the manner in which it is produced: an oil made from hemp seeds was exempt and lawful, while a resin extracted from hemp stalks was not exempt and was unlawful.  *See* 21 U.S.C. § 802(16) (2012).

The legal landscape has since shifted.   In 2014, Congress passed the Agricultural Act of 2014.  *See* 7 U.S.C. 5940.  This legislation legalized industrial hemp cultivation under restricted conditions relating to research.  Then, in 2018, as part of a more extensive legalization of industrial hemp production, the CSA was amended to exclude hemp from the definition of marijuana.  *See* 21 U.S.C. § 802(16)(B)(i).  Hemp is defined as the "Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a [THC] concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. § 1639*o*(1).  Thus, it appears that the CSA now excludes from the definition of marijuana *any* part, derivative, or extract of the *Cannabis sativa* plant if its THC concentration falls below that threshold level.

For purposes of this litigation, however, the question is whether Dixie X constituted a controlled substance in 2012.  Based on the plain language of the statute, and taking the facts in the light most favorable to Plaintiffs, the Court answers that question in the affirmative.  Dixie X is a mixture that contains extract from the *Cannabis sativa* plant.  Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a "resin extracted from" the *Cannabis sativa* plant.  21 U.S.C. 802(16) (2012) (defining marijuana to include "the resin extracted from any part" of the *Cannabis sativa* plant, as well as "every

compound" or "mixture" of the resin).  And Dixie X cannot come within any exception because resin extracts are explicitly excluded.  *See id.*; *Hemp II*, 357 F.3d at 1018 n.5.  In 2012, the CSA granted no exceptions to hemp derivatives on the basis of low THC concentration.  Accordingly, Dixie X constituted a controlled substance under the CSA, and it was therefore unlawful to "knowingly or intentionally . . . manufacture, distribute, or dispense" it.  21 U.S.C. § 841(a)(1).

## DISCUSSION

Before the Court are six motions.  Substantively, Defendants move for summary judgment on all claims,[7] and Plaintiffs move for partial summary judgment on the issue of liability on the New York General Business Law claims and the RICO violation.  Procedurally, Plaintiffs have filed a motion to amend, and Defendants have filed two motions to strike certain evidence Plaintiffs submitted in connection with the motions for summary judgment.  The Court will address the motion to amend and motions to strike before proceeding to the merits.

### I.   Motion to Amend

Plaintiffs move to amend their complaint in three respects.  First, they argue that Defendant "Dixie Elixirs and Edibles" is misnamed and should be corrected to "Dixie Holdings, LLC a/k/a Dixie Elixirs."  ECF No. 68-1 at 2.  Second, Plaintiffs seek leave to withdraw three of their

---

[7] Defendants MMI and RDH also move for judgment on the pleadings under Rule 12(c).  The Court finds such motion untimely and declines to address it.  Under Rule 12(c), a motion for judgment on the pleadings must be made after pleadings are closed but "early enough not to delay trial."  Fed R. Civ. P. 12(c).  Here, Defendants filed their answer in February 2016, and the deadline to amend pleadings was in March 2017.  Defendants therefore had an extensive period in which to challenge Plaintiffs' complaint, but they waited more than one year after the later deadline, when discovery had already been completed, to raise their arguments.  Under these circumstances, the Court concludes that consideration of Defendants' motion would delay trial—even though a trial date has not been set—insofar as it would require further litigation on issues tangential to the merits and would prevent timely resolution of those claims for which summary judgment is inappropriate.  *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement.").

claims—breach of contract, breach of express warranty, and unjust enrichment.  Third, Plaintiffs request to add a claim for false advertising under the Lanham Act.  *See* 15 U.S.C. 1125(a).

As Defendants note, Judge Roemer issued a scheduling order in this case.  Under the order, the parties had until March 21, 2017 to file motions to amend the pleadings.  *See* ECF No. 31 at 1. Plaintiffs did not file their motion to amend until November 16, 2018—more than a year and a half after the deadline.  *See* ECF No. 68.  Consequently, the more onerous "good cause" standard set forth in Rule 16(b), rather than the "liberal standard of Rule 15(a)," governs.  *Guadagno v. M.A. Mortenson Co.*, No. 15-CV-482, 2018 WL 4870693, at *4 (W.D.N.Y. Oct. 2, 2018).  "To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met."  *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014).  Diligence is the primary consideration in deciding whether to permit an amended complaint, but a court may also consider "other relevant factors including . . . whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Plaintiffs waited a substantial period of time after the deadline to amend their complaint. Furthermore, they did not file their motion until more than two months after the parties filed motions for summary judgment.  Plaintiffs do not argue that they acted diligently or that they have otherwise satisfied the "good cause" standard; they merely claim that the new Lanham Act claim satisfies the *Twombly* pleading standard.  Given these circumstances and the absence of developed argument, the Court denies the motion to the extent that Plaintiffs seek to add the Lanham Act claim.  *See Mohegan Lake Motors, Inc. v. Maoli*, No. 16CV6717, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018) ("The burden of showing diligence rests on the moving party.").

Nevertheless, the Court will grant the motion so as to correct the defendant's name and to permit Plaintiffs to withdraw three of their claims. Defendants identify no prejudice with respect to these amendments, and Defendant "Dixie Elixirs and Edibles" appears to concede that they were named incorrectly. *See* ECF No. 82 at 4. Despite Plaintiffs' delay and the pending summary judgment motions, the Court finds the technical correction of one party's name and the withdrawal of some claims appropriate and permissible.

Accordingly, Plaintiffs' motion is granted in part and denied in part. The name of Defendant "Dixie Elixirs and Edibles" is corrected to "Dixie Holdings, LLC a/k/a Dixie Elixirs." The Clerk of Court is directed to amend the caption to reflect this change. In addition, the Court permits Plaintiffs to withdraw their claims for breach of contract, breach of express warranty, and unjust enrichment.

## II. Motions to Strike

Defendants have filed motions to strike certain materials on which Plaintiffs rely for summary judgment, arguing that they are inadmissible. Plaintiffs oppose the motions.

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). Under Rule 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The 2010 Committee Notes "make clear," however, "that there is no need to make a separate motion to strike such inadmissible evidence." *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267, 2018 WL 3407709, at *4 (S.D.N.Y. Jan. 12, 2018) (internal quotation marks and brackets omitted). Instead, a court may consider arguments relating to the admissibility of evidence when it evaluates the merits of the summary judgment motion. *See id.* ("Because evidence inadmissible at trial is

insufficient to create a genuine dispute of material fact, the Court need not engage in separate analysis of the motion to strike.").

Consistent with this authority, the Court considers it more practical to evaluate Defendants' evidentiary objections in the course of analyzing the parties' summary judgment motions, as opposed to assessing those objections separately within the context of a motion to strike. Defendants' motions to strike are therefore denied.

## III.   Motions for Summary Judgment

Defendants move for summary judgment on all claims, while Plaintiffs move for summary judgment as to liability on the General Business Law and RICO claims. The Court examines each claim in turn.

### a.   Deceptive Business Practices and False Advertising

Plaintiffs allege that Defendants violated Sections 349 and 350 of New York General Business Law. Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 renders false advertising unlawful under similar terms. *See id.* § 350. "To assert a claim under either section, a plaintiff must establish that the defendant engaged in consumer oriented conduct that is materially misleading, and [that] plaintiff was injured as a result of the deceptive act or practice." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017). "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices." *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016).

Defendants argue, among other things, that the statutes do not apply because the deceptive transaction did not take place in New York. The Court agrees.

Case 22-349, Document 54, 07/15/2022, 3348706, Page103 of 288

In *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002), the New York Court of Appeals held that Sections 349 and 350 are limited in their territorial reach.  "[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."  *Goshen*, 774 N.E.2d at 1195.  The court reasoned that the purpose of the provisions was to "address commercial misconduct occurring within New York."  *Id.*  Absent a clear territorial limitation, the provisions could be applied "nationwide, if not global[ly]," which would induce a "tidal wave of litigation" against New York businesses and interfere with other states' abilities to "regulate their own markets and enforce their own consumer protection laws."  *Id.* at 1196.

*Goshen* has not been interpreted uniformly.  In *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit recognized that there are "two divergent lines of decisions . . . regarding the proper territorial analysis."  *Cruz*, 720 F.3d at 123.  "The first line of decisions . . . . focus[es] on where the deception of the plaintiff occurs and require[s] . . . that a plaintiff actually view a deceptive statement while in New York."  *Id.*  "The second line of cases . . . . focus[es] on where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived."  *Id.*

The Second Circuit has adopted the second approach, stating that a court should "focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction."  *Id.* at 122.  A plaintiff has statutory standing under Sections 349 and 340 if "some part of the underlying transaction . . . occurred in New York."  *Id.* at 124 (internal brackets omitted).

Using this standard, the *Cruz* court held that the plaintiff, a Virginia resident, had statutory standing to sue the defendant, an online currency trading platform based in New York.  *See id.* at 118-19.  The court found standing because: (1) the defendant received payment in New York; (2)

the defendant only disbursed funds from customer accounts when the correct form was sent to its New York office; (3) the defendant required that all communications be directed to its New York office; and (4) the customer agreement provided that New York law governs all disputes and all suits must be brought in New York courts. *See id.* at 123-24. On these grounds, the court concluded that "the case . . . clearly involves a series of allegedly deceptive transactions that occurred in New York and implicate the interests of New York." *Id.* at 123.

Since *Cruz*, courts have examined the quantity and quality of the connections to New York in deciding whether a plaintiff has statutory standing for purposes of Sections 349 and 350. And as *Cruz* demonstrates, in the case of online transactions, that analysis can become highly granular. For example, in *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016), the court found sufficient connections to permit a Section 349 claim. There, the plaintiff challenged a company's deceptive practices with respect to its "digital jukebox" application, which allowed smartphone users to purchase and play songs at bars and other venues. *See Cline v. TouchTunes Music Corp.*, No. 14-CV-4744, 2015 WL 127843, at *1 (S.D.N.Y. Jan. 7, 2015). Even though the plaintiff was not a New York resident and had only used the application outside of New York, the court allowed the claim to proceed because: (1) the company processed payments in New York; (2) the company's music servers were in New York; (3) the user agreement required that all suits be brought in New York and would be governed by New York law; and (4) users' music selections were transmitted to the company's New York servers. *TouchTunes*, 211 F. Supp. 3d at 633.

Here, Plaintiffs argue that there are sufficient connections to New York to implicate Sections 349 and 350 because: (1) they are New York residents; (2) Defendants shipped Dixie X to Plaintiffs' New York address; (3) Douglas consumed at least a portion of the product in New

York; and (4) Defendants' marketing and advertising were available to consumers in New York. *See* ECF No. 70-23 at 23-24. The Court is not persuaded.

Plaintiffs do not appear to dispute that they viewed Defendants' marketing—and thus were deceived—outside of New York. *See id.* Under the stricter reading of *Goshen*, Plaintiffs' claim fails. *See Cruz*, 720 F.3d at 123. Even under the broader approach endorsed by the *Cruz* court, the connections to New York are too attenuated to justify application of Sections 349 and 350. If any bright-line principle can be discerned from *Goshen* and *Cruz*, it is that Sections 349 and 350 are not intended to regulate New York businesses or protect New York residents solely on the basis of their residency; they are intended to police consumer transactions that "take place in New York State," regardless of the residency of the parties. *Goshen*, 774 N.E.2d at 1196 (stating that the analysis does not turn "on the residency of the parties"); *see also Cruz*, 720 F.3d at 122.

In this case, unlike in *Cruz* and *Cline*, Defendants were not located in New York and Plaintiffs do not allege that any part of the online transaction took place in New York. In the Court's view, the only relevant link is that Defendants shipped Dixie X into the state. But at that point, Plaintiffs had already been deceived by, and purchased the product from, the out-of-state Defendants. Application of Sections 349 and 350 would thus be based more on Plaintiffs' residency than on the location of the transaction itself. And as a matter of policy, the Court is not convinced that New York's interests are more strongly implicated in the transaction than those of other states. *See Goshen*, 774 N.E.2d at 1196.

Accordingly, the Court concludes that Plaintiffs do not have statutory standing to bring these claims against Defendants based on their purchase of Dixie X. Defendants are entitled to summary judgment on the General Business Law claims.

#### b.  Fraudulent Inducement

Plaintiffs premise their fraudulent inducement claim on the alleged misrepresentations contained in the "High Times" article, the FAQ on the Dixie X website, the YouTube interviews of Tripp Keber, and the customer-service phone call.  Plaintiffs argue that Defendants falsely claimed that (1) Dixie X did not contain THC; (2) Dixie X was a legal product; (3) Dixie X was safe to consume; (4) Dixie X had health and wellness benefits; (5) Dixie X was adequately tested; and (6) Dixie X would not cause a positive drug test.  Defendants challenge whether Plaintiffs can satisfy any of the necessary elements for a fraudulent inducement claim.

"Proof of fraudulent inducement under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 418-19 (S.D.N.Y. 2018) (internal quotation marks omitted).  With respect to intent, the plaintiff must demonstrate that the defendant made a knowing or reckless misrepresentation and intended to defraud the plaintiff thereby.  *Turner v. Temptu Inc.*, No. 11 Civ. 4144, 2013 WL 4083234, at *11 (S.D.N.Y. Aug. 13, 2013).

All of these elements must be proven by clear and convincing evidence.  *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 447 (E.D.N.Y. 2013).  Therefore, "[a]t the summary judgment stage, a party must proffer enough proof to allow a reasonable jury to find by clear and convincing evidence the existence of each of the elements necessary to make out a claim for fraud in the inducement."  *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718 (S.D.N.Y. 2018).  "Clear and convincing proof is highly probable and leaves no doubt. . . . . [The] standard demands a high order of proof and forbids the awarding of relief whenever the evidence is loose, equivocal, or

contradictory because fraud will not be assumed on doubtful evidence or circumstances of mere suspicion." *Id.*

At the outset, the Court concludes that that Plaintiffs' claim may not proceed based on the following representations: that Dixie X was a legal product; that Dixie X was safe to consume; that Dixie X had health and wellness benefits; that Dixie X was adequately tested; and that Dixie X would not cause a positive drug test. This is because Plaintiffs have provided insufficient evidence to establish that, at the time those statements were made, Defendants knew they were false and intended to defraud consumers. *See U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) ("[A] representation is fraudulent only if made with the contemporaneous intent to defraud—*i.e.*, the statement was knowingly or recklessly false and made with the intent to induce harmful reliance."). The difficulty is that Plaintiffs offer little in the way of evidence that illuminates the intent, state of mind, or beliefs of Defendants or their agents when the statements were made. For example, Plaintiffs point to no deposition testimony, company emails or documents, or other evidence that suggests that when the website FAQs were posted, Defendants knew their product was an unlawful controlled substance, was unsafe, and did not provide the purported wellness benefits. Given the absence of evidence related to the beliefs and knowledge of Defendants, their employees, and their agents, Plaintiffs' fraud claim fails as a matter of law as to the above statements.

The only actionable statement is Defendants' misrepresentation that Dixie X did not contain THC. First, there is evidence that this statement is false—indeed, Defendants' own testing revealed that the product contained detectible amounts of THC.

Second, there is evidence that Douglas reasonably relied on the misrepresentation. Plaintiffs carefully researched the product to ensure that it did not contain THC. It is reasonable

**A-105**

to conclude that the explicit representations in the FAQs and in the YouTube videos regarding the absence of THC would allay consumers' concerns about ingesting a product associated with marijuana.

Third, there is evidence that Douglas lost his job because he consumed Dixie X.

Fourth, there is evidence that Defendants made the false statements with the requisite knowledge and intent. In August 2012, Tripp Keber stated in the YouTube videos that Dixie X did not contain THC. But there is evidence that Defendants had been testing Dixie X "during its development and manufacturing" and had found the presence of THC. ECF No. 61-1 ¶ 6 (stating that testing "showed levels of THC well within legal limits"); ECF No. 61-13. Given Keber's high position within all three defendant companies, a jury could reasonably infer that he knew the results of such testing. And in light of his varying roles, a jury could attribute Keber's August 2012 statements to all three defendants. Similarly, because RDH represented on its website FAQs and through its customer service that Dixie X did not contain THC, despite having test results showing the presence of THC in its products, a jury could find that RDH knew that such representations were false.[8] Furthermore, all three defendants had a motive to defraud consumers. A jury could reasonably conclude that, to sell their products, Defendants needed to distinguish Dixie X from its unlawful counterparts; misrepresenting the THC content in the product would go a long way to dispelling consumers' concerns, as it did in Plaintiffs' case.

Thus, Plaintiffs' fraudulent inducement claim is viable, at least in part. The Court also notes three other considerations that further limit Plaintiffs' claim.

---

[8] The record suggests that RDH operated the Dixie X website: RDH was the entity tasked with selling Dixie X; RDH identifies itself as the seller in the FAQ; and RDH's parent company—MMI—is identified as the "parent company" in the FAQ. ECF No. 69-6 at 1. Plaintiffs do not explain how the statements in the FAQ may be attributed to Dixie LLC or Medical Marijuana. *See Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) (discussing circumstances in which corporate parent is liable for acts of subsidiary).

Case 22-349, Document 54, 07/15/2022, 3348706, Page109 of 288

First, Plaintiffs may not proceed with their claim based on the alleged misrepresentations contained in the "High Times" article.  As Defendants point out, the article is not an advertisement but a writeup about Dixie X by a third party.  The only arguable connection between the article's contents and Defendants is that the article quotes Tripp Keber.  However, the article would be inadmissible to the extent that Plaintiffs intend to rely on it to prove that Tripp Keber actually made those statements.  *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) (quotations of party opponent which are recited in newspaper article present hearsay problems insofar as they are "offered for the truth of the matter asserted: that [the party opponent] did in fact make the quoted statement").  Plaintiffs offer nothing but speculation to argue that Defendants had a role in publishing the article.

Second, Cindy's lost wages are not recoverable.  A fraudulent inducement claim requires "a showing of proximate causation," *i.e.*, that the injury "is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud."  *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 218 (S.D.N.Y. 2005).  Cindy's lost wages were not the direct result of Defendants' alleged fraud; rather, they were derivative of Douglas's injury and too attenuated from Defendants' wrongful conduct to be actionable.  *See Kregos v. Assoc. Press*, 3 F.3d 656, 665 (2d Cir. 1993) (stating that the losses for a fraud claim must be the "direct, immediate, and proximate result of the misrepresentation").

Third, Defendants argue that the website FAQs and YouTube videos are inadmissible insofar as they are not authenticated and contain hearsay.  Further, Defendants contend that Plaintiffs did not produce the YouTube videos during discovery.  Although these are colorable issues, both sides have failed to sufficiently develop them.  The Court would benefit from further

briefing on whether the printouts of the website FAQs can be authenticated.   *See, e.g.*, *United States v. Gasperini*, 894 F.3d 482, 489-90 (2d Cir. 2018) (discussing issue); *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14 Civ. 5213, 2017 WL 3669625, at *3 n.7 (S.D.N.Y. Aug. 8, 2017) (same).   Likewise, while Defendants argue that Plaintiffs failed to disclose the YouTube videos in discovery, they do not cite any specific discovery request that Plaintiffs did not adequately answer or supplement.   Consequently, the Court concludes that these issues are better raised in the context of pretrial motions than on summary judgment.   To the extent Defendants prevail on their arguments, the Court may revisit whether the fraudulent inducement claim may proceed to trial.

In sum, Plaintiffs' fraudulent inducement claim is viable as to Douglas's claim for damages resulting from Defendants' misrepresentation that Dixie X did not contain THC.   Defendants are otherwise entitled to summary judgment on the claim.

### c.  RICO

Plaintiffs and Defendants move for summary judgment on the RICO claim.   Plaintiffs argue that all of the elements are satisfied as a matter of law based on the record evidence.   Defendants counter that there is insufficient evidence to prove that they engaged in a pattern of racketeering activity.   The Court concludes that there are genuine issues of material facts that preclude summary judgment in either side's favor.

Plaintiffs bring their RICO claim under 18 U.S.C. § 1962(c).[9]   That provision "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities

---

[9] In their Civil Rico Statement, Plaintiffs asserted violations of subsections (a), (b), (c), and (d) of Section 1962.  Plaintiffs do not argue in their summary judgment briefing that they have viable claims under any subsection besides subsection (c).  *See* ECF No. 60-25 at 5-7.  The Court limits its analysis accordingly. *See Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012).

**A-108**

of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 72-73 (E.D.N.Y. 2009) (internal quotation marks omitted). "To establish a civil RICO claim . . . a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (internal quotation marks omitted).

"The pattern of racketeering activity must consist of two or more predicate acts of racketeering," *id.*, which must be "related" and must "pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001). Racketeering activity is defined to include "any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . . punishable under any law of the United States." 18 U.S.C. § 1961(1)(D). This definition extends to the cultivation, manufacture, and sale of marijuana. *See, e.g.*, *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (operation of marijuana cultivation facility "necessarily would involve *some* racketeering activity").

In this case, Plaintiffs have provided sufficient evidence to show a pattern of racketeering activity. Specifically, Douglas avers that he purchased two bottles of Dixie X—a controlled substance constituting marijuana under the CSA—from Defendants. These two transactions constitute two predicate acts of racketeering activity.[10] *See* 18 U.S.C. § 1961(1)(D). This is so even if Defendants subjectively believed that Dixie X was not a controlled substance, as such belief

---

[10] To be sure, each defendant played a different role in the venture, and it appears that RDH had the responsibility of selling and distributing Dixie X to consumers. Nevertheless, liability under RICO also extends to those who have "some part in directing" the affairs of the enterprise. *DeFalco*, 244 F.3d at 309.

would not preclude a finding that they violated the CSA.  It is unlawful "for any person knowingly or intentionally" to distribute or dispense a controlled substance.  21 U.S.C. § 841(a)(1).  A defendant satisfies the knowledge requirement if he "knew he possessed a substance listed on the schedules" or, alternatively, if he "knew the identity of the substance he possessed" whether or not he knew it was listed on the schedules.  *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015).  Here, there are sufficient facts from which it can be inferred that Defendants knew the identity of the substance they possessed—a mixture containing a resin extract derived from the *Cannabis sativa* plant.  In 2012, that substance fell within the definition of marijuana under the CSA.  21 U.S.C. § 802(16) (2012); *see also McFadden,*135 S. Ct. at 2304 ("[I]gnorance of the law is typically no defense to criminal prosecution.").

These transactions also meet the relatedness and continuity requirements.  *See DeFalco*, 244 F.3d at 320.  The transactions are related, in that the sale of these controlled substances was the business of Defendants' venture.  *See Reich v. Lopez*, 858 F.3d 55, 61-62 (2d Cir. 2017).  Defendants' activities also presented a threat of continued criminal activity.  The sale of hemp-based CBD products was no mere aberration of unlawful conduct: it was the *raison d'être* of Defendants' venture.  *See id.* at 60 (stating that criminal activity poses a continuous threat when the "predicate acts were the regular way of operating that business").  Indeed, in a June 2012 SEC filing, MMI indicated that it intended to invest heavily in RDH to "expand[] its operations state by state" and to "rais[e] additional capital to expand the operations of the company."  ECF No. 69-4 at 32.  Given the inherent illegality of the product and Defendants' intent to continue and expand those operations, Plaintiffs have provided sufficient evidence to prove a pattern of racketeering

activity.[11]  Therefore, Defendants are not entitled to summary judgment based on the arguments they raise.

But Plaintiffs are not entitled to summary judgment either.  There is a genuine issue of material fact on one necessary element: whether Defendants' conduct proximately caused Douglas's injuries.  "[A] plaintiff suing under RICO must establish that the RICO offense was the 'proximate cause' of the plaintiff's injuries."  *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018).  "Proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged, and a link that is too remote, purely contingent, or indirect is insufficient."  *Id.* (internal quotation marks, ellipses, brackets omitted).

Here, there is a genuine dispute of material fact as to whether Dixie X caused Douglas's positive drug test and thereby caused him to lose his job.  Plaintiffs aver that Douglas had not used marijuana "for the 14 years [he] was a trucker," ECF No. 60-6 ¶ 18, and Plaintiffs' expert opines that Douglas's positive drug test resulted from his "daily use of Dixie X" in the days leading up to the test.  ECF No. 60-21 at 5.

Defendants dispute this conclusion.  Although Defendants do not contend that Douglas smoked marijuana or otherwise consumed a THC-laden product besides Dixie X, Defendants' expert asserts there is insufficient evidence to make a scientifically valid connection between Douglas's consumption of Dixie X and his positive drug test.  The expert notes that there are many variables that affect whether and to what extent THC will stay in one's system, including dosage, frequency of use, individual rates of absorption and metabolism, etc.  ECF No. 61-9 at 4.  The expert opines that the absence of evidence on two relevant variables—the amount of THC contained in the *specific* bottle of Dixie X which Douglas consumed, and the exact amount of

---

[11] In light of this conclusion, the Court need not assess whether, as Plaintiffs claim, Defendants also engaged in other predicate acts of racketeering, including mail and wire fraud.  *See* ECF No. 2 at 3-4.

Dixie X that Douglas consumed prior to his drug test—renders it "impractical to calculate . . . a range of expected contaminating THC metabolite" in Douglas's urine sample at the time of his test. *Id.* at 4-5. And, as a result, "no one can opine with any degree of scientific confidence that it was the Dixie product used by [Douglas] that caused him to fail his" drug test. *Id.* at 5. The Court may not resolve this factual dispute on summary judgment. *See Scanner Techs. Corp. v. Icos Vision Sys. Corp., N.V.*, 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment.").

The Court does conclude that Plaintiffs are not entitled to recover under RICO for any damages Cindy sustained. The link between Cindy's pecuniary losses and Defendants' racketeering activity is "too remote" and "indirect" to satisfy the requirement of proximate causation. *Empire Merchs., LLC*, 902 F.3d at 141. Defendants' conduct did not directly cause Cindy to terminate her employment; it was only because Douglas was terminated that Cindy suffered any harm as a result of Defendants' conduct. *See id.* (stating that a court should "rarely go beyond the first step when assessing causation under civil RICO" (internal quotation marks omitted)). Such indirect, derivative injuries are not cognizable under civil RICO. *See id.* at 141-44.

Because genuine issues of material facts exist as to Plaintiffs' RICO claim, summary judgment is inappropriate in their favor. Defendants are entitled to summary judgment on the RICO claim only as to Cindy's claim for damages.

### d. Strict Products Liability, Negligence, and Negligent Infliction of Emotional Distress Claims

Plaintiffs argue that Defendants are liable under theories of strict products liability, negligence, and negligent infliction of emotional distress. The first two of these claims fail because

Case 22-349, Document 54, 07/15/2022, 3348706, Page115 of 288

**A-112**

Plaintiffs have not provided evidence that they suffered cognizable injuries. "The general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict products liability." *Am. Tel. & Tel. Co. v. New York City Human Res. Admin.*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993); *see also Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 523, 532 (S.D.N.Y. 2007) (consumer who was allegedly deceived by store's free-magazine promotion could not bring negligence claim because "she does not allege any personal injury or property damage"). Plaintiffs seek damages for their economic losses, but they do not claim that they suffered any personal injury or injury to property as a result of Defendants' conduct. Their negligence and strict products liability claims therefore fail.

Granted, Plaintiffs allege that they suffered emotional distress due to Defendants' conduct. A claim for negligent infliction of emotional distress is cognizable in New York, and some courts have suggested that such a cause of action might be viable under a products liability theory. *See Luna v. Am. Airlines*, 676 F. Supp. 2d 192, 206 (S.D.N.Y. 2009); *O'Sullivan v. Duane Reade, Inc.*, No. 108570/05, 2010 WL 1726079, at *7 n.4 (N.Y. Sup. Ct. Apr. 20, 2010). Nonetheless, under New York law, a claim for negligent infliction of emotional distress must possess "some guarantee of genuineness." *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017). This requires "a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, such as the mishandling of a corpse or the transmission of false information that a parent or child had died." *Id.* (internal quotation marks and bracket omitted). The element may also be satisfied where there is a "breach of the duty owed directly to the injured party [which] endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Id.* (internal quotation marks omitted). "In the absence of such special circumstances, psychiatric testimony may suffice for such a guarantee of genuineness, but a plaintiff's

uncorroborated testimony of upsetness will not." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 376 (E.D.N.Y. 2012) (internal brackets and quotation marks omitted).

In this case, Plaintiffs' situation does not fall into any of the special circumstances for which a claim is recognized. *See Vaughn v. Am. Multi Cinema, Inc.*, No. 09 Civ. 8911, 2010 WL 3835191, at *5 (S.D.N.Y. Sept. 13, 2010) (termination of employment not a special circumstance giving rise to claim for negligent infliction of emotional distress). Furthermore, Plaintiffs offer no evidence to otherwise establish a guarantee of genuineness: they do not even provide evidence from Douglas concerning the degree to which he suffered psychological trauma because of these events, let alone evidence from a medical or valid corroborating source. *See Luna*, 676 F. Supp. 2d at 208 (plaintiff, who had been served chicken dinner with "part of a lizard" in it, had viable claim for emotional distress, where plaintiff proffered medical testimony to support claim of psychological injury). Under these circumstances, Plaintiffs do not have a viable claim for negligent infliction of emotional distress.

Accordingly, without cognizable personal, property, or psychological injury, Plaintiffs' claims for negligence, strict products liability, and negligent infliction of emotional distress fail. Defendants are entitled to summary judgment on these claims.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to amend (ECF No. 68) is GRANTED IN PART and DENIED IN PART. Defendants' motions to strike (ECF Nos. 71, 74) are DENIED. Plaintiffs' motion for partial summary judgment (ECF No. 60) is DENIED. Defendants' motions for summary judgment (ECF No. 61, 62) are GRANTED IN PART and DENIED IN PART.

As a result of these rulings, the only surviving claims are Douglas's claims for fraudulent inducement and civil RICO. All other claims against Defendants are dismissed. The Clerk of

Court is directed to amend the name of Defendant "Dixie Elixirs and Edibles" to "Dixie Holdings, LLC a/k/a Dixie Elixirs."  By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action.

IT IS SO ORDERED.

Dated: April 17, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

A-115

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                                    Plaintiffs,
                                                        Case # 15-CV-701-FPG

v.
                                                        DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                                    Defendants.


## INTRODUCTION

Plaintiffs Douglas J. Horn and Cindy Harp-Horn bring suit against Defendants Medical Marijuana, Inc. ("MMI"), Dixie Elixirs and Edibles ("Dixie LLC"), Red Dice Holdings, LLC ("RDH"), and Dixie Botanicals. ECF No. 1. On April 17, 2019, the Court granted in part and denied in part MMI's, Dixie LLC's, and RDH's motions for summary judgment. ECF No. 88. Specifically, the Court dismissed all but two claims: Douglas's claims for fraudulent inducement and civil RICO. *See id.* at 28-29. On May 16, 2019, Plaintiffs filed a notice of appeal. ECF No. 92. They now move under Federal Rule of Civil Procedure 54(b) for entry of partial final judgment as to Cindy's claims and Douglas's claims under Sections 349 and 350 of New York General Business Law. ECF Nos. 102, 104. Defendants object. ECF Nos. 108, 109. For the reasons that follow, Plaintiffs' motions are DENIED.

## DISCUSSION

Under Rule 54(b), an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the

parties' rights and liabilities."  The rule is grounded in the "historic federal policy against piecemeal appeals."  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).  But the rule also provides an exception: if the court "expressly determines that there is no just reason for delay," it may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b).  This rule is to be "exercised sparingly" and only where the "interests of sound judicial administration and efficiency will be served."  *Cupersmith v. Piaker & Lyons P.C.*, No. 14-CV-1303, 2017 WL 4535938, at *2 (N.D.N.Y. Oct. 10, 2017) (internal quotation marks omitted).

"In deciding whether there are no just reasons to delay the appeal of individual final judgments a district court should consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (internal quotation marks and brackets omitted); *see also Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011) ("[W]e have repeatedly noted that the district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." (internal quotation marks omitted)).  "Claims are generally treated as separable within the meaning of Rule 54(b) if they involve at least some different questions of fact and law and could be separately enforced, or if different sorts of relief are sought." *Verizon N.Y. Inc. v. Vill. of Westhampton Beach*, No. CV 11-252, 2014 WL 12843520, at *9 (E.D.N.Y. Dec. 22, 2014).

The Court declines to grant Plaintiffs' motions under Rule 54(b).  Both the surviving claims and the failed claims arise from the same underlying set of facts: Plaintiffs' purchase and use of Defendants' product and Douglas's subsequent failed drug test.  Thus, if Plaintiffs were permitted

to appeal some of their claims, the Second Circuit would be "forced to review identical facts" in any subsequent appeal after trial. *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 154 (E.D.N.Y. 1999). This is likely here because Cindy's claims are not merely related to, but derivative of, Douglas's claims. *See, e.g.*, *Pierce v. City of New York*, No. 16-CV-5703, 2018 WL 679459, at *2 (E.D.N.Y. Feb. 1, 2018) (declining to enter partial judgment on failure-to-intervene claim because it was "derivative of" surviving excessive-force claim); *Ortiz v. Goord*, No. 99-CV-1202, 2006 WL 8448449, at *4 (N.D.N.Y. Jan. 23, 2006) (same). The interconnection is even stronger with respect to Douglas's surviving and failed claims. In short, it would not "advance the interests of sound judicial administration of efficiency to have piecemeal appeals that require two . . . three-judge panels to familiarize themselves with [the] . . . case in successive appeals." *In re Vivendi Universal, S.A., Secs. Litig.*, No. 02 Civ. 5571, 2012 WL 362028, at *3 (S.D.N.Y. Feb. 6, 2012).

Furthermore, there are no countervailing equities that would justify partial judgment notwithstanding the relatedness of the claims at issue. Contrary to Plaintiffs' argument, the mere risk that Plaintiffs could incur additional expenses if a second trial is required is not enough to justify partial judgment under these circumstances. *See, e.g.*, *Spiegel v. Tr. of Tufts Coll.*, 843 F.2d 38, 46 (1st Cir. 1988) ("Virtually *any* interlocutory appeal from a dispositive ruling said to be erroneous contains the potential for requiring a retrial."). Indeed, that risk is less salient given that at least some of Plaintiffs' causes of action provide for an award of attorney's fees. *See* 18 U.S.C. § 1964(c); N.Y. Gen. Bus. Law § 349(h). The Court also does not find convincing Plaintiffs' concern that Cindy would be placed in a prejudicial position if she were to testify at Douglas's trial.

A-118

### CONCLUSION

For the reasons discussed above, Plaintiffs' motions for partial judgment under Rule 54(b)

(ECF Nos. 102, 104) are DENIED.

IT IS SO ORDERED.

Dated: October 2, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

**A-119**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                                        Plaintiffs,

                                                                    Case # 15-CV-701-FPG

v.

                                                                    DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                                        Defendants.

---

## INTRODUCTION

Presently before the Court are the parties' cross-motions for reconsideration of the Court's April 17, 2019 Decision and Order, which resolved the parties' motions for summary judgment.[1] For the reasons that follow, Defendants' motions for reconsideration (ECF Nos. 97, 106) are GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for reconsideration (ECF No. 112) is DENIED.

## LEGAL STANDARD

Both sides cite Federal Rule of Civil Procedure 54(b) as the basis for their motions. Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

---

[1] Plaintiffs initially filed a notice of appeal after the Court issued its Decision and Order. *See* ECF No. 92. That appeal has since been dismissed, and the Second Circuit issued its mandate on November 12, 2019. *See Horn v. Medical Marijuana, Inc.*, No. 19-1437, ECF No. 45 (dated Nov. 12, 2019); *see also Bedasie v. Mr. Z Towing, Inc.*, No. 13-CV-5453, 2017 WL 6816331, at *3 (E.D.N.Y. Dec. 21, 2017) (stating that jurisdiction returns to the district court after appeal once a mandate is issued).

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . . ." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982).

A litigant seeking reconsideration must set forth "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015); *see also Micolo v. Fuller*, No. 6:15-CV-06374, 2017 WL 2297026, at *2 (W.D.N.Y. May 25, 2017) ("To merit reconsideration under Rule 54(b), a party must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'").

## BACKGROUND

In their motions, both sides take issue with the Court's ruling on whether "Dixie X Dew Drops"—the product at issue—constituted a controlled substance under the federal Controlled Substances Act ("CSA"). *See* ECF No. 97-3 at 4; ECF No. 112-3 at 3. Some background may be helpful.

Dixie X is a CBD oil. "CBD is short for 'cannabidiol,' and it is one of the 'unique molecules' found in the *Cannabis sativa* plant." *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 119 (W.D.N.Y. 2019) (internal citation omitted). The *Cannabis sativa* plant is the plant from which marijuana and hemp are derived. *Id.* The difference between the two is that "drug-use cannabis is produced from the flowers and leaves of certain strains of the plant, while industrial-use [hemp] is typically produced from the stalks and seeds of other strains of the plant." *Id.* This leads to differences in the concentration of tetrahydrocannabinol ("THC") in each variety. THC is "the substance that gives marijuana its psychoactive properties." *Id.*

In 2012, the time of the relevant events, the general rule was that all parts and derivatives of the *Cannabis sativa* plant were defined as "marijuana" and prohibited under the CSA.[2]  *See id.* at 123 (citing 21 U.S.C. §§ 802(16), 841(a)(1)).   Despite its low THC content and lack of psychoactive effect, the industrial hemp plant and any derivatives fell within this definition because hemp "is a variety of the *Cannabis sativa* plant."  *Id.*; *United States v. White Plume*, 447 F.3d 1067, 1073 (8th Cir. 2006) (noting that "the CSA does not distinguish between marijuana and hemp").

But the CSA carved out several exceptions to this general rule.  Specifically, "[e]xcluded from the definition of marijuana were certain parts of the plant that are incapable of germination: (1) the mature stalks of the *Cannabis sativa* plant, (2) fiber produced from the stalks of the *Cannabis sativa* plant, (3) oil or cake made from the seeds of the *Cannabis sativa* plant, (4) any compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake[], and (5) the sterilized seed of the *Cannabis sativa* plant."  *Horn*, 383 F. Supp. 3d at 123. Importantly, however, "resin extracted from mature hemp stalks was not excepted from the definition of marijuana."  *Id.*; *see also* 21 U.S.C. § 802(16) (2012).  As a result, hemp-based products could only be lawfully manufactured and sold in the United States to the extent they were derived from excepted parts of the *Cannabis sativa* plant (and thus were not considered marijuana under the CSA).

But there was another wrinkle: the CSA also separately prohibited THC, *see* 21 U.S.C. § 812(c)(17), and many hemp-based products contain "trace amounts of THC."  *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1085 (9th Cir. 2003) [hereinafter "*Hemp I*"].  This

---

[2] The CSA has since been amended to legalize industrial hemp production.  *See Horn*, 383 F. Supp. 3d at 124 (discussing legislative history).

raised a question: were products made from excepted parts of the *Cannabis sativa* plant nonetheless unlawful because they contained miniscule, non-psychoactive amounts of THC?

In a pair of cases from the early 2000s, the Ninth Circuit answered that question in the negative. *See Hemp I*, 333 F.3d at 1089-90; *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 357 F.3d 1012 (9th Cir. 2004) [hereinafter "*Hemp II*"]. First, it held that the prohibition against THC referred to synthetic, not naturally occurring, THC. *See Hemp I*, 333 F.3d at 1089-90; *Hemp II*, 357 F.3d at 1017. Second, it held that products made from excepted parts of the *Cannabis sativa* plant "were not included in the definition of marijuana—and therefore were not unlawful under the CSA—*even if* they contained trace amounts of [naturally occurring] THC." *Horn*, 383 F. Supp. 3d at 123. The Ninth Circuit reviewed the legislative history and concluded that "Congress 'knew what it was doing' when it chose to exempt certain derivatives from the definition of marijuana notwithstanding the presence of trace amounts of THC." *Id.* at 124.

Based on these conclusions, the Ninth Circuit invalidated new DEA regulations to the extent they purported to ban hemp-based products that contained trace amounts of naturally occurring THC. *See Hemp II*, 357 F.3d at 1018-19. But products containing synthetic THC or marijuana were still prohibited under the CSA. *See Horn*, 383 F. Supp. 3d at 124.

This Court relied on the above authority to conclude that, in 2012, Dixie X was a controlled substance. *See Horn*, 383 F. Supp. 3d at 124. Given the apparent absence of dispute, the Court proceeded on the assumption that Dixie X's CBD byproduct constituted a resin extracted from the mature stalk. *See id.* at 124. This led the Court to conclude that Plaintiffs had a sufficient claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as a RICO claim may be predicated on the distribution and sale of a controlled substance like marijuana. *Id.* at 131-32.

## DISCUSSION

Both sides now move for reconsideration of this aspect of the Court's prior order. Defendants argue that the Court erred insofar as it assumed that Dixie X contained "resin extract derived from the *Cannabis sativa* plant" and thus constituted marijuana. ECF No. 97-1 at 5; *see also* ECF No. 106. Defendants dispute that fact and contend there is no evidence in the record to support that conclusion.

Plaintiffs, on the other hand, dispute the Court's reasoning but not its conclusion. They contend that "any product that contains any amount of THC was a Schedule I controlled substance in 2012." ECF No. 112-3 at 3.

The Court takes up Plaintiffs' argument first and rejects it. Plaintiffs assert that Dixie X was a controlled substance because it contained THC, which was a Schedule I controlled substance in 2012. *See* 21 C.F.R. § 1308.11(d)(31). They also assert that Dixie X remained a controlled substance under 21 C.F.R. § 1308.35 because it was intended for human consumption. *See* 21 C.F.R. § 1308.35(a) (exempting certain cannabis-based products from the CSA so long as they are not intended for human consumption).

The problem with Plaintiffs' argument is that it runs headlong into the *Hemp* cases, where the Ninth Circuit invalidated the very regulations on which Plaintiffs rely. *See Hemp II*, 357 F.3d at 1019 (permanently enjoining enforcement of the regulations). The court stated in no uncertain terms that those regulations "may not be enforced with respect to THC that is found within the parts of *Cannabis* plants that are excluded from the CSA's definition of 'marijuana' or that is not synthetic." *Id.* at 1018. Accordingly, the mere presence of naturally occurring THC in a product does not render it a controlled substance so long as it is derived from an excepted part of the

*Cannabis sativa* plant. *See id.* at 1018-19. Therefore, the Court denies Plaintiffs' motion for reconsideration.

Defendants' argument is persuasive, however. Defendants clarify that they dispute that Dixie X contains a resin extracted from a mature hemp stalk. They submit the affidavit of Stuart Titus, CEO of Medical Marijuana, Inc., who avers that the CBD extract was not produced from the resin of any mature stalks. ECF No. 97-2 at 2.

Despite having an opportunity to do so, Plaintiffs do not proffer any evidence to show that Dixie X contains synthetic THC or is derived from a non-excepted part of the *Cannabis sativa* plant. Instead, Plaintiffs proffer supplemental affidavits of Kenneth D. Graham, their toxicology expert, who merely reiterates his opinions about the legality of hemp-based products. *See* ECF Nos. 112-1, 120. Those affidavits fail to create a genuine issue of material fact. *See SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 268 (D. Conn. 2017) ("As a general rule an expert's testimony on issues of law is inadmissible.").

Accordingly, because Plaintiffs have not presented any evidence to show that Dixie X contains either synthetic THC or natural THC derived from marijuana—as the CSA defines that term—Plaintiffs cannot prove their RICO claim to the extent it is premised on the allegation that Dixie X is a controlled substance. *See Horn*, 383 F. Supp. 3d at 131-32 (discussing RICO standards).

Nevertheless, the Court disagrees with Defendants that the RICO claim should be dismissed. Plaintiffs premise their RICO claim not only on Defendants' alleged distribution of a controlled substance, but also on Defendants' alleged mail and wire fraud.[3] *See* ECF No. 1 at 10-

---

[3] Initially, Plaintiffs also alleged that Defendants violated 18 U.S.C. § 1957, but they did not present that theory in their summary judgment materials. *Compare* ECF No. 1 at 11, *with* ECF No. 60-25, *and* ECF No. 69-26. Accordingly, that theory has been abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order).

11; ECF No. 2 at 4.  Because the Court concluded that the RICO claim survived summary judgment on the controlled-substance theory, it previously declined to address whether "Defendants also engaged in other predicate acts of racketeering, including mail and wire fraud." *Horn*, 383 F. Supp. 3d at 132 n.11.  The Court must now address those issues.[4]

Plaintiffs bring their RICO claim under 18 U.S.C. § 1962(c), which "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 72-73 (E.D.N.Y. 2009) (internal quotation marks omitted).  "To establish a civil RICO claim . . . a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (internal quotation marks omitted).

"The pattern of racketeering activity must consist of two or more predicate acts of racketeering," *id.*, which must be "related" and must "pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001).  Mail and wire fraud constitute racketeering activity.  18 U.S.C. § 1961(1)(B).  "The mail and wire fraud statutes prohibit the use of those means of communication in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 256 (2d Cir. 2004), *rev'd in part and vacated in part on other grounds by Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).  False advertising can constitute mail or wire fraud.  *See, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d

---

[4] The Court confines its analysis to those arguments that the parties raised in their summary-judgment and reconsideration briefing.

525, 539 (S.D.N.Y. 2014) (allegedly false marketing materials could constitute predicate racketeering activities based on mail and wire fraud statutes); *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765 (8th Cir. 1992) (predicate acts of mail and wire fraud existed for civil RICO claim, where defendant falsely advertised his ability to provide commercial financing to prospective customers); *United States v. Andreadis*, 366 F.2d 423 (2d Cir. 1966) (affirming mail and wire fraud convictions of defendant who fraudulently marketed "miracle weight-reducing drug").

The threat of continued criminal activity can be "closed-ended" or "open-ended." *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). "Criminal activity that occurred over a long period of time in the past has closed-ended continuity, regardless of whether it may extend into the future. As such, closed-ended continuity is 'primarily a temporal concept,' and it requires that the predicate crimes extend 'over a substantial period of time.'" *Id.* (internal citations omitted). "[T]his Circuit generally requires that the crimes extend over at least two years." *Id.*

Open-ended continuity requires "criminal activity that by its nature projects into the future with a threat of repetition." *Id.* (internal quotation marks omitted). "Some crimes may by their very nature include a future threat, such as in a protection racket." *Id.* "When the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future. And similarly, criminal activity is continuous when the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful." *Id.* (internal quotation marks and citations omitted).

For substantially the same reasons that Douglas Horn's fraudulent inducement claim survived summary judgment, the Court concludes that Douglas Horn may proceed with his RICO claim based on predicate acts of mail and wire fraud. *See Horn*, 383 F. Supp. 3d at 128-31. There is evidence that Defendants advertised in at least three different media—on their website, in

YouTube videos, and via their customer service representatives—that Dixie X did not contain THC. *See id.* at 129-30.  There is evidence that these statements were false; "indeed, Defendants' own testing revealed that the product contained detectible amounts of THC." *Id.* at 129.  Because Defendants tested Dixie X and found that it contained THC, yet advertised to the contrary, there is a basis to conclude that these statements were not mere misstatements or puffery, but part of a scheme to defraud.  Furthermore, as the Court previously reasoned, Defendants had a motive to defraud consumers: "[a] jury could reasonably conclude that, to sell their products, Defendants needed to distinguish Dixie X from its unlawful counterparts; misrepresenting the THC content in the product would go a long way to dispelling consumers' concerns, as it did in Plaintiffs' case." *Id.* at 130.

        In addition, these predicate acts are related and meet the test for open-ended continuity.  Although the racketeering activity occurred during a circumscribed timeframe in 2012, there is sufficient evidence to conclude that Defendants' alleged acts of mail and wire fraud were "the regular way of operating [the] business" even though the business itself was "primarily lawful." *Reich*, 858 F.3d at 60.  This is not a case where a defendant's scheme targets a particular victim, sets a specific goal, or is otherwise "inherently terminable." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999); *see also Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (no threat of continuing criminal activity where misleading advertising stemmed from "one-time change in pricing policy").  Rather, Defendants falsely advertised Dixie X through a variety of media, targeting consumers nationally.  Their claim that that Dixie X contained no THC was not one-off promotional puffery; it was a fundamental selling point of the product.  In other words, Defendants' false pitch about Dixie X could reasonably be viewed as their regular way of advertising, promoting, and selling the product, and there was no

**A-128**

"obvious ending point" to that scheme. *Alkhatib v. N.Y. Motor Grp. LLC*, No. CV-13-2337, 2015 WL 3507340, at *21 (E.D.N.Y. June 3, 2015). The fact that Defendants later updated their website to reflect Dixie X's THC content does not undermine this conclusion. This is because "[w]hether predicate acts pose a threat of future conduct is evaluated as of the time the acts are committed." *Id.* at *20.

Accordingly, Defendants are not entitled to summary judgment on Douglas Horn's RICO claim.[5] But for the same reasons set forth in the prior order, Douglas Horn is also not entitled to summary judgment on the RICO claim, and Defendants are entitled to summary judgment on Cindy Harp-Horn's RICO claim. *See Horn*, 383 F. Supp. 3d at 133.

## CONCLUSION

For the reasons discussed above, Defendants' motions for reconsideration (ECF Nos. 97, 106) are GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-motion for reconsideration (ECF No. 112) is DENIED. The Court's prior order is modified insofar as Douglas Horn may now proceed with his RICO claim only to the extent it is premised on predicate acts of wire and mail fraud. He may not proceed with his claim on the theory that Dixie X is a controlled substance. By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action.

IT IS SO ORDERED.

Dated: November 21, 2019
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[5] As the Court previously noted, Defendants are not precluded from raising issues of authentication and hearsay in their pretrial motions. *See Horn*, 383 F. Supp. 3d at 131. To the extent Defendants prevail on their arguments, the Court may revisit whether the RICO claim may proceed to trial. *Id.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                                    Plaintiffs,

                                                        Case # 15-CV-701-FPG

v.

                                                        DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                                    Defendants.

On September 15, 2020, Plaintiffs Douglas J. Horn and Cindy Harp-Horn filed a motion under Federal Rule of Civil Procedure 60(b), asking that the Court reconsider its ruling on one of their theories of liability under civil RICO. ECF No. 129. Specifically, the Court has held that "the mere presence of naturally occurring THC in a product does not render [the product] a controlled substance so long as it is derived from an excepted part of the *Cannabis sativa* plant." ECF No. 124 at 5-6. The Court concluded that, because Plaintiffs did not proffer any evidence "to show that Dixie X . . . is derived from a non-excepted part of the *Cannabis sativa* plant," they cannot "prove their RICO claim to the extent it is premised on the allegation that Dixie X is a controlled substance." *Id.* at 6. Plaintiffs now seek to relitigate that issue.

Normally, the Court would issue a briefing schedule to allow Defendants to weigh in on the matter. But given that the final pretrial conference is approximately two weeks away, further briefing would only serve to delay the proceedings and is unnecessary, as Plaintiffs' motion does not merit relief. Accordingly, Plaintiffs' motion is DENIED.

Plaintiffs cite Rule 60(b)(1) as the basis for their motion, arguing that the Court's rulings are premised on a "mistake" that entitle them to relief. ECF No. 129-9 at 5; *see* Fed. R. Civ. P.

60(b)(1) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or excusable neglect").   Even if Rule 60(b)(1) were an appropriate vehicle for Plaintiffs' arguments,[1] in substance they seek to relitigate old issues, press new legal and factual theories, and, put simply, take a "second bite at the apple." *Acao v. Holder*, No. 13-CV-6351, 2014 WL 6460120, at *1 (W.D.N.Y. Nov. 17, 2014).   That is not the purpose of Rule 60(b).   *See Wallace Wood Props. v. Wood*, No. 14-CV-8597, 2015 WL 7779282, at *2 (S.D.N.Y. Dec. 2, 2015) ("A motion for reconsideration . . . is not intended to be a vehicle for parties to relitigate cases or advance new theories that they failed to raise in their underlying motion practice.").

This is consistent with this Circuit's position on waiver/abandonment in the context of summary judgment: where a party could have raised a legal theory or relied on certain facts during summary-judgment motion practice, it is not entitled to advance such theories or rely on such facts via a motion for reconsideration.   *See, e.g.*, *Phoenix SF Limited v. U.S. Bank N.A.*, No. 14-CV-10116, 2020 WL 4699043, at *4 (S.D.N.Y. Aug. 12, 2020) ("[A] party that fails to raise an argument in its opposition papers on a motion for summary judgment has waived that argument."); *Rhee-Karn v. Lask*, No. 19-CV-9946, 2020 WL 1435646, at *1 (S.D.N.Y. Mar. 24, 2020) (declining to reconsider summary judgment order on basis that evidence in the record was allegedly "overlooked," where party "did not cite any of the evidence on which she now relies to argue that reconsideration of the [Court's] Opinion is warranted"); *see also CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (at summary judgment, district

---

[1] *But see Buck v. Libous*, No. 02-CV-1142, 2005 WL 2033491, at *1 n.2 (N.D.N.Y. Aug. 17, 2005) ("[S]ince an order denying summary judgment or granting partial summary judgment . . . is nonfinal, a party may not seek relief from such an order pursuant to Rule 60(b)." (internal quotation marks and citations omitted)).

court is not required "to scour the record on its own in a search for evidence when the plaintiffs fail to present it" (internal quotation marks omitted)).

Plaintiffs' motion runs afoul of this authority. Plaintiffs primarily argue that, as a factual matter, there is evidence in the record sufficient to support the inference that Dixie X is derived from a non-excepted part of the *Cannabis* plant. Specifically, Plaintiffs allege that "[i]t has been shown scientifically that cannabinoids . . . in the concentration necessary to make a product like Dixie X[] are not found in the parts of cannabis that are exempted from the CSA definition of marijuana." ECF No. 129-9 at 19. Plaintiffs also argue that one can reasonably infer that "Dixie X is derived from *non-exempt* parts of the cannabis plant" from (1) Dixie X's label, which states the product contains "hemp whole plant extract"; (2) Dr. Cindy Orser's testimony about the manufacturing process; and (3) the fact that Dixie X contains THC far in excess of the amounts found in legal hemp products. ECF No. 129-9 at 15-16, 20.

These may be plausible arguments, but Plaintiffs articulate no reason why they did not raise them earlier.[2] In its decision on summary judgment, the Court explicitly stated that Dixie X's legality turned on the manner in which, and the part of the plant from which, it was produced. *See Horn v. Medical Marijuana, Inc.*, 383 F. Supp. 3d 114, 123-24 (W.D.N.Y. 2019). The Court initially concluded that Dixie X could be found unlawful, as "Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a 'resin extracted from' the *Cannabis sativa* plant." *Id.* at 124; *see also* 21 U.S.C. § 802(16) (2012) (defining marijuana to include "the resin extracted from any part" of the *Cannabis sativa* plant, as well as "every compound" or "mixture" of the resin). As the Court highlighted in the order, this

---

[2] Plaintiffs seem to suggest that there is new (non-binding) legal authority and helpful regulatory guidance that excuses the untimeliness of the present motion. The Court disagrees. The materials Plaintiff identify do not articulate a new or radical legal principle that Plaintiffs could not have previously anticipated; at best, they support a position that Plaintiffs could have taken from the outset.

framework for assessing the legality of Dixie X was different than Plaintiffs' theory—they maintained that "the presence of any amount of THC" rendered Dixie X "a Schedule 1 controlled substance." ECF No. 69-26 at 12; *see also id.* at 12-14, 20-21; ECF No. 69-24 at 6 ("Any material, compound, mixture or preparation that contains any quantity of THC or marijuana extract containing one or more cannabinoids derived from any plant of the genus Cannabis is categorized as a DEA Schedule I controlled substance."); ECF No. 70-23 at 7 ("Dr. Graham showed that the Defendants' final product formulations of the Dixie X Dew Drops Tincture product with the presence of '*any*' amount of THC rendered it a Schedule 1 controlled substance as described under 21 U.S.C. §1308.11, and not eligible for an exemption to a Schedule 1 classification under 21 U.S.C. §1308.35 since it was formulated, marketed and distributed for human consumption.").

In their motion for reconsideration, Defendants "argue[d] that the Court erred insofar as it assumed that Dixie X contained resin extract derived from the *Cannabis sativa* plant and thus constituted marijuana." ECF No. 124 at 5 (internal quotation marks omitted). In ordering briefing on that motion, the Court expressly stated that if Plaintiffs intended "to challenge the moving defendants' factual assertions, they must do so in the manner contemplated by Federal Rule of Civil Procedure 56(c)(1)." ECF No. 98. Despite having notice of the Court's framework and of the need to produce supporting evidence, Plaintiffs did not make the factual argument they now make,[3] and instead argued that the Court's framework was incorrect. *See, e.g.*, ECF No. 112-1 at 2-3 (affidavit of Plaintiffs' expert); ECF No. 112-3 at 2 ("[I]t is immaterial whether the plant

---

[3] Plaintiffs did cite Dr. Orser's testimony and the Dixie X label in their brief on the motions for reconsideration, but they did so in the context of distinguishing Defendants' product from those at issue in two related Ninth Circuit cases. *See* ECF No. 112-3 at 4-5. Plaintiffs did not develop an argument that those facts proved that Dixie X was derived from a non-excepted part of the *Cannabis* plant. To the contrary, they believed that the issue was "immaterial." *Id.* at 2. It was not incumbent on the Court to further develop these facts on Plaintiffs' behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

compound used to describe the formulation basis of the Dixie product was obtained from a resin extract or a non-resin extract."); ECF No. 112-3 at 3 ("[A]ny product that contains any amount of THC was a Schedule I controlled substance in 2012.").

Plaintiffs could have asked the Court to draw the factual inferences they now advance, but they took a different tack and wholly disagreed with the Court's framework for analyzing the issue. Plaintiffs have every right to craft their theory of the case, but, by the same token, the Court has no obligation to "perform an independent review of the record to find proof of a factual dispute," *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002), or to develop a theory on Plaintiffs' behalf that they quite explicitly did not want to pursue. *Cf. Garcia v. Jackson Hurst Partners LLC*, No. 18-CV-3680, 2018 WL 4922913, at *2 (E.D.N.Y. Oct. 10, 2018) ("The purpose of the abandonment doctrine is to give effect to a plaintiff's right to control his or her theory of the case, and to winnow out legal theories that the plaintiff has chosen not to prosecute."). Undoubtedly, this was a complex issue, and the Court in no way faults Plaintiffs for advancing a legal theory at odds with the Court's view. But Plaintiffs cannot re-cast their own litigation strategy into a mistake or error on the Court's part.

For similar reasons, Plaintiffs err when they argue that Defendants did not provide sufficient evidence that Dixie X is manufactured from lawful *Cannabis* derivatives. *See* ECF No. 129-9 at 13. The quality of Defendants' evidence is beside the point: it is the plaintiff who bears the burden of proving a civil RICO claim. *See Arons v. Lalime*, 3 F. Supp. 2d 314, 320 (W.D.N.Y. 1998). Where the moving party will not bear the burden of proof at trial, it may "obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994); *see also Ockimey v. Town of Hempstead*, 425 F. App'x 45, 45 (2d Cir. 2011) (summary order)

("[A] moving defendant is not required to file affidavits (or other materials) disproving the plaintiff's claims.").   At summary judgment (and on the motions for reconsideration), Plaintiffs were required to affirmatively produce evidence sufficient to create a genuine issue as to whether Dixie X was derived from a non-excepted part of the *Cannabis* plant.   Instead, Plaintiffs deemed the issue irrelevant and failed to affirmatively identify or articulate the relevance of the evidence they now cite.   Plaintiffs were of course free to advance their theory in lieu of addressing the Court's position, but they are not entitled to a "do-over" once that failed.

Finally, to the extent Plaintiffs dispute the Court's interpretation of § 802(16) and the CSA, their motion cannot be used to relitigate that matter, *see Acao v. Holder*, 2014 WL 6460120, at *1, and, regardless, the Court finds their arguments unpersuasive.   The purported legal distinctions Plaintiffs draw between "non-psychoactive THC" versus "psychoactive THC" and permissible versus impermissible levels of THC find no support in the plain language of the statute.   *See* ECF No. 129-9 at 8-9, 17-18.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Rule 60(b) motion (ECF No. 129) is DENIED. The pretrial conference will go forward as scheduled, and all associated deadlines remain in place.

IT IS SO ORDERED.

Dated:  September 16, 2020
        Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN and CINDY HARP-HORN,

                    *Plaintiffs*,

  -against-

MEDICAL MARIJUANA, INC., DIXIE
HOLDINGS, LLC, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                    *Defendants*.

Civil Action No.
15-cv-00701-FPG

Hon. Magistrate Judge
Jonathan W. Feldman

**Defendant Dixie Holdings' Motion In Limine to Preclude
Testimony of Mark P. Zaporowski, Ph.D.**

MAZZOLA LINDSTROM, LLP
Attorneys for defendant Dixie Holdings, LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel:  646-216-8300
Cell: 646-250-6666

Of Counsel:   Jean-Claude Mazzola
              Richard E. Lerner
              Hanoch Sheps

Dated: July 22, 2021
        New York, New York

**Preliminary Statement**

Defendant Dixie Holdings, LLC, by its undersigned counsel, hereby moves, *in limine*, to preclude the trial testimony of plaintiff's expert economist Mark P. Zaporowski, Ph.D. Plaintiff claims loss of earnings as a result of having taken an allegedly THC-contaminated product.[1] However, loss of earnings is not recoverable in a civil RICO action. As for the sole remaining state-law claim of fraud, loss of earnings is not recoverable. Moreover, even if tort damages for loss of earnings were recoverable, such damages are measured by loss of earning capacity, as opposed to loss of earnings. In other words, without a preliminary finding that plaintiff Douglas Horn had a loss of earning capacity he cannot recover for loss of earnings.

**Argument**

Point I:         **Because RICO Does Not Contemplate Loss-of-Earnings Damages, Dr. Zaprorowski's Proposed Testimony Must be Precluded on the Ground That It Is Irrelevant.**

Plaintiff postulates that he suffered damages as a result of exposure to THC. The harm from which plaintiff's alleged damages flow is thus the THC that was allegedly found in his system on urinalysis testing. If there is a nexus between the alleged RICO violations and the damages plaintiff allegedly sustained, that nexus can only be the harm of the THC found in his system.

The Eastern District of New York held in *Gause v. Philip Morris* that a claim of loss of earnings is not recoverable in RICO:

> Although Plaintiff characterizes her injuries as a "loss of property," … in an effort to create a cognizable injury under RICO, an analysis of her complaints reveals otherwise. Specifically, Plaintiff's asserted "loss of property" is, in essence, a loss of income due to an alleged inability to work since becoming afflicted with emphysema. … A loss of income, however, is not considered a "loss of property" as required under RICO. See, e.g., *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) ("loss of earnings … reflect personal injuries which are not compensable under

---

[1] Annexed is the Plaintiff's Final Pre-Trial Order Compliance submission (ECF DKT #179) indicating (at pg. 3) the anticipated scope and substance of Dr. Zaporowski's testimony.

RICO). In *Doe v. Roe*, the Seventh Circuit provided some insight into how the characterization of personal injuries may resemble loss of property, but under the statutory requirements of RICO, these injuries are insufficient to establish standing.

*Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000).

Similarly, the Northern District of New York held loss-of-earnings damages to have been

unrecoverable under RICO in *Gilfus v. Vargason*, stating:

> In their Complaint, Plaintiffs' submit as a result of Defendants' alleged RICO violation, they "suffered economic loss, ***including his [sic] inability to pursue his [sic] chosen career***, as well as serious physical and emotional injuries . . . As a result of [Defendants' RICO Violations] the Plaintiffs . . . was [sic] made ill, suffered extreme physical, mental suffering and distress, [and] was subjected to overwhelming humiliation . . . ." ... As stated above, Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964 (emphasis added).

> A plain reading of the RICO statute reveals that Plaintiffs cannot seek damages for physical injury, mental suffering, distress, or humiliation. See 18 U.S.C. § 1964(c). Although the Second Circuit has not squarely addressed the issue, other Circuits have held that economic damages resulting from personal injuries are not actionable under RICO. As the Seventh Circuit explained:

>> Most personal injuries-loss of earnings, loss of consortium, loss of guidance, mental anguish,  [*27]  and pain and suffering, to name a few-will entail some pecuniary consequences. Perhaps the economic aspects of such injuries could, as a theoretical matter, be viewed as injuries to "business or property," ***but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary.*** Rather, we must determine if these injuries fall within the framework of § 1964(c) as understood by Congress . . . They do not.

> *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992); see also *Bast v. Cohen, Dunn & Sinclair, P.C.*, 59 F.3d 492, 495 (4th Cir. 1995)(citing Doe and explaining that pecuniary losses flowing from extreme mental anguish do not constitute injury to property); *Schiffels v. Kemper Fin. Servs.*, 978 F.2d 344, 353 (7th Cir. 1992) (explaining that personal injuries such as embarrassment, humiliation, and emotional distress, do not constitute an injury "to business or property" even if those injuries resulted in a pecuniary loss); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918-19 (3d Cir. 1991) (holding that physical and emotional injuries caused by exposure to toxic waste and [*28]  resulting in medical expenses not compensable as injury to property under § 1964(c)); *Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988) (holding recovery not available under RICO for pecuniary losses best understood as part of a personal injury claim, including loss

of income, resulting from murder); *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir. 1986) (finding RICO inapplicable to wrongful death action); Hollander v. Flash Dancers Topless Club, 340 F.Supp.2d 453 (S.D.N.Y. 2004) (explaining that damages to plaintiff's "'business reputation and good will' . . . and 'imperil[ing] his safety, life, liberty and right not to live in fear' . . ., simply are not the type of injuries to 'business or property" that are actionable under RICO.").

Regardless of whether Plaintiffs' damage claim for the "inability to pursue his chosen career" might qualify as an injury to "business or property," the remaining damages sought, serious physical and emotional injuries and humiliation, are not actionable under RICO. Defendants are entitled to judgment on the pleadings as against Plaintiffs in their cause of action under RICO.

*Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 U.S. Dist. LEXIS 74037, at *25-28 (N.D.N.Y. Sep. 30, 2006) (emphasis added).

Plaintiff has disclosed Dr. Zaporowski as a trial witness to give expert opinion testimony about plaintiff's loss of earnings; however, the metaphysical connection between the alleged RICO violation and the loss of earnings can only be connected, if at all, through the harm of having been exposed to THC. This is no different than the harm in *Gause v. Philip Morris* – inhalation of cigarette smoke – causing an inability to earn a living. As there is no basis for such recovery in RICO, Dr. Zaporowski's proposed testimony as to loss of earnings is irrelevant to this case, and he must therefore be precluded from testifying.

**Point II:     Because New York Does Not Allow for Loss-of-Income Damages for Fraud, Dr. Zaporowski's Proposed Testimony Must Be Precluded on the Ground That It Is Irrelevant.**

Under New York law, the measure of damages in an action for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong; that is, only out-of-pocket losses are recoverable. *Continental Cas. Co. v PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264 (2010). Where an investor or purchaser claims that he was defrauded into making an investment, he may not recover what he claims would have been his income or profit:

In a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong (*Reno v. Bull*, 226 NY 546 [1919]). Under this rule, the actual loss sustained as a direct result of fraud that induces an investment is the "difference between the value of the bargain which a plaintiff was induced by

fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 NY 472, 481 [1936]). The damages are to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained (see *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]).

*Id.* at 271.

In *Mihalakis v. Cabrini Med. Ctr.*, 151 A.D.2d 345 (1st Dep't 1989), a medical student claimed that she was defrauded by defendant Cabrini Medical Center into accepting a position as a medical intern and then being terminated in violation of Cabrini's policies and procedures. The plaintiff sued for $345,324,000 in lost earnings caused by the allegedly deficient internship program, claiming that she gave up an opportunity to complete an internship program having the characteristics that defendant hospital allegedly represented its program had but did not. She sought damages "representing plaintiff's lifetime prospective earnings as a physician." *Id.* at 345.

The Appellate Division reversed the trial court's determination that the complaint stated a viable claim for damages for fraud, ruling that such damages were not recoverable in fraud, as they were entirely speculative. *See, also, Gomez-Jimenez v. New York Law School*, 36 Misc. 3d 230 (Sup. Ct., NY Co., 2012), *aff'd* 103 A.D.3d 13 (1st Dep't 2012) ("Despite the factual differences between this case and *Mihalakis,* the court is of the opinion that the general rule set forth in *Mihalakis* is applicable here. Namely, the court there refused to speculate as to *both* the 'true value' of an internship program and the value of an internship program having the characteristics that defendants allegedly misrepresented.")

In the case at bar, while the plaintiff could at most recover his out-of-pocket loss – perhaps recovery of the money he paid for a bottle of CBD oil – he cannot recover, on a cause of action for fraud, for his alleged loss of earnings. Accordingly, there is no basis for Dr.

Zaporowski's proposed testimony, as it is irrelevant to the damages that may be recovered for fraud.

**Point III:** **Loss-of-Income Damages Must be Predicated Upon a Loss of Earning Capacity. As Plaintiff Failed to Notice a Vocational Expert to Lay a Foundation for Dr. Zaprorowski's Proposed Testimony, Dr. Zaprowski's Testimony Would Be Lacking a Foundation and Must Be Precluded.**

In New York, while there is often loose language referring to claims of "loss of earnings," such damages are only recoverable where there is a loss of earning *capacity.* So, for example, if a plaintiff has lost his job, for whatever tortious reason – wrongful termination, slip-and-fall injury, medical malpractice, etc. – he may only recover if such alleged tort caused a loss of earning capacity. If he can go out and get a job earning the same or more pay, then he cannot recover, regardless whether he does or does not actually go out and accept a job earning at least equivalent remuneration, as loss of earning capacity is an element of a claim of loss of earnings. *See, Clanton v. Agoglitta,* 206 A.D.2d 497 (2d Dep't 1994) ("We find, however, that the verdict as to damages for impairment of earning ability deviates materially from what would be reasonable compensation. The basic rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning capacity both before and after the accident. In this case, the plaintiff's earnings prior to the accident, combined with his failure to mitigate damages lead to the conclusion that the jury's award for impairment of earning ability deviates materially from what would be reasonable compensation and should be reduced to the extent indicated.") (Citations and internal quotes omitted).

Here, there is no foundation for an economist to extrapolate as to the damages resulting from a loss of earning capacity because there is no evidence that plaintiff Horn sustained a loss of earning capacity, nor even a loss of earnings, as there was nothing that prevented him from finding equally remunerative employment. Indeed, he testified that he was able to find work with

several trucking companies after the claim arose, and even earned comparable amounts of money. Moreover, as there will be no expert opinion evidence that he is not suited for and capable of working in another field of endeavor, there can be no basis for Dr. Zaporowski to opine that plaintiff sustained actual damages as a result of having been (allegedly) exposed to THC and terminated from his job at the trucking company that employed him. The necessary part of the claim for lost earnings upon which one must focus – *viz*, the element of loss of earning capacity – is wholly absent here.

*** 

WHEREFORE, it is respectfully submitted that plaintiff's expert economist Mark P. Zaporowski, Ph.D. must be precluded from testifying at trial.

Dated:        July 22, 2021
              New York, New York

                                 Respectfully submitted,

                                 MAZZOLA LINDSTROM, LLP

                                 By: Jean-Claude Mazzola
                                 *Attorneys for defendant*
                                 *Dixie Holdings, LLC*
                                 1350 Avenue of the Americas, 2nd Floor
                                 New York, NY 10019
                                 Tel:    646-216-8300
                                 Cell:   646-250.6666
                                 Email: jeanclaude@mazzolalindstrom.com

cc:      All parties via ECF

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                                Civ Action No: 15-cv-701 FPG/MJR
                 Plaintiff,

                                          **PLAINTIFF'S FINAL**
    -against-                            **PRE- TRIAL ORDER**
                                          **COMPLIANCE**

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,
                             Defendants,
----------------------------------------------------------------X

        Pursuant to the Pre-Trial Order of Court of April 29, 2021, the Plaintiff makes the

following Statements:

    **A. VOIR DIRE INFORMATION**

        1.   This case is brought by plaintiff Douglas James Horn pursuant to the Racketeer
            Influenced and Corrupt Organizations Act "RICO" statute, 18 U.S.C. 1962(c) and
            New York State common law fraudulent inducement and concealment.

                Plaintiff brought this case against three parties. Medical Marijuana Inc. as
            the parent company of Red Dice Holdings, LLC who together sold finished hemp
            and cannabis based products across the United States. Together, these companies
            purchased various companies, such as the third Defendant and its brand, Dixie
            Elixirs, LLC. Dixie was the company that researched, developed, manufactured,
            and distributed the hemp-based products, specifically the Cannabidiol ("CBD")
            product at issue here and the one Plaintiff took: the 500 mg "Dixie X Elixir"
            which was a liquid taken by the consumer with an eye-dropper squeezed, placed
            under the tongue and swallowed.

                In September, 2012, James and his wife Cindy were over-the-road semi
            truck drivers hauling various materials across the U.S. since 1998. As truck
            drivers for thirteen years with an impeccable record, the couple had to submit to
            random drug testing required by the U.S. Department of Transportation ("DOT")
            to insure they would not be driving under the influence of drugs or alcohol.

                In September, 2012, the couple researched hemp-based products to treat
            James' shoulder and back pain that he sustained in a truck accident in early 2012.
            Normal medications were not helping James' pain. The couple specifically
            researched Defendant's Dixie X liquid Tincture product after seeing an article in a
            magazine at a truck stop. They first observed a YouTube video with the CEO of
            the Dixie X; they were then led to website articles and Frequently Asked

Questions ("FAQs") as to the content of the Dixie X Tincture product. They had also contacted customer service for the product to inquire as to what they found in Defendants' advertising across the various media.

In all advertising and statements they found in September, 2012, Defendants' represented that the product contained "no-THC" (Tetrahydrocannabidiol Delta-9), had "0% THC", was "THC-free" and was a "non-THC" product. In September, 2012, the Dixie X product was a brand new product that was launched that month. THC is the psycho-active component in marijuana and in 2012 is a controlled substance under federal law, and was illegal in New York. After over 10 years at the same company, Enterprise Transport, and after their extensive research, James and Cindy decided that the product was safe for James to use to treat his pain, and it would not produce a positive drug test.

On September 17, 2012, James and Cindy ordered the product. Defendant Red Dice Holdings sent James the product to their home in New York from its distributor in Colorado. Since they were on the road every day across the country, James did not take the Dixie X tincture until around October 1, 2012. He took it every day as prescribed through October 9, 2012.

On October 9, 2012, Plaintiff was called in by his employer Enterprise to submit a random urine sample for drug screening. He did so. Two days later, on October 11, 2012, James and Cindy were notified that James' urine contained an amount of THC and he was immediately fired and told to leave the company.

Plaintiff's case is for compensation for the substantial loss of wages that followed after he was fired on October 11, 2012 due to his taking of Defendants' Dixie X product which produced a positive drug test for THC.

2.  Douglas James Horn
    195 Parker Road
    Lockwood, NY 14859

3.  Plaintiff's Counsel
    Jeffrey Benjamin Esq.
    The Linden Law Group PC
    5 Penn Plaza, 23rd Floor
    New York, NY 10001
    (212) 835-1532

    Frank Housh Esq.
    Housh Law Offices
    70 Niagara Street
    Buffalo, NY 14202
    (716) 362-1128

    Legal Assistants: Kirsten Anderson and Jennifer Wettlaufer
    Law Clerks: Nicholas Ramirez and Roxanna Herreid

2

4. **WITNESSES**

Plaintiff's List of Witnesses were listed on the Court form and overnighted on June 14, 2021 to both Court and counsel pursuant to the Final Pre-Trial Order.

E. **EXPERT TESTIMONY**

Dr. Kenneth Graham, Forensic Toxicologist, Pharmacologist and Pharmacist.

Dr. Graham is expected to testify consistent with his report and rebuttal disclosed in discovery in this case. His ultimate opinions will be that Defendants' falsely represented in advertising in various media, Defendants' bottle labelling on the product, and Defendants' Certificates of Analysis that the Dixie X product had no THC.

Dr. Mark Zaporowski, Economist. Canisius College.

Dr. Zaporowski is expected to testify consistent with his report, rebuttal and Tables in Plaintiff's Exhibit List as to Plaintiff's past lost compensation, future lost compensation, value of lost health benefits, lost retirement savings and difference in work effort post separation.

G. **DAMAGES**

Plaintiff's damages of past and future lost compensation, lost health benefits, lost retirement savings and difference in work effort mileage driven are detailed in Plaintiff's Exhibit 12 on Plaintiff's exhibit list. (The Tables of Calculations of expert economist Dr. Mark Zaporowski).

Dated: June 22, 2021

New York, New York

THE LINDEN LAW GROUP, P.C.

*Jeffrey Benjamin*

Jeffrey Benjamin, Esq.,
Attorney for Plaintiff
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532

3

**A-145**

# THE LINDEN LAW GROUP, P.C.

5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532
(718) 425-0692 (Fax)

July 26, 2021

**Via ECF**

Mag. J. Jonathan W. Feldman
U.S. Magistrate Judge, U.S. Courthouse
100 State Street
Rochester, NY 14614

> Re:   ***Horn v. Medical Marijuana, Inc., et al.***
> **Case No: 15-CV-701 (FPG-MJR)**

Dear Judge Feldman:

We represent Plaintiff in this matter.

As Your Honor is aware, we received the Dixie Defendant's Motion for Summary Judgment on damages (though styled a "Motion in Limine") on Thursday, July 22, 2021, two (2) days before trial. Then, after the Court conference where I committed to a time for Plaintiff's opposition to be filed, I then received Dixie's counsel's email just before 5:00 p.m. on Friday, July 23, 2021, citing three previously absent cases purportedly in further support of their motion. I will now have to piece together where this further purported support fits in to Dixie's originally filed motion.

I cannot express enough to the Court the substantial prejudice the timing of this motion has caused to the Plaintiff, his experts, his witnesses and his counsel and co-counsel. Most respectfully, everyone on our side relied on Your Honor's Pre-Trial Order stating that trial would start today, as a "day-certain . . . which will not be adjourned." The sums of money expended by the Plaintiff and his team in the last month, but particularly last week, was substantial, and the Horns as truck drivers to and from the West Coast will now lose more time from work.

In incurring these expenses, the Plaintiff's side additionally relied on the unequivocal directive in the Court's Order Page 23, Paragraph H:

> "The Court expects the parties to raise any potential issues at the pre-trial
> conference, or as soon as they become evident, so that the Court and the parties
> will have adequate time to consider the issues."

The Dixie Defendant's "eve of trial" motion is clearly inconsistent with those portions of the Order, and as we will argue in our brief, these issues should have been evident, at a minimum, at the pre-trial conference on June 29, 2021. Of course, the time for dispositive motions expired years ago, and Judge Geraci decided all summary judgment motions long ago.

**A-146**

The above all said, I respectfully wish to clarify whether we will have the week of August 16, 2021 to complete the trial. I believe Your Honor indicated at the phone Conference that the jury would not be held beyond August 15.

I must respectfully repeat that Plaintiff will not be able to finish the entire case by August 13, 2021 should Plaintiff defeat Dixie's late-filed motion. If that is the case, I am compelled to request of the Court an adjournment to an earliest trial date of October 11, 2021, due to scheduling issues and religious observances through the entire month of September.

The Horns, their experts and their counsel sustained a substantial loss of money and time, and loss of work, due to the timing of Dixie's motion. The Plaintiff and his witnesses made a complete effort consistent with the Final Pre-Trial Order to start today as ordered, and at great and lost expense.

In sum, I must respectfully request further clarification whether the parties will have the week of August 16 to complete the trial.

Thanking the Court for consideration of this request.

Very truly yours,

*Jeffrey Benjamin*

Jeffrey Benjamin, Esq.

cc: All parties via ECF

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                                                    Civil Action No:

                          Plaintiffs,                               15-cv-701 FPG/MJR

          -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

                          Defendants,
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT DIXIE'S MOTION *IN LIMINE* TO PRECLUDE
TESTIMONY OF EXPERT MARK P. ZAPOROWSKI, Ph.D.**


**Jeffrey Benjamin, Esq.**
THE LINDEN LAW GROUP, P.C.
5 Penn Plaza, 23rd Floor
New York, NY  10001
(212) 655-9536
*Attorneys for Plaintiff*


Dated: New York, New York
          July 29, 2021

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT and RELEVANT PROCEDURAL HISTORY ................... 1

ARGUMENT ...................................................................................................... 3

    I.      INTRODUCTION ...................................................................... 3

    II.     MR. HORN'S LOSS OF EARNINGS CLAIM IS COMPENSABLE
          IN CONNECTION WITH HIS RICO CLAIM ............................... 4

    III.    THE AUTHORITY RELIED UPON BY MOVANT IS WHOLLY
          INAPPLICABLE AND READILY DISTINGUISHABLE ........................... 6

    IV.    MR. HORN'S DAMAGES UNDER HIS FRAUD CLAIM WERE
          NOT SPECULATIVE, AND ARE RECOVERABLE ................................. 8

    V.     THERE CAN BE NO DISPUTE THAT PLAINTIFF'S PAST LOST
          WAGES ARE NOT SPECULATIVE AND ARE AWARDABLE BY
          A JURY; AND PLAINTIFF'S CLAIM FOR FUTURE LOST
          WAGES ARE BASED ON THE EVIDENCE AND EXPERT
          ECONOMIST ANALYSIS .......................................................... 11

CONCLUSION ................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases:**

*American National Bank v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) .......................................................................................... 7

*Anza v. Ideal Steel Supply Corp.*, 547 US 451 (2006) ........................................... 4

*Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984) ................................. 7

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) ........................................................................................... 5

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606 (4th Dept 1983) ............ 8

*City of New York v. FedEx*, 175 F. Supp. 3d 351, 369 (S.D.N.Y. 2016) ............................ 3, 4

*Clanton v. Agoglitta*, 206 A.D.2d 497 (N.Y. App. Div. 2d Dep't 1987) .............................. 12

*Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271-272 (2010) ............ 10

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ................................... 2, 3, 8

*Ferguson v. City of New York*, 73 A.D.3d 649 (1d Dep't A.D. 2010) ................................ 13

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994) .............. 3

*Fljer v. Cayuga County*, No. 5:03–CV–578, 2006 WL 2655698, at *4 (N.D.N.Y. Sept.15, 2006) ................................................................................................... 6

*Freeman v. Tuan Anh Nguyen*, 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004) ............. 13

*Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000) ....................................................................................................... 6

*Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 U.S. Dist. LEXIS 74037, at *25-28 (N.D.N.Y. Sep. 30, 2006) ................................................................. 6

*Gilfus v. Adessa*, No. 5:03-cv-1368 (N.D.N.Y. Sept 30, 2006) ............................................ 6

*Gomez-Jimenez v. New York L. Sch.*, 36 Misc. 3d 230, 231, (Sup. Ct.), aff'd, 103 A.D.3d 13 (2012) ..................................................................................... 10-11

*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988) .................................................. 7

*Hanley v. Sumitomo Bank, Ltd.*, 1993 WL 362388, at *3 (S.D.N.Y. 1993) ........................... 9

*Hotaling v. Leach & Co.* 247 NY 84, 87-88 (1928) ................................................................. 9

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995) ............................. 5

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ......................... 5

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ................................................... 6

*Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151 A.D.2d 345, 346 (1989) ................................ 10

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221
(E.D.N.Y. 1999) ...................................................................................................................... 7

*Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F.Supp.2d 492 (N.D.N.Y. 2013) .................... 13

*Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) ...................... 5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ........... 8

*Subramanian v. Lupin Inc.*, No. 17CV5040RAKHP, 2020 WL 7029273, at *18
(S.D.N.Y. Aug. 21, 2020) ....................................................................................................... 9

*Waring v. Sunrise Yonkers SL, LLC*, 134 A.D.3d 488 (1ˢᵗ Dep't 2015) ............................... 13

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y.
2007) ........................................................................................................................................ 9

**Rules:**

CPLR 5501(c) ........................................................................................................................ 12

Fed. R. Civ. P. Rule 9(b) .......................................................................................................... 6

Fed. R. Civ. P. Rule 12(c) ......................................................................................................... 1

Fed. R. Civ. P. Rule 56 ............................................................................................................. 1

iii

### *PRELIMINARY STATEMENT and RELEVANT PROCEDURAL HISTORY*

On Thursday, July 22, 2021, one (1) business day before a "day-certain" trial[1], the Dixie Holdings, LLC Defendant ("Dixie") filed a mis-named *Motion in Limine* but what is, in actuality, a latent Motion for Summary Judgment on the issue of damages. At the close of business, Friday, July 23, 2021, Dixie's counsel then e-mailed three cases omitted from its motion, purportedly in further support of same.

Noticeably absent from Dixie's moving papers is the statutory basis for making this motion on the eve of trial. Although the moving papers avoid mention of Rule 56, this motion may also be characterized as a dispositive *pleadings* motion under FRCP 12(c). For the first time, Dixie's motion attacks the Plaintiff's prayer for relief in his pleadings because it bears directly upon the threshold issue of standing under Plaintiff's causes of action for RICO and Fraud. As such, the timing of Dixie's motion frustrates both this Court's Pre-Trial Order, and FRCP 12(c) against the "delay of trial."

In addition, the timing of Dixie's motion runs afoul of the unequivocal directive in the Court's Pre-Trial Order Page 23, Paragraph H at Doc #174:

> "The Court expects the parties to raise any potential issues at the pre-trial conference, or as soon as they become evident, so that the Court and the parties will have adequate time to consider the issues."

The issue of Plaintiff's clear and definite damages is, for the first time throughout this six-year litigation, being challenged on the eve of trial. The subject matter that Dixie now challenges for the first time, has been evident and part of the record since the disclosure of Plaintiff's expert Economist's Report in August, 2017 and, certainly, after his deposition in December, 2017. His updated 2020 Report is annexed hereto as **Exhibit "A."** Dixie's claim of

---

[1] Pursuant to the Court's Pre-Trial Order of April 29, 2021, bottom of Page 17 at Doc #174.

oversight is remarkable as they have had nearly four (4) years to consider the Plaintiff's damages and move accordingly.

The Dixie Defendant well knew the specific nature of Plaintiff's claims for damages (i.e. past and future lost compensation) as far back as the filing of Plaintiff's Complaint, or at least their Answer dated October 23, 2015, wherein they *actually pleaded* an Eleventh Affirmative Defense of "standing" as to Plaintiff's injuries under RICO. (See Doc #9, bottom of Page 11.) The Court respectfully should not accept this sharp and dilatory practice—particularly since Dixie's legal assertions are not supported by the authority they cite, or are otherwise inapplicable to Mr. Horn's case.

The time for dispositive motions expired, by order of Court, years ago. Judge Geraci decided all summary judgment motions long ago and further established the law of the case in so ruling. Indeed, Judge Geraci considered each of the elements of Plaintiff's Fraud and RICO cases before denying summary judgment on those two claims. Additionally, this Court decided Dixie's numerous and extensive Motions in Limine in its Pre-Trial Order.

Setting aside the egregiously prejudicial[2] timing of this motion, as will be discussed more fully below, the moving Defendant somehow missed the Second Circuit precedent of *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006), and then its progeny which sets out the controlling standard for RICO damages: "[a] RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and

---

[2] The Horns, their experts and their counsel sustained a substantial loss of money and time, and loss of work, due to the timing of Dixie's motion. The Plaintiff and his witnesses made a complete effort consistent with the Final Pre-Trial Order to be ready for July 26, 2021 as ordered, and at great and lost expense.

definite." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994)); *see also City of New York v. FedEx*, 175 F. Supp. 3d 351, 369 (S.D.N.Y. 2016). The notable absence and discussion of this controlling precedent is telling.

***ARGUMENT***

I.    **Introduction**

Dixie's motion is improper both procedurally and substantively.   This Defendant's failure to raise the Second Circuit case, *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), was a fatal substantive flaw.   In *Denney*, the Second Circuit articulated the standard for damages available pursuant to a RICO Claim confirming that a plaintiff is entitled to recover where "he has been injured in his business...by the conduct constituting the [RICO] violation...when (as here) his...actual lost becomes clear and definite. *Id.* at 266 (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994).  In so holding, the *Denny* Court recognized a RICO Plaintiff's right to damages once same have been demonstrated to be "clear and definite."   Plaintiff's expert is being called to establish the extent of the Plaintiff's heretofore clear and demonstrated damages.

Mr. Horn suffered demonstrable and definite economic damages resulting directly from his loss of employment caused by the Defendant's malfeasance after urinalysis test results showed THC in his system, which Mr. Horn was exposed to by Defendants' product.  Mr. Horn, upon being terminated, lost a lucrative means of employment, and therefore lost past and future wages from this job. The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore, is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product. The issue Mr. Horn brings to the jury is that his non-

3

speculative economic damages flowed from Defendant's combined conduct in bringing the product to market and selling and sending it to Mr. Horn.

As for Plaintiff's expert, his Economist Dr. Zaporowski's and his expert report of past and future lost wages were disclosed to the movant years ago.  Dr. Zaporowski's report is based on Mr. Horn's filed and fixed tax returns, and is based upon compensation that was never paid in cash. Over the years of this case, there has been no secret as to their nature of his damages, their clarity or their definiteness. In actuality, Mr. Horn mitigated his damages over nine years by clawing his way back into the trucking industry over that period. Plaintiff's Economist calculates the exact past lost compensation had he not been fired over that long period of time, and calculates the future loss based on widely accepted statistical work-life expectancy tables of the U.S Bureau of Labor Statistics, a source upon which even the defense expert relied. In Dr. Zaporowski's annexed report, he pertinently and competently uses the Employee Cost Index to calculate Plaintiff's future lost compensation with a growth rate of 2.5% from 2019 onward.

II.    **Mr. Horn's Loss of Earnings Claim is Compensable in Connection with his RICO Claim**

As stated above, the issue of the Plaintiff's claims under his RICO claim has been fully litigated and ruled upon previously in this action by Judge Geraci and remains the law of the case.  Neither a timely application for reconsideration, or new motion was ever sought by this movant.  Plaintiff should be entitled to proceed to trial in good faith reliance upon the rulings and prior orders of the Court.  The applicable standard is clear that where proximate cause has been established, a RICO Plaintiff may recover for the "injury flowing from [the RICO] violation…'necessarily is the harm caused by [the] predicate acts.'" *City of New York v. FedEx Ground Package Sys.*, 175 F. Supp. 3d 351, 370 (S.D.N.Y. 2016) (citing *Anza v. Ideal Steel Supply Corp.*, 547 US 451 (2006).  Defendant's challenge in this regard fails substantively, as

4

Mr. Horn's case falls squarely within the parameters of the *Denney* case and the New York

District Court cases which followed.

Plaintiff's claim for past and future lost wages are recoverable damages under RICO.

*See, Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995); *Blue Cross & Blue*

*Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999)

[distinguishing personal injuries from economic injuries which the court deemed compensable].

Loss of earnings claims have been held to be recoverable under RICO in multiple cases. In

*Rodonich v. House Wreckers Union*, the Court noted that the plaintiffs suffered a requisite

proprietary-type injury under RICO, holding that as direct injury is not required, "… to the

extent that plaintiffs' purported injuries consist[ed] of lost wages, sufficient property damage

[was] alleged." *Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985).

As in *Blue Cross*, the injuries suffered by Mr. Horn in the present case are entirely

economic, and specifically not personal.  This line of reasoning has been likewise followed by

the Southern District of New York in *Kriss v. Bayrock Group, LLC*:

> The TAC adequately alleges injury to Plaintiffs… Subject to… requirements and the
> proximate cause element discussed below, a plaintiff can adequately plead RICO
> damages by alleging lost contracts or lost wages. *See, e.g.*, *Commercial Cleaning
> Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 382 (2d Cir. 2001) (finding
> RICO injury satisfied because, "[i]f plaintiffs can substantiate their claims, the
> plaintiffs may well show that they lost contracts directly because of the cost savings
> defendant realized through its scheme to employ illegal workers"); *Apollon
> Waterproofing & Restoration, Inc. v. Bergassi*, 87 Fed. Appx. 757, 759 (2d Cir. 2004)
> (summary order) ("Lost contracts that could have been obtained but for racketeering
> activities are cognizable injuries under RICO."); *Tho Dinh Tran*, 281 F.3d at 35
> (noting without discussion that the alleged RICO injury was lost wages) … [emphasis
> added].

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016).

III.     **The Authority Relied Upon by Movant is Wholly Inapplicable and Readily Distinguishable**

No authority cited by the Defendant in the Second Circuit or its districts supports its present motion.  All of its purported authority is either inapplicable, wholly distinguishable or misleading.

(i)     *Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000).  Held that *personal injury* damages from smoking cigarettes is not damage to "business or property" for a RICO claim (wholly distinct from loss of earnings and thus inapplicable to the present dispute);

(ii)    *Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 U.S. Dist. LEXIS 74037, at *25-28 (N.D.N.Y. Sep. 30, 2006) ("G1").  This is part of a series of cases with pro se litigants.  This case must be reviewed in tandem with *Fljer v. Cayuga County*, No. 5:03–CV–578, 2006 WL 2655698, at *4 (N.D.N.Y. Sept.15, 2006) and *Gilfus v Adessa*, No. 5:03-cv-1368 (N.D.N.Y. Sept 30, 2006) ("G2").  In sum, there were 6-7 pro se plaintiffs, over 100 defendants, and various constitutional, criminal, and civil claims, most of which had no RICO nexus.  *Fljer* was decided first and then, in G2, the court explicitly states that the RICO claim was already dismissed in *Fljer* and is again dismissed on the same grounds having nothing to do with the injury to plaintiffs "business or property."  Rather, dismissal was due to plaintiff's failure to show causation and for insufficient particularity necessary to survive a FRCP 9(b) motion to dismiss.

(iii)   *Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014).  This case involved dismissal of the plaintiff's RICO claim was due solely to the fact that the damages

6

claimed by plaintiff were actually sustained by the City of Greece as a result of the alleged predicate and plaintiff's mere allegations of loss of career, livelihood, reputation, and ability to gain future employment were "speculative and indefinite." The issue of lost income was neither raised nor disposed of.

(iv)   *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984).  This case appears to no longer be good law.  This case held that an alleged injury must be due to the racketeering activity, not a predicate offense.  The Supreme Court vacated and remanded this case for further consideration in light of the seminal case of *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and *American National Bank v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)."  Both of these cases state that the injury can be based on a predicate offense.

(v)   *Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), cert den'd 488 U.S. 981 (1988) This case focuses on the ancillary relationship between personal and related pecuniary damages where such can be litigated together in connection with a primary personal injury claim and is wholly inapplicable here.

Notably, the EDNY declined to follow this reasoning in *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221 (E.D.N.Y. 1999):

"The recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute. Such claims, furthermore, would materially advance the statute's legislative purposes of deterring racketeering, in all its forms, and of remedying, as fully as practicable, the economic consequences of racketeering. Finally, the recovery of these pecuniary losses is consistent with the expansive scope of RICO's civil remedy provisions as consistently interpreted by the Supreme Court." *Id.*, at 229.

The cases that Defendants cite are not controlling, persuasive nor even applicable.  The

7

authority cited by the movant quite literally "tap dances" around the controlling authority

enunciated in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346

(1985) and *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) and its progeny, but

never even acknowledged by the movant in relation to a motion within the 2nd Circuit.  The

movant's cases are nearly uniform in their respective focus on factual scenarios that are primarily

personal-injury related.  The present case is readily differentiated from these cases since Mr.

Horn's injuries are economic in nature and recovery under RICO is thereby not precluded, the

movant's unwarranted protestations notwithstanding.

IV.   **Mr. Horn's Damages under his Fraud Claim Were Not Speculative, and Are**
      **Recoverable**

Again, as above, the moving Defendant's brief has an utter paucity of precedent as to

damages under a New York common law fraud claim, and failed to cite their progeny which hold

the opposite of what Dixie argues. The cases cited do not involve cases that are even remotely

similar or applicable to Mr. Horn's claim of clear and definite past and future lost wages.

Additionally, Defendant's reliance on cases that were decided at the pleadings stage, further

belies the impropriety of its instant motion.

In *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606 (4th Dept 1983),

the Defendants made the same argument as Dixie makes here, claiming Plaintiff is limited to

only pecuniary loss. The Court held that conceptualization "misapplied" when it reversed

summary judgment on the fraud claim. *Id.* at p. 618-619:

> "Defendants would have us apply the court's statement: 'All elements of profit
> are excluded' (*Reno v Bull, supra,* p 553) as an inflexible rule categorically
> precluding damages based on the market value of plaintiff's lost crops because
> such value would include some element of profit. That the rule in *Reno v Bull*
> (*supra*) is not to be applied in such arbitrary fashion is explained in *Hotaling v*
> *Leach & Co.* (247 NY 84, 92, *supra*): 'Proximate damages may not be fixed by
> arbitrary rule. Sometimes other damages flow from fraud in inducing a purchase,

8

besides the difference between the price paid and the value of the article received. Consequential damages may also be awarded.' As stated, plaintiff here does not seek profits based on the bargain it was fraudulently induced to make but the loss sustained because it made the bargain.'" [Emphasis added]

"Whether the loss . . . and any other consequential damages established resulted directly from the alleged wrongs of the defendants are, of course, questions of fact for the jury." *Cayuga Harvester* at p. 619.  As long as the loss was a consequence flowing from the of the fraud, Plaintiff was allowed to prove the element of his damages. That is Mr. Horn's case.

New York District Courts have similarly held that fraud damages must compensate for what was lost, including consequential damages stemming from fraud claims which are not speculative. *See Subramanian v. Lupin Inc.*, No. 17CV5040RAKHP, 2020 WL 7029273, at *18 (S.D.N.Y. Aug. 21, 2020), report and recommendation adopted sub nom. *Subramani an v. Lupin Inc.*, No. 17-CV-5040 (RA), 2020 WL 6075523 (S.D.N.Y. Oct. 15, 2020); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009); *Hanley v. Sumitomo Bank, Ltd.*, 1993 WL 362388, at *3 (S.D.N.Y. 1993).

Again, with respect to the Fraud claim, as in the RICO claim above, economist Dr. Zaporowski's report is based on Mr. Horn's tax returns. Over the years of this case, there has been no secret as to the non-speculative nature of his damages. Mr. Horn mitigated his damages over nine years by clawing his way back into the trucking industry over that period. Plaintiff's Economist calculates the exact past lost compensation had he not been fired over that long period of time, and calculates the future loss based on widely accepted statistical work-life expectancy tables of the U.S Bureau of Labor Statistics, a source upon which even the defense expert relied. In Dr. Zaporowski's annexed report, he pertinently and competently uses the Employee Cost Index to calculate Plaintiff's future lost compensation with a growth rate of 2.5% from 2019 onward.

Polar opposite in fact and law to Mr. Horn's claims, Dixie cites *Continental Gas*, where the court reasoned any damages for expected earnings were too speculative because the plaintiff, even though he could have, did not provide an evaluation to support his claim. *See Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271-272 (2010) (citing but distinguishing *Hotaling v Leach & Co.* 247 NY 84, 87-88 (1928) which recognized an exception when a measure of damages based on the market value when the value could not be determined and would have left the plaintiff without any remedy).

Mr. Horn's lost compensation claims are based on conditions as they existed prior the fraud. The case for the trier of fact here is whether Dixie's multiple statements that there is no THC in their product cost Mr. Horn the job he held at Enterprise. Mr. Horn was just past his *ten-year anniversary* at Enterprise when he used Defendant's product.  His demonstrated clear and definite damages as fully articulated by the expert economist are based upon a long and impeccable record and an excellent compensation package. Mr. Horn's lost compensation damages do not require any great assumptions or speculation by the court or the jury, the citing by Dixie of certain "cherry-picked" cases—primarily in the personal injury realm— have no application to the damages issues here.

In *Mihalakis*, the court was asked to determine the value of defendant's internship compared to a hypothetical internship program, assume how she would have performed in such a program, and that she would have become a doctor after completing such a program. *Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151 A.D.2d 345, 346 (1989). Similarly, In *Gomez-Jiminez*, the court was asked to compare "a degree where a high paying, full-time, permanent job was highly likely and . . . [a] degree where full-time, permanent legal employment at any salary, let alone a high salary, is scarce, as is the case in the legal market." *Gomez-Jimenez v. New York L. Sch.*, 36

10

Misc. 3d 230, 231, (Sup. Ct.), aff'd, 103 A.D.3d 13 (2012). Mr. Horn's claim is based on a defined ten plus year career in his chosen field, where he received a clear and definite salary and benefits, all of which he lost as a direct result of the Defendants' misrepresentations as to their product.

Neither the jury nor the Court is being asked to consider a hypothetical, i.e. what could have been, non-existent career that Mr. Horn never had. The jury and the Court are not being asked to determine the value of defendant's product with THC compared to defendant's product if it lacked THC.  Mr. Horn's damages are measurable and comprised of the difference in compensation between his established over ten-year career at Enterprise and his attempts to climb back to the same compensation and benefits.

V.      **There Can Be No Dispute that Plaintiff's Past Lost Wages Are Not Speculative and Are Awardable by A Jury; and Plaintiff's Claim for Future Lost Wages Are Based on the Evidence and Expert Economist Analysis**

Plaintiff has made an ongoing and cumulative claim for lost wages of over $500,000. (Zaporowski Report annexed as **Exhibit "A"**). Such damages flow directly from the termination of his employment on October 11, 2012, nine (9) years ago, resulting from the failed drug test after he ingested a product promoted, manufactured, tested, marketed, and distributed by the Defendants and up until he found alternative employment with nine (9) different employers over that time period.

In no way can such past lost wages be categorized as "speculative" as the Defendant suggests. They are, in fact, concrete.  The Defendant conflates the concepts of past lost wages and future lost wages. Lost earning capacity is only relevant in the context of a future lost wage.

This is the situation Plaintiff finds himself in: the past lost wages have already accrued in the past. As such, there is nothing speculative about them. Defendants may, if they wish, cross-

11

Case 22-349, Document 54, 07/15/2022, 3348706, Page165 of 288

examine the Plaintiff and his expert, as they did in their respective depositions, about his attempts to find alternative work during the period he is claiming past and future lost wages. Plaintiff is expected to testify that, during the period of time he claims lost wages, he applied for over 50 jobs. It was only after years of effort that he was able to rebuild his life where he began making money again. Defendants have no witnesses to contradict this.

The Defendant's reliance solely on *Clanton v. Agoglitta*, 206 A.D.2d 497 (N.Y. App. Div. 2d Dep't 1987) is misplaced. In this negligence action to recover damages for personal injuries, the defendant appealed from a jury verdict in favor of the plaintiff for both past and future damages against the defendant " in the principal amount of $ 495,500 ($ 16,000 for past medical expenses, $ 247,000 for impairment of earning ability, $ 50,000 for past pain and suffering, $ 7,500 for future medical expenses, $ 150,000 for future loss of earnings, and $ 25,000 for future pain and suffering)".

Relevant to the case at bar, the court noted that $150,000 of the total $495,000 verdict was for "future loss of earnings." It is this amount that the court took issue with when it ruled:

"We find, however, that the verdict as to damages for impairment of earning ability "deviates materially from what would be reasonable compensation" (*CPLR 5501[c]*). The basic rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning plaintiff's earning capacity before and after the accident. In this case, the plaintiff's earnings prior to the accident, combined with his failure to mitigate damages lead to the conclusion that the jury's award for impairment of earning ability deviates materially from what would be [***5] reasonable compensation and should be reduced to the extent indicated." (Citations omitted).

Case 22-349, Document 54, 07/15/2022, 3348706, Page166 of 288

Clearly, the *Clanton* court addressed the issue of the Plaintiff's damages to earn money into the future. The court found this specific part of the verdict speculative because it could not be "established with reasonable certainty" and importantly, was "combined with his failure to mitigate."

The *Clanton* court was issued a fact-specific ruling that the Plaintiff's "future loss of earnings" claim was speculative, and that he did not mitigate his damages.

Defendant points to not one case suggesting that a vocational expert's testimony is required for claims of past and future lost wages, and that an economist's testimony, based upon widely accepted government sources, is in any way insufficient. However, there are examples of lay testimony alone sufficient to support a claim for past and future lost wages. *Freeman v. Tuan Anh Nguyen*, Not Reported in F.Supp.3d (E.D.N.Y. 2015) (Damages for loss of past earnings may be awarded "based solely on plaintiff's testimony without supporting documents. 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004); *accord* .S.2d 609, 609 (App. Div. 1st Dep't 2010); *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F.Supp.2d 492 (N.D.N.Y. 2013) (the Court may rely upon such sworn statements in reaching a damages determination); *Ferguson v. City of New York*, 73 A.D.3d 649 (1d Dep't A.D. 2010) (reinstated lost earnings claim based upon lay testimony alone); *Waring v. Sunrise Yonkers SL, LLC*, 134 A.D.3d 488 (1st Dep't 2015) (Plaintiff's past lost wages were established with reasonable certainty through the testimony of only an executive director).

The case Mr. Horn brings to the jury here is the opposite of the fact-specific ruling in *Clanton*. The Court and the jury will be left with no speculation from his and his qualified economist expert's proposed testimony. In addition, and Mr. Horn has a nine (9) year track record of mitigating his damages through nine (9) different attempted employers.

13

### CONCLUSION

The controlling, persuasive and applicable case law clearly allow for Mr. Horn's specific and limited damages claims under RICO and Fraud.  As the Chairman of an Economics Department and an economist, Dr. Zaporowski's proposed testimony regarding past and future lost wages is relevant to the case from a competent witness.

DATED:    New York, New York
          July 29, 2021          Respectfully,

                        THE LINDEN LAW GROUP, P.C.

                        *Jeffrey Benjamin*
                        By:  Jeffrey M. Benjamin, Esq.
                        *Attorney for Plaintiffs*
                        5 Penn Plaza, 23rd Floor
                        New York, NY 10001
                        (212) 835-1532
                        jbenjamin@nyfraudlaw.com

**A-165**

# ECONOMIC LOSS VALUATION FOR
# DOUGLAS HORN

Statement of Disinterest

1.   The estimates contained herein are based on techniques generally accepted by the economics profession for the valuation of economic loss.

2.  The fees charged for my services are not contingent upon the final award or outcome of this case.

Mark P. Zaporowski, Ph.D.
Professor of
Economics & Finance
(716) 888-2679

August 17, 2020

## INTRODUCTION

This report projects economic losses for Douglas Horn who suffered lost compensation as a result of alleged deceptive business practices. Mr. Horn is married to Cindy Harp Horn. Mr. and Mrs. Horn were employed as team over-the-road commercial truck drivers for the Enterprise Products Company in 2012. Mr. Horn was terminated as a result of the alleged deceptive business practices of the defendants. Subsequent to his termination, Mr. Horn suffered lost wages and fringe benefits.

This report projects Mr. Horn's economic loses under the following alternative scenarios concerning the income he would have earned had he not been terminated from the Enterprise Products Company.

1. Mr. Horn's lost income as a truckdriver is based on the income he was earning at the Enterprise Products Company prior to his termination.

2. Mr. Horn's lost income  as a truckdriver is based on a wage of $120,000 beginning in 2013.

## ASSUMPTIONS - Scenario 1 (Table 1A & 2A)

1.      Had it not been for the deceptive business practices of the defendants, Mr. Horn would have remained employed as an over-the-road commercial truck driver for the Enterprise Products Company.

2.      Mr. Horn will remain employed as an over-the-road commercial truck driver through his statistical worklife expectancy. Mr. Horn's statistical worklife expectancy on August 1, 2020 was 9.73 years ["The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors, G.R. Skoog, J.E. Ciecka and K.V. Krueger, *Journal of Forensic Economics*, 2011]. Mr. Horn exits the labor force 31 percent through the year 2030.

3.      Had he remained employed at the Enterprise Products Company, Mr. Horn's income less his business expenses would have amounted to $57,212 and $69,196, respectively, over the period 2012-2013. Over the period 2014-2019, Mr. Horn's income less his business expenses would have grown by the rate of increase in the Employment Cost Index for wages and salaries of transportation and material moving workers [U.S. Department of Labor, Bureau of Labor Statistics website, www.bls.gov]. Subsequent to 2019, his income would have grown by 2.5 percent per year.

4.      Over the period 2012-2019, Mr. Horn's income less his business expenses amounted to $38,583, $13,698, $30,344, $64,491, $74,561, $73,433, $69,537, and $65,258, respectively. Subsequent to 2019, his income less his business expenses will grow by 2.5 percent per year.

5.      The Enterprise Products Company was providing the Horn's with family health insurance coverage valued at $1,800 per month in 2012.  The Horn's were contributing $2,028 annually towards the cost of this coverage in 2012.  Had they remained employed at the Enterprise Products Company, employer provided health benefits would have continued in the future.  Subsequent to his termination from the Enterprise Products Company, Mr. Horn has not received employer provided health benefits.  Mr. Horn's lost health benefits begin in January 2021 and are valued at $10,275.  The replacement cost of health benefits grows by 5 percent per year subsequent to 2021.

6.      The Enterprise Products Company was contributing 2 percent of Mr. Horn's wages into his 401K plan. This benefit would have continued in the future. Since his termination, Mr. Horn has not received employer provided pension contributions.

7.      Nominal discount rates on zero coupon U.S. Treasury securities that match the maturity of the cash flows were used to reduce future lost compensation to present value [Quandl website, July 31, 2020, www.quandl.com].

8.      U.S. Treasury securities yields on the last day of each year from 2012 to 2019 have been selected to compute interest on past losses [U.S. Treasury website, Daily Treasury Yield Curve Rates, www.treasury.gov].


## CONCLUSIONS – Scenario 1 (Table 1A & 2A)

Past lost compensation amounts to $186,948.

Interest on past lost compensation amounts to $13,863.

The present value of future lost compensation amounts to $340,889.

**The present value of total economic damages amounts to $541,700.**

4

## ASSUMPTIONS - Scenario 2 (Tables 1B & 2B)

1.      Had it not been for the deceptive business practices of the defendants, Mr. Horn would have remained employed as an over-the-road commercial truck driver for the Enterprise Products Company. Beginning in 2013, he would have begun hauling crude oil at an annual salary of $120,000.

2.      Mr. Horn will remain employed as an over-the-road commercial truck driver through his statistical worklife expectancy. Mr. Horn's statistical worklife expectancy on August 1, 2020 was 9.73 years ["The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors, G.R. Skoog, J.E. Ciecka and K.V. Krueger, *Journal of Forensic Economics*, 2011]. Mr. Horn exits the labor force 31 percent through the year 2030.

3.      Had he not been terminated from the Enterprise Products Company, Mr. Horn's income less his business expenses would have amounted to $57,212 in 2012. In 2013, Mr. Horn's income less his business expenses would have amounted to $115,296. Over the period 2014-2019, Mr. Horn's income less his business expenses would have grown by the rate of increase in the Employment Cost Index for wages and salaries of transportation and material moving workers [U.S. Department of Labor, Bureau of Labor Statistics website, www.bls.gov]. Subsequent to 2019, his income less his business expenses would have grown by 2.5 percent per year.

4.      Over the period 2012-2019, Mr. Horn's income less his business expenses amounted to $38,583, $13,698, $30,344, $64,491, $74,561, $73,433, $69,537, and $65,258, respectively. Subsequent to 2019, his income less his business expenses will grow by 2.5 percent per year.

5.      The Enterprise Products Company was providing the Horn's with family health insurance coverage valued at $1,800 per month in 2012. The Horn's were contributing $2,028 annually towards the cost of this coverage in 2012. Had they remained employed at the Enterprise Products Company, employer provided health benefits would have continued in the future. Subsequent to his termination from the Enterprise Products Company, Mr. Horn has not received employer provided health benefits. Mr. Horn's lost health benefits begin in January 2021 and are valued at $10,275. The replacement cost of health benefits grows by 5 percent per year subsequent to 2021.

6.      The Enterprise Products Company was contributing 2 percent of the Mr. Horn's wages into his 401K plan. This benefit would have continued in the future. Since his termination, Mr. Horn has not received employer provided pension contributions.

7.      Nominal discount rates on zero coupon U.S. Treasury securities that match the maturity of the cash flows were used to reduce future lost compensation to present value [Quandl website, July 31, 2020, www.quandl.com].

8.      U.S. Treasury securities yields on the last day of each year have been selected to compute interest on past losses [U.S. Treasury website, Daily Treasury Yield Curve Rates, www.treasury.gov].

## CONCLUSIONS – Scenario 2 (Table 1B & 2B)

Past lost compensation amounts to $604,109.

Interest on past lost compensation amounts to $36,851.

The present value of future lost compensation amounts to $947,938.

**The present value of total economic damages amounts to $1,588,898.**

To project Mr. Horn's economic loss, I relied on the following information:

1. Mr. and Mrs. Horn's federal tax returns and W-2 statements 2009-2019.
2. Mr. and Mrs. Horn's social security earnings statements.
3. Mr. and Mrs. Horn's paystubs.
4. Enterprise 401K statement for Douglas Horn.
5. U.S. Department of Labor website, www.bls.gov.
6. Quandl website, www.quandl.com .
7. "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors, G.R. Skoog, J.E. Ciecka and K.V. Krueger, *Journal of Forensic Economics*, 2011.
8. *United States Life Tables 2017,* U.S. Department of Health and Human Services, Centers for Disease Control and Prevention.
9. U.S. Treasury website, www.treasury.gov.

I bill at a rate of $300 per hour for my services.

I reserve the right to revise this report should new information become available.

TABLE 1

PRESENT VALUE OF LOST COMPENSATION FOR DOUGLAS HORN

| YEAR | AGE | NO SEPARATION INCOME | SEPARATION INCOME | LOST INCOME | LOST HEALTH BENEFITS | LOST EMPLOYER PENSION CONTRIBUTIONS | LOST COMPENSATION | PRESENT VALUE |
|---|---|---|---|---|---|---|---|---|
| *2012 | 47 | $57,212 | $38,583 | $18,629 | | $373 | $19,001 | |
| 2013 | 48 | $69,196 | $13,698 | $55,498 | | $1,384 | $56,882 | |
| 2014 | 49 | $70,787 | $30,344 | $40,444 | | $1,416 | $41,860 | |
| 2015 | 50 | $72,416 | $64,491 | $7,925 | | $1,448 | $9,373 | |
| 2016 | 51 | $74,588 | $74,561 | $27 | | $1,492 | $1,519 | |
| 2017 | 52 | $77,273 | $73,433 | $3,840 | | $1,545 | $5,386 | |
| 2018 | 53 | $80,210 | $69,537 | $10,673 | | $1,604 | $12,277 | |
| 2019 | 54 | $83,659 | $65,258 | $18,401 | | $1,673 | $20,074 | |
| 2020 | 55 | $87,005 | $67,868 | $19,137 | | $1,740 | $20,877 | |
| **2021 | 56 | $52,022 | $40,579 | $11,442 | | $1,040 | $12,483 | |
| TOTAL PAST | | $724,366 | $538,350 | $186,016 | | $13,716 | $199,732 | |
| ***2021 | 56 | $37,158 | $28,985 | $8,173 | $4,281 | $743 | $13,198 | $13,198 |
| 2022 | 57 | $91,409 | $71,304 | $20,106 | $10,789 | $1,828 | $32,723 | $32,702 |
| 2023 | 58 | $93,695 | $73,086 | $20,609 | $11,329 | $1,874 | $33,811 | $33,714 |
| 2024 | 59 | $96,037 | $74,913 | $21,124 | $11,895 | $1,921 | $34,939 | $34,595 |
| 2025 | 60 | $98,438 | $76,786 | $21,652 | $12,490 | $1,969 | $36,110 | $35,315 |
| 2026 | 61 | $100,899 | $78,706 | $22,193 | $13,114 | $2,018 | $37,325 | $35,891 |
| 2027 | 62 | $103,421 | $80,673 | $22,748 | $13,770 | $2,068 | $38,586 | $36,359 |
| 2028 | 63 | $106,007 | $82,690 | $23,317 | $14,458 | $2,120 | $39,895 | $36,736 |
| 2029 | 64 | $108,657 | $84,758 | $23,900 | $15,181 | $2,173 | $41,254 | $37,070 |
| ****2030 | 65 | $34,526 | $26,932 | $7,594 | $15,940 | $691 | $24,225 | $21,213 |
| TOTAL FUTURE | | $870,248 | $678,834 | $191,415 | $123,248 | $17,405 | $332,067 | $316,793 |
| TOTAL PAST & FUTURE | | $1,594,614 | $1,217,184 | $377,431 | $123,248 | $31,121 | $531,799 | $516,525 |

*Computed for 22% of the year.
**Computed for 7 months.
***Computed for 5 months.
****Computed for 31% of the year.

**TABLE 2**

**INTEREST ON PAST LOST COMPENSATION**

| YEAR | PAST LOST COMPENSATION | INTEREST |
|------|------------------------|----------|
| 2012 | $19,001 | $1,924 |
| 2013 | $56,882 | $10,564 |
| 2014 | $41,860 | $5,426 |
| 2015 | $9,373 | $921 |
| 2016 | $1,519 | $134 |
| 2017 | $5,386 | $382 |
| 2018 | $12,277 | $779 |
| 2019 | $20,074 | $504 |
| 2020 | $20,877 | $12 |
| 2021 | $12,483 | |
| **TOTAL PAST** | | **$20,646** |

**A-172**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

DOUGLAS J. HORN,

Plaintiff,

vs.

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC,
RED DICE HOLDINGS, LLC,
DIXIE BOTANICALS,

Defendants.

—————————————————————

Case No. 1:15-cv-00701-JWF

—————————————————————

**MMI AND RDH'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT DIXIE HOLDINGS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OF EXPERT MARK P. ZAPOROWSKI, PH.D. AND PLAINTIFF'S OPPOSITION TO SAME**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.    PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS RICO CAUSE OF ACTION AS THEY DERIVE FROM A PERSONAL INJURY ............................................................................................................ 2

        A.  The Plaintiff's Cases in Opposition ................................................. 2

        B.  The Cases in Support of Dixie's Position ........................................ 6

    II.   PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS FRAUDULENT INDUCEMENT CAUSE OF ACTION WHERE SUCH DAMAGES ARE SPECULATIVE .................................................... 12

    III.  PLAINTIFF CANNOT PROVE LOST INCOME DAMAGES WHERE HEN IS UNABLE TO PROVE A CAUSAL CONNECTION BETWEEN THE ALLEGED LOSS AND THE ALLEGED FRAUD ............................................... 12

CONCLUSION ...................................................................................................... 13

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

# TABLE OF AUTHORITIES

## Cases

*Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir.1984) (dictum), *vacated on other grounds,* 473 U.S. 922 (1985) .................................................................10

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560 (E.D.N.Y. 1999) ..............................................................................................3, 4

*Denney v. Deutsche Bank AG,* 443 F.3d 253, 266 (2d Cir. 2006 ....................................2

*Doe v. Roe,* 958 F.2d 763 (7th Cir.1992) ........................................................8

*Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765 (1984) ...........10

*Gause v. Philip Morris*, 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000) ...............6, 7, 10

*Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002) ..................................3, 8

*Gilfus v. Vargason*, 2006 WL 2827658 (N.D.N.Y. Sep. 30, 2006) .............................8, 9

*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), cert den'd 488 U.S. 981 (1988) ...................3, 10

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963 (E.D.N.Y. 1995) ...............................3

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ....................5

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ...........................................9

*Rodonich v. House Wreckers Union*, 627 F. Supp. 176 (S.D.N.Y. 1985) .......................4

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## PRELIMINARY STATEMENT

Defendants, Medical Marijuana Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by their undersigned counsel, submit the following memorandum of law with respect to the opposition submitted by plaintiff, Douglas J. Horn ("Plaintiff") to the motion *in limine* of defendant Dixie Holdings, LLC ("Dixie") to preclude the testimony of Mark P. Zaporowski.

As MMI/RDH did not initially join Dixie's motion, we now take the opportunity to reply to both the initial motion (Doc. 194) and plaintiff's opposition (Doc. 198).

After reviewing the same, as well as the relevant cases, MMI/RDH agrees with Dixie's position set forth in Point I of its motion, that Plaintiff must be precluded from introducing any evidence with respect to lost income damages with respect to his RICO cause of action, as the same is not recoverable under RICO where it derives from a personal injury. MMI/RDH joins Dixie with respect to this part of their motion. As the Court has noted, this effectively dismisses the Plaintiff's RICO cause of action against all defendants.

MMI/RDH further substantively agrees with Dixie's position set forth in Point II of its motion, that Plaintiff cannot recover for lost income damages pursuant to his cause of action for fraudulent inducement, insofar as such damages are entirely speculative.

MMI/RDH further substantively agrees with Dixie's position set forth in Point III of its motion, that Dr. Zaporowski should be precluded from testifying insofar as Plaintiff will, inevitably, not be able to lay a foundation with respect to his earning capacity both before and after his failed drug test.

1

A-176

## ARGUMENT

### POINT I

**PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS RICO CAUSE OF ACTION AS THEY DERIVE FROM A PERSONAL INJURY**

As stated in Plaintiff's MOL in Opposition to this motion:

> The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore**, is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product.**

Doc. 198, p. 7 (emphasis added).

It is Plaintiff's own position in this case that his "resulting economic damages" were not caused by damage to any business or property. He acknowledges that they were caused by the alleged "harm," or injury, of unwanted "THC" being "introduced into [his] system."

The caselaw is clear that any economic damages, such as lost income, which result from a personal injury, do not amount to damage to "business or property" and, therefore, are not recoverable under a civil RICO cause of action.

#### a. The Plaintiff's Cases in Opposition

Plaintiff's counsel states that the case of *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) "sets out the controlling standard for RICO damages: '[a] RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and definite.'" Doc. 198, p. 6.

This is true. It cannot be argued that the standard for proving damages in a civil RICO case is whether there has been injury to "business or property." However, we must go to the next level of analysis, which is whether damages that stem from personal injuries, even if

2

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

economic in nature, can be considered injuries to business or property for the purposes of RICO.

The *Denney* court did not address this issue. The words "personal injury" or "personal injuries"

do not even appear in the *Denney* case.

       This is precisely why we must look to Second Circuit cases such as *Gause v.*

*Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002), *infra*, discussed in detail below, as they

directly address the more nuanced question being presented to the Court on this motion – whether

Plaintiff's alleged economic damages derive from a personal injury.

       Plaintiff's counsel seemingly does not appreciate the subtlety of this issue as he

cites to *Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995) and *Blue Cross &*

*Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) and

states, broadly, that they "distinguish[] personal injuries from economic injuries which the court

deemed compensable." In reality, these cases distinguish between economic injuries that are

derived from personal injuries and, therefore, are not RICO compensable, and economic injuries

that are caused directly to business or property and, therefore, are RICO compensable.

       As stated in *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36

F. Supp. 2d 560, 568 (E.D.N.Y. 1999), "[t]he broad scope of the statute's standing provision is

not, however, boundless. Only those plaintiffs who have been injured in their 'business or

property' may sue. Personal injuries are not cognizable, regardless of whether they were caused

by racketeering."

       The court in *Blue Cross* expanded on this by stating that:

> In all the cases where pecuniary damages were not allowed, the gravamen of the
> plaintiffs' claims was for personal injuries. The plaintiffs' economic losses were
> interfused with and merely supplemental to their personal injuries. Conceptually,
> as well as practically, the two types of claims were joined together as a single
> cause of action. *See Grogan*, 835 F.2d at 846 ("[T]he pecuniary and non-pecuniary

3

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

aspects of personal injury claims are not so separated as the appellants would have us accept; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief.").

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999).

The court in *Blue Cross* found that, "by contrast, the plaintiffs have suffered entirely economic injuries." *Id.* However, the plaintiffs in that case were healthcare insurance companies. They were not personally injured by the conduct of the defendants. If anything, the court explicitly drew a distinction between the health insurer plaintiffs and those that were personally injured by the defendants stating: "Any personal injuries to smokers and to persons exposed to cigarette smoke caused by the defendants' alleged racketeering are separate and distinct from the plaintiffs' economic injuries suffered by their businesses." *Id.*

Doug Horn is not a health insurance company. He is a person. He is analogous to the "smokers" and "persons exposed to cigarette smoke," which the court identified as parties that would have had personal injuries rather than direct economic injuries to business.

Plaintiff further cites to *Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) when stating that "loss of earnings claims have been held to be recoverable under RICO in multiple cases." (Doc. 198, p. 9).

Again, the words "personal injury" or "personal injuries" do not appear in the *Rodonich* case. The case merely notes that "lost wages" can possibly be considered as part of a RICO injury (seemingly derived from Hobbs Act and Travel Act allegations, *Id.* at 178), which is theoretically possible if such injuries resulted from direct damage to business or property and did not derive from a personal injury.

4

Finally, Plaintiff cites to *Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) because, similarly, it holds that the plaintiff in that case could "adequately plead RICO damages by alleging lost contracts or lost wages."

Again, the *Kriss* case does not discuss the specific point at issue here – whether alleged "lost contracts and lost wages" were derived from a personal injury. They were not. The plaintiffs were "well-credentialed real estate finance professionals" who "passed up lucrative opportunities at other firms to work for" the defendant based on allegations of fraudulent concealment. *Id.* at 19.

Again, Plaintiff's situation is not analogous. The plaintiffs in *Kriss* allegedly sustained economic damages, as employees of the defendant, based on the defendant's alleged fraudulent activities, which, in turn, decreased the plaintiffs' earnings' capacity under their contracts with the defendant.

For this to be analogous to Plaintiff, he would have needed to have been an employee or investor in one of the defendant companies and argue that alleged misrepresentations regarding the THC content of the products damaged his compensation or return on investment. Those may, theoretically, be damages to "business or property" for RICO purposes.

To the contrary, Plaintiff's role in this entire scenario was that of an individual person. A consumer. Someone who purchased a product and was allegedly harmed by it because it contained an ingredient that he did not expect it to contain. For him, personally, he alleges that this resulted in lost income – but this does not make that lost income a loss of "business or property" merely because the damages are tangentially economic.

Unknowingly consuming trace amounts of THC when you expect not to (the fraud that Plaintiff alleges in this matter) does not, and cannot, result in damage to business or property.

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Case 22-349, Document 54, 07/15/2022, 3348706, Page183 of 288

At most, it results in putting unwanted trace amounts of THC in someone's system, which, in and of itself, does not result in any economic damage. In almost all cases, the only result is an unexpected chemical in the body that is very likely never even noticed.

Any additional, consequential, damage is entirely dependent on the circumstances of the person. For a great many people, the world of possibilities in which they could be economically damaged by such an alleged fraud is incredibly small. This is because THC does not affect "business or property" – it affects persons. If those persons so affected, coincidentally, go on to allegedly sustain some additional damage based on that injury, such damages are clearly derivative of their personal circumstances – a personal injury.

We might not instinctively think of this as a personal injury because the physical harm caused by unexpected trace amounts of THC in CBD oil is relatively small and temporary. But that does not change the nature of the injury – it is one to the person. Any resultant damages, such as loss of income, are entirely specific to that person. There is no damage to "business" or "property." This means that person cannot maintain a cause of action under civil RICO, which limits standing to those that have sustained damage directly to business or property, and excepts damages that derive from personal injury, even when economic in nature.

**b.   The Cases in Support of Dixie's Position**

Given the above, the cases cited by Dixie, and opposed by Plaintiff as "inapplicable, wholly distinguishable or misleading" (Doc. 198, p. 10), are all relevant and helpful to appreciate this nuanced point regarding the difference between economic damages that stem from a personal injury and those that are caused directly to business or property.

First, contrary to plaintiff's assertion, *Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000) is precisely the type of case that applies to

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Plaintiff. Plaintiff's counsel claims that this case is "wholly distinct from loss of earnings and thus inapplicable to the present dispute" (Doc. 198, p. 10), but this fails to appreciate the actual holding in *Gause*. It is not that "lost earnings," as a category of damages, are "distinct" from "*personal injury* damages," it is that it depends from where such lost earnings derive.

Indeed, *Gause* makes clear the plaintiff's lost earnings damages derived from her personal injuries: "As a result of these injuries, Plaintiff seeks compensation for loss of employment, loss of income, loss of spouse, and for forty years of buying an allegedly faulty product." *Della GAUSE, Plaintiff, v. Philip MORRIS, Defendant.*, No. CV99-6226, 2000 WL 34016343 (E.D.N.Y. Aug. 8, 2000), *aff'd sub nom. Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002). The court then held:

> Although Plaintiff characterizes her injuries as a "loss of property," Cplt. at p. 2, in an effort to create a cognizable injury under RICO, an analysis of her complaints reveals otherwise. Specifically, Plaintiff's asserted "loss of property" is, in essence, a loss of income due to an alleged inability to work since becoming afflicted with emphysema. Cplt. at pp. 1-2. A loss of income, however, is not considered a "loss of property" as required under RICO.

Plaintiff's alleged injuries are different in cause and severity but are of the same type. One merely needs to trade the word "emphysema" for "unwanted THC in his system" to reach the exact same position:

> "Plaintiff's asserted 'loss of property' is, in essence, a loss of income due to an alleged inability work since becoming afflicted with [unwanted THC in his system]."

Unwanted THC in one's system is, fundamentally, a type of "personal injury." The injury may not be as damaging as emphysema, but this does not change the fact that we are talking about injuries to a person and loss of income due to an alleged inability to work because

7

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

of those injuries. The *Gause* court specifically held that such a loss of income claim is not

cognizable under RICO.

> Moreover, the Second Circuit affirmed the same, explicitly holding:

> Personal injuries of smokers are not injuries to "business or property" within the
> meaning of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§
> 1961 et seq. See, e.g., Laborers Local 17 Health and Benefit Fund v. Philip Morris,
> Inc., 191 F.3d 229, 241 (2d Cir.1999), cert. denied, 528 U.S. 1080, 120 S.Ct. 799,
> 145 L.Ed.2d 673 (2000).

*Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002).

> Again, one may just as well replace "smokers" with "CBD oil users" to reach the

exact same holding:

> "Personal injuries of [CBD oil users] are not injuries to 'business or property'
> within the meaning [RICO]."

> With respect to *Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 WL

2827658 (N.D.N.Y. Sep. 30, 2006), Plaintiff's counsel's claim that this case has "nothing to do

with injury to plaintiff's business or property" (Doc. 198, pg. 10 ). This is erroneous – the court

directly addressed the same issue as *Gause*, *supra*, and reached the same conclusion, even citing

to the same Seventh Circuit caselaw:

> Although the Second Circuit has not squarely addressed the issue, other Circuits
> have held that economic damages resulting from personal injuries are not
> actionable under RICO. As the Seventh Circuit explained:

>> Most personal injuries-loss of earnings, loss of consortium, loss of
>> guidance, mental anguish, and pain and suffering, to name a few-will entail
>> some pecuniary consequences. Perhaps the economic aspects of such
>> injuries could, as a theoretical matter, be viewed as injuries to "business or
>> property," but engaging in such metaphysical speculation is a task best left
>> to philosophers, not the federal judiciary. Rather, we must determine if
>> these injuries fall within the framework of § 1964(c) as understood by
>> Congress ... They do not.

> *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir.1992)

8

**A-183**

*Gilfus v. Vargason*, No. 5:04CV1379(HGM/DEP), 2006 WL 2827658 (N.D.N.Y. Sept. 30, 2006).

Plaintiff's counsel's attempt to distinguish *Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) is similarly unavailing. There, this Court cited to *Gilfus, supra*, and held:

> Plaintiff also alleges that he was injured by the loss of his career, livelihood, reputation, and ability to obtain future employment. (Dkt. 4 at ¶ 15(a)). The Court is uncertain as to what Plaintiff means by "loss of career," but notes that this alleged injury appears speculative and indefinite. Furthermore, the loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO.

*Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014).

If anything, the *Gilfus* and *Mackin* cases expand the world of injuries that courts consider "personal" (and, therefore, not within the realm of RICO) to include those where one is not merely physically injured, but where one is allegedly traumatized from a raid performed on their farm (*Gilfus*) or where one is unable to obtain future employment due to damage to their reputation (*Mackin*).

In this respect, Plaintiff is similarly situated to the plaintiff in *Mackin, supra*, where this Court held that "the loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO." Plaintiff does not allege that any fraud by the defendants was directly perpetrated upon any business or property. He alleges that defendants caused him to unexpectedly ingest trace amounts of THC and that this, consequently, damaged his reputation to the point that he was not able to gain future employment as a truck driver. Plaintiff's reputation as a truck driver and his ability to continue working at Enterprise is not a "business" or "property" under any definition of those words. As stated in *Mackin*, these are allegations of damage to the Plaintiff, as a person.

9

Finally, the assertion by Plaintiff's counsel that *Grogan v. Platt*, 835 F.2d 844

(11th Cir. 1988), cert den'd 488 U.S. 981 (1988) is "wholly inapplicable here," again, ignores the

nuance of the issue under consideration. The case is relevant because the very issue at hand is

whether economic damages, such as loss of income, are recoverable as damage to "business or

property" where they derive from personal injuries. The *Grogan* court reached almost the exact

same conclusion as *Doe v. Roe*, *supra*:

> Our task, however, is not to decide whether the economic aspects of damages
> resulting directly from personal injuries could, as a theoretical matter, be
> considered injury to "business or property," but rather to determine whether
> Congress intended the damages that plaintiffs seek in this case to be recoverable
> under civil RICO. Relying on the assumption that Congress intends the ordinary
> meanings of the words it employs, *see, e.g., Escondido Mutual Water Co. v. La
> Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80
> L.Ed.2d 753 (1984), appellants argue that a common-sense interpretation of the
> words "business or property" includes the economic damages that result from
> injury to the person. We are not convinced that appellants' contention accurately
> captures the ordinary meaning of those words. In our view, the ordinary meaning
> of the phrase "injured in his business or property" excludes personal injuries,
> including the pecuniary losses therefrom. As a panel of the Second Circuit
> remarked, "[t]he requirement that the injury be to the plaintiff's business or
> property means that the plaintiff must show a proprietary type of damage. For
> example, a person physically injured in a fire whose origin was arson is not given a
> right to recover for his personal injuries; damage to his business or his building is
> the type of injury for which § 1964(c) permits suit." *Bankers Trust Co. v.
> Rhoades,* 741 F.2d 511, 515 (2d Cir.1984) (dictum), *vacated on other
> grounds,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985)…

*Grogan v. Platt*, 835 F.2d 844, 846–47 (11th Cir. 1988).

As stated in both *Grogan*, *supra*, and *Doe v. Roe*, *supra*, one could theoretically

engage in the metaphysical debate of whether "loss of income" damages can be severed from a

personal injury, placed in a bubble, and considered as damage to "business or property." But as

both the Seventh and Eleventh Circuits found (and the Second Circuit essentially agreed in

*Gause*, *supra*), the job of the courts is to only consider what types of claims were anticipated by

10

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

Case 22-349, Document 54, 07/15/2022, 3348706, Page188 of 288

Congress to be brought pursuant to the RICO statute. All of the courts cited above have agreed that economic damages such as loss of income, when derived from "personal injury," are not damages to "business or property," and are not recoverable under RICO.

Ultimately, the issue here seems to be less with respect to what the caselaw states on this issue – which seems clear – and more to do with Plaintiff's counsel not conceding that Plaintiff's injury is "personal." As he states:

> The movant's cases are nearly uniform in their respective focus on factual scenarios that are primarily personal-injury related. The present case is readily differentiated from these cases since Mr. Horn's injuries are economic in nature and recovery under RICO is thereby not precluded, the movant's unwarranted protestations notwithstanding.

Doc. 198 pg. 12 of 18.

In other words, Plaintiff's counsel does not dispute that the cases state what they state with respect to personal injuries. He merely believes that Plaintiff's case does not fall under those rules because his injuries are "economic in nature." By this he, presumably, means to also state that Plaintiff sustained no personal injury and that any alleged injury was done directly to his business or property, taking him out from under the authority of the above cases.

However, as fully detailed above, this is not true – Plaintiff's alleged lost income clearly derives from a personal injury." Moreover, Plaintiff's counsel is aware of the same as, again, he himself stated:

> The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore**, is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product.**

Doc. 198, p. 7 of 18.

From Plaintiff's own pen, his "economic damages" were caused by "the harm of the THC that was introduced into Mr. Horn's system by Defendant's product." By his own

11

**A-186**

allegations, he was personally injured by unwanted THC in his system. Any resulting economic damages, such as a personal inability to continue working the same job because of a failed drug test, directly stems from that personal injury. Plaintiff has not alleged damage to "business or property," as is required to maintain his RICO cause of action.

As such, MMI/RDH agrees with Dixie's position that Plaintiff be precluded from introducing evidence related to such damages at trial and joins in their motion for the same. As the Court has already noted, this effectively results in the dismissal of Plaintiff's RICO cause of action against all defendants.

## POINT II

### PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS FRAUDULENT INDUCEMENT CAUSE OF ACTION WHERE SUCH DAMAGES ARE SPECULATIVE

Dixie argues that under New York law, the Plaintiff cannot recover for lost income damages pursuant to his cause of action for fraudulent inducement, insofar as such damages are entirely speculative (Doc. 194, p. 4).

In substance, MMI/RDH agrees that New York law holds that speculative damages are not recoverable and that Plaintiff's claim for lost income damages requires vast speculation regarding the supposed nature of his future employment and career opportunities after his failed drug test and whether the same can be causally connected to any alleged fraud.

## POINT III

### PLAINTIFF CANNOT PROVE LOST INCOME DAMAGES WHERE HE IS UNABLE TO PROVE A CAUSAL CONNECTION BETWEEN THE ALLEGED LOSS AND THE ALLEGED FRAUD

12

**A-187**

Dixie additionally argues that because Plaintiff failed to notice a vocational expert to lay a foundation with respect to earning capacity for Dr. Zaporowski's proposed testimony, his testimony would be lacking a foundation and must be precluded (Doc. 194, p. 6).

MMI/RDH essentially understands this argument to be that while Dr. Zaporowski may, theoretically, be capable of testifying as to "how much" income Plaintiff allegedly lost, he is clearly not being offered to testify with respect to "why" Plaintiff lost that income. In other words, Plaintiff must prove that any loss of income was causally connected to the alleged fraud.

In this sense, MMI/RDH agrees with the position that Plaintiff's earning capacity, both before and after he tested positive for THC, must be proved in order for Dr. Zaporowski's testimony, with respect to how much income was lost, to have any relevance.

As Plaintiff has failed to notice an expert that is capable of testifying with respect to both Plaintiff's earning capacity prior to the failed drug test, and how the failed drug test changed that earning capacity, Plaintiff will not be able to reach the question of how much income he allegedly lost. As this appears to be inevitable, it would be appropriate for the Court to preclude Dr. Zaporowski from testifying.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court grant Defendant Dixie Holdings' motion in limine to preclude testimony of Mark P. Zaporowski, Ph.D., together with such other and further relief to MMI/RDH as this Court deems just and proper.

DATED:       Buffalo, New York
             August 2, 2021

13

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

Respectfully submitted,

_____
Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants Medical Marijuana Inc. and*
*Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN and CINDY HARP-HORN,

                    *Plaintiffs,*

  -against-

MEDICAL MARIJUANA, INC., DIXIE
HOLDINGS, LLC, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                    *Defendants.*

Civil Action No.
15-cv-00701-FPG

Hon. Magistrate Judge
Jonathan W. Feldman

**Defendant Dixie Holdings' Reply Memorandum in Response to
Plaintiff Douglas Horn's Opposition to Motion to Preclude
Testimony of Mark P. Zaporowski, Ph.D.**

MAZZOLA LINDSTROM, LLP
Attorneys for defendant Dixie Holdings, LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel:  646-216-8300
Cell: 917-584-4864

Of Counsel:   Richard E. Lerner
                Jean-Claude Mazzola
                Hanoch Sheps

Dated: August 2, 2021
       New York, New York

## Table of Contents

Page(s)

Table of Authorities ............................................................................................................. ii

Preliminary Statement........................................................................................................ 1

Argument in Reply .............................................................................................................. 3

Point I:    Most of the Cases Plaintiff Cites in Opposition Predate the Second Circuit's 2002
Affirmance of *Gause,* so Do Not Support His Position. And while *Kriss v. Bayrock*
Post-Dates *Gause*, Plaintiff Misreads the Case. *Kriss v. Bayrock* Allowed Recovery
for Converted Partnership Distributions – Money Actually Taken from the Kriss
Plaintiffs by Fraud – Not Loss of "Wages." ................................................................ 3

Point II:   Plaintiff's Loss of Earnings Do Not Directly Flow from the Alleged Fraud;
Moreover, Plaintiff Has Not Shown the Right to Recover for Loss of Earnings
Where There has Been no Diminishment in Loss of Earning Capacity ...................... 9

## Table of Authorities

**Cases**                                                             **Page Number(s)**

*Bankers Trust Co. v. Rhoades*
   741 F.2d 511 (2d Cir. 1984) ................................................................ 4

*Blue Cross & BlueShield of N.J., Inc. v. Philip Morris, Inc.*
   36 F. Supp. 2d 560 (E.D.N.Y. 1999) ................................................... 7

*Butts v. Braun*
   204 A.D.2d 1069, 612 N.Y.S.2d 520 (1994) ..................................... 11

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*
   95 A.D.2d 5 (4th Dep't 1983) ............................................................. 9

*Connaughton v. Chipotle Inc.*
   29 N.Y.3d 137 (2017)........................................................................... 9

*Demney v. Deutsche Bank AG*
   443 F.3d 253 (2d Cir. 2006) ................................................................ 4

*Evans v. City of Chicago*
   434 F.3d 916 (7th Cir. 2006) ............................................................... 5

*Ferguson v. City of New York*
   73 A.D.3d 649, 901 N.Y.S.2d 609 (2010)................................... 11, 12

*Freeman v. Anh Nguyen*
   11 A.D.3d 304 (1st Dep't 2004)...................................................11, 12

*Gause v. Phillip Morris, Inc.*
   CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000),
   *aff'd* 29 F. App'x 761 (2d Cir. 2002) ..................................... 1, 6, 7, 9

*Geiss v. Weinstein Co. Holdings*
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................ 1

*Grogan v. Platt*
   835 F.2d 844 (11th Cir. 1988)......................................................... 4, 5

*Jackson v. Sedgwick Claims Management Svcs.*
   731 F.3d 556 (6th Cir. 2013)............................................................... 5

*Kane v. Coundorous*
   11 A.D.3d 304 (1st Dep't 2004)........................................................ 11

*Kriss v. Bayrock Group LLC*
   SDNY Docket No. 10-cv-3959 .................................................................... 3, 7, 8, 9

*Laborer's Local 17 Health and Benefit Fund v. Philip Morris, Inc.*
   191 F.3d 229 (2d Cir. 1999), *cert. denied,* 528 U.S. 1080 (2000) ........................................ 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014) ............................................................................... 4

*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*
   392 F.2d 380 (2d Cir. 1968) ........................................................................ 3

*Morrison v. Syntex Laboratories*
   101 F.R.D. 743 (D.D.C.1984) ........................................................................ 5

*Norcia v. Dieber's Castle Tavern, Ltd.*
   980 F. Supp. 2d 492 (SDNY 2013) .................................................................. 11

*Waring v. Sunrise Yonkers SL, LLC*
   134 AD 3d 488 (1st Dep't 2015) .................................................................. 11, 12

**Rules**

18 U.S.C. § 1341 .................................................................................... 2

18 U.S.C. §§ 1961 .................................................................................... 6

**A-193**

## Preliminary Statement

Defendant Dixie Holdings, LLC, by its undersigned counsel, hereby submits this memorandum in reply to plaintiff Douglas Horn's opposition to Dixie Holding's motion *in limine* to preclude the trial testimony of plaintiff's expert economist Mark P. Zaporowski, Ph.D. With regard to the argument that loss of earnings is not compensable in RICO, plaintiff has cited several cases that pre-date the Second Circuit's affirmance of the district court's decision in *Gause v. Phillip Morris, Inc.*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000), *aff'd* 29 F. App'x 761 (2d Cir. 2002). The Second Circuit's 2002 affirmance renders irrelevant the district court cases cited that pre-date the decision, to the extent that they may hold that loss of earnings is recoverable in RICO. Moreover, while there are indeed cases that hold in plaintiff's favor, the case law overwhelmingly holds that loss of earnings is not recoverable, as was recently stated in *Geiss v. Weinstein Co. Holdings*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019):

> "RICO provides a civil remedy to [a]ny person injured in [her] business or property by' a RICO violation." [*Canosa v. Ziff*], 2019 U.S. Dist. LEXIS 13263, 2019 WL 498865, at *25 (quoting 18 U.S.C. § 1964(c)). "The phrase 'business or property' . . . exclude[s] personal injuries suffered." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). "The ***overwhelming weight*** of authority interprets *Reiter **to exclude the economic consequences of personal injuries.***" *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) (collecting cases and holding that former students' diminished career opportunities and lost earning potential flowing from personal injuries caused by former coach's sexual abuse were not compensable RICO injuries).

383 F. Supp. 3d at 170 (emphasis added).

Economic injury deriving from alleged personal injury is not recoverable in RICO because the predicate acts of mail[1] and wire[2] fraud – upon which plaintiff's RICO claim is based

---

[1] As to mail fraud, 18 U.S.C. § 1341 provides, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining ***money or property*** by means of false or

– prohibit schemes to defraud for the purpose of "*obtaining money or property*," and because

RICO law only allows for recovery of injury to business or property. Here, Dr. Zaporowski has

been noticed as an expert to testify as to damages other than "money or property" *obtained*

through a RICO scheme; therefore, as to RICO, he has no relevant testimony to give, and must

be precluded from testifying at trial. If plaintiff Horn's paycheck had been diverted and the

money stolen as part of RICO scheme, he could surely recovery for the theft of such "wages."

But he cannot recover for the attenuated loss of wages that results indirectly from having been

fired by his employer, as such damages result from the vicissitudes of life – his loss of a job, and

not being hired by another company being the acts of third persons – not from his paycheck

having been *obtained* by mail or wire fraud as part of a RICO scheme.

As for the common-law fraud claim, and the claim for loss of earnings, such damages are

as indirect, and unrecoverable, as in RICO. Moreover, such damages would have required

plaintiff to identify a vocational expert to testify as to plaintiff's alleged lost earning capacity.

While counsel devotes several pages to arguing that this motion is untimely, this was

already addressed, when the court acknowledged that these same arguments could have been

made at the charge conference, and that it is the duty of the court to charge the jury on the

applicable law, such that if lost wages are not recoverable then the jury cannot be charged that

they may award such damages. Furthermore, we note that a denial of a motion to dismiss or a

---

fraudulent pretenses … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office … any matter or thing whatever to be sent or delivered by the Postal Service … shall be fined under this title or imprisoned not more than 20 years, or both. …" (Emphasis added).

[2] As to wire fraud, 18 U.S.C. § 1341 provides, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or **for obtaining money or property** by means of false or fraudulent pretenses … transmits or causes to be transmitted by means of wire … any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." (Emphasis added).

motion for summary judgment is not law of the case. See *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 384 (2d Cir. 1968).[3] Thus, the mere fact that defendants' motions for summary judgment were previously denied, in part, does not, *ipso facto*, establish that the plaintiff's case will withstand a motion to dismiss at the close of the case in chief, or a motion for a directed verdict at the close of all evidence.

**Argument in Reply**

Point I:     **Most of the Cases Plaintiff Cites in Opposition Predate the Second Circuit's 2002 Affirmance of *Gause*, so Do Not Support His Position. And while *Kriss v. Bayrock* Post-Dates *Gause*, Plaintiff Misreads the Case. *Kriss v. Bayrock* Allowed Recovery for Converted Partnership Distributions – Money Actually Taken from the Kriss Plaintiffs by Fraud – Not Loss of "Wages."**

A RICO plaintiff has no injury unless RICO acts caused a deprivation of property; lost wages from an alleged personal injury do not count, though they would in a different case without the predecessor bodily injury (for example the *Kriss* case which plaintiff misreads, see *infra*). In his opposition papers, plaintiff Horn *admits* that the "RICO injury" from which his alleged damages flow, the causal nexus between the RICO violations (the fraudulent inducement) and Horn's allegedly resulting damages is the constellation consisting of, first, the injury that allegedly occurred when THC was introduced into his body by defendants' product, and, second, defendant's fraudulent inducement that led him to consume it. (Plaintiff's Opp. at p.3). Indeed, the parties *agree* that this is the conduct *plaintiff claims* directly *and* proximately establishes the causal nexus. Plaintiff might as well complain that defendant fraudulently

---

[3] See also *Rosenberg v. American Bowling Congress*, 589 F. Supp. 547, 549 (M.D. Fla. 1984); *Shearer v. Homestake Mining Co.*, 557 F. Supp. 549, 556 (D.S.D. 1983), *aff'd* 727 F.2d 707 (8th Cir. 1984); *Weit v. Continental Illinois National Bank and Trust Co.*, 478 F. Supp. 285, 292 n. 4 (N.D. Ill. 1979), *aff'd*, 641 F.2d 457 (7th Cir. 1981), *cert. denied* 455 U.S. 988, 71 L. Ed. 2d 847, 102 S. Ct. 1610 (1982).

induced him to eat poison, so is liable, not for the cost of pumping his stomach, but the loss of income he suffered while it was being pumped. Were he to make that claim his position would be no different than it is: Unsupportable.[4]

In *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir. 1988), the families of FBI agents killed or wounded by members of a criminal organization, sued to recover lost wages. Holding such damages not recoverable, whether denominated personal injuries, economic loss, or property damage, the court said:

> [A]ppellants argue that a common-sense interpretation of the words "business or property" includes the economic damages that result from injury to the person. We are not convinced that…contention accurately captures the ordinary meaning of those words. In our view, the ordinary meaning of…"injured in his business or property" excludes personal injuries, including pecuniary losses therefrom. As a Second Circuit panel remarked, "requirement that the injury be to the plaintiff's business or property means…the plaintiff must show a proprietary type of damage.-*Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984) (dictum).
>
> Moreover, the pecuniary and non-pecuniary aspects of personal injury claims are not so separated as the appellants would have us accept; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief. We agree that "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to

---

[4] Plaintiff's reliance on *Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006),* is inapt because the court limited its discussion of RICO to drawing a distinction between parties with standing under RICO versus Article III as it concerned a challenge to class certification. Unlike in *Denney*, the case at bar has nothing to do with whether plaintiff Horn's damages are clear and definite so much as whether he can claim them under RICO at all – he cannot. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014) (Supreme Court restructured causation and interests analysis, requiring they be not relegated only back-end damages considerations but be promoted to statutory standing considerations as well. That is, plaintiff's RICO claim cannot be heard (so no evidence supporting it can be admitted) for lack of his statutory standing, as his claim falls outside the scope of RICO protections. This argument, of course, is reserved for appeal, as it has already been found that Mr. Horn has standing to assert his claims.

injury generally, without any restrictive language." *Morrison v. Syntex Laboratories*, 101 F.R.D. 743, 744 (D.D.C.1984) (emphasis added).

The Seventh Circuit agrees: *Evans v. City of Chicago*, 434 F.3d 916, 927 (7th Cir. 2006), involved a claim of malicious prosecution and unlawful imprisonment. The Seventh Circuit rejected plaintiff Evans' claim that he had been injured in his "business or property":

> The fact that *Grogan* was premised on a tort claim of wrongful death and Evans' case is premised on false imprisonment and malicious prosecution is of no import. The real question is whether Congress intended RICO laws to compensate plaintiffs for pecuniary losses, such as loss of income, stemming from what is essentially a personal injury like the inability to work or seek employment. We are of the opinion that Congress did not intend to do so. See infra p. 926 n. 21. This is particularly true given the "restrictive significance" of the RICO standing requirement, which was adopted directly from the Clayton Act. ... Indeed, we are inclined to agree with the United States District Court for the District of Columbia's statement in *Morrison v. Syntex Labs.* that "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to injury generally, without any restrictive language." 101 F.R.D. 743, 744 (D.D.C.1984), cited with approval in *Grogan*, 835 F.2d at 847.

Thus, RICO does not allow for recovery of lost wages of murder victims or those injured by other predicate acts. Rather, a plaintiff seeking such damages must do so by bringing a common-law tort claim (such as for assault and battery, or a statutory claim (such as for wrongful death), which do allow recovery for personal injuries and the pecuniary losses flowing therefrom. Plaintiff did bring several such tort-styled actions, all of which have been dismissed.

The Sixth Circuit concurs. *Jackson v. Sedgwick Claims Management Svcs.*, 731 F.3d 556 (6th Cir. 2013) (*en banc*), involved a Coca-Cola truck driver who alleged that he had suffered bodily injury that rendered him unable to drive, and that his employer – pursuant to a RICO scheme of employing "cutoff" doctors who fraudulently wrote letters denying workers' compensation claims – was unable to obtain his rightful benefits because of the scheme of sending those fraudulent letters to the board. The Sixth Circuit held that he could not maintain a

RICO action against those responsible because the fraudulent deprivation of his worker's compensation was not an injury to his property. The court stated:

> [P]laintiffs claim … they were…entitled to receive … benefits mandated by statute as a consequence of their personal injuries, and … received less than they were entitled to under that system because of the defendants' racketeering …. But the losses they allege are simply a shortcoming in the compensation they believed they were entitled to receive for a personal injury. They are not different from the losses the plaintiffs would experience if they had to bring a civil action to redress their personal injuries and did not obtain the compensation from that action they expected to receive …. Accordingly, racketeering … leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to "business or property" under RICO.

The case at bar is remarkably similar. Plaintiff Horn claims he was fraudulently induced to take THC by defendants' failure to warn, or properly label, an over-the-counter analgesic it sold, and so he has in fact here in this very same action brought suit, sounding in state common-law fraud fraud (his other state-law claims having been dismissed). In opposition, plaintiff has cited several district court cases that *appear* to support his position that such loss may be recoverable in RICO, but on closer examination they are easily seen to be of no help to plaintiff, in no small sense because most of the cases plaintiff cites were Second Circuit district court decisions predating, their *rationes decidendi* thus negated by, the Second Circuit's affirmance in *Gause*, 29 F. App'x 761: (emphasis added)

> [T]he judgment…is affirmed substantially for the reasons stated in Judge Seybert's Memorandum and Order dated August 2, 2000. ***Personal injuries of smokers are not injuries to "business or property" within the meaning of the Racketeer Influenced and Corrupt Organizations Act*** 18 U.S.C. §§ 1961 et seq. *See, e.g., Laborer's Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 241 (2d Cir. 1999), *cert. denied,* 528 U.S. 1080 (2000).

Plaintiff's reliance on *Kubecka* is of no use, as it was decided before *Gause*, and failed to analyze the issues, merely "presuming" there was a viable claim, then noting *Grogan* constitutes

6

contra authority, without explaining why plaintiffs' claims were viable. The *Kubecka* court stated:

> If Kubecka and Barstow had been merely disabled by the attempt on their lives but survived, *presumably* they would have had a RICO claim for lost earnings from their business activities because they had been injured in their "business or property." See, e.g. *Hunt v. Weatherbee*, 626 F.Supp. 1097, 1101 (D.Mass.1986); *but see Grogan v. Platt, 835 F.2d 844 (11th Cir. 1988)*." (Emphasis added).

The *Blue Cross* court[5] sinned the same way, accepting district court decisions as precedent without demonstrating that the Sixth, Seventh and Eleventh circuit courts had misapprehended RICO.

Plaintiff's citation to *Kriss v. Bayrock Group LLC*, SDNY Docket No. 10-cv-3959, is misplaced: In fact, *Kriss* proves *defendant's* point.[6] Plaintiff Kriss alleged that he had been fraudulently induced to work for Bayrock Group by defendants who had hidden from him that one, Felix Sater, was a twice-convicted Russian mobster and that they were running the firm through a pattern of such predicate crimes as would eventually cause hundreds of millions of damages to third parties. He alleged that had he known the truth, he would have taken another job, but because he did not, and was subsequently told that he would not be paid as promised and, if he didn't like it, he could shut up about it or be killed, thus was positioned to have been defrauded into working for free. That is pure RICO fraud, obtaining his services by fraudulently promising payment and fraudulently concealing the Bayrock criminality.

Kriss also alleged that he had membership interests in Bayrock LLCs which the RICO defendants had no intention of honoring, and did not honor, stealing them from him, or at least

---

[5] *Blue Cross & BlueShield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560 (E.D.N.Y. 1999).

[6] Attorney Richard Lerner represented plaintiffs Kriss and Ejekam, as appellate counsel to trial counsel Frederick M. Oberlander, and directly in related proceedings, and so is quite familiar with the fact that they did not sue for lost wages, but only stolen partnership interests.

stealing his right to distributions pursuant to those interests (under New York law, partnership interests are property capable of being converted). The third amended complaint (link) alleged:

> ¶8. In late May 2007, Defendants participated in a transaction with FL Group that brought proceeds of $50 million into Bayrock Group. In substance, the transaction sold a majority participation in the greater than $200 million in profits that Bayrock Group projected it would earn from 4 of its development projects, including the Trump SoHo. Defendants benefited tremendously from this deal, which guaranteed them returns on the financial and "sweat" investments they had made in Bayrock Group. Defendants refused to share the $50 million in proceeds with Plaintiffs who, as equity partners in the 4 projects based on the valuable work they performed for Bayrock Group, were entitled to millions in distributions. Kriss received only a $500,000 "bonus"; Ejekam received nothing.

> ∗∗∗

> ¶168. Under the 2004 Kriss Agreement, Kriss was to receive $10,000 per month in taxable wages. The 2004 Kriss Agreement also provided Kriss, as additional compensation for his services, with the following membership interests in entities in which Bayrock Group was a controlling member: (1) a 10% membership in Defendant Ocean Club; (2) a 10% membership interest in Defendant Merrimac; and (3) a 5% membership interest in Defendant Camelback. The Agreement states that the membership interests in these entities granted to Kriss "will be set forth in the operating agreements of the following affiliated entities: Bayrock Ocean Club LLC, Bayrock Merrimac LLC, Bayrock Camelback LLC." The 2004 Kriss Agreement further states that once certain conditions were met, Kriss would "receive distributions in the aforesaid limited liability companies in the proportions set forth in said operating agreements."

*Kriss* involved aggrieved plaintiffs defrauded into *investing* in a criminal enterprise. That the form of the investment was sweat equity and not cash is irrelevant to the fact that they were fraudulently induced into making it and *directly* harmed financially by the theft of that property conveyed without the interposition of any personal or bodily injury. These were vested membership interests that were granted solely in exchange for services or promises thereof.

That is the key. No one would argue that had a plaintiff been defrauded into contributing property to an LLC in return for membership interests conveying the right to shares of profits to be earned from the venture which would use his property along with the sweat equity of other members to make profits that that was not garden-variety RICO. In the judge's opinion and order

8

in *Kriss* – as noted in plaintiff Horn's opposition papers – the court stated that lost "wages" are recoverable in RICO. However, as LLC members (of an LLC taxed as a partnership, as Bayrock was) the plaintiffs in *Kriss* could not possibly have been suing for "wages" qua wages, as that would have pled themselves into tax fraud: Because LLCs are treated as partnerships under the tax law, partners ("members" in LLC parlance) cannot lawfully be paid "wages." IRS Rev. Rul. 69-184, 1969-1 C.B. 256 (bona fide partner in partnership is not employee and remuneration received not wages with respect to "employment.") Thus, it was merely loose talk by the judge, and not a holding, much less a holding that could override the Second Circuit's binding precedent in *Gause* that loss of earnings is not recoverable. The plaintiffs in RICO were suing for what was stolen from them, their distributions.

**Point II:**   **Plaintiff's Loss of Earnings Do Not Directly Flow from the Alleged Fraud; Moreover, Plaintiff Has Not Shown the Right to Recover for Loss of Earnings Where There has Been no Diminishment in Loss of Earning Capacity.**

Plaintiff cites *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5 (4th Dep't 1983), for the proposition that loss of profits (which plaintiff analogizes to loss of earnings) are recoverable in fraud claims. Plaintiff asserts that consequential damages "may also be awarded" if they are direct and that the rule barring such recovery is not inflexible. Here, however, the requisite degree of directness is lacking. In *Connaughton v. Chipotle Inc.*, 29 N.Y.3d 137 (2017), the Court of Appeals cited Cayuga Harvester for the proposition that lost profits must indeed be direct, and held that plaintiff Connaughton's claim that he was fraudulently induced to forego other business opportunities was indirect, thus holding his lost profits (ergo, lost earnings in the case at bar) to be unsustainable on the claim of fraud:

> In New York, as in multiple other states, the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the out-of-pocket rule. Under that rule, damages are to be calculated to

9

compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained. There can be no recovery of profits which would have been realized in the absence of fraud. Moreover, this Court has consistently refused to allow damages for fraud based on the loss of a contractual bargain, the extent, and, indeed, the very existence of which is completely undeterminable and speculative.

Here, plaintiff's pleading is fatally deficient because he did not assert compensable damages resulting from defendants' alleged fraud. The complaint alleges that in reliance on defendants' fraudulent omissions, plaintiff stopped soliciting potential buyers. However, the complaint fails to allege that, in doing so, he rejected another prospective buyer's offer to purchase the concept. Instead, plaintiff avers that once Ells showed an interest in his ramen restaurant idea, plaintiff turned to selling the concept to Chipotle. These are factual assertions of the quintessential lost opportunity, which is not a recoverable out-of-pocket loss. As this Court has repeatedly stated, such damage is disallowed as too speculative a recovery.

29 N.Y.3d at 142-143 (citations and internal quotes omitted, punctuation modified).[7]

Here, plaintiff's alleged economic loss does not directly flow from the alleged fraud; rather, it takes an attenuated path. Here are the steps: (1) Plaintiff was allegedly fraudulently induced to purchase CBD oil based upon a representation that it contained no THC; (2) he allegedly ingested the oil which, as alleged, contained trace amounts of THC; (3) he underwent a random urine test at work; (4) the lab reported the positive test result for trace THC to his employer; and (5) his employer terminated his employment. His employer's independent act renders the claim for damages indirect. Moreover, to the extent that plaintiff was not hired by other persons, such other persons' acts were, themselves, independent and non-direct. As there is no direct claim of damage, Dr. Zaporowski cannot opine as to the alleged loss of earnings that so indirectly flowed from the alleged fraud.

Plaintiff also cites several cases for the proposition that a claim of lost wages may be proved without expert testimony – viz., *Freeman v. Anh Nguyen*, EDNY Docket No. 13-CV-832;

_____

[7] Attorney Jean-Claude Mazzola represented the Chipotle defendants, and argued for dismissal of the case before the Court of Appeals, and so is quite familiar with the fact that plaintiff failed to articulate direct damages resulting from the alleged fraud.

10

*Kane v. Coundorous*, 11 A.D.3d 304 (1st Dep't 2004);[8] *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492 (SDNY 2013); *Ferguson v. City of New York*, 73 A.D.3d 649, 901 N.Y.S.2d 609, 611 (2010); and *Waring v. Sunrise Yonkers SL, LLC*, 134 AD 3d 488 (1st Dep't 2015).

    *Norcia* (which cites several of the other cases cited by plaintiff) was a dram-shop act, wherein the plaintiff sustained actual physical injuries that prevented her from working. Where there is physical injury, that is objectively verifiable, which manifestly prevents someone from working, it is uncontroversial to argue that loss of earnings can be established without the need to call an expert. The *Norcia* court stated:

> Damages for loss of past earnings may be awarded "based solely on plaintiff's testimony without supporting documentation." *Kane v. Coundorous*, 11 A.D.3d 304, 783 N.Y.S.2d 530, 531 (2004); *see also Ferguson v. City of New York*, 73 A.D.3d 649, 901 N.Y.S.2d 609, 611 (2010) ("[P]roof of past lost earnings must be established with `reasonable certainty'.... Such proof can consist [solely] of testimony...."); cf. *Butts v. Braun*, 204 A.D.2d 1069, 612 N.Y.S.2d 520, 521 (1994) (basing finding of "highest amount [of damages for loss of future earnings] that can be justified by plaintiff's evidence" on plaintiff's trial testimony). However, establishing loss of future earnings is more complicated, and requires "comput[ing] ... the monetary value of the diminution in the plaintiff's annual earning capacity, multiplying that amount by the number of years the plaintiff could have worked—[her] work-life expectancy—and then discounting that amount to the present value." *Braccia*, 2011 WL 2848146, at *5 (internal quotation marks omitted).

    *Kane v. Coundorous*, 11 A.D.3d 304 (1st Dep't 2004), was a wrongful-death action, wherein the loss of earnings was unchallenged. In any event, the court stated, "While the lost earnings award was based solely on plaintiff's testimony without supporting documentation, defendants expressly declined to challenge such testimony by the use of the W-2 forms in their possession. The evidence of plaintiff's earnings immediately preceding his accident was sufficient to support the jury's modest award of $208,000 for past lost earnings." In *Freeman*,

---

[8] Note: Plaintiff cited this case without identifying its name, referring to it by its unofficial cite 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004), at page 13 of the opposition papers.

**A-204**

there was objective evidence of physical injury which prevented plaintiff from working. (See link to the EDNY decision). So too in *Waring* and in *Ferguson* (a wrongful-death action) there were objective physical injuries.

Here, however, the plaintiff sustained no physical injuries, and thus, this case falls squarely within the proposition that establishing loss of earnings is "more complicated," requiring the computation of the monetary value of the diminution in his "***earning capacity***," *Norcia*, supra. If plaintiff had been poisoned, and been bedridden for a period, his loss of earnings could have been established by his mere testimony. But he in fact sustained no physical injury that prevented him from working, and thus he must establish, with competent evidence, a loss of earning capacity. Dr. Zaporowski is not competent to give such testimony, and has not been disclosed as having expertise in loss of earning capacity.

***

WHEREFORE, it is respectfully submitted that plaintiff's expert economist Mark P. Zaporowski Ph.D. must be precluded from testifying at trial.

Dated: New York, New York
      August 2, 2021

                                MAZZOLA LINDSTROM, LLP
                                By: */s/ Richard E. Lerner*
                                     Richard E. Lerner
                                Attorneys for defendant Dixie Holdings, LLC
                                1350 Avenue of the Americas, 2nd Floor

A-205

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN,

Plaintiff,

vs.

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC,
RED DICE HOLDINGS, LLC,
DIXIE BOTANICALS,

Defendants.

_____

Case No. 1:15-cv-00701-JWF

_____

**MEMORANDUM OF LAW OF MEDICAL MARIJUANA, INC.,
AND RED DICE HOLDINGS, LLC, IN RESPONSE TO COURT'S REQUEST
FOR BRIEFING ON SUPPLEMENTAL JURISDICTION**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

A-206

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.     THE COURT MUST FIRST DETERMINE WHETHER DIVERSITY JURISDICTION EXISTS PURSUANT TO 28 U.S.C. §1332 ..................................... 1

    II.    WHERE THE COURT FINDS DIVERSITY JURISDICTION DOES NOT EXIST – IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION ...................................... 6

CONCLUSION ........................................................................................................................ 9

i

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

# TABLE OF AUTHORITIES

**Federal Statutes**

28 U.S.C. §1332.................................................................................................1, 2, 3

28 U.S.C. §1367.............................................................................................1, 2, 7, 9

**Cases**

AFA *Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912 (1982) ......................................4

*Carnegie-Melon University v. Cohill*, 484 U.S. 343 (1988)...........................................................7

*Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) .......................1, 2, 6, 7, 8

*Cayuga Harvester v Allis-Chalmers Corp.*, 95 AD2d 5 (4th Dept 1983)......................................4

*Connaughton v Chipotle Mexican Grill, Inc.*, 135 AD3d 535, 538-539 (1st Dept 2016) ...............4

*Foster v Di Paolo*, 236 N.Y. 132 (1923) .....................................................................................4

*Hanlon v MacFadden Publ.*, 302 N.Y. 502 (1951) .......................................................................4

*Kumiva Group, LLC v. Garda USA Inc.*, 146 AD 3d 504, 506-507 (1st  Dept. 2017)................3, 4

*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421-422 (1996) ..........................................3, 4

*New York Wheel Owner LLC v. Mammoet Holding BV*, 481 F. Supp. 3d 216 (SDNY 2020) ........4

*Reno v Bull*, 226 NY 546, 552-553 (1919) ..................................................................................4

*Revell v. Guido*, 124 AD3d 1006 (3rd Dept. 2015) ......................................................................4

*Sager v Friedman*, 270 NY 472, 481 (1936) ................................................................................4

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

A-208

## PRELIMINARY STATEMENT

Defendants, Medical Marijuana Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by their undersigned counsel, submit the following memorandum of law in response to the Court's Text Order of August 3, 2021 (Doc. 202), in which the Court directed the parties to "brief the issue of whether the Court should exercise supplemental jurisdiction over Plaintiff's sole remaining cause of action: a state law claim for fraudulent inducement." The Court cited to the case of *Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) and directed that "the parties simultaneously file briefs on the supplemental jurisdiction question before August 10, 2021."

As set forth below, respectfully, the Court must first resolve the issue of whether diversity jurisdiction exists in this case pursuant to 28 U.S.C. §1332. If diversity jurisdiction exists, the issue of whether to exercise supplemental jurisdiction is moot. However, if diversity jurisdiction does not exist, the Court must then determine whether to exercise supplemental jurisdiction.

If the Court determines that diversity jurisdiction does not exist and reaches the question of whether to exercise supplemental jurisdiction, "judicial economy, convenience, fairness, and comity" strongly support the exercise of supplemental jurisdiction in this case and strongly agitate against declining to exercise such jurisdiction under 28 U.S.C. §1367(c)(3).

## ARGUMENT

### POINT I

### THE COURT MUST FIRST DETERMINE WHETHER DIVERSITY JURISDICTION EXISTS PURSUANT TO 28 U.S.C. §1332

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Respectfully, prior to consideration of the supplemental jurisdiction question, the Court must first determine whether it has diversity jurisdiction, which would render moot whether the Court should exercise supplemental jurisdiction.

The plaintiffs in *Catzin*, *supra*, "worked at laundromats in New York City owned by various defendants." *Id.* at 80. While it is not explicitly stated in *Catzin*, it appears that the plaintiffs were New York residents, and the defendants were New York-based entities. Moreover, the "three plaintiffs [were] seeking approximately $13,000 in unpaid wages and other relief available under the wage-and-hour laws." *Id.* As such, in *Catzin*, there was both a lack of diversity among the parties and the amount sought was under the jurisdictional threshold of $75,000. There is no discussion of diversity jurisdiction in *Catzin*, however, it appears that the plaintiffs' only path to jurisdiction in that case was through supplemental jurisdiction.

The same is not necessarily true in the present case. In Plaintiff's initial complaint (Doc. 1 at ¶2), he alleged:

> This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states. This Court also has subject matter jurisdiction over certain claims herein pursuant to RICO, 18 U.S.C. §1964, and 28 U.S.C. §1331, because they arise under the laws of the United States, and over other claims herein pursuant to supplemental jurisdiction, 28 U.S.C. §1367.

Plaintiff alleged that there were two separate grounds for original jurisdiction: 1) diversity jurisdiction pursuant to 28 U.S.C. §1332; and 2) under RICO, with supplemental jurisdiction pursuant to 28 U.S.C. §1367.

As such, any analysis of whether the court should exercise supplemental jurisdiction under 28 U.S.C. §1367 where Plaintiff's RICO cause of action has been dismissed is

2

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

potentially obviated by first considering whether diversity jurisdiction exists pursuant to 28

U.S.C. §1332.

   Upon information and belief, there is complete diversity between the plaintiff and

defendant parties. Plaintiff, Doug Horn, is a citizen of New York, and the defendants are

California and Colorado-based entities.

   The only remaining question is whether the matter in controversy exceeds the sum

of $75,000. Plaintiff has asserted through the opinion of Dr. Zaporowski (Plaintiff's proposed

Exhibit 12) that he is entitled to lost earnings and interest amounting to over $500,000.

Presumably, Plaintiff will continue to assert entitlement to this amount, even under his lone

remaining cause of action for fraudulent inducement.

   However, as was already broached in Point II of Dixie's Motion *in Limine* (Doc.

194), Plaintiff's damages under the fraudulent inducement cause of action must be limited to

"out of pocket" damages under New York State law.

   The First Department in *Kumiva Group, LLC v. Garda USA Inc.*, 146 AD 3d 504,

506-507 (1st Dept. 2017) held:

> New York courts for over 100 years have differentiated between
> the damages recoverable for a breach of contract action and those
> recoverable for fraudulent inducement. While a plaintiff alleging
> breach of contract is entitled to damages restoring the full benefit
> of the bargain, a plaintiff alleging fraudulent inducement is limited
> to "out of pocket" damages, which consist solely of the actual
> pecuniary loss directly caused by the fraudulent inducement. "Out
> of pocket" damages are calculated in three steps. First, the plaintiff
> must show the actual value of the consideration it received.
> Second, the plaintiff must prove that the defendant's fraudulent
> inducement directly caused the plaintiff to agree to deliver
> consideration that was greater than the value of the received
> consideration. Finally, the difference between the value of the
> received consideration and the delivered consideration constitutes
> "out of pocket" damages (see *Lama Holding Co. v Smith Barney*,

3

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

88 NY2d 413, 421-422 [1996]; *Sager v Friedman*, 270 NY 472, 481 [1936]; *Reno v Bull*, 226 NY 546, 552-553 [1919]; *Connaughton v Chipotle Mexican Grill, Inc.*, 135 AD3d 535, 538-539 [1st Dept 2016]).

This line of cases was recently recognized by the Southern District in *New York Wheel Owner LLC v. Mammoet Holding BV*, 481 F. Supp. 3d 216 (SDNY 2020), which held:

> Under New York law, a plaintiff asserting a claim for fraudulent inducement can recover only "out of pocket" damages. Kumiva Grp., LLC v. Garda USA Inc., 146 A.D.3d 504, 506, 45 N.Y.S.3d 410 (1st Dep't 2017); see also Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1374 (1996) ("Even if the claims of fraud were sufficiently alleged, plaintiffs would be limited to recovering their losses.")

The New York Court of Appeals in *Lama Holding v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996) further held:

> The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the "out-of-pocket" rule (*Reno v Bull*, 226 N.Y. 546, 553; *Hanlon v MacFadden Publ.*, 302 N.Y. 502). Under this rule, the loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 N.Y. 472, 481). Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained (see, *Cayuga Harvester v Allis-Chalmers Corp.*, 95 AD2d 5). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud (*Foster v Di Paolo*, 236 N.Y. 132; AFA *Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912).

See also, *Revell v. Guido*, 124 AD3d 1006 (3rd Dept. 2015) (The Third Department, citing the foregoing case law, affirmed a New York Supreme Court ruling where testimony in a trial for fraudulent inducement regarding "lost rents was stricken from the record" and "the jury was specifically instructed to disregard the accountant's testimony in this regard and that any mention

4

of lost profits was removed from the verdict sheet." As a result, the court was satisfied that Supreme Court's remedial efforts and curative instructions "were sufficient to alleviate the prejudicial effect of the error" of allowing evidence regarding lost profits to be introduced in fraudulent inducement case.)

Following the New York State law on this issue, Plaintiff cannot recover for alleged lost earnings and interest on the same (his only remaining claimed damages in this suit), as this is, quintessentially, "recovery of profits which would have been realized in the absence of fraud." Plaintiff can only potentially recover what he lost "because of the fraud" and "not to compensate [him] for what [he] might have gained."

When considering the equation of the "difference between the value of the bargain which a plaintiff was induced by fraud to make" and "the amount or value of the consideration exacted as the price of the bargain" – one could not possibly plug over $500,000 in alleged lost earnings into either side of this equation.

Plaintiff, indisputably, was not even allegedly induced by the defendants to bargain for anything more than a single bottle of CBD oil, which Plaintiff allegedly believed to be free of THC. The "amount or value of consideration exacted as the price of [that] bargain" was, at most, $167.95 (Plaintiff's proposed Exhibit 5). Plaintiff does not, and cannot, allege that the defendants in this action exacted consideration of over $500,000 in alleged lost earnings for a single bottle of CBD oil. Instead, these alleged lost earnings damages are, quite literally, what Plaintiff "might have gained" in the absence of the alleged fraud. Such damages are explicitly not recoverable under New York State law pursuant to fraudulent inducement.

Given the foregoing, it seems possible that the Court may be prepared to hold that it does not have diversity jurisdiction over this case, as a matter of law. Where Plaintiff's only

5

remaining cause of action is a state court action for fraudulent inducement, and New York State caselaw makes clear that damages under such a cause of action are limited as set forth above, diversity jurisdiction would not exist under 28 U.S.C. §1332 because the amount in controversy could not possibly exceed $75,000.

As such, respectfully, the Court must make this determination prior to proceeding to a determination with respect to whether it should exercise supplemental jurisdiction:

1) If the Court finds that Plaintiff <u>can</u> potentially recover more than $75,000 under his fraudulent inducement cause of action, then diversity jurisdiction exists and there is no need to evaluate whether the court should exercise supplemental jurisdiction.

2) If the Court finds that Plaintiff <u>cannot</u> recover more than $75,000 under his fraudulent inducement cause of action, then diversity jurisdiction does not exist and the court must proceed to evaluate whether to exercise supplemental jurisdiction, as set forth below.

## **POINT II**

### **WHERE THE COURT FINDS DIVERSITY JURISDICTION DOES NOT EXIST – IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION**

As set forth above, the Court should only reach this question where it has found that grounds for diversity jurisdiction no longer exist in this case. In such event, we turn again to the case cited in the Court's Text Order (Doc. 202), *Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018).

*Catzin* involved a case in which, like the present case, the plaintiffs initially brought causes of action under both federal and New York State law. Also, like the present case,

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Case 22-349, Document 54, 07/15/2022, 3348706, Page217 of 288

at the time of trial, the plaintiffs were no longer proceeding with the federal claims and were only proceeding with their state claim.

   In *Catzin*, the District Court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), which states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if," under subsection (3), "the district court has dismissed all claims over which it has original jurisdiction…" Moreover, the Court noted that it believed the inclusion of the federal claims "had all along been disingenuous and was a stratagem to manufacture federal jurisdiction." *Id.* at 79.

   The Second Circuit's reversal of this decision largely focused on the District Court's failure to give the party's "notice and an opportunity to be heard" and "impugn[ing] plaintiffs' counsel's motives without affording any notice" or "an opportunity to explain himself" – factors are that not relevant in our case. *Id.* at 81. Only then did the Second Circuit analyze the District Court's decision with respect to the factors under 28 U.S.C. § 1367.

   The Second Circuit held that even where § 1367(c)(3) arguably applied:

> the district court must still meaningfully balance the supplemental jurisdiction factors. The principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction "in the usual case" clearly does not mean that the balance of the factors always points that way. Indeed, *Cohill* stated that this principle "does not establish a mandatory rule to be applied inflexibly in all cases." *Cohill*, 484 U.S. at 350 n.7, 108 S.Ct. 614. Nor does the record in this case establish that it falls within the ambit of the "usual case," where judicial economy, convenience, fairness, and comity counsel against exercising supplemental jurisdiction when § 1367(c)(3) applies.

*Catzin*, 899 F.3d at 86.

7

As the District Court had failed to take into account considerations of "judicial economy, convenience, fairness, and comity" in its decision of whether to exercise supplemental jurisdiction, the Second Circuit vacated and remanded. Specifically, the Second Circuit noted:

> Supplemental jurisdiction was revoked one day prior to the final pretrial conference and a week before the scheduled trial date. The trial was to be short, roughly three days, and the parties and the District Court were ready for trial. The case presented no issues of special state court expertise nor any novel questions of state law or state-law causes of action that would be better decided in state court. Instead, wage-and-hour cases like this one are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices. The District Court did not explain how comity between state and federal courts is advanced by saddling a state court colleague with a wage-and-hour case of the type that is tried in federal court every day. Nor does the record lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly two years and causing them to expend who knows how much time, legal fees, and distraction starting over in state court.

*Id.* at 86.

Similar to *Catzin*, in this matter, the parties were within a week of proceeding with a scheduled trial, the trial was to be short (not three days but, likely, not much longer), and the parties and the Court were ready for trial. This case, which is now only a single cause of action for fraudulent inducement, presents no issues of special state court expertise or any novel questions of state law that would be better decided by a state court. Similarly, it is not clear how comity between the courts would be advanced by "saddling" a state court with this action nor would the interests of convenience or fairness be served by setting backwards the course of this case, which the parties have litigated for <u>six years</u>, almost to the day. (Plaintiff's Complaint, Doc.1, was filed on August 6, 2015.)

8

The parties and the Court are fully prepared to go to trial on the remaining cause of action for fraudulent inducement. If the Court determines that diversity jurisdiction does not exist in this case, and that the only path forward for subject matter jurisdiction is supplemental jurisdiction under 28 U.S.C. § 1367, "judicial economy, convenience, fairness, and comity" certainly suggest declining the option presented by § 1367(c)(3) and retaining jurisdiction over this matter through, what should be, a swift resolution of the same.

## <u>CONCLUSION</u>

Based on the foregoing, it is respectfully submitted that the Court should find that diversity jurisdiction does not exist in this case as the amount in controversy does not exceed $75,000 and therefore, in the interests of justice, the Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367.

In the alternative, if the Court finds that the amount in controversy in the case could potentially still exceed $75,000, then diversity jurisdiction exists and there is no need to determine supplemental jurisdiction.

DATED:   Buffalo, New York
         August 10, 2021

Respectfully submitted,

Scott D. Mancuso, Esq.
Roy A. Mura, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants Medical Marijuana Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
scott.mancuso@muralaw.com
roy.mura@muralaw.com

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN and CINDY HARP-HORN,

                     *Plaintiffs,*

 -against-

MEDICAL MARIJUANA, INC., DIXIE
HOLDINGS, LLC, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                     *Defendants.*

Civil Action No.
15-cv-00701-FPG

Hon. Magistrate Judge
Jonathan W. Feldman

<br>

**Defendant Dixie Holdings' Memorandum of Law
in Response to Court's Request
for Briefing on Supplemental Jurisdiction**

<br>

MAZZOLA LINDSTROM, LLP
Attorneys for defendant Dixie Holdings, LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel:  646-216-8300
Cell: 917-584-4864

<br>

Of Counsel:   Richard E. Lerner
              Jean-Claude Mazzola
              Hanoch Sheps

<br>

Dated: August 10, 2021
      New York, New York

**A-218**

### Adoption of Co-Defendants' Arguments, and Supplement Thereto

Defendant Dixie Holdings, LLC, by their undersigned counsel, submit the following memorandum of law in response to the court's text order of August 3, 2021 (ECF DKT. No. 202), in which the court directed the parties to "brief the issue of whether the Court should exercise supplemental jurisdiction over Plaintiff's sole remaining cause of action: a state law claim for fraudulent inducement." In the interest of judicial economy and expediency, we adopt and incorporate by reference the arguments made in behalf of defendants Medical Marijuana Inc. and Red Dice Holdings LLC on the issue before the court. However, we add the following.

In *Wolde-Meskel v. Vocational Instruction Project Community Services*, 166 F. 3d 59 (2d Cir. 1999), the Second Circuit noted that, for determining whether the amount-in-controversy requirement is satisfied, the court must look to the complaint at the time it was filed. Thus, in the case at bar, the court should focus not just on whether plaintiff's fraudulent-inducement claim is worth more than the $75,000 threshold amount, but instead on whether the original state-law claims asserted in plaintiff's complaint satisfied the $75,000 requirement.

Here, the original complaint did not allege a dollar amount sought in the ad damnum clause, or within the allegations themselves. However, the plaintiff did specifically allege, with respect to one the state-law claims, that the damages were in excess of the jurisdictional amount required for diversity jurisdiction. (See, paragraph 87, with respect to the claim of negligent infliction of emotional duress). Additionally, the ad damnum requested, as to all causes of action, as follows: (emphasis added)

**WHEREFORE,** Plaintiffs demand judgment against the defendants, for actual, consequential, incidental, statutory and punitive damages as follows:

i. ***On all causes of action***, actual and compensatory damages in a sum of money having a present value ***which exceeds the jurisdictional limits of this Court***;

**A-219**

The issue then is whether, to a legal certainty, at the time the complaint was filed, there was no legal possibility of a recovery on the state-law claims of over $75,000. As the *Wolde-Meskel* court stated:

> [T]here has been no argument presented or finding made that the jurisdictional allegations of the complaint were made in bad faith in an attempt to feign jurisdiction. In any event, to demonstrate a filing in bad faith, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul [Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90, 58 S.Ct. at 590 (1938)] Legal certainty is analyzed by what appears on the face of the complaint; subsequent events – such as a valid defense offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount—"do[] not show [plaintiff's] bad faith or oust the jurisdiction." *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590.

The case of *Yong Qin Luo v. Mikel*, 625 F.3d 772 (2d Cir. 2010), is instructive because the complaint in that matter, having been removed to federal court from a New York state court, lacked a specific dollar amount claimed as damages, because New York prohibits stating a dollar amount in such complaints. After the case was dismissed, the plaintiff argued that removal was improper because the jurisdictional threshold amount had not been pled. The Second Circuit noted (a) that the plaintiff had made a settlement demand of $600,000, and (b) that the plaintiff, at the initial status conference, declined to limit her damages to less than $75,000. This sufficed to establish that the claim was worth more than the threshold amount at the time of removal.

Here, plaintiffs Douglas and Cindy Harp-Horn alleged in their original complaint that "all causes of action" that had been pled satisfied the jurisdictional threshold; therefore, it does not appear that plaintiff Douglas Horn can now argue that diversity jurisdiction is lacking; rather, this case can only be dismissed for lack of diversity jurisdiction if this court were to find, to a legal certainty, that there was no possible way for the plaintiff to have recovered more than $75,000 on the state-law causes of action when the suit was brought, such that such claims must have been asserted in bad faith.

2

**A-220**

**Conclusion**

Should the court conclude, to a legal certainty, that plaintiffs' original state-law claims could not possibly have satisfied the jurisdictional $75,000 threshold for diversity jurisdiction, defendant Dixie Holdings LLC submits that the court should nonetheless exercise supplemental jurisdiction, for the reasons stated by co-defense counsel. If, however, the court were to find that the original state-law claims were not, to a legal certainty, worth less than $75,000, it must retain diversity jurisdiction.

DATED:      New York, New York
            August 10, 2021

                                   Respectfully submitted,

                                   Mazzola Lindstrom LLP

                                   By: *[s] Richard E. Lerner*
                                   Richard E. Lerner
                                   *Attorneys for defendant Dixie Holdings, LLC*
                                   1350 Avenue of the Americas, 2nd Floor
                                   richard@mazzolalindstrom.com

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

DOUGLAS J. HORN, et al.,

                   Plaintiffs,          **Decision and Order**

      v.                           15-CV-701-JWF

MEDICAL MARIJUANA, INC., et al.,

                   Defendants.

═══════════════════════════════════

## PRELIMINARY STATEMENT

On July 22, 2021, defendant Dixie Holdings, LLC ("Dixie LLC") filed a motion *in limine* to preclude the testimony of Mark P. Zaporowski, Ph.D., plaintiff's expert economist. Docket # 194. While styled as a motion *in limine*, in truth Dixie LLC's motion is of a dispositive nature: it contends that the kinds of damages that plaintiff seeks to recover are not recoverable through either of his remaining claims. Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC join in the motion. Docket # 200. Plaintiff opposes the motion. Docket # 198.

On August 3, 2021, the Court informed the parties that it intended to dismiss plaintiff's civil RICO claim (with a written Decision and Order to follow) and requested the parties brief the issue of the Court's subject matter jurisdiction over the state-law fraud claim. Docket ## 203-05.

Having reviewed all the briefing submitted, and for the reasons set forth below, the Court concludes that plaintiff's civil RICO claim must be dismissed as a matter of law, that plaintiff's fraud claim is viable insofar as plaintiff seeks to recover lost earnings, and that the Court retains subject matter jurisdiction over the fraud claim. Accordingly, defendants' motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Prior to the scheduled jury trial, plaintiff had two remaining causes of action: a civil RICO claim and a state-law fraudulent inducement claim.[1] In both claims plaintiff sought to recover damages for the losses he incurred when his employment as a truck driver was terminated, including "past and future lost compensation, lost health benefits, lost retirement savings and difference in work effort mileage driven." Docket # 179 at 2. To support his damages calculations, plaintiff intended to proffer at trial the testimony of Dr. Zaporowski, who calculated the value of plaintiff's total economic damages. Id. Defendants contend that plaintiff cannot recover these kinds of "loss of earnings" damages

---

[1] Plaintiff had other claims that were previously addressed and dismissed by Judge Geraci. See Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019).

2

in connection with either a civil RICO or state-law fraud claim. As will be discussed below, defendants are correct with respect to the former claim, but not the latter.

**Delay and Prejudice to Plaintiff:** Before discussing the merits, the Court will address plaintiff's arguments on the timing of Dixie LLC's motion. See Docket ## 197, 198. As the Court stated on the record at the prior conferences on this motion, the timing of the motion and the prejudice to plaintiff resulting therefrom is both concerning and unfortunate. However, the Court has already concluded that the Dixie LLC's delay in raising these potentially dispositive issues was not attributable to bad faith. Furthermore, once raised, the Court could not avoid deciding the issue. If defendants were correct on the damage issue, it would have made little sense to proceed to trial, as the Court would be required to instruct the jury on the law as to recoverable damages. If plaintiff cannot, as a matter of law, recover the type of damages he seeks, the trial would have essentially been a pointless exercise in futility. Deciding the issue now, however late it has been raised, still ensures that the parties, the Court and the jurors do not spend time or energy on claims for which plaintiff cannot recover the damages he seeks. While the Court acknowledges the costs plaintiff has incurred due to the delay of trial,

judicial economy and fairness to the parties require resolution of the damage issues prior to the commencement of trial.

Plaintiff also makes two threshold arguments that merit only brief comment.   First, plaintiff cites Dixie LLC's eleventh affirmative defense in its answer to argue that Dixie LLC has long known about this issue.   See Docket # 9 at 11; Docket # 198 at 6. The eleventh affirmative defense is that plaintiff's injuries "do not arise out of any [RICO] predicate acts" and that plaintiff "is therefore without standing."   Docket # 9 at 11.   That issue is different than the one Dixie LLC now raises — that plaintiff's damages are not recoverable as injuries to "business or property" under the RICO statute.   Second, plaintiff claims that Judge Geraci decided this issue at summary judgment, which is incorrect.   See generally Horn v. Medical Marijuana, Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019).   Accordingly, the Court turns to the merits of the pending motion.

**Cognizable Damages in Civil RICO claims:**   Defendants argue that plaintiff's requested "loss of earnings" damages are not recoverable in a civil RICO action because they are predicated on the bodily invasion plaintiff allegedly sustained when THC was introduced into his system through the ingestion of Dixie X.   The Court agrees.

RICO establishes a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Defendants' argument implicates the first clause in this provision: that one must be injured "in his business or property" in order to recover under Section 1964(c).

This statutory language has a long history. Congress modeled Section 1964(c) and its private right of action on the "the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," Holmes v. Secs. Inv'r Protection Corp., 503 U.S. 258, 267 (1992), which provides: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ." 15 U.S.C. § 15(a) (emphasis added). In the context of the Clayton Act, the Supreme Court has held that the "business or property" clause encompasses harm to "commercial interests or enterprises," Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 264 (1972), but not "personal injuries suffered." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). Compare id. ("[A] consumer . . . acquiring goods or services for personal use[] is injured in 'property' when the price of those goods or services is artificially inflated by reason of the

anticompetitive conduct complained of."), with Chadda v. Burcke, 180 F. App'x 370, 371-72 (3d Cir. 2006) (summary order) (consumer's injuries suffered from use of a cosmetic "at most" asserted a "personal injury" that did not support an antitrust claim).

In interpreting and applying Section 1964(c), courts have taken the same approach. "[A] plaintiff only has standing [under civil RICO] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."[2] Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (emphasis added). An injury to "business or property" under Section 1964(c) contemplates "a proprietary type of damage" or "economic injury." Bascuñán v. Elsaca, 874 F.3d 806, 817 (2d Cir. 2017). As a simple example, "a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his

---

[2] Although the issue is sometimes framed as one of "standing," as in Sedima, the Court notes that this label is "misleading." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014). The Supreme Court has made clear that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." Id.; see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016) ("[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (internal quotation marks omitted)); Safe Streets Alliance v. Hickenlooper, 859 F.3d 865, 887 (10th Cir. 2017) ("[W]hat we once called 'RICO standing' or 'statutory standing' we now properly characterize as the usual pleading-stage inquiry: whether the plaintiff has plausibly pled a cause of action under RICO.").

building is the type of injury for which § 1964(c) permits suit."
Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984),
vacated on other grounds, 473 U.S. 922 (1985).

The limitation is perhaps easier to state than to apply.  A
fundamental difficulty is that money "is a form of property,"
Reiter, 442 U.S. at 338, and "[m]ost personal injuries" will entail
"some pecuniary consequences," including "loss of earnings, loss
of consortium, loss of guidance, mental anguish, and pain and
suffering." Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992).  A
litigant could easily recast damages for personal injury as a
financial loss of "property" in order to invoke civil RICO.  See,
e.g., id. (noting that, theoretically, one could view the "economic
aspects of [a personal injury]" as "injuries to 'business or
property'"); Grogan v. Platt, 835 F.2d 844, 846 (11th Cir. 1988)
(discussing plaintiffs' argument that "persons who are killed or
injured by RICO predicate acts suffer real economic consequences
as a result"). As a result, in deciding whether an injury is "to
business or property" — and thus recoverable under civil RICO — or
is personal — and thus not recoverable — courts do not look solely
at whether there is a "financial loss." Doe, 958 F.3d at 770.
Instead, they ask whether the plaintiff seeks to recover for a
loss that flows from, or is derivative of, a personal injury.  If

7

it does, then it is not recoverable under civil RICO.  See Jackson
v. Sedgwick Claims Mgmt. Servs., Inc., 731 F.3d 556, 565-66 (6th
Cir. 2013) ("[B]oth personal injuries and pecuniary losses flowing
from those personal injuries fail to confer relief under §
1964(c)."); Grogan, 835 F.2d at 848 (holding that plaintiffs
"cannot recover under RICO for those pecuniary losses that are
most properly understood as part of a personal injury claim").

    In recognition of this distinction, courts have held that
lost earnings or wages are not recoverable if they flow from a
personal injury.  See Evans v. City of Chicago, 434 F.3d 916, 926-
27 (7th Cir. 2006) ("The loss of income as a result of being unable
to pursue employment opportunities while allegedly falsely
imprisoned . . . are quintessentially pecuniary losses derivative
of personal injuries arising under tort law."), overruled on other
grounds, Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013);
Jackson, 731 F.3d at 565.  Here, plaintiff does not allege that
defendants engaged in a fraudulent scheme that directly caused his
loss of employment.  To the contrary, plaintiff acknowledges that
"[t]he nexus between the RICO violations . . . and [plaintiff's]
resulting economic damages . . . is the harm of the THC that was
introduced into [his] system by Defendants' product."  Docket #
198 at 7 (emphasis added).  In other words, what connects

defendants' fraudulent scheme to plaintiff's loss of employment and earnings is a personal injury: the bodily invasion that plaintiff suffered when he unwittingly ingested THC.  Cf. Doe v. Brown Univ., 304 F. Supp. 3d 252, 265 (D.R.I. 2018) (plaintiff sufficiently alleged tort of battery, where she claimed defendant "spiked" her drink, which caused her "harmful mental and physical effects").  Unfortunately for plaintiff, he may not recover lost earnings arising from that sort of personal injury in connection with a civil RICO claim.  Accord Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) (noting that smokers cannot assert RICO claims for fraudulent cigarette marketing "because the RICO statute requires an injury to 'business of property'"); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) ("RICO plaintiffs may recover damages for harm to business and property only, not physical and emotional injuries due to harmful exposure to toxic waste."); Aston v. Johnson & Johnson, 248 F. Supp. 3d 43, 49-50 (D.D.C. 2017) (loss of earnings in connection with pharmaceutical drug); Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012) (plaintiffs could not recover lost wages and out-of-pocket expenses caused by sexual abuse); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 66 (D.N.H. 2013) ("lost income" due to

9

**A-230**

plaintiff's inability to work from smoking); Gotlin v. Lederman, 367 F. Supp. 2d 349, 357 (E.D.N.Y. 2005) (where plaintiffs alleged that defendants fraudulently misrepresented quality of cancer treatment, dismissing civil RICO claim and noting that "allegations of a financial loss incidental to a personal injury such as loss of earnings or pain and suffering are not considered injury to property or business"), aff'd, 483 F. App'x 583 (2d Cir. 2012) (summary order); Gause v. Philip Morris, No. 99-CV-6226, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000) (where plaintiff alleged tobacco companies fraudulently marketed cigarettes and thereby caused her to smoke and develop emphysema, she could not recover lost income under civil RICO on the theory that she was unable to work due to her illness), aff'd, 29 F. App'x 761 (2d Cir. 2002) (summary order).

The cases that plaintiff cites in his opposition memorandum do not persuade the Court otherwise. Indeed, many of those cases demonstrate the distinction that courts draw between business/property injuries and personal injury, as they involve economic harm flowing directly from RICO predicate acts without any intervening personal injury. See Denney v. Deutsche Bank AG, 443 F.3d 253, 260, 265 (2d Cir. 2006) (scheme to market unlawful tax strategies allegedly caused plaintiffs to, inter alia, pay

10

"excessive fees" for the advice, sustain penalties from the IRS, and incur costs to remediate their tax situations); City of New York v. Fedex Ground Package Sys., Inc., 175 F. Supp. 3d 351, 369-71 (S.D.N.Y. 2016) (delivery service's circumvention of New York cigarette taxes caused state and local governments to lose tax revenue); Kriss v. Bayrock Grp. LLC, No. 10-CV-3959, 2016 WL 7046816, at *19 (S.D.N.Y. Dec. 2, 2016) (real estate organization, which was engaged in fraudulent activities, enticed "real estate finance professionals" to join organization and caused them to pass up "lucrative opportunities" elsewhere); Rodonich v. House Wreckers Union, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) (union unlawfully disciplined union members in scheme to suppress dissent, which caused lost wages).

Plaintiff cites two cases as supporting the view that he may recover lost earnings resulting from his claimed bodily invasion. The Court is not convinced by either. First is Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963 (E.D.N.Y. 1995). In Kubecka, it was alleged that the defendants murdered two executives in connection with a dispute over garbage disposal contracts in Long Island. Kubecka, 898 F. Supp. at 966. The plaintiffs included two corporations that alleged they were "injured in their business or property . . . [when] their executives were murdered and thereby

11

removed as executives." Id. at 969.  The court agreed, apparently accepting that the murders interfered with the corporations' operations in such a way as to constitute an injury to "business or property" under RICO.  Id.  Whatever the soundness of that rationale with respect to corporate losses, it does not support the proposition that an individual who loses his job due to personal injury caused by RICO predicate acts may maintain a RICO claim.

The second case is Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 36 F. Supp. 2d 560 (E.D.N.Y. 1999). There, medical insurers sued tobacco companies to recover "economic damages they incurred in the medical treatment of diseases caused by tobacco use." Blue Cross, 36 F. Supp. 2d at 565.  They claimed tobacco companies had fraudulently misrepresented the health consequences of smoking and brought RICO claims premised on, among other things, mail and wire fraud.  Id. at 565-66.  The court held that the insurers' medical expenditures constituted a loss to business or property and that "[a]ny personal injuries to smokers . . . caused by [tobacco companies'] alleged racketeering are separate and distinct from the [insurers'] economic injuries suffered by their businesses." Id. at 569-71.

**A-233**

Blue Cross is unpersuasive.  As a general matter, the reasoning in Blue Cross is inconsistent with the history, logic, and interpretation of the "business or property" clause that the Court has described above.  For that reason, the decision "has been criticized by numerous courts" and has been acknowledged to "rest[] on tenuous legal footing."  Magnum v. Archdiocese of Philadelphia, No. 06-CV-2589, 2006 WL 3359642, at *4 n.6 (E.D. Pa. Nov. 17, 2006).  Regardless, even if the Court were to accept the distinction that Blue Cross drew between insurers and insureds, that distinction does not help plaintiff: he is not attempting to recover economic damages that are "separate and distinct" from the bodily invasion he suffered from unwittingly consuming THC.  As plaintiff himself admitted, his "economic damages" resulted from "the harm of the THC that was introduced into [his] system by Defendants' product."  Docket # 198 at 7; accord Zimmerman, 888 F. Supp. 2d at 330 (distinguishing Blue Cross on the basis that "Plaintiffs' alleged lost wages and out-of-pocket expenses are, in their own words, closely associated with the personal injuries they incurred as a result of Defendants' misconduct" (internal quotation marks omitted)).

In sum, because plaintiff's loss of earnings flows from, and is derivative of, a personal injury he suffered, his lost earnings

13

do not constitute an injury "to business or property" that is recoverable in a civil RICO action. And because plaintiff does not seek to recover any other damages, his RICO claim fails as a matter of law and must be dismissed. See Fed. R. Civ. P. 56(f).

**Plaintiff's Fraud Claim:** Noting that New York only permits recovery for "out-of-pocket" losses in a fraud action, defendants next assert that a fraud plaintiff is categorically prohibited from recovering lost earnings. Docket # 194 at 4-6. The Court disagrees.

In New York, if a plaintiff can prove the elements of a claim for fraud, he is entitled to recover "any proximately caused damages." Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 494 (2d Dep't 2011); see also Williams v. Goldberg, 109 N.Y.S. 15, 16 (App. Term. 1908) ("All manner of fraud is abhorrent to the law, and if one person sustains injury through the fraud of another he will be afforded a proper remedy."); Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 307 (2d Cir. 1986) ("Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation."); 60A N.Y.Jur.2d Fraud and Deceit § 190 ("The injured party is entitled to recover in a tort action for deceit only such damages as result directly, necessarily, and proximately

14

from the fraud," (footnotes omitted)).   What damages are
recoverable in a given case will necessarily depend on the nature
of the fraud and of the resulting injuries.   Hotaling v. A.B. Leach
& Co., 247 N.Y. 84, 88 (1928) ("Varying circumstances must
logically require variation in the application of th[e] measure of
damages.").

Where the fraud occurs in the context of a business
transaction, the measure of damages will ordinarily be "the
difference between the amount paid and the value of the article
received."   Hotaling, 247 N.Y. at 87-88.   Where the fraud
proximately causes other consequential expenses, such damages may
also be recovered.   See Lama Holding Co. v. Smith Barney Inc., 88
N.Y.2d 413, 423 (1996) (noting that consequential damages are
recoverable in fraud action so long as they "naturally flow[]"
from the fraud); see, e.g., Idrees v. Am. Univ. of the Caribbean,
546 F. Supp. 1342, 1350 (S.D.N.Y. 1982) (student fraudulently
induced to enroll in medical school could recover "tuition,
inscription fee, application fee and round-trip air fare between
New York and [the school]"); Orbit Holding Corp. v. Anthony Hotel
Corp., 503 N.Y.S.2d 780, 783 (1st Dep't 1986) (where seller of
property fraudulently concealed lease, purchaser could recover for
costs of settling dispossess proceeding with tenant); Cayuga

15

Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y.S.2d 606, 619 (4th Dep't 1983) (fraud plaintiff could recover damages for lost crops that resulted from the purchase of defective machine).

Finally — and more relevant here — New York courts have long permitted a fraud plaintiff to recover damages for personal injury proximately caused by fraud. See Kuelling v. Roderick Lean Mfg. Co., 183 N.Y. 78, 89 (1905) (collecting cases and holding that "one who sells an article, knowing it to be dangerous by reason of concealed defects . . . is liable in damages to any person . . . who suffers an injury by reason of his willful and fraudulent deceit and concealment."); Tulloch v. Haselo, 218 N.Y.S. 139, 141 (3d Dep't 1926) ("[A] cause of action for deceit may arise where, as the result of false representation, the damage results in personal injuries."); see, e.g., Simcuski v. Saeli, 44 N.Y.2d 442, 451-53 (1978) (where medical provider fraudulently advised patient about treatment, patient could recover damages for the "depriv[ation] of the opportunity for [a] cure"); Kuelling, 183 N.Y. at 88-89 (fraudulent concealment of defect in agricultural implement, which caused plaintiff "severe injuries," gave rise to fraud claim and recovery of proximately caused damages); Williams, 109 N.Y.S. at 16 (tenant could recover damages in fraud action for physical injuries incurred when ceiling collapsed on her, where

16

defendant's agent fraudulently misrepresented ceiling's condition); Tulloch, 218 N.Y.S. at 142 (positing that if a person misrepresented the safety of a gun and a recipient were injured "by reason of the defects in the gun," a "cause of action for common-law deceit would arise in his favor"); Young v. Robertshaw Controls Co., 481 N.Y.S.2d 891, 893-94 (3d Dep't 1984) (finding that plaintiff stated viable fraud claim, where she alleged that fraudulent concealment of defective control valve caused the explosion of a water heater and the death of her husband, and where she sought compensatory damages for husband's "conscious pain and suffering and wrongful death"); see also City of New York v. Lead Indus. Ass'n, 597 N.Y.S.2d 698, 700 (1st Dep't 1993) ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud.").

The position of New York courts on the scope of recoverable damages in a fraud action mirrors in large part that of the Restatement (Second) of Torts:

> The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> (a)  the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

17

**A-238**

> (b)   pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.

Restatement (Second) of Torts § 549(1)(a)-(b) (1977); see also Clearview Concrete Prods. Corp. v. S. Charles Gheradi, Inc., 453 N.Y.S.2d 750, 755 (2d Dep't 1982) (citing Section 549 favorably). In addition to those categories of damages, the Restatement provides that "[o]ne who by a fraudulent misrepresentation . . . causes physical harm to [a] person . . . who justifiably relies upon the misrepresentation[] is subject to liability to the other." Id. § 557A (emphasis added). The "ordinary rules as to legal cause" — i.e., proximate cause — govern claims for fraudulent misrepresentation causing physical harm. Id. § 557A cmt.; see generally id. § 431 (discussing "legal cause").

Plaintiff's fraud claim fits within this overall framework. As defendants acknowledge in their briefing, plaintiff is essentially alleging that he suffered a personal injury as a result of defendants' fraud: he was induced to consume Dixie X by defendants' misrepresentations, which caused him to suffer a bodily invasion through the ingestion of THC and which, in turn, rendered him ineligible for his employment. See Docket # 194 at 2; Docket # 200 at 7-9, 15; Docket # 201 at 7. Defendants also acknowledge that the damages plaintiff seeks are intended to

18

compensate for the losses he incurred because of his personal injury. See Docket # 194 at 4; Docket # 200 at 7-9, 12; Docket # 201 at 7.   Plaintiff's theory is, at its core, a fairly conventional one.  A plaintiff claims he was injured by a product that he was induced to purchase by allegedly fraudulent marketing practices, and he seeks to recover for the earnings he lost because of his injury. It would be difficult for defendants to argue that this represents some novel theory of relief, as, again, they repeatedly analogize plaintiff's claim to commonplace toxic-exposure cases.  See Docket # 200 at 7, 10-11; Docket # 201 at 7-8.

Thus, the fundamental question is not whether plaintiff's theory of liability or damages fits generally within the framework of a fraud claim — it does — but whether he can establish a sufficiently strong causal connection between defendants' fraud and his claimed injury (i.e., the bodily invasion of THC) and alleged damages (i.e., the loss of wages/benefits from his employment).  Proximate causation is an issue of fact for the jury. See Benitez v. N.Y.C. Bd. Of Educ., 73 N.Y.2d 650, 659 (1989); 79 N.Y.Jur.2d Negligence § 58.  At trial, the jury will be tasked with deciding whether defendants' fraud was "a substantial factor in bringing about [plaintiff's] injury [and associated damages],"

A-240

in that the fraud "had such an effect in producing the injury [and associated damages] . . . that reasonable people would regard it as a cause of the injury [and associated damages]." N.Y. Pattern Jury Instructions § 2:70 (discussing in negligence context); see also id. § 2:70 cmt. (noting that "[c]ausation is relevant both to liability and to damages"). Regarding the intervening acts of "independent" actors like plaintiff's former employer, the jury will be tasked with deciding whether "a reasonably prudent person in the defendant[s'] situation" would have "foreseen that an act of the kind committed by [the independent actor] would be a probable result" of their fraud. N.Y. Pattern Jury Instructions § 2:72 (discussing in the negligence context); see also id. cmt. ("Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed.").

To the extent defendants are inviting the Court to decide, as a matter of law, whether plaintiff will be able to sufficiently establish proximate causation at trial, the Court declines to do so. To be sure, "where only one conclusion may be drawn from the established facts[,] the question of legal cause may be decided as a matter of law." Benitez, 73 N.Y.2d at 659 (internal quotation marks and ellipsis omitted). But because proximate causation is

20

a factual issue, it necessarily requires careful examination of the underlying circumstances.  The time and place for that analysis is not now.  While the Court has permitted defendants to raise a dispositive issue with respect to the civil RICO claim at this late juncture, that is because it represents a purely legal issue that can be resolved on the papers.  Analyzing whether proximate causation can be adequately established is a factual issue deserving of fact-finding by a jury.  Even now, defendants have not submitted any sort of Rule 56 Statement of Facts or admissible evidence in connection with their motion and the Court will not embark on its own *sua sponte* analysis of the record to resolve the issue.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Defendants do raise other purely legal arguments concerning plaintiff's fraud claim, which the Court can dispose of now. First, defendants assert that "loss of earnings" damages are wholly unrecoverable in a fraud claim, allegedly due to New York's "out of pocket" rule.  This argument is unconvincing.

New York's "out-of-pocket" rule provides the "standard for measuring" the loss suffered due to fraud.  60A N.Y.Jur.2d <u>Fraud and Deceit</u> § 281.  It limits recoverable damages to "the actual pecuniary loss sustained as the direct result of the wrong."  <u>Sw. Inv'rs Grp., LLC v. JH Portfolio Debt Equities, LLC</u>, 93 N.Y.S.3d 775, 777 (4th Dep't 2019).  "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" — as a result, "there can be no recovery of profits which would have been realized in the absence of fraud."  <u>Lama Holding Co.</u>, 88 N.Y.2d at 421; <u>see also Pine Street Assocs., L.P. v. Hicks</u>, No. 651440-2011, 2012 WL 1946822, at *6 (N.Y. Sup. Ct. May 24, 2012) ("[F]raud damages are not intended to provide a victim with 'benefit of the bargain damages,' and are limited to indemnifying the injured party for the actual losses sustained, that is, 'out-of-pocket' damages.").  The rule's rationale "is that the value to the claimant of a hypothetical lost bargain is too undeterminable and speculative to constitute a cognizable basis for damages."  <u>Starr Foundation v. Am. Int'l Grp., Inc.</u>, 901 N.Y.S.2d 246, 250 (1st Dep't 2010) (internal quotation marks and citation omitted).

Relying on this rule, New York courts have sometimes held that a fraud plaintiff cannot recover for the "the loss of an

22

alternative bargain overlooked in favor of the fraudulent one."
Geary v. Hunton & Williams, 684 N.Y.S.2d 207, 207 (1st Dep't 1999).
Thus, lost profits which "would have been realized in the absence
of fraud" are not recoverable, Lama Holding Co., 88 N.Y.2d at 421,
nor are earnings that might be realized in connection with
hypothetical future employment. See, e.g., Mihalakis v. Cabrini
Med. Ctr. (CMC), 542 N.Y.S.2d 988, 990 (1st Dep't 1989) (medical
student could not recover damages for "future earnings as a doctor"
via fraud claim).

But these cases have no application here. Plaintiff is not
seeking to obtain hypothetical lost earnings for an unrealized
opportunity he could have undertaken absent the fraud; he is asking
for damages to compensate for the actual job he already lost. In
other words, we are not dealing with a hypothetical alternative
bargain, but a realized, demonstrable loss of employment. See
Cayuga Harvester, 465 N.Y.S.2d at 619 (stating that a plaintiff
may not recover "profits based on the bargain it was fraudulently
induced to make," but may recover damages for the "loss sustained
because it made the bargain"). As numerous cases demonstrate,
fraud claims premised on actual job loss are viable under New York
law. See, e.g., Leidl v. Please Hold (UK) Ltd., No. 17-CV-6134,
2018 WL 1089748, at *5 (S.D.N.Y. Feb. 2, 2018) (where plaintiffs

23

**A-244**

were fraudulently induced to quit employment, they were "entitled to any damages they actually suffered in the form of lost wages" (emphasis added)); Kwon v. Yun, 606 F. Supp. 2d 344, 361 (S.D.N.Y. 2009) (collecting cases for the proposition that "loss of benefits flowing from one's previous employment all are cognizable losses in employment-related fraudulent inducement cases"); Laduzinski v. Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229, 232 (1st Dep't 2015) (where plaintiff alleged he was fraudulently induced to quit job and accept new employment, concluding plaintiff had viable fraud claim and damages based on "his loss of employment"); Navaretta v. Grp. Health, 595 N.Y.S.2d 839, 841 (3d Dep't 1993) (plaintiff could recover "for injuries resulting from her reliance on defendant's allegedly false statements," including the "loss of benefits and salary connected with her former employment" (emphasis omitted)).

Of course, there is a separate question of how to calculate the value of lost employment. Because the fraud plaintiff would no longer have the job, any inquiry into compensation for that loss may entail "hypothetical" questions of what earnings the plaintiff would have made, how long the plaintiff would have worked, etc. But such hypotheticals are not the target of the out-of-pocket rule. The case of Laduzinski v. Alvarez & Marsal Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015) is directly on point.

24

There, a fraud plaintiff claimed he was induced to leave his former employment by the fraudulent misrepresentations of his new employer. Laduzinski, 16 N.Y.S.3d at 230-31. Citing the out-of-pocket rule, the defendants asserted that plaintiff could not recover "alleged loss of wages he claims he would have received from his prior [employer]." Brief for Defendants-Respondents, Laduzinski v. Alvarez & Marshal Taxand LLC, 16 N.Y.S.3d 229 (1st Dep't 2015), 2015 WL 9312574, at *38. The First Department rejected that argument, holding that plaintiff's damages were not "speculative" and represented "the sum necessary for restoration to the position occupied before the commission of the fraud." Laduzinski, 16 N.Y.S.3d at 232.

The Fourth Department articulated similar reasoning in Cayuga Harvester, where a fraud plaintiff lost a corn crop as a result of a fraudulent misrepresentation related to a defective machine. 465 N.Y.S.2d 606, 618 (4th Dep't 1983). It rejected the defendants' claim that the valuation of the lost crops must exclude any "element of profit." Id. at 619. Rather, the plaintiff was entitled to recover the "profits that [it] would normally receive from [the] corn crop if sold at market value as a return on its investment in labor, seed, fertilizer and other expenses in the

crop," since those profits and expenditures "were lost when the corn was destroyed." Id.

The distinction between unrealized future opportunities and actual lost employment makes sense in light of the overriding purpose of damages in the fraud context, which is "to restore a party to the position occupied before commission of the fraud." Alpert v. Shea Gould Climenko & Casey, 559 N.Y.S.2d 312, 314 (1st Dep't 1990). A party is entitled to recover not only the difference in value of a fraudulent bargain, but any and all "proximately caused damages." Carbon Capital Mgmt., LLC, 932 N.Y.S.2d at 494; see also Castle & Cooke v. Lincoln Mdse. Corp., 477 N.Y.S.2d 390, 390 (2d Dep't 1984) ("Out of Pocket considerations do not . . . prevent recovery of other consequential damages proximately caused by reliance upon the misrepresentation." (internal quotation marks and emphasis omitted)); Kaddo v. King Serv. Inc., 673 N.Y.S.2d 235, 237 (3d Dep't 1998) (distinguishing between "benefit of the bargain" damages, which are not recoverable in a fraud action, and "consequential damages flowing directly from the wrong," which are). It would be inconsistent with the fraud plaintiff's right to be fully indemnified for his losses to hold that lost earnings associated with actual job loss are never recoverable in a fraud

26

action.   Lama Holding Co., 88 N.Y.2d at 423.   Plus, it would conflict with those cases that unequivocally permit fraud plaintiffs to recover for personal injuries, which necessarily involve "pecuniary consequences" like "loss of earnings."  Doe, 958 F.2d at 770.   In short, New York law permits a fraud plaintiff to recover lost earnings resulting from actual job loss. Accordingly, the Court rejects defendants' first argument.

Next, defendants argue that one can only recover lost wages if "[the] alleged tort caused a loss of earning capacity." Docket # 194 at 6.

Much like their prior argument, this argument was addressed by the First Department's decision in Laduzinski.  16 N.Y.S.3d at 232.   To reiterate, the Laduzinski plaintiff alleged he was fraudulently induced to quit his employment and accept a new job offer, but he was subsequently fired once his new employer secured his contact list.  Id. at 230-31.  The plaintiff did not allege any loss of earning capacity but stated that the fraud caused him to leave "his stable and well compensated employment . . . , which brought about a setback in his career."  Id. at 231.  The court rejected defendants' argument that such damages were unrecoverable and held that the plaintiff could obtain damages to compensate for his lost employment and "restor[e] [him] to the position [he]

27

occupied before the commission of the fraud." <u>Id.</u> at 232. This holding cannot be reconciled with defendants' assertion, and I find the <u>Laduzinski</u> rationale both logical and persuasive.

Furthermore, the primary case on which defendants rely — <u>Clanton v. Agoglitta</u>, 615 N.Y.S.2d 68 (2d Dep't 1994) — does not stand for the broad proposition defendants ascribe to it. <u>Clanton</u> did not involve a fraud claim, but an automobile negligence action. <u>Clanton</u>, 615 N.Y.S.2d at 68. The issue before the Appellate Division was whether a jury verdict "as to damages for impairment of earning ability" deviated "materially from what would be reasonable compensation" for purposes of N.Y. C.P.L.R. § 5501(c), and the court noted that the "basic rule is that loss of earnings must be established with reasonable certainty" and that the analysis must focus "in part" on the plaintiff's "earning capacity both before and after the accident." <u>Id.</u> at 69. The court did not purport to make any broad holding regarding the availability of loss-of-earnings damages in a fraud action.

In sum, defendants have not persuaded the Court that plaintiff's requested damages are precluded under New York law.[3]

_____

[3] To the extent defendants are merely arguing that plaintiff failed to mitigate his damages, the Court declines to address that issue. Like the issue of causation, that is a fact-sensitive question that would need to be resolved through a thorough analysis of the record evidence, which cannot be undertaken

Because the Court has rejected defendants' arguments on the fraud claim, there is presently no reason why Dr. Zaporowski should be barred from testifying to the earnings and benefits plaintiff lost when he was terminated from his employment. Whether plaintiff can sufficiently connect those damages to defendants' fraud is an issue for the jury to decide at trial.

**Subject Matter Jurisdiction:** Because the Court informed the parties prior to the issuance of this Decision and Order that it intended to dismiss the civil RICO claim — the only remaining federal cause of action — it ordered supplemental briefing concerning the Court's continuing subject matter jurisdiction. The parties have filed their supplemental arguments, Docket ## 203-05, and they confirm to the Court that it continues to have subject matter jurisdiction over this matter.

First, diversity jurisdiction exists, insofar as plaintiff alleged damages exceeding $75,000 in good faith, Docket # 1; Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC, 124 F. Supp. 3d 237, 242 (E.D.N.Y. 2015), and the parties appear to agree there is complete diversity. Docket # 203 at 6; Docket # 204 at 2; see generally 28 U.S.C. § 1332. Second, even if it did not exist, the

---

summarily at this juncture. Defendants may, of course, raise this issue at trial.

Court would exercise its discretion to retain supplemental jurisdiction over the fraud claim under 28 U.S.C. § 1367. The relevant factors support the exercise of supplemental jurisdiction: this case has been pending for more than five years, it is ready for trial, there are no novel issues of state law, and it would be unfair to the parties to force them to restart the litigation in state court.  See generally Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 86 (2d Cir. 2018).

Accordingly, the Court retains subject matter jurisdiction over this action.

### CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART defendants' motion (Docket ## 194, 200). The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but defendants' motion is otherwise denied.

By separate order, the Court will set a status conference for the purpose of rescheduling the trial.

SO ORDERED.

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:    Rochester, New York
          September 14, 2021

30

**A-251**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                            Civil Action No: 15-CV701 (JWF)

               Plaintiffs,

           -against-                   ***NOTICE OF MOTION***

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

               Defendants,
-----------------------------------------------------------------X

      PLEASE TAKE NOTICE that pursuant to FRCP 54(b); and upon the annexed
Memorandum of Law, dated November 18, 2021 and all Exhibits, papers and proceedings
herewith and heretofore had herein, Plaintiff, by his counsel, will move this Court before the Hon.
Jonathan Feldman, United States Magistrate Judge at the U.S. Courthouse, 2 Niagara Square
Buffalo, New York 14202 for an Order pursuant to F.R.C.P. 54(b) granting Plaintiffs' Motion to
issue a final Order and Judgment by this Court as to the claims of Plaintiff, for purposes of appeal,
along with such other and further relief as this Court deems just proper.

      PLEASE TAKE FURTHER NOTICE that pursuant to Local Court Rules, answering/reply
affidavits, if any, are required served to the undersigned within fourteen (14) days.

Dated: New York, New York          Respectfully Submitted,
      November 18, 2021          THE LINDEN LAW GROUP, P.C.

                                     *Jeffrey Benjamin*
                                     Jeffrey Benjamin, Esq.
                                     5 Penn Plaza, 23rd Floor
                                     New York, New York 10001
                                   (212) 835-1532

To: *All parties via ECF*

**A-252**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____X
DOUGLAS HORN AND CINDY HARP-            Docket No. 1:15-cv-00701
HORN,
                    Plaintiffs,

-against-

MEDICAL MARIJUANA, INC.,
                    Defendant.
_____X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
(i) TO CERTIFY THE COURT'S SEPTEMBER 14, 2021 DECISION AS
AN APPEALABLE FINAL JUDGMENT; and (ii) FOR A STAY OF
PROCEEDINGS PENDING APPEAL**


Respectfully submitted,

THE LINDEN LAW GROUP, P.C.

*Jeffrey Benjamin*

By:  Jeffrey Benjamin, Esq.
*Attorney for Plaintiffs*
5 Penn Plaza, 23rd Floor
New York, NY 10001
(212) 835-1532
jbenjamin@nyfraudlaw.com


Dated: New York, New York
        November 19, 2021

A-253

<u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................1

PROCEDURAL HISTORY ...............................................................................................3

ARGUMENT.....................................................................................................................5

    I.     REQUIREMENTS OF FRCP RULE 54(B)....................................................5

    II.    THE RICO CLAIM SHOULD BE IMMEDIATELY APPEALABLE...........6

    III.   THE COURT SHOULD STAY THE TRIAL PENDING APPEAL OF
          THE RICO CLAIM ........................................................................................8

CONCLUSION ..................................................................................................................8

<u>TABLE OF AUTHORITIES</u>

**Cases:**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997).........6, 7

*Bricklayers and Allied Craftworkers Local 2 v. Wietecha Enterprises, Inc.*, No. 1:15-cv-0582, 2017 WL 5905569 (N.D.N.Y. November 30, 2017)..............................................5, 6

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987)................................................................6, 7

*Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) ..............................5

*Horn v. Medical Marijuana, Inc.*, No. 19-1437 [Doc. 45] (dated November 12, 2019)...........2

*Polycast Technology Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244 (S.D.N.Y. May 4, 1992)............................................................................................................................................7

**Rules:**

28 U.S.C. § 1291 .........................................................................................................................5

Fed. R. App. P. Rule 8(a)(1)(A) ................................................................................................8

Fed. R. Civ. P. Rule 54(b) ...........................................................................................3, 4, 5, 7, 8

A-255

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                              Civil Action No: 15-CV-701 (JWF)

            Plaintiffs,

            -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

            Defendants,
----------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION (i) TO CERTIFY THE COURT'S SEPTEMBER 14, 2021 DECISION AS AN APPEALABLE FINAL JUDGMENT; and (ii) FOR A STAY OF PROCEEDINGS PENDING APPEAL

Plaintiff Douglas Horn, by and through his undersigned counsel, hereby submit this memorandum of law in support of his motion (i) to certify the Court's September 14, 2021 Decision and Order [Doc 206] as an appealable final judgment; and (ii) for a stay of proceedings pending decision on appeal.

### PRELIMINARY STATEMENT

Plaintiffs commenced this action on August 6, 2015.  [Doc. 1] (Complaint).  Along with certain New York common law claims either withdrawn or dismissed, the crux of Plaintiff's lawsuit lay in the first three causes of action:

    Count I:        Deceptive Business Practices/False Advertising (*Id.* at p. 8)

    Count II:       RICO Violations (*Id.* at p. 9)

    Count III:      Fraudulent Inducement (*Id.* at p. 11)

The RICO violations in Count II included two prongs: i) that the THC content in Defendants' Dixie X Elixir product made it a "Controlled Substance" violative of the federal

1

Case 22-349, Document 54, 07/15/2022, 3348706, Page259 of 288

Controlled Substances Act; and 2) that the sending of the product to Plaintiff across state lines in interstate commerce was mail and wire fraud also violative of RICO.

On September 14, 2021 at Doc #206, this Court dismissed Plaintiff's last statutory claim under RICO, that of mail and wire fraud. In summary, the Court defined Plaintiff's case as one of personal injury or "bodily invasion" and as such ruled that Plaintiff's sole claim for damages, his economic loss of earnings as a truck driver, is not recoverable under RICO.

This motion is Plaintiff's respectful "response" to the Court's defining away of Plaintiff's RICO claim for damages. Plaintiff is master of his own pleading. Not only did he not plead a personal injury or bodily injury case, but he did also not conduct discovery, testify in Affidavit or in deposition, or allege damages consistent with a personal injury case. Plaintiff seeks no damages for pain and suffering; he did not allege negligence leading to bodily injury, but only as to Defendants' *manufacturing, promotion and advertising process* leading to his loss of earnings. He has never called a medical doctor expert to testify as to bodily injury or invasion. In sum, he has never put forward any of the typical, or even prefatory, indicators of a personal injury/bodily invasion case.

From his case's beginning in 2015, Plaintiff has prosecuted this case as a consumer fraud stemming from false advertising of a product. His damages have always been solely economic. He has never maintained that the loss of his job came from his physical inability to work, but only from false representations by Defendants in YouTube, print and internet advertising, and the label on the product itself.

Respectfully contrary to the Court's opinion, the factual and legal issues originally brought by Plaintiff and that which remain today are indeed novel. In certain proposed questions to the jury by the Defendants' herein, they asked this Court to ask the jury if they have "ever heard that eating

2

a poppyseed muffin, bagel, or granola bars can result in failing a drug test." Mr. Horn's case was as simple as him eating a product and then testing positive. It was never of him eating a product and needing continued medical treatment and therapy the next day. The Court's recent decision defining the case in a way Plaintiff never intended or conducted, should respectfully be researched, written upon, and submitted to the Second Circuit before trial.

It is specifically because these issues are novel in this District and in this Circuit, that Plaintiff respectfully requests the Second Circuit should consider them before trial. Otherwise, Plaintiff contends there is a risk that Plaintiff, and indeed the Defendants, will be subject to a second trial and post-trial appeals.

Plaintiff for his part, would intend to handle any appeal, if certified by this Court, in the most expeditious fashion.

## PROCEDURAL HISTORY

A.     On August 30, 2018, Defendant Medical Marijuana, Inc. (Defendant "**MMI**") moved for summary judgment. [Doc. 61].  After substantial briefing, argument and consideration, the Court, in its Decision and Order dated April 17, 2019 [Doc. 88] granted the motion in part and sustained Plaintiff's claims on Counts II (RICO Violation) and III (Fraud).  The balance of this significant litigation was premised on and relied upon this ruling.

B.     On August 9, 2019, Plaintiffs moved, per Federal Rule of Civil Procedure ("FRCP") 54(b) for an Order certifying the dismissal of all of Cindy's claims as final, so that she could appeal prior to final judgment after trial.  [Doc. 102].

C.     On August 14, 2019, Douglas also sought final judgment as to the dismissal of Count I (New York General Business Law Sections 349 for Deceptive Practice and 350 for False Advertising) [Doc. 104].  Thus, by way of Docs. 102 and 104, Plaintiffs sought "certification under

FRCP 54(b) and an order of Entry of final judgment against both CINDY and DOUGLAS, and an express determination that there is no just reason for delay of both Plaintiffs' appeal." [Doc. 104].

D.      By Decision and Order dated October 3, 2019 [Doc. 115], the Court denied Plaintiffs' motions, though it recognized the threat Plaintiff contends here: "it would not advance the interests of sound judicial administration of efficiency to have piecemeal appeals that require two . . . three-judge panels to familiarize themselves with [t]he case in successive appeals." *Id.* at p.3 (internal quotation marks and citations omitted).

E.      By Decision and Order dated November 22, 2019 [Doc. 124], the Court held that Defendants' respective motions for reconsideration [Docs. 97 and 106] were granted in part and denied in part.  Its November 22, 2019 Decision modified the Court's prior order "insofar as Douglas Horn may now proceed with his RICO claim only to the extent it is premised on predicate acts of wire and mail fraud.  He may not proceed with his claim on the theory that Dixie X is a controlled substance." *Id.* at p. 10.  Again, this Court sustained Plaintiffs' RICO claims, albeit as modified.

F.      Then one (1) day before jury selection and trial, the Court entertained a latent application by the Defendants and, by Decision and Order dated September 14, 2021, dismissed Douglas's remaining RICO claim.  The Court stated that Plaintiff's loss of earnings damages was not recoverable under RICO because they are predicated upon the bodily invasion suffered when Plaintiff ingested Defendant's THC product (Dixie X).  The Court stated, "In other words, what connects defendants' fraudulent scheme to plaintiff's loss of employment and earnings is a personal injury:  the bodily invasion that plaintiff suffered when he unwittingly ingested TCH." *Id.* at 8-9 (citations omitted).  It is respectfully contended that this ruling was an abuse of discretion, or erroneous as a matter of law on a novel issue the Second Circuit should consider before trial.

4

**A-259**

It is unclear to Plaintiff why summary dismissals of all of his statutory causes of action took three (3) separate decisions. The threat to Plaintiff of going to trial under these circumstances is that he will be effectively deprived of his day in Court on these certain issues.  Again, Plaintiff's only alleged damages are economic and pecuniary and resulted from the Defendants' improper manufacturing, advertising, and marketing efforts. While Plaintiff certainly wants to get to trial one day, there is no real prejudice or emergent need to try the fraud claim before the statutory claim(s) is at least considered by the Second Circuit. And given what Plaintiff has vehemently contended to be the prejudicial lateness of Defendants' motion on the RICO claim, a temporary pause to allow Plaintiff to take the case up would seem fair and in the interests of justice.

## ARGUMENT

### I.  Requirements of FRCP Rule 54(b)

FRCP Rule 54(b) states:

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay....

As the Northern District explained in *Bricklayers and Allied Craftworkers Local 2 v. Wietecha Enterprises, Inc.*, No. 1:15-cv-0582, 2017 WL 5905569 (N.D.N.Y. November 30, 2017), the court may issue a final judgment under Rule 54 where, "(1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment."  *Id.* (citing *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992)). Moreover, "[t]o be appropriate, a Rule 54(b) must take account of both the policy against

piecemeal appeals and the equities between or among the parties…  It is therefore proper for the District Judge to consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determine is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (internal quotation marks and citation omitted).

In this regard, the Second Circuit has squarely held that "a district court may properly make a finding that there is no just reason for delay only when "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (quoting *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987)).  One example of such hardship or injustice is "where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim was reversed in time to be tried with the other claims [.]" Bricklayers *v. Wietecha*, 2017 WL 5905569, at *3 (quoting *Advanced Magnetics*, 106 F.3d at 16)).  There is simply no reason or prejudice that would arise from permitting an immediate appeal and holding the fraudulent inducement claim in abeyance pending its outcome.

**II.     The RICO Claim Should Be Immediately Appealable**

Under the totality of the circumstances presented here, the Court should direct entry of a final judgment as to the RICO claim, as the Court's decision that the damages sought via RICO constituted impermissible personal injury damages is a distinct issue unrelated to the fraud claim. Akin to the present case, in *Cullen v. Margiotta*, 811 F.2d 698, 712 (2d Cir. 1987) (*rev'd on other grounds*), the Second Circuit held that "plaintiffs' RICO claims are sufficiently distinct from their [Section] 1983 claims that the entry of an early final judgment dismissing the RICO claims was not precluded."  The Court explained that "[w]hile the two sets of claims arise from the same

6

underlying facts, both their elements and the potential recoveries differ." *Id.* (holding that "if the RICO claims are viable, judicial economy will be served by having them reinstated immediately rather than after a prolonged remedy-determining process that might then have to be repeated).

In *Polycast Technology Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244 (S.D.N.Y. May 4, 1992), the Southern District explained why an immediate appeal of a RICO denial was appropriate: "If my judgment on the issue is reversed by the court of appeals after what is sure to be a protracted trial, then the case will have to be tried again with the RICO claim reinstated." *Id.* at 278. The Court thus found "no just reason for the delay," and directed the Clerk to enter judgment dismissing the claim. The Court relied on *Cullen* in making its ruling. *Id.*

Similarly, in *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997)—a case involving alleged violations of the Securities Exchange Act—the Court held that the district court had properly certified a final judgment pursuant to Rule 54(b) thus allowing an appeal of certain claims. The Court reasoned that plaintiff's (still active) claims and those of certain shareholders (whose claims had been dismissed) were each based on a single offering of stock by the defendants. Thus, as discussed, it was efficient case management for plaintiff's and the shareholders' claims (if reinstated) to be tried together since only one jury would be employed to learn the terms of and events of the offering and short sale. The court noted that even though the Rule 54(b) judgment might have resulted in piecemeal appeals, the Rule 54(b) certification was appropriate because it would not have resulted in overlapping issues for the appellate court.

As the Court here is aware, in this case the Plaintiff's claims involve the actions and misrepresentations of the Defendant resulting in Douglas's termination from his employment. If the RICO claim is reversed, Douglas will be forced to try the case twice (once for fraud and again for RICO). The financial and personal hardship to Douglas, a cross-country truck driver, in

addition to the delay occasioned by the Defendants' 12-hour motion, would be untold.  Moreover, a jury should not have to be empaneled twice.  Because the RICO issue to be appealed (whether or not Douglas's damages are recoverable under RICO) is distinct from other issues that may be appealed, there is no risk of duplication in the appellate court.  For all of the foregoing reasons, an interlocutory appeal is appropriate herein.

**III.     The Court Should Stay the Trial Pending Appeal of the RICO Claim**

Since no true prejudice will ensue, this Court should stay the trial on the fraud claim pending resolution on appeal of the RICO claim.  *See* Federal Rule of Appellate Procedure 8(a)(1)(A).

<u>**CONCLUSION**</u>

For the reasons stated above, it is respectfully requested that the Court issue an Order (i) granting Plaintiffs' motion for certification of the RICO dismissal pursuant to Rule 54(b); (ii) staying further proceedings pending appeal; and (iii) granting such other and further relief as this Court deems just and appropriate.

DATED:        New York, New York
              November 19, 2021               Respectfully,

                                              THE LINDEN LAW GROUP, P.C.

                                              *Jeffrey Benjamin*

                                              By:  Jeffrey Benjamin, Esq.
                                              *Attorney for Plaintiffs*
                                              5 Penn Plaza, 23rd Floor
                                              New York, NY 10001
                                              (212) 835-1532
                                              jbenjamin@nyfraudlaw.com

8

**A-263**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DOUGLAS J. HORN,

Plaintiff,

vs.

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC,
RED DICE HOLDINGS, LLC,
DIXIE BOTANICALS,

Defendants.

---

Case No. 1:15-cv-00701-JWF

---

**MEMORANDUM OF LAW OF MEDICAL MARIJUANA, INC.,
AND RED DICE HOLDINGS, LLC, IN RESPONSE TO PLAINTIFF'S
MOTION TO CERTIFY THE COURT'S SEPTEMBER 14, 2021 DECISION
AS AN APPEALABLE FINAL JUDGMENT**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

A-264

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 3

    I.     IMMEDIATE CERTIFICATION MAY BE WARRANTED WITH RESPECT
          TO THE DISMISSAL OF THE CIVIL RICO CAUSE OF ACTION, ALONE .......... 3

CONCLUSION .......................................................................................................... 6

i

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

## TABLE OF AUTHORITIES

**Federal Rules**

FRCP Rule 54(b)................................................................................................................1, 2, 3

**Cases**

*Cullen v. Margiotta*, 811 F.2d 698, 712 (2d Cir. 1987)...................................................4

*Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 278 (S.D.N.Y. 1992) .........................4

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

## PRELIMINARY STATEMENT

Defendants, Medical Marijuana Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by their undersigned counsel, submit the following memorandum of law in response to Plaintiff's two-part motion (Doc. 208) asking the Court: 1) to certify the Court's September 14, 2021 decision as an appealable final judgment; and 2) for a stay of proceedings pending appeal.

First, it is worth pointing out that this is not the first time that Plaintiff has requested similar relief. On August 9, 2019, Plaintiff filed another motion, also pursuant to FRCP 54(b), seeking an immediate appeal of the order dismissing Cindy Harp-Horn from this action (Doc. 102). Judge Geraci denied that motion (Doc. 115) on the grounds that:

> Both the surviving claims and the failed claims arise from the same underlying set of facts: Plaintiff's purchase and use of Defendant's product and Douglas' subsequent failed drug test. Thus, if Plaintiffs were permitted to appeal some of their claims, the Second Circuit would be "forced to review identical facts" in any subsequent appeal after trial.

> Doc. 115 at pp. 2 – 3.

Judge Geraci further held that there are "no countervailing equities that would justify partial judgment notwithstanding the relatedness of the claims at issue. Contrary to Plaintiffs' argument, the mere risk that Plaintiffs could incur additional expense if a second trial is required is not enough to justify partial judgment under these circumstances." *Id.* at 3.

Additionally, more recently, although Plaintiff did not make a motion pursuant to FRCP 54(b), he did informally ask for essentially the same relief in a short letter to this Court dated August 10, 2021, which was in response to the Court's request for party positions on jurisdiction (Doc. 205). Plaintiff stated:

> Plaintiff requests herein that pursuant to the provisions of 28 USC 1367(c), the Court decline supplemental jurisdiction over the fraud

1

Case 22-349, Document 54, 07/15/2022, 3348706, Page270 of 288

**A-267**

claim leaving Plaintiff to file in state court, **or otherwise pursuant to FRCP 54(b) the Court certify final judgment as to all prior dismissed claims in this matter.**

(Emphasis added.)

In its September 14, 2021 Decision and Order (Doc. 206 – the very order that Plaintiff now seeks to convert to a final judgment), the Court did not explicitly respond to Plaintiff's informal request to "certify final judgment as to all prior dismissed claims in this matter" pursuant to FRCP 54(b).

As such, although Plaintiff previously requested a final judgment with respect to Cindy Harp-Horn's dismissed claim (Doc. 102), and informally requested final judgment with respect to "all prior dismissed claims" prior to the issuance of the September 14, 2021 order (Doc. 205), it does not appear that Plaintiff has ever requested the specific relief that he seeks on this motion (Doc. 208) – final judgment certification of the order (Doc. 206) that dismissed Plaintiff's civil RICO claim.

However, even though this relief was not specifically previously requested, MMI/RDH submits that Plaintiff certainly could have made the present motion prior to two weeks before the final pre-trial conference (and the week prior to Thanksgiving). Plaintiff and his counsel, having already exhibited full understanding of how FRCP Rule 54(b) works, should have been aware of the grounds for this motion as soon as they read the September 14, 2021 order.

Regardless of the foregoing, MMI/RDH neither opposes nor supports Plaintiff's present motion and only submits the following for the Court's consideration.

MMI/RDH submits that there may be considerations, specific to the RICO cause of action and the circumstances of this case, which would warrant the immediate appeal of the dismissal of the RICO cause of action <u>only</u>. For the reasons stated below, immediate appeal of this

2

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

**A-268**

order can be seen as distinct from something like the immediate appeal of Cindy Harp-Horn's claims in that it could prevent the potential waste of judicial resources and increase the likelihood of settlement. However, ultimately, MMI/RDH defers to the Court's judgment as to what course of action is most likely to lead to an expeditious resolution of this matter.[1]

## ARGUMENT

## POINT I

## IMMEDIATE CERTIFICATION MAY BE WARRANTED WITH RESPECT TO THE DISMISSAL OF THE CIVIL RICO CAUSE OF ACTION, ALONE

As stated above, the parties are already well-briefed on the standard for entering a final judgment on a separate claim pursuant to FRCP Rule 54(b). Judge Geraci previously considered a motion on this basis with respect to Cindy Harp-Horn's claims and denied the same on two major grounds: 1) that the surviving claims and the failed claims arise from the same underlying set of facts; and 2) that there were no countervailing equities.

While, on the surface, the failed RICO cause of action arises from the same underlying set of facts as the surviving fraudulent inducement cause of action – there are actually few common facts on which dismissal of the RICO cause of action would be appealed.

This Court's dismissal of Plaintiff's RICO claim was based on a legal interpretation of the type of damages that are specifically recoverable in a RICO cause of action, holding that "because plaintiff's loss of earnings flows from, and is derivative of, a personal injury he suffered, his lost earnings do not constitute an injury 'to business or property' that is recoverable in a civil RICO action" (Doc. 206 at p. 13 – 14).

---

[1] Counsel for co-defendant, Dixie Holdings, LLC, has communicated to us that they join with MMI/RDH with respect to this submission.

3

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

It does not appear that there is much, if any, overlap between this discrete issue and any other issue that is presently before the Court because this is an issue that is unique to a civil RICO claim. As such, even though the RICO claim arises from the same set of facts as the fraudulent inducement claim, those common facts are not strictly necessary to a determination of whether the September 14, 2021 order was correctly decided under the law.

This is distinct from a claim like Cindy Harp-Horn's, which was entirely derivative of Plaintiff's claim. As such, Judge Geraci correctly noted that "the Second Circuit would be 'forced to review identical facts' in any subsequent appeal after trial" with respect to Cindy's claim, but the same is not necessarily applicable with respect to review of the RICO claim.

Indeed, Plaintiff has cited to several cases which seem to recognize that RICO claims are potentially distinct. However, it should be noted that in *Cullen v. Margiotta*, 811 F.2d 698, 712 (2d Cir. 1987), the court held that even if two sets of claims arise from the same underlying facts, one claim might be separately appealable where "both their elements and the potential recoveries differ." Here, the "elements" of the RICO claims and the fraudulent inducement claims are similar; however, their "potential recoveries" do differ. Indeed, it is the difference in these "potential recoveries" that caused the RICO cause of action to be dismissed in the first place.

*Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 278 (S.D.N.Y. 1992) is more similar to the present matter in that also involved a common law fraud claim and a RICO claim that was dismissed because on an issue that is unique to RICO, namely, whether or not plaintiffs could satisfy the continuity requirement of a RICO claim. In allowing for immediate appeal, the court recognized that "whether or not trebled damages are available to plaintiffs if they

4

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

prevail on the merits is a question of considerable importance to all parties" and "an appellate ruling on the issue in advance of trial may enhance settlement negotiations."

With respect to the "countervailing equities" portion of analysis, as Judge Geraci previously noted, the "mere risk that Plaintiffs could incur additional expense if a second trial is required is not enough to justify partial judgment under these circumstances" (Doc 115 at 3).

As such, Plaintiff's protestations that if the "RICO claim is reversed, [he] will be forced to try the case twice (once for fraud and again for RICO)" does not necessarily meet the standard of a "countervailing equity" alone. However, MMI/RDH would submit that, similar to those recognized by the *Polycast* court, there are additional pragmatic considerations given the nature of the cause of action sought to be appealed and the specifics of this case which could provide the necessary "countervailing equities."

It does not appear to be any secret that Plaintiff considers the civil RICO cause of action (and the treble damages that come with it) to be vitally important to his case. The dismissal of the same is, inevitably, going to be appealed by Plaintiff, whether before or after the trial presently scheduled for January 2022. Though MMI/RDH is confident in its position with respect to the dismissal of the RICO claim, which was adopted by this Court in its September 14, 2021 order, MMI/RDH can also recognize that this is an issue that has not been extremely well-developed at the appellate-level and would not be a garden-variety appeal.

Rather than have the propriety of the dismissal of the RICO claim hanging over this case while it proceeds to trial, it may be best to have the Second Circuit weigh in immediately. Not only would this prevent the potential for multiple trials if the decision is overturned, but it would also provide the potential for finality if the decision is affirmed. All parties seem to tacitly understand that the RICO claim is at the heart of Plaintiff's case. If it is affirmed that the RICO

5

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

claim was properly dismissed, Plaintiff may re-evaluate his position in this case and whether he wishes to proceed to trial at all, knowing that RICO damages are forever off the table.

In other words, final resolution with respect to the RICO claim, alone, could drastically increase the chance of settlement.

As an alternative, MMI/RDH also offers the suggestion that if Plaintiff voluntarily discontinues his fraudulent inducement cause of action, with prejudice, Plaintiff would not only have the immediate right to appeal the dismissal of the RICO claim, but the right to appeal all other dismissed claims as well. It is our understanding that this idea has been presented to Plaintiff's counsel but that he has yet to respond with respect to the same.

## CONCLUSION

Based on the foregoing, MMI/RDH respectfully submits that it defers to this Court's judgment in determining the course of action that is most likely to lead to the expeditious resolution of this action and best administer and conserve the resources of the judiciary and the parties.

DATED:      Buffalo, New York
            November 29, 2021

Respectfully submitted,

Scott D. Mancuso, Esq.
Roy A. Mura, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants Medical Marijuana Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
scott.mancuso@muralaw.com
roy.mura@muralaw.com

6

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN, et al.,

                              Plaintiffs,                    **Decision and Order**

            v.                                               15-CV-701-JWF

MEDICAL MARIJUANA, INC., et al.,

                              Defendants.


**PRELIMINARY STATEMENT**

On July 22, 2021 — four days before trial — defendant Dixie Holdings, LLC filed a motion in which it identified potentially dispositive defects with plaintiff Douglas J. Horn's two remaining claims: (1) a civil RICO claim premised on mail and wire fraud, and (2) a state-law claim for fraudulent inducement. See Docket # 194. The trial was cancelled. After motion practice, the Court dismissed plaintiff's civil RICO claim. See Horn v. Medical Marijuana, Inc., No. 15-CV-701, 2021 WL 4173195 (W.D.N.Y. Sept. 14, 2021) [hereinafter Horn II]. Trial on the fraud claim was rescheduled to January 2022, but on November 19, 2021, plaintiff moved for entry of judgment on his civil RICO claim, pursuant to Federal Rule of Civil Procedure 54(b), with the intent to immediately appeal the Court's ruling. Docket # 208. Defendants do not oppose Plaintiff's motion. Docket # 213 at 5-6; Docket #

214 at 1 n.1.  Because of the unusual procedural history of this case, the discreteness of the issue to be appealed, and plaintiff's unique circumstances, the Court GRANTS plaintiff's motion.

## DISCUSSION

Rule 54(b) provides:

When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added).  The Rule creates "an exception to the general principle that a final judgment is proper only after the rights and liabilities of all the parties to the action have been adjudicated." Hogan v. Consol. Rail Corp., 961 F.2d 1021, 1024-25 (2d Cir. 1992). "The determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court." Id. at 1025. While "sound judicial administration does not require that Rule 54(b) requests be granted routinely," the "task of weighing and balancing the contending

2

factors is peculiarly one for the trial judge, who can explore all the facets of the case." Id. at 10, 12.

"Rule 54(b) authorizes a district court to enter partial final judgment when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." Linde v. Arab Bank, PLC, 882 F.3d 314, 322-23 (2d Cir. 2018) (internal quotation marks and brackets omitted). The first two requirements are met here. See Estate of Metzermacher v. Nat'l R.R. Passenger Corp., 487 F. Supp. 2d 24, 27 (D. Conn. 2007) (dismissed claims were "finally determined" for purposes of Rule 54(b)).

The Court therefore will focus on the third requirement. "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in [a] setting such as this, a district court [is to] take into account judicial administrative interests as well as the equities involved." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980); see also Novick v. AXA Network, LLC, 642 F.3d 304, 310-11 (2d Cir. 2011). Both factors

3

favor the entry of partial final judgment as to the civil RICO claim premised on mail and wire fraud.

On the issue of judicial economy, a court's assessment of "judicial administrative interests" is necessary to "preserve[] the historic federal policy against piecemeal appeals." Novick, 642 F.3d at 310-11 (emphasis omitted). A court should consider "such factors as whether the claims [at issue are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." Curtiss-Wright, 446 U.S. at 8. That is, "a Rule 54(b) certification of the dismissal of fewer than all the claims in an action should not be granted if the same or closely related issues remain to be litigated." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991) (internal quotation marks omitted).

The claim to be certified here is "separable or extricable" from plaintiff's surviving fraud claim and the other claims that have previously been dismissed. Ginett v. Comput. Task Grp., Inc., 962 F.2d 1085, 1096 (2d Cir. 1992) (internal quotation marks omitted). To be sure, all of plaintiff's claims "stem from essentially the same factual allegations," Cullen v. Margiotta,

4

618 F.2d 226, 228 (2d Cir. 1980), but that fact alone is not dispositive. See Ginett, 962 F.2d at 1095 ("[I]nterrelatedness cannot, in itself, 'inextricably intertwine' the claims so as to preclude appellate review; otherwise, . . . every multiclaim case[] would elude the entry of a rule 54(b) judgment, and rule 54(b) would be meaningless."). "Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification." Id.

Here, plaintiff seeks to appeal a narrow, dispositive issue with respect to his civil RICO claim premised on mail and wire fraud: whether his "requested 'loss of earnings' damages are [] recoverable in a civil RICO action," where the lost earnings are "predicated on the bodily invasion [he] allegedly sustained when THC was introduced into his system through the ingestion of Dixie X." Horn II, 2021 WL 4173195, at *2. In other words, the dispute is whether plaintiff's theory for damages is legally cognizable in a civil RICO cause of action. That is a discrete question of statutory interpretation, and neither the previously dismissed claims nor the remaining fraud claim implicate that question in a way that would create a risk that the Second Circuit would be "forced to review . . . identical legal issues in multiple

5

appeals."[1]  Nat'l Asbestos Workers Med. Fund v. Philip Morris,
Inc., 71 F. Supp. 2d 139, 154 (E.D.N.Y. 1999).

Likewise, there is little risk that successive appellate
panels would need to retread the same factual ground.  See id.;
see also Arlinghaus v. Ritenour, 543 F.2d 461, 464 (2d Cir. 1976)
(certification inappropriate where appellate court would be
required to "review the same conduct twice").  In this respect,
the present circumstances are unusual.  Even in cases where the
requested immediate appeal presents a discrete legal question,
Rule 54(b) certification may be properly denied on the basis that
a "fulsome review" of the legal issue requires consideration of
the same underlying factual record relevant to the remaining
claims.  In re Trilegiant Corp., No. 12-CV-396, 2015 WL 13901228,
at *5 (D. Conn. Mar. 26, 2015); see, e.g., Novick, 642 F.3d at
313-14; Uni-Rty Corp. v. Guangdong Bldg., Inc., 249 F.R.D. 149,
152 (S.D.N.Y. 2008) (certification of civil RICO claims
inappropriate where successive appellate panels would need to

---

[1] To the contrary, resolution of this issue through Rule 54(b) certification
could have the effect of significantly shrinking any subsequent appeal.  If the
Second Circuit were to affirm the Court's ruling, plaintiff's other, previously
dismissed RICO claims would likely fail for the same reason, and it would
therefore be unnecessary to address the separate legal grounds on which District
Judge Geraci relied to dismiss them.  See generally Horn v. Med. Marijuana,
Inc., 383 F. Supp. 3d 114 (W.D.N.Y. 2019), modified on reconsideration, 2019 WL
11287650 (Nov. 22, 2019).

"familiarize themselves with th[e] complicated factual history" of the case in order to address issue of proximate causation).

By contrast, an assessment of the civil RICO claim which plaintiff seeks to appeal would demand little analysis of the underlying facts. The parties agree that it is simply a question of whether, assuming he has sufficient facts to prove his theory, plaintiff's requested "loss of earnings" damages are legally recoverable via a civil RICO action.[2]  Horn II, 2021 WL 4173195, at *3 (quoting plaintiff's brief at Docket # 198 at 7).   The underlying factual record is largely irrelevant, as this Court's Decision & Order on the issue demonstrates.  See id. at *2-5.   In addition, pretrial resolution of the RICO issue via Rule 54(b) certification will impact the length of the trial, the proof at trial, the arguments of counsel, and the instructions given to the jury at the close of the case, further serving the interest of judicial economy.

Therefore, because "[t]he issue presented here . . . is a discrete and straightforward legal issue which the Court of Appeals

---

[2] In his Rule 54(b) motion, plaintiff now accuses the Court of "defining away" his claim by framing his damages in terms of "personal injury/bodily invasion." Docket # 208-1 at 5.  While plaintiff is clearly critical of the Court's rationale, the Court does not interpret plaintiff's remarks to mean that he is retracting his prior acknowledgment that the "nexus between the RICO violations" and his "resulting economic damages" is the "harm of the THC that was introduced into [his] system."  Docket # 198 at 7.

7

can resolve quickly and which will serve the goal of judicial economy," judicial administrative interests do not militate against certification. Roebuck v. Guttman, 678 F. Supp. 68, 70 (S.D.N.Y. 1988).

The equities also favor the immediate entry of judgment. Ordinarily, the most obvious factor weighing against an immediate appeal is that it "simply delays trial." Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 942 (2d Cir. 1968). That concern is not so salient here. This case has been ready for trial since December 2019. Docket # 125. With the COVID-19 pandemic, scheduling conflicts among counsel, and intervening motion practice, trial was delayed to January 2022. On December 2, 2021, the Court held a status conference and indicated that it intended to grant plaintiff's Rule 54(b) motion. See Docket # 216. At the time of the status conference, it was far from clear that the trial could even proceed on schedule: as the Court previously informed the parties, there were other trials scheduled for the same timeframe that could have taken priority over this case, and, unfortunately, COVID transmission had been extremely high in Western New York in the preceding weeks.[3] Cf. Vaad L'Hafotzas Sichos, Inc. v. Kehot

---

[3] Indeed, the highly transmissible Omicron variant has since emerged, which may have necessitated an adjournment of trial regardless of the merits of the Rule

8

<u>Pub'n Soc'y</u>, No. 10-CV-4976, 2014 WL 1026592, at *2 (E.D.N.Y. Mar. 20, 2014) (denying certification where the court was confident it could try the case "and render a final, appealable judgment in less time than it would take to pursue an immediate appeal to completion"). The potential for further delay due to the pandemic and possible scheduling conflicts, and the parties' agreement that an immediate appeal is appropriate, diminish the Court's otherwise strong intent to give the parties their day in court. <u>Cf. Gidatex, S.r.L. v. Campaniello Imps., Ltd.</u>, 73 F. Supp. 2d 345, 348 (S.D.N.Y. 1999) (finding that equities did not favor certification where nonmoving party "vigorously oppose[d] postponement of the trial date").

More importantly, the potential for "hardship or injustice," <u>Harriscom</u>, 947 F.2d at 629, and the interest of "fairness to the parties," <u>New York v. AMRO Realty Corp.</u>, 936 F.2d 1420, 1426 (2d Cir. 1991), weigh heavily in favor of certification. The claim plaintiff seeks to immediately appeal was dismissed days before trial and resulted in the cancellation of trial. Plaintiff, a cross-country truck driver by trade, was thereby forced to incur "a substantial loss of money and time" due to the sunk costs of

---

54(b) motion. In-person court appearances, including jury trials, have been significantly reduced in 2022.

travel and trial preparation.  Docket # 198 at 6 n.2; see also
Docket # 208-1 at 10-11.  The unique financial and personal
hardships that plaintiff has already faced, and may face again if
the Court's ruling on the RICO claim is reversed, render the risk
of duplicative trials more unfair and harsh than in the mine run
of cases.  See In re Gentiva Secs. Litig., 2 F. Supp. 3d 384, 390
(E.D.N.Y. 2014) ("The mere potential for duplicative trials should
not by itself result in 54(b) certification, except in the
infrequent harsh case." (internal quotation marks omitted and
emphasis added)); Bowne of New York City, Inc. v. AmBase Corp.,
161 F.R.D. 270, 273 (S.D.N.Y. 1995) (in deciding whether partial
final judgment is appropriate, a court "can take into account
whether delay would cause financial hardship to either party").
Plus, as defendants point out, definitive appellate resolution of
plaintiff's civil RICO claim could dramatically alter the
potential damages, see 18 U.S.C. § 1964(c), and may therefore help
to facilitate settlement of this matter.  See Docket # 213 at 9;
see also Curtiss-Wright, 446 U.S. at 8 n.2; Polycast Tech. Corp.
v. Uniroyal, Inc., 792 F. Supp. 244, 278 (S.D.N.Y. 1992)("Whether
or not trebled damages are available to plaintiffs if they prevail
on the merits is a question of considerable importance to all

10

parties.  An appellate ruling on the issue in advance of trial may enhance settlement negotiations.").

For these reasons, the Court concludes that there is "no just reason[] to delay the appeal." Curtiss-Wright Corp., 446 U.S. at 8.  In reaching this conclusion, the Court is mindful that Judge Geraci previously denied a Rule 54(b) motion filed by plaintiff with respect to the claims dismissed at summary judgment.  See Horn v. Med. Marijuana, Inc., No. 15-CV-701, 2019 WL 4871499 (W.D.N.Y. Oct. 3, 2019).  However, the certification request that Judge Geraci considered — entry of partial final judgment as to all of Cindy Harp-Horn's claims as well as Douglas Horn's claims under Sections 349 and 350 of New York General Business Law — stands in stark contrast to the narrow request before this Court. Given the number of claims and issues, the prior request presented a greater likelihood of duplicative effort in successive appeals. Id. at *1.  Furthermore, intervening developments, including the pandemic and the unnecessary expenses and hardships plaintiff has already borne, give rise to "countervailing equities" that did not exist before Judge Geraci.  Id. at *2.

As a matter of law, I determined that plaintiff's primary cause of action, his civil RICO claim, is not cognizable.  Both parties agree that an immediate appeal of this determination is

11

**A-283**

appropriate and justified.   Based on the unique posture of this case, I concur.   If my determination as to the viability of plaintiff's RICO claim was erroneous, absent Rule 54(b) relief, this case would have to be tried again with the RICO cause of action reinstated, an event that would be inefficient and costly. Accordingly, the Court concludes that entry of a partial final judgment pursuant to Rule 54(b) is appropriate with respect to plaintiff's civil RICO claim predicated on mail and wire fraud.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS plaintiff Douglas J. Horn's Rule 54(b) motion (Docket # 208).   The Clerk of Court is directed to enter partial final judgment on Douglas J. Horn's civil RICO claim predicated on mail and wire fraud, which the Court dismissed in its September 14, 2021 Decision & Order. See Docket # 206.

SO ORDERED.

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:     Rochester, New York
           January 20, 2022

12

A-284

Judgment in a Civil Case
_____

United States District Court
_____WESTERN DISTRICT OF NEW YORK_____

DOUGLAS J. HORN, ET AL
                                     **INTERIM**
                                     **JUDGMENT IN A CIVIL CASE**
     v.                              CASE NUMBER: 15-CV-701

MEDICAL MARIJUANA, INC., ET AL

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED Upon Court Order, the Court grants in part and denies in part Defendants' motion (docket #194, 200). The civil RICO claim is dismissed pursuant to the Court's authority under Rule 56(f), but Defendants' motion is otherwise denied.

Date: January 25, 2022                       MARY C. LOEWENGUTH
                                              CLERK OF COURT

                                              By: s/ Colin J.
                                                 Deputy Clerk

**A-285**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____        Civil Action No. 15-cv-701

DOUGLAS J. HORN, et al.,

                               Plaintiff(s),

           -against-                                   *Notice of Appeal*

MEDICAL MARJUANA, INC., et al.,

                               Defendant(s).

_____


        NOTICE IS HEREBY GIVEN that DOUGLAS J. HORN, hereby appeal(s) to the United

States Court of Appeals for the Second Circuit from the Interim Judgment docketed on January

25, 2022 (ECF Document No. 218) and its underlying decision docketed on January 24, 2022

(ECF Document No. 217) in this action.


Dated: February 16, 2022


                                        Yours, etc.


                                        */s/ Jeffrey Benjamin*

                                        THE LINDEN LAW GROUP P.C.
                                        By: Jeffrey Benjamin, Esq.
                                        5 Penn Plaza, 23rd Floor
                                        New York, New York 10001
                                        (212) 835-1532
                                        jbenjamin@nyfraudlaw.com


*To all counsel via ECF*