# 22-349

In the

# United States Court of Appeals

## For the Second Circuit



DOUGLAS J. HORN,

*Plaintiff-Appellant,*

- and -

CINDY HARP-HORN,

*Plaintiff,*

— v. —

MEDICAL MARIJUANA, INC., DIXIE HOLDINGS, LLC,
AKA DIXIE ELIXIRS and RED DICE HOLDINGS, LLC,

*Defendants-Appellees,*

- and -

DIXIE BOTANICALS,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## BRIEF FOR PLAINTIFF-APPELLANT

THE LINDEN LAW GROUP, P.C.
*Attorneys for Plaintiff-Appellant*
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532

# **Contents**

Jurisdictional Statement ..................................................................................1

Issues Presented For Review ...........................................................................2

Statement of the Case......................................................................................3

   A. The Complaint.........................................................................................3

   B. The Motions for Summary Judgment/Reconsideration ...................................3

   C. The Decision Below ................................................................................4

   D. The Rule 54(b) Decision Below ...............................................................5

   E. Facts Relevant to Review .........................................................................6

Summary of Argument.....................................................................................9

Argument.........................................................................................................9

   A. The District Court Erred When It Found that Horn Did Not Allege a
       RICO Injury ............................................................................................9

     1. Horn's injuries were incidental and not derivative of any
         personal contact he had with Defendants' product ..................................10

     2. The cases on which the district court relied are inapposite......................14

Conclusion ....................................................................................................17

Certificate of Compliance under Rule 32(g)(1)..................................................18

# Table of Authorities

## Statutes

18 U.S.C. § 1964(c) ................................................................. 6, 9, 10, 12

28 U.S.C. § 1367 ................................................................................1

Federal Rules of Civil Procedure, Rule 54(b)......................................4, 5

Federal Rules of Civil Procedure, Rule 56(f) .........................................4

## Cases

*Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984), *vacated on other grounds*, 473 U.S. 922 (1985) ....................................................10

*Blevins v. Aksut*, 849 F.3d. 1016 (11th Cir. 2017)............................ 12, 13

*Creel v. Dr. Says, LLC*, 2022 U.S. Dist. LEXIS 60158 (E.D. Tex. March 31, 2022) ......................................................................................12

*Gotlin v. Lederman*, 367 F. Supp. 2d 349 (E.D.N.Y. 2005), *aff'd*, 483 F. Appx. 583, 2012 U.S. App. LEXIS 8790 (2d Cir. 2012) (summary order)..........................................................................................16

*In re Arizona Theranos, Inc. Litig.*, 308 F. Supp. 3d 1026 (D. Ariz. 2018)..... 13, 14

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352 (11th Cir. 2011).............................................................................13

*Luttrell v. Brannon*, 2018 U.S. Dist. LEXIS 101808 (D. Kan. June 19, 2018) .........................................................................................13

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999).........................................................................6

## JURISDICTIONAL STATEMENT

**(A) The District Court's Subject-Matter Jurisdiction.** Plaintiffs asserted claims pursuant to 18 U.S.C. § 1964(c) (Civil RICO) and invoked the district court's supplemental jurisdiction under 28 U.S.C. § 1367. (A-29, A-30 (Cplt. ¶ 2).)

**(B) Basis For The Court Of Appeals' Jurisdiction.** The district court certified the issues being appealed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (A-272).

**(C) The Filing Dates Establishing the Timeliness of the Appeal.** The district court entered an interim judgment on January 25, 2022, (A-284), and Plaintiff/Appellant filed his notice of appeal with the district court on February 16, 2022, (A-285), making the appeal timely.

**(D) Nature of Judgment.** The appeal is taken from an interim judgment entered when the district court granted in part Plaintiff/Appellant's motion to certify issues for appeal pursuant to Fed. R. Civ. P. 54(b). (A-272, A-284.)

## Issues Presented For Review

When a person loses their job as an incidental result of ingesting a product that was sold to them as a predicate act of mail and wire fraud under the Racketeer and Corrupt Organization Act (RICO) and makes no allegation that they suffered any personal injury as a result of the ingesting, have they suffered an injury to their business or property interests that is a RICO injury for which recovery made be had in a civil RICO cause of action? The district court said they did not.

## A. The Complaint

Plaintiff/Appellant Douglas Horn ("Horn") and his wife Cindy Harp-Horn[1] filed a Complaint with a RICO Statement on August 6, 2015. (A-29.) Defendant Dixie Holdings LLC d/b/a Dixie Elixirs answered on October 23, 2015. (A-57.) Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC answered on February 19, 2016. (a-70.) A fourth Defendant, Dixie Botanicals, did not appear and an Entry of Default was recorded by the Clerk on August 29, 2016. (A-6 (WDNY Dkt. Entry).)

## B. The Motions for Summary Judgment/Reconsideration

On April 17, 2019, and ruling on Defendants' motions for summary judgment, the district court, Geraci, J., dismissed all claims against Defendants asserted by Horn except for two, i.e., for a state-law claim of fraudulent inducement and for civil RICO. Certain state law claims were dismissed because Horn suffered no "personal, property, or psychological injury." (A-86 at A-113.)

The parties moved for reconsideration of the April 17 Order and it was denied as to Horn and granted in part as to Defendants with regard to the civil RICO claim. As to the latter, the district court narrowed Horn's claim to one in which the predicate

---

[1] Ms. Harp-Horn is not a party to this Appeal.

acts of mail and wire fraud were asserted and ruled that they were appropriate to be tried. (A-119 at A-128.)

## C. The Decision Below

This interlocutory appeal arises from the district court's opinion rendered on the eve of trial. (A-221 (Sept. 14, 2021).) In the September 14 opinion, the court, Feldman, M.J.,[2] dismissed one of the two claims of Plaintiff/Appellant Douglas Horn ("Horn") that had previously survived a first summary judgment motion by defendants in November 2019, (A-119). It allowed the case to proceed on the state-law fraudulent inducement claim, but dismissed Horn's final RICO claim for mail and wire fraud. That dismissal is the subject of this appeal and of the district court's Rule 54(b) order. (A-272.)

The RICO claim was dismissed, the district court held in the Sept. Opinion, "because plaintiff's loss of earnings flows from, and is derivative of, a personal injury he suffered, his lost earnings do not constitute an injury 'to business or property' that is recoverable in a civil RICO action. And because plaintiff does not seek to recover any other damages, his RICO claim fails as a matter of law and must be dismissed. See Fed. R. Civ. P. 56(f)." (A-233-234.)

---

[2] The parties consented to having the case tried by the magistrate judge. (WDNY ECF Nos. 162, 164 (A-20).)

The court held that Horn's "loss of earnings" damages as a result of taking the product are not recoverable in a civil RICO action because they are predicated on the "bodily invasion" plaintiff sustained when THC (tetrahydrocannabinol) was introduced into his system through the ingestion of Dixie X that contained THC. That amount of THC was detectable on a Department of Transportation drug test to detect THC in the bodies of truck drivers. (A-229.) (*See* A-153.)

Although Horn never filed a personal injury cause of action, never conducted discovery as such, and never sought the recovery of personal injury damages, the Court interpreted the case as one on the eve of trial and six years after its filing. It was plain error to characterize Horn's action as a claim for personal injury in order to dismiss the remaining claim under RICO for mail and wire fraud.

### D. The Rule 54(b) Decision Below

In its January 24, 2022 decision certifying a narrow issue for appeal under Rule 54(b), the district court said:

> [P]laintiff seeks to appeal a narrow, dispositive issue with respect to his civil RICO claim premised on mail and wire fraud: whether his "requested 'loss of earnings' damages are recoverable in a civil RICO action," where the lost earnings are "predicated on the bodily invasion [he] allegedly sustained when THC was introduced into his system through the ingestion of Dixie X." *Horn II*, 2021 WL 4173195, at *2 [(A-224)]. In other words, the dispute is whether plaintiff's theory for damages is legally cognizable in a civil RICO cause of action. That is a discrete question of statutory interpretation, and neither the previously dismissed claims nor the remaining fraud claim implicate that question

in a way that would create a risk that the Second Circuit would be "forced to review ... identical legal issues in multiple appeals." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 154 (E.D.N.Y. 1999).

(A-277-278 (footnote omitted).)

The issue, then, is not if Horn can go to trial on whether Defendants violated RICO or whether he suffered an injury as a result of Defendants' violation, i.e., that there was causation. It is whether the injury he suffered was a "RICO injury," i.e., an injury to his "business or property" that is recoverable under RICO. 18 U.S.C. § 1964(c).

On February 15, 2022, the district court denied Plaintiffs' letter motion requesting that the appeal be expanded to include issues other than whether Horn had suffered RICO injuries in Text Order. (A-27-28 (WDNY ECF No. 220).)

### E. Facts Relevant to Review

Because of the limited nature of this Appeal, the relevant facts can be stated briefly below and are taken from the undisturbed Complaint (A-31-33).

**Background.** Horn with his wife Cindy Harp-Horn were a team of over-the-road truckers and had been since 1998. In February 2012, Horn was involved in a serious work-related semi-truck accident in which he suffered severe shoulder and back injuries. Notwithstanding post-accident physical therapy and the taking of pain medications, he continued to suffer pain.

-6-

In September 2012, Horn saw a magazine at a book store in Texas where he and his wife had stopped. In the magazine, he read a story that described a "new product line called Dixie X, which contains 0% THC . . .." It was, the article said, one of a group of "non-psychoactive products."

**The RICO Predicate Acts of Mail and Wire Fraud.** Based upon that article, Horn searched for the product. He found YouTube videos that purported to be by the CEO of the Company, "Tripp Keber." In these videos, Defendants' CEO said several times that the Dixie X products were "THC-free" and that they contained "no THC" and "0% THC."

For this Appeal, it is enough to note that the district court accepted Horn's allegations that these statements were false and misleading and that the making of them amounted to RICO mail and wire fraud predicate acts and that Horn used Dixie X products beginning shortly after he ordered them on September 17, 2012 in reliance on these false and misleading statements.

**The Positive Drug Test.** Horn was regularly drug-tested by his employer as part of his job. He never failed one for over fourteen years as a truck driver, before he took the Dixie X product. He had (and has) no employment or criminal history of smoking marijuana.

Shortly after September 17, 2012, Horn ingested "Dixie X CBD Dew Drops, 500mg Tincture" as directed. On October 9, 2012, he submitted to a required, random, urine drug test screening. Horn was confirmed for a positive test result for "marijuana metabolite" with a result of 29 ng/ml, well over the cutoff concentration limit. He was promptly terminated from his career as a trucker, and referred to required drug education courses through a Substance Abuse Professional Evaluation program ("SAP").

**Confirming Presence of THC in Dixie X.** Horn ordered another batch of Dew Drops tincture on October 18, 2012 and he sent it, unopened, to a lab for testing. EMSL Analytical, Inc. tested the batch and found that it, and presumably the one Horn took, contained THC, specifically 170 ug/g of THC.

**Summary of Facts.** The core facts are as follows. *First*, Horn suffered a serious injury and after trying conventional ways of alleviating his pain, he turned to a product, Dixie X, that misrepresented to him and to others that it contained no THC. *Second*, Horn bought and took Dixie X with the understanding that it did not contain THC since a finding of THC in his urine would get him fired. *Third*, Dixie X *did* contain THC, which appeared in a routine drug test of Horn which got him fired. He claims the loss of income that he suffered because he was fired is an injury to his "business or property" interest and thus a recoverable RICO injury.

## SUMMARY OF ARGUMENT

The district court's error was in finding that the loss of income claimed by Horn derived exclusively from a personal injury he suffered as a result of Defendants' wrongdoing. In fact, while that loss was in some respect related to his consumption of Defendants' product, that physical contact was incidental to his financial injury and thus is a RICO injury.

## ARGUMENT

### A. The District Court Erred When It Found that Horn Did Not Allege a RICO Injury

There is no dispute that only a "person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). It is also established that a personal injury is *not* an injury to one's "business or property" for RICO purposes and is thus not a RICO injury.

As this Court succinctly put it in *Bankers Trust Co. v. Rhoades*, "The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage. For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal

injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit." 741 F.2d 511, 515 (2d Cir. 1984), *vacated on other grounds*, 473 U.S. 922 (1985), *cited by district court at* A-226-227. As shown below, Horn's injuries are like the furniture burned up in the fire, not like any personal injuries. His claim is, using the *Bankers Trust* construct, akin to having bought a couch based upon the misrepresentation that it was inflammable and then suffering an injury to it and the rest of his furniture when the couch caught fire.

The district court did not consider the issue of the nature of Horn's injuries correctly. It discussed cases in which the alleged RICO predicate acts caused a personal injury to the plaintiff where *as a result of that personal injury* the plaintiff suffered some economic injury. (A-227-230.) After observing that "[t]he limitation is perhaps easier to state than to apply," it concluded, incorrectly, that Horn's claim regarding his lost job and lost income fell within those personal injury type of case and was therefore not a RICO injury. Horn discusses, and distinguish, several of these cases below.

## 1. Horn's injuries were incidental and not derivative of any personal contact he had with Defendants' product

Horn does not dispute that his injury arose from his consuming a product that contained THC and that he lost his job when THC was detected in excessive amounts

in his system when he was drug-tested by his employer. Defendants advertised, manufactured, sold and mailed the product that contained the THC. The RICO claim is that Defendants' mailing and inducement to purchase to Horn was a RICO predicate act. As noted, whether the elements of that part of Horn's claim are made out is for the trier of fact and this appeal assumes that they are.

The district court's error was in failing to recognize that Horn does not allege that he suffered personal injuries as a result of his ingestion of the product. He does not allege that he suffered a personal injury from it and that as a result of that he suffered a loss to his property. To the contrary, that he consumed the product is incidental to his injury and his injury is not derivative of a physical injury. He ingested Defendants' product which altered his urine chemistry resulting in the loss of his decades-long job.

In this, his situation is vastly different those in the cases on which the district court relied. Instead, it is similar to several cases where a RICO injury was found even when there was some physical element to Defendants' wrong doing.

Earlier this year, for example, a district court in Texas confirmed a jury's finding that the plaintiff suffered a recoverable RICO injury even though the economic injuries she claimed arose directly out of her being improperly committed to a psychiatric facility. _Creel v. Dr. Says, LLC_, 2022 U.S. Dist. LEXIS 60158 (E.D.

Tex. March 31, 2022). Mrs. Creel was a victim of a billing scheme that the jury found was part of a wider RICO enterprise. She claimed that she had to pay attorneys to defend against the institution's efforts to have her committed and that her husband's business, where she worked and in which she had a marital interest, suffered lost profits as a result of the improper commitment.

The district court recognized that "there is no recovery under RICO for personal injuries" and that "even resulting pecuniary consequences of personal injuries are insufficient to establish a 'business or property' injury under § 1964(c)." *Id*. at *28 (citations omitted). It concluded, however, that the jury could find, as it did, that the injuries complained of—fees and lost profits—were not of that excluded type but were recoverable RICO injuries. *Id.* at *28-31.

The claim in *Blevins v. Aksut*, 849 F.3d. 1016 (11th Cir. 2017), was that a cardiologist performed unnecessary heart surgeries for which the plaintiffs (it is a putative class action) paid. The district court dismissed, but the Eleventh Circuit reversed with respect to the RICO claim. On the issue of whether the plaintiffs suffered RICO injuries, it concluded that "[t]hese injuries do not flow from any personal injuries. Rather […] the payments themselves are economic injuries because they were for medically unnecessary procedures." *Id.* at 1021 (citing *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1363 (11th

Cir. 2011)).[3] It is hard to imagine something more invasive than heart surgery, yet the Eleventh Circuit found that while the economic injuries did relate to the physical invasion, they did not derive from that.

*In re Arizona Theranos, Inc. Litig.* also involved a claim that was based upon a physical contact with the plaintiffs. 308 F. Supp. 3d 1026 (D. Ariz. 2018). Here, the invasion involved blood tests. The plaintiffs had had blood tests performed at Walgreens pharmacies using technology provided by Theranos, Inc. It was later revealed that the technology was deeply flawed and the blood tests performed on the plaintiffs' were worthless (or worse). The plaintiffs were among those who received refunds for the costs of the tests as part of a settlement some defendants entered into with the State of Arizona.

In the *Arizona Theranos* litigation, the plaintiffs, for themselves and a class, made numerous other claims. One was under RICO. Defendants moved to dismiss that claim, including on the ground that the plaintiffs did not suffer any RICO injuries. The court rejected the argument. "It is plausible that plaintiffs suffered other financial losses that did not flow from their personal injuries." These included

---

[3] In *Luttrell v. Brannon*, 2018 U.S. Dist. LEXIS 101808 (D. Kan. June 19, 2018), the district court followed *Blevins*. It noted, however, that this Court's summary order in *Gotlin* could be contrary to that. *Id.* at *9-10.

In this case, the district court relied on the district court's opinion. (A-173.)

taking, and *paying for*, "unnecessary medication as a result of their Theranos blood tests" and getting, and *paying for*, blood tests from other firms. 308 F. Supp. 3d at 1061-62.

Once again a court found that although the physical contact with the plaintiffs was essential to the scheme—how else to take blood?—it was incidental to the particular damages the plaintiffs sought under RICO.

It is the incidental nature of the physical contact between Horn and Defendants that distinguishes this case from those relied on by the district court. The latter essentially hold that *because* the financial injuries complained of flowed from the personal injuries, they could not be recovered under RICO.

## 2. The cases on which the district court relied are inapposite

The distinction between a recoverable RICO injury and an injury that is simply derivative from a personal injury and thus not recoverable under RICO is clear from the cases the district court cited.

In <u>*Evans v. Chicago*</u>, the alleged misconduct was the defendants' wrongful incarceration of the plaintiff. Because he was in jail, the plaintiff could not work. "The loss of income as a result of being unable to pursue employment opportunities while allegedly falsely imprisoned—similar to monetary losses flowing from the loss of consortium, loss of security and peace, wrongful death and similar claims

sounding in tort—are quintessentially pecuniary losses derivative of personal injuries arising under tort law." 434 F.3d 916, 926-27 (7th Cir. 2006) (footnote omitted). Thus, his "claim of loss of employment income is nothing more than an indirect, or secondary effect, of the personal injuries that he allegedly suffered" and thus was not a RICO injury. *Id.*, at 927.

In *Aston v. Johnson & Johnson*, the plaintiffs alleged they suffered severe physical and psychological injuries after taking Levaquin, one of Johnson & Johnson's drugs. They alleged that because of the physical effects of the drug, they suffered loss wages which were RICO injuries. The court rejected the argument. The plaintiffs' inability to work derived from the physical injuries they suffered and were thus at best derivative of those personal injuries and thus were not RICO injuries. 248 F. Supp. 3d 43, 49-50 (D.D.C. 2017).

The plaintiffs in *Zimmerman v. Poly Prep Country Day School* alleged that they were victims of sexual abuse while attending Poly Prep and that among the injuries they suffered as a result was a failure to have enjoyed the career and financial success they would have but for the abuse (though Judge Block rejected that causation was adequately pled). These injuries, the district court concluded, were merely the "economic consequences of personal injuries" and thus did not amount to RICO injuries. 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012).

Finally, in _Gotlin v. Lederman_, the RICO claim was that the defendants were induced to come to the United States where they received a bogus cancer treatment as part of a RICO enterprise's predicate acts of mail and wire fraud. "Plaintiffs allege that those acts caused their 'injuries and deaths.' Additionally, they allege that defendants' conduct 'caused the plaintiffs to sustain injuries and damages apart from the cost paid to the defendants, including bodily and psychological injuries; loss of the opportunity to receive appropriate treatment in Italy or elsewhere increasing the probability of length of survival with a greater quality of life; loss of the opportunity to receive systematic palliative care in Italy or elsewhere; pain and suffering; wrongful death; and loss of consortium.'" 367 F. Supp. 2d 349, 357 (E.D.N.Y. 2005) (complaint citations omitted), _aff'd_, 483 F. Appx. 583, 2012 U.S. App. LEXIS 8790 (2d Cir. 2012) (summary order). The complaint, in sum, was chiefly about the personal injuries suffered by the plaintiffs. Any financial injuries were "incidental" to the physical ones and thus not RICO injuries.

As this Court's summary order affirming the dismissal of the _Gotlin_ claim said, "plaintiffs' monetary losses were incidental to their personal injuries, and so cannot constitute injuries to 'property' as required to state a RICO claim." 483 F. Appx. at 586

<u>**CONCLUSION**</u>

For the foregoing reasons, the district court erred when it concluded that the injuries Horn suffered from Defendants' predicate acts were not RICO injuries and therefore not recoverable in this civil RICO case. This Court should reverse that order and remand the case to the district court to allow Horn's civil RICO claim to be tried.

Dated:  New York, New York
       July 15, 2022

THE LINDEN LAW GROUP, P.C.


By:  */s/ Jeffrey M. Benjamin*
Jeffrey M. Benjamin, Esq.
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532
jbenjamin@nyfraudlaw.com
Attorneys for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE UNDER RULE 32(g)(1).

Because this is a principal brief that does not exceed thirty pages, it is filed pursuant to Rule 32(a)(7)(A) of the Federal Rules of Appellate Procedure. Accordingly, a Rule 32(g)(1) Certificate is not required.