**22-349-cv**
*Horn v. Medical Marijuana, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2022

Submitted: February 22, 2023   Decided: August 21, 2023
Amended: August 22, 2023

Docket No. 22-349-cv

————————

DOUGLAS J. HORN,

*Plaintiff-Appellant,*

CINDY HARP-HORN,

*Plaintiff,*

— v. —

MEDICAL MARIJUANA, INC., DIXIE HOLDINGS, LLC, AKA DIXIE ELIXIRS, RED DICE HOLDINGS, LLC,

*Defendants-Appellees.*

DIXIE BOTANICALS,

*Defendant.*

————————

Before:

WALKER, LYNCH, and ROBINSON, *Circuit Judges*.

———————————

Plaintiff-Appellant Douglas Horn appeals from an order of the United States District Court for the Western District of New York (Jonathan W. Feldman, *M.J.*) granting summary judgment to Defendants-Appellees on his claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). On appeal, Appellant argues that the district court erroneously held that he lacks RICO standing to sue for his lost earnings because those losses flowed from, or were derivative of, an antecedent personal injury. We agree. RICO's civil-action provision, 18 U.S.C. § 1964(c), authorizes a plaintiff to sue for injuries to "business or property." While that language implies that a plaintiff cannot sue for personal injuries, that negative implication does not bar a plaintiff from suing for injuries to business or property simply because a personal injury was antecedent to those injuries. We therefore **VACATE** the order granting summary judgment to Appellees on Appellant's civil RICO claim, and **REMAND** to the district court for further proceedings consistent with this Opinion.

———————————

Jeffrey M. Benjamin, The Linden Law Group, P.C., New York, NY, *for Plaintiff-Appellant*.

Roy A. Mura, Scott D. Mancuso, Mura Law Group, PLLC, Buffalo, NY, *for Defendants-Appellees.*

———————————

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant Douglas J. Horn lost his job as a commercial truck

driver, which he had held for more than ten years, after a random drug test

detected tetrahydrocannabinol ("THC") in his system. He maintains, however, that he ingested THC unwittingly by consuming a cannabis-derived product that was marketed as THC-free by Defendants-Appellees Medical Marijuana, Inc., Dixie Holdings, LLC, a/k/a Dixie Elixirs, and Red Dice Holdings, LLC ("Appellees"). He then brought this lawsuit in the United States District Court for the Western District of New York, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and state law. Granting partial summary judgment to Appellees, the district court (Jonathan W. Feldman, *M.J.*) held that Horn lacked RICO standing[1] because he sued for losses – in particular, his loss of earnings – that were derivative of, or flowed from, an antecedent personal injury.

We disagree. RICO's civil-action provision, 18 U.S.C. § 1964(c), authorizes a plaintiff to sue for "injur[ies] in his business or property" that are proximately caused by a violation of one of RICO's substantive provisions. While § 1964(c) implicitly excludes recovery for personal injuries, nothing in § 1964(c)'s text, or

---

[1] Unlike Article III standing, RICO "standing" is not a jurisdictional requirement but instead concerns a merits issue, *i.e.*, whether the RICO statute gave the plaintiff a cause of action. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129-30 (2d Cir. 2003), *as amended* (Apr. 16, 2003) (Sotomayor, *J.*).

3

RICO's structure or history, supports an amorphous RICO standing rule that bars

plaintiffs from suing simply because their otherwise recoverable economic losses

happen to have been connected to or flowed from a non-recoverable personal

injury. Accordingly, we **VACATE** the district court's order granting summary

judgment to Appellees on Horn's RICO claim, and **REMAND** for further

proceedings consistent with this Opinion.

## BACKGROUND

### I.    Factual Background

The following facts are undisputed for purposes of this appeal.

In February 2012, Horn was in a car accident that caused injuries to his hip

and right shoulder. He was prescribed medicine for those injuries, but in the

months following his accident, "he investigated natural medicines as an

alternative to his other prescriptions." J. App'x 31. In or around September 2012,

Horn discovered a magazine advertisement for Dixie X CBD Dew Drops Tincture

("Dixie X"), a product that was jointly produced, marketed, and sold by

Appellees. The advertisement read as follows:

> **CBD for Everyone!**
>
> Using a proprietary extraction process and a strain of

4

high-CBD hemp grown in a secret, foreign location,
Colorado's Dixie Elixirs and Edibles now offers a new
product line called Dixie X, which contains 0% THC and
up to 500 mg of CBD. This new CBD-rich medicine will
be available in several forms, including a tincture, a
topical and in capsules. Promoted as "a revolution in
medicinal hemp-powered wellness," the non-
psychoactive products will first roll out in Colorado
MMCs (medical marijuana centers), with plans to
quickly expand outside the medical-marijuana market.
"It has taken a tremendous amount of time, money and
effort, but finally patients here in Colorado – and
ultimately all individuals who are interested in utilizing
CBD for medicinal benefit – will be able to have access
to it," says Tripp Keber, Dixie's managing director. "We
are importing industrial hemp from outside the US
using an FDA import license – it's below federal
guidelines for THC, which is 0.3% – and we are taking
that hemp and extracting the CBD. We have
meticulously reviewed state and federal statutes, and
we do not believe that we're operating in conflict with
any federal law as it's related to the Dixie X (hemp-
derived) products."

*Id.* at 47.

It was important to Horn that Dixie X was free of THC and compliant with

federal law. At the time, Horn and his wife, Cindy Harp-Horn, were working as a

team of commercial truck drivers for Enterprise Transportation Company. As a

commercial truck driver, Horn was subject to random drug testing by his

employer, as required by the U.S. Department of Transportation. Mindful of that

5

restriction, Horn and his wife sought to ensure the advertisement's accuracy by watching YouTube videos, reviewing the FAQ page of Dixie X's website, and calling a customer-service line – all of which corroborated the advertisement's representation that Dixie X did not contain THC. Satisfied with that investigation, Horn purchased Dixie X in October 2012.

To Horn's dismay, after he consumed the product, he failed his employer's random drug test and later a confirmatory drug test. Consequently, he lost his job, current and future wages, and insurance and pension benefits. At that time, he had twenty-nine years' experience as a commercial truck driver, including more than ten years driving for Enterprise Transportation Company. At some point, Horn's wife resigned from her job, believing it was unsafe to work as a commercial truck driver without her husband.

Suspecting that Dixie X was to blame for his positive test, Horn purchased some more and had an independent lab test the product. Those tests confirmed that Dixie X contained THC.

## II.    Procedural History

On August 6, 2015, Horn and Harp-Horn filed a nine-count complaint in the United States District Court for the Western District of New York. Count 2

asserted a claim of RICO conspiracy under 18 U.S.C. §§ 1962(d), 1964(c).

Underlying that claim were predicate acts of mail and wire fraud, 18 U.S.C.

§§ 1341, 1343, and of engaging in transactions with money derived from specified

unlawful activities, 18 U.S.C. § 1957. The other eight counts were New York state

law claims for deceptive business practices/false advertising, fraudulent

inducement, products liability, breach of contract, breach of express warranty,

unjust enrichment, negligence, and negligent infliction of emotional harm.

The district court dismissed Harp-Horn's claims and whittled Horn's

claims to two: (1) the civil RICO claim, as predicated on mail and wire fraud; and

(2) the state-law fraudulent inducement claim. *See Horn v. Med. Marijuana, Inc.*

*(Horn I)*, 383 F. Supp. 3d 114, 135 (W.D.N.Y. 2019); *Horn v. Med. Marijuana, Inc.*

*(Horn II)*, No. 15-cv-0701, 2019 WL 11287650, at *3 n.3, *5 (W.D.N.Y. Nov. 22,

2019).

With a trial date approaching, on July 22, 2021, Dixie Holdings moved to

preclude the trial testimony of Horn's damages expert, arguing that his lost

earnings are not recoverable under RICO or the remaining state-law claim. The

district court construed that motion as dispositive, agreed with Dixie Holdings as

to the RICO claim but not the state-law claim, and accordingly granted partial

summary judgment to Appellees on the RICO claim. *Horn v. Med. Marijuana, Inc.
(Horn III)*, No. 15-cv-0701, 2021 WL 4173195 (W.D.N.Y. Sept. 14, 2021). Following
out-of-circuit precedent, the district court reasoned that Horn's lost earnings
"flow[] from, and [are] derivative of, a personal injury" – that is, an unconsented
bodily invasion by THC – and therefore "do not constitute an injury 'to business
or property' that is recoverable in a civil RICO action" brought under 18 U.S.C.
§ 1964(c). *Id.* at *5. On January 24, 2021, the district court entered final judgment
on Horn's civil RICO claim, thereby certifying this appeal, pursuant to Federal
Rule of Civil Procedure 54(b). *Horn v. Med. Marijuana, Inc. (Horn IV)*, No. 15-cv-
0701, 2022 WL 206235, at *4 (W.D.N.Y. Jan. 24, 2022).

## DISCUSSION

Horn challenges the district court's decision to grant summary judgment to
Appellees on his RICO claim. "We review de novo a district court's decision to
grant summary judgment, construing the evidence in the light most favorable to
the party against whom summary judgment was granted and drawing all
reasonable inferences in that party's favor." *Covington Specialty Ins. Co. v. Indian
Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023), quoting *Bey v. City of
New York*, 999 F.3d 157, 164 (2d Cir. 2021). We agree with Horn that the district

8

court erred in holding that he cannot sue for his loss of earnings.[2] RICO's civil-action provision, 18 U.S.C. § 1964(c), does not bar a plaintiff from suing for injuries to business or property simply because they flow from, or are derivative of, an antecedent personal injury. In reaching that conclusion, we outline the plain and ordinary meaning of injury to "business" as used in § 1964(c) and then explain why RICO does not contain the limitation that the district court applied in this case.

## I. The Plain and Ordinary Meaning of "Injured in His Business"

"[W]e start . . . with the text of the statute," *Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021), "seek[ing] to discern and apply the ordinary meaning of

---

[2] But we reach that conclusion under a different rationale than the one argued by Horn. Horn disputes that his lost earnings flow from a personal injury, arguing that any personal injury he suffered through his unwitting ingestion of THC was only incidental to his lost earnings. But a logically antecedent legal question is whether § 1964(c) bars a plaintiff from suing for injuries to business or property simply because they flow from, or are derivative of, a personal injury. It is that question we answer. How to apply a statutory provision like § 1964(c) "fairly includes the question of what that statute says," and we are not compelled to "accept an interpretation of a statute simply because it is agreed to by the parties." *Rumsfeld v. FAIR*, 547 U.S. 47, 56 (2006); *cf. United States v. Grubbs*, 547 U.S. 90, 95 n.1 (2006) ("It makes little sense to address what the Fourth Amendment requires of anticipatory search warrants if it does not allow them at all."); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 n.13 (1996) (deciding a question that is logically antecedent to the issue presented).

its terms at the time of their adoption," *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021). Section 1964(c) authorizes "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Because "Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267 (1992), cases concerning antitrust standing inform our interpretation, but only to the extent relevant in this setting and consistent with the Supreme Court's instruction not to import into RICO barriers to standing that are "appropriate in a purely antitrust context" and not adapted to the purposes of RICO, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) (rejecting this Circuit's old "racketeering injury" requirement).

As alluded to above, the key text here is the phrase "business or property." By using the disjunctive "or" to separate "business" from "property," Congress made clear that "'business' was not intended to modify 'property,' nor was 'property' intended to modify 'business.'" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (interpreting § 4 of the Clayton Act). We therefore give each of those terms its "independent and ordinary significance." *Id.* at 338-39.

10

At the time of § 1964(c)'s codification, the term "business" did not "embrace" a single "legal meaning." Black's Law Dictionary 248 (Rev. 4th ed. 1968). Instead, the term embraced concepts like "employment, occupation, or profession engaged in for gain or livelihood," and "commercial or industrial establishment or enterprise." *Id.*; *see also Flint v. Stone Tracy Co.*, 220 U.S. 107, 171 (1911) (explaining that "[b]usiness" as used in the Tariff Act of 1909 "is a very comprehensive term and embraces everything about which a person can be employed"). Non-legal dictionaries of the time reflect similar understandings. *See* Webster's Third New International Dictionary 302 (1971) (defining "business" as a "commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision," and as "a commercial or industrial enterprise").

Because the term "business" encompasses "employment," Horn has suffered an injury "in his business," as contemplated by the RICO statute. His suit is premised on his long-time employer terminating his employment as a commercial truck driver (for which he had twenty-nine years' total experience) because he tested positive for THC. That termination cost him current and future wages and his insurance and pension benefits – all of which were tied to his

11

employment.

That is sufficient to state a "business" injury under the RICO statute. "A person does not have to wear a suit and tie to be engaged in 'business.'" *Diaz v. Gates*, 420 F.3d 897, 905 (9th Cir. 2005) (en banc) (Kleinfeld, *J.*, concurring). Nor does a person need to own a sole proprietorship or be an independent contractor. *Id.* at 905-06. "The distinction between 'business' and employment is so tenuous and uncertain that it is hard to see why we should attribute to Congress a purpose of making it, especially since they did not make it expressly." *Id.* at 906. And, as the Supreme Court has instructed, "RICO is to be read broadly." *Sedima*, 473 U.S. at 497. "This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Id.* at 497-98, citing *United States v. Turkette*, 452 U.S. 576, 586-87 (1981), and quoting Pub. L. 91-452, § 904(a), 84 Stat. 947. There is, in short, no reason to suppose that Congress sought to protect enterprises to the exclusion of ordinary employees, or to protect certain means of livelihood but not others. Accordingly, when Horn lost his job, he suffered an injury to his business within the plain meaning of

12

§ 1964(c).[3]

## II.    The Antecedent-Personal-Injury Bar

Rather than apply the plain and ordinary meaning of the phrase "business

or property," the district court adopted an atextual restrictive interpretation of

the statute, adopted by the en banc Sixth Circuit over the dissent of five judges,

that denies RICO standing to any plaintiff whose pecuniary loss "flows from, or

is derivative of," an antecedent personal injury, even if the loss constitutes an

injury to "business or property" within the plain and ordinary meaning of that

phrase. *Horn III*, 2021 WL 4173195, at *3**,** citing *Jackson v. Sedgwick Claims Mgmt.*

*Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013) (en banc) ("[B]oth personal injuries

and pecuniary losses flowing from those personal injuries fail to confer relief

under § 1964(c).").[4] In doing so, the district court deviated from the en banc Ninth

Circuit, which had rejected a similar approach as "flawed" in *Diaz*, 420 F.3d at

───────────────

[3] The term "property" presents a less straightforward inquiry. In light of our holding that Horn suffered an injury to his business, we have no need to decide whether Horn suffered an injury to property when he lost his job.

[4] While Judge Clay concurred in the judgment, he did so on alternative grounds, rejecting the majority's standard as "imprecise and atextual." *Jackson*, 731 F.3d at 570 (Clay, *J.*, concurring in the judgment).

901-02.[5]

We understand the justification of that rule, which we call the antecedent-

personal-injury bar, to be as follows: (1) by expressly authorizing suit for injuries

---

[5] The district court also drew support from the Seventh and Eleventh Circuits. *See Horn III*, 2021 WL 4173195, at *3. Those circuits ask whether the plaintiff's claimed pecuniary losses are more properly understood as part of a personal injury claim, and in doing so assess whether those losses are derivative of, flow from, or are intertwined with an antecedent personal injury. *See Evans*, 434 F.3d at 928-30 & n.26; *Doe*, 958 F.2d at 770; *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988). While neither circuit has placed decisive weight on the presence of an antecedent personal injury, *see Grogan*, 835 F.2d 848 (leaving open whether losses "resulting from murder" are recoverable under RICO); *Evans*, 434 F.3d at 928 (leaving open whether a victim of false imprisonment could, in a future case, recover "promised or contracted for wages" or losses to a "lawful business enterprise or activity"), we think that those circuits, for substantially the same reasons as the Sixth Circuit, get the inquiry backwards. The question is not whether a plaintiff's claimed pecuniary losses are more properly understood as part of a personal injury claim, or whether the injury is derivative of, flows from, or intertwined with a personal injury. Instead, the question is whether the plaintiff's pecuniary losses constitute an injury to "business or property." 18 U.S.C. § 1964(c). That is all the plaintiff must show.

We acknowledge that in one summary order, we affirmed a district court's order dismissing a plaintiff's civil RICO claim, *see Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002), which relied in part on the Seventh Circuit's approach, *see Gause v. Philip Morris*, No. 99-cv-6226, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000). While we endorsed "the reasons stated" by the district court, all we actually said, which we do not question here, was that "[p]ersonal injuries of smokers are not injuries to 'business or property' within the meaning of [RICO]." *Gause*, 29 F. App'x 761. In any event, summary orders do not have the force of precedent, *see* 2d Cir. Local R. 32.1.1(a), even if we may sometimes consider them persuasive, *see United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010).

14

to "business or property," § 1964(c) implicitly excludes suit for other types of

injuries – most notably, "personal injuries"; and (2) for that implied limitation to

retain significance, Congress must also have implicitly intended to exclude

injuries to business or property that flow from an antecedent personal injury, as

most personal injuries lead to some pecuniary losses. *See Jackson*, 731 F.3d at 563-

66. Otherwise, the district court explained, a plaintiff could "easily recast

damages for personal injury as a financial loss of 'property' in order to invoke

civil RICO." *Horn III*, 2021 WL 4173195, at *3.

 We are not persuaded, and thus reject the antecedent-personal-injury bar.

*Cf. Diaz*, 420 F.3d at 901-02. As an initial matter, we agree that § 1964(c) implicitly

excludes recovery for personal injuries. *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579

U.S. 325, 350 (2016); *see also Reiter*, 442 U.S. at 339 (interpreting § 4 of the Clayton

Act). In other words, "a person physically injured in a fire whose origin was

arson is not given a right to recover for his personal injuries" under § 1964(c);

rather, he may recover for things like "damage to his business or his building"

caused by the fire. *Bankers Tr. Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984),

*vacated on other grounds*, 473 U.S. 922 (1985). At its core, civil RICO was "designed

to remedy *economic* injury." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,

483 U.S. 143, 151 (1987) (emphasis added); *accord Bascuñán v. Elsaca*, 874 F.3d 806, 817 & n.45 (2d Cir. 2017).

But the negative implication that RICO excludes recovery for personal injury does not mean that a plaintiff cannot sue for injuries to business or property simply because they flow from, or are derivative of, a personal injury. "The force of any negative implication . . . depends on context," *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017), quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013), and nothing in RICO's text or structure "provides for ignoring damage to a[] . . . legal entitlement because it arose following a personal injury," *Jackson*, 731 F.3d at 579 (Moore, *J.*, dissenting). Thus, "[w]hile it seems undisputed that RICO liability will not attach where the injuries alleged are personal ones, there is no textual reason to extend that bar" to an injury to business or property "for which a personal injury was a necessary precursor." *Id.* at 570-71 (Clay, *J.*, concurring in the judgment) (internal citations omitted); *see also Diaz*, 420 F.3d at 903 (Kleinfeld, *J.*, concurring) ("The RICO statute tells us what kinds of injuries give rise to RICO claims.").

First, we find it significant that § 1964(c)'s "by reason of" requirement "incorporates a proximate cause standard." *Diaz*, 420 F.3d at 901, citing *Holmes*,

16

503 U.S. at 265-68. Proximate cause considers, among other things, the

permissible degree of attenuation between the claimed harm and the predicate

act, and requires "some direct relation between the injury asserted and the

injurious conduct alleged." *Holmes*, 503 U.S. at 268. Still, proximate cause "is

generous enough to include the unintended, though foreseeable, consequences of

RICO predicate acts," including, in some instances, harms that flow from, or are

derivative of, each other. *Diaz*, 420 F.3d at 901, citing *Palsgraf v. Long Island R.R.

Co.,* 248 N.Y. 339, 342-47 (1928) (Cardozo, *C.J.*).[6]

 Thus, by enacting a proximate-cause limitation on RICO standing,

Congress made a judgment concerning the permissible degree of attenuation

between a predicate act and a redressable RICO injury. The antecedent-personal-

injury bar coopts that judgment, imposing a more restrictive attenuation

principle that bars suit whenever there is a necessary antecedent personal injury,

even where that injury and the resulting injuries to business or property were

intended or foreseeable (*i.e.*, proximate). As a general matter, when Congress

uses "explicit language in one provision," that "cautions against inferring the

---

[6] Because the district court addressed only whether Horn suffered a redressable injury to business or property, we take no position on whether Horn satisfies § 1964(c)'s other requirements, including proximate cause.

same" or a similar "limitation in another provision." *State Farm Fire & Cas. Co. v.*

*U.S. ex rel. Rigsby*, 580 U.S. 26, 34 (2016) (internal quotation marks omitted)

(declining to hold that the False Claims Act "mandate[s] dismissal" for "violating

[its] seal requirement," in part because other provisions of the Act "require, in

express terms, the dismissal of a relator's action" for other reasons); *accord Ysleta*

*Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1941 (2022). Reading the antecedent-

personal-injury bar into the phrase "business or property" violates that principle,

based on nothing more than an implicit limitation in the text of § 1964(c).

Second, the phrase "business or property" focuses on the *nature* of the

harm, not the *source* of the harm, as demonstrated by the dictionary definitions of

those terms. Section 1964(c) addresses the source of the harm elsewhere,

requiring that civil suits be premised on a "violation of section 1962." And that

source restriction cuts against reading into § 1964(c) yet another source restriction

that would exclude injuries to business or property that flow from, or are

derivative of, a personal injury. Section 1962(c) prohibits "any person employed

by or associated with any enterprise" from conducting or participating in the

"affairs" of the "enterprise[]" through a "pattern of racketeering activity." The

term "racketeering activity" includes "murder" and "kidnapping," § 1961(1)(A),

and neither of those acts, themselves, amount to "injury to business or property," *Diaz*, 420 F.3d at 904 (Kleinfeld, *J.*, concurring). Both directly result in "personal injury to a human being." *Id.* But both acts may nonetheless "*give rise* to 'injury to business or property' under section 1964." *Id.* at 905 (emphasis added). Thus, because "personal injuries, including murder and kidnapping, are expressly listed in section 1961 as 'racketeering' conduct that can give rise to claims under the statute," § 1964(c) cannot be read to deny RICO standing for injuries to business or property simply because the plaintiff suffered an antecedent personal injury. *Id.* at 904.

Third, and relatedly, the antecedent-personal-injury bar precludes various types of civil suits that are at the core of RICO's substantive prohibitions. Murder and kidnapping are obvious examples. So too is the broader offense of "extortion," § 1961(1), which at the time of RICO's adoption generically meant to "obtain[] something of value from another with his consent induced by the wrongful use of force, fear, or threats," *United States v. Nardello*, 393 U.S. 286, 290 (1969); *accord Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409-10 (2003). Similarly, loan sharking – *i.e.*, the "collection of unlawful debt." § 1962(c); *see also* § 1961(6) (defining unlawful debt). Loan sharking was a principal evil with which

19

Congress was concerned when it enacted RICO, *see* S. Rep. No. 91-617, at 158-59

(1969), undoubtedly due to the loan shark's frequent means of collecting debt:

violence. *See* 18 U.S.C. §§ 891-894 (criminalizing extortionate extensions of credit

and collection of debt); 18 U.S.C. § 1961(1)(B) (defining those crimes as

racketeering activity). Yet, the antecedent-personal-injury bar would preclude

recovery for injuries to business or property that flow from, or are derivative of,

personal injuries that inevitably result from the murder of a business owner who

resists paying a demand for protection money; the kidnapping of a bar owner

who refuses to sell his property to the mafia; the extortionate battery of a car-

wash owner who refuses to launder money; and the shooting of an individual

who fails to pay an unlawful debt.

While RICO's scope has expanded beyond its originally anticipated

applications, those are core applications of RICO, as unambiguously reflected by

its text and structure. But under the antecedent-personal-injury bar, § 1964(c)'s

*implicit* exclusion of personal injuries would trump those core applications of

RICO even as to expressly covered injuries to business or property. The negative-

implication canon "must be applied with great caution, since its application

depends so much on context," Antonin Scalia & Bryan A. Garner, Reading Law:

The Interpretation of Legal Texts 107 (2012), and the context underlying § 1964(c)

is, if nothing else, Congress's clear goal to thwart ruthless thugs whose violence

exerts influence over legitimate business.[7] The antecedent-personal-injury bar

would ignore that context by precluding recovery, not only where recovery is

sought for pain and suffering or payment of medical bills resulting from personal

injuries, but also for injuries to a victim's business or property whenever a

personal injury is a necessary precursor.

    Why, then, would Congress focus the nature of the harm specifically on

"business or property," thereby implicitly excluding recovery for personal

injury? The legislative history does not offer an answer. *See* Patrick Wackerly,

---

[7] RICO's legislative history reflects that understanding. RICO was passed as part of Title IX to the Organized Crime Control Act, whose purpose was to eliminate "the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." *See* S. Rep. No. 91-617, at 76. To some, § 1964(c) was central to attaining that end. *See* House Hearings on S. 30 and Related Proposals, Before Subcomm. No. 5 of the House Comm. on the Judiciary, 91st Cong. 520 (1970) (statement of Hon. Sam Steiger) ("Title IX's civil provisions promise to be far more effective than any existing authority as a means of protecting legitimate businessmen from the ruthless and oppressive methods used by organized crime in its business dealings, and as a means of guarding the American principle of free competition in the market place."). It would thus be anomalous to deny civil plaintiffs access to RICO's remedies simply because their business or property losses flow from violent and ruthless criminal activity inflicted upon their persons.

21

*Personal Versus Property Harm and Civil RICO Standing*, 73 U. Chi. L. Rev. 1513,

1522-25 (2006) (examining records from the House of Representatives and the

Senate, and concluding that "the legislative history of civil RICO from both

chambers is largely silent regarding the purpose of § 1964(c)"). It could be that

Congress simply adopted what it considered to be an effective civil-action

provision in § 4 of the Clayton Act. *See Holmes*, 503 U.S. at 267. Alternatively,

Congress may have "chose[n] to address [harm to business or property] in order

to focus upon the harm racketeering does to interstate commerce." *Diaz*, 420 F.3d

at 906 (Kleinfeld, *J.*, concurring).

That the rationale for excluding personal injury damages from liability

under civil RICO may be mysterious does not matter in light of § 1964(c)'s text,

which clearly limits liability to injuries to "business or property." There is thus no

basis for a civil RICO claim for physical or emotional suffering that results from

an injury to a victim's person. But, conversely, in the absence of any apparent

explanation, there is no basis to extend that implicit exclusion to further exclude

recovery for the types of injury that Congress expressly provided. After all,

§ 1964(c) contains no language prohibiting "personal injury actions," which could

be construed to preclude recovery of any damages that might typically be sought

in such an action. Rather, the exclusion of liability for personal injury is a consequence of language that *authorizes* suit for injuries to "business or property," which is reasonably read to exclude claims for such injuries as pain and suffering or loss of consortium, which cannot be characterized as injuries to "business or property." Congress expressly authorized plaintiffs to sue for injuries to "business or property," and business and property are no less injured simply because there is an antecedent personal injury.

Fourth, the desire to deny recovery where there is an antecedent personal injury is partly based on a concern that the Supreme Court has instructed courts to ignore: a concern with "increasing the number of RICO claims" if RICO standing were recognized. *Jackson*, 731 F.3d at 571 (Clay, *J.*, concurring in the judgment). That policy "consequence[], assuming [it is] undesirable, cannot blind us to the statutory language." *Diaz*, 420 F.3d at 901. To the contrary, the Supreme Court has expressly cautioned lower courts not to use that concern to impose "additional, amorphous" RICO standing requirements even when a court might reasonably anticipate that civil plaintiffs will "misuse" RICO. *Sedima*, 473 U.S. at 481, 495. In *Sedima*, the Supreme Court reversed this Circuit's rule that a plaintiff must show a "racketeering injury" to have RICO standing. *Id.* at 495, 499-500. The

Supreme Court explained that "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime," and that Congress enacted § 1964(c) to avoid the imposition of "inappropriate and unnecessary obstacles in the way of . . . a private litigant" suing under RICO. *Id.* at 498 (internal quotation marks omitted; ellipses in original). While an expansive view of RICO might allow private litigants to use RICO in ways not previously anticipated (such as a "tool for everyday fraud cases," even against "respected and legitimate enterprises"), that "defect – if defect it is – is inherent in the statute as written." *Id.* at 499 (internal quotation marks omitted). "[I]ts correction must lie with Congress," not the judiciary. *Id.*

Not only are we bound by the Supreme Court's instruction in *Sedima*, but that instruction seems especially appropriate here. For one, there is no "misuse" of RICO when a victim sues a criminal enterprise for violence inflicted upon him that results in injury in his business or property, and thus no reason to be dismayed by the number of claims that might be filed alleging such injury. Such suits, as noted, are core applications of RICO. In this particular case, moreover, Horn does not seek damages for any personal injury, and indeed disclaims having suffered any, beyond what could be construed as an unconsented bodily

24

invasion based on his ingestion of a fraudulently misrepresented product. His only claimed injury is the loss of his employment due to the detection of an illegal substance in his body – the very substance that defendants had represented was not present in the product it sold him.

Moreover, the antecedent-personal-injury bar produces a different policy concern, as it would generate arbitrary and inconsistent outcomes. For example, while the antecedent-personal-injury bar would allow a plaintiff to sue "for the fraudulent devaluation of welfare benefits, which do not arise following a personal injury," it would bar a plaintiff from suing "for the fraudulent devaluation of worker's compensation benefits, solely because the latter do." *Jackson*, 731 F.3d at 580 (Moore, *J.*, dissenting). Likewise, that rule leads to "the anomalous result that one could be liable under RICO for destroying a business if one aimed a bomb at it, but not . . . if one aimed at the business owner" and successfully struck him, thus preventing him from conducting the business. *Diaz*, 420 F.3d at 901-02. It is not appropriate for a federal court to speculate which of two alternative policy consequences (*e.g.*, more unanticipated claims or inconsistent outcomes) would be a greater concern to Congress.

Finally, we should note that, under our approach, the phrase "business or

property" is not boundless but instead "retains restrictive significance." *Reiter*,

442 U.S. at 339. Thus, contrary to the district court's atextual concern, a plaintiff

cannot "easily recast damages for personal injury as a financial loss of 'property'

in order to invoke civil RICO." *Horn III*, 2021 WL 4173195, at *3. The plaintiff

must, instead, suffer an injury to business or property, and not all injuries can be

recast to satisfy the definitions of those terms. Quite obviously, a person cannot

sue for non-pecuniary injuries like "loss of consortium, loss of guidance, mental

anguish, and pain and suffering," *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.

1988), even though those injuries can be (imprecisely) quantified. Moreover, even

if a plaintiff has suffered an injury to business or property, the plaintiff must

satisfy RICO's proximate-cause standard, which requires "some direct relation

between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S.

at 268. Thus, it is simply wrong to suggest that the antecedent-personal-injury bar

is necessary to ensure "genuine limitations" in § 1964(c), *Jackson*, 731 F.3d at 563,

or to give restrictive significance to Congress's implicit intent "'to exclude some

class of injuries by the phrase "business or property"' when it enacted RICO," *id.*

at 564, quoting *Reiter*, 442 U.S. at 339.

Accordingly, § 1964(c) does not bar a plaintiff from suing for injuries to

26

business or property simply because those injuries flow from, or are derivative of, an antecedent personal injury. For that reason, the district court erred in granting summary judgment to Appellees on Horn's RICO claim.

## CONCLUSION

For the reasons set forth above, we **VACATE** the district court's order granting Appellees' motion for summary judgment, and **REMAND** for further proceedings consistent with this Opinion.